Roy H. Liddell, Esq.
Thomas M. Louis, Esq.
Julie C. Skipper, Esq.
WELLS MARBLE & HURST, PLLC
600 Lamar Life Building
317 East Capitol Street
Jackson, Mississippi 39201
(601) 355-8321

Attorneys for Plaintiff KLLM, Inc.

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **IN RE INSURANCE BROKERAGE** | ) | **Civil Action No. 04-5184; In the Southern** |
| **ANTITRUST LITIGATION** | ) | **District of Mississippi, C.A. No. 3:04-893** |
| | ) | |
| | ) | **MDL No. 1663** |
| | ) | |
| | ) | **Civ. Action No. 04-5184 (FSH)** |
| | ) | |
| **KLLM, INC.** | ) | |
| | ) | |
| **Plaintiff** | ) | **Civ. Action No. 05-4046 (FSH)** |
| | ) | |
| **v.** | ) | Return Date: December 12, 2005 |
| | ) | |
| **MARSH USA, INC., et al** | ) | |
| | ) | |
| **Defendants.** | ) | |

## RESPONSE AND MEMORANDUM BRIEF IN OPPOSITION
## TO INSURER DEFENDANTS' MOTION TO DISMISS

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     I.     The Parol Evidence Rule Does Not Bar Consideration of
          Extrinsic or Parol Evidence of the Three-Year Rate
          Guarantee Upon Which KLLM's Claims Are Based . . . . . . . . . . . . . . . . . . . . . . 4

     II.    Oral Representations May Be Made Part of The Contract . . . . . . . . . . . . . . . . . . . 8

     III.   The Presence of the Right to Cancel in the Contract Does Not
          Preclude the Inclusion of the Three-Year Guarantee . . . . . . . . . . . . . . . . . . . . . . . 11

     IV.   A Fiduciary Relationship Existed Between KLLM and the
          Insurer Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     V.    KLLM's Fraud Claims Are Sufficient to Defeat the Instant
          Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

*Andrew Jackson Life Ins. Co. v. Williams*,
        566 So. 2d 1172 (Miss.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bailey v. Worton*,
        752 So. 2d 470 (Miss. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Bogosian v. Gulf Oil Corp.*,
        561 F.2d 434 (3d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Brown v. Ohman*,
        42 So. 2d 209 (Miss. 1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11

*Chris Albritton Construction Co., Inc. v. Pitney Bowes Inc.*,
        304 F.3d 527 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Clark v. State Farm Mut. Auto. Ins. Co.*,
        725 So. 2d 779 (Miss. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dennis v. Searle*,
        457 So. 2d 941 (Miss. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Estate of Parker v. Dorchak*,
        673 So. 2d 1379 (Miss. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Estes v. Jones*,
        80 So. 526 (Miss. 1919) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Fornea v. Goodyear Yellow Pine Co.*,
        178 So. 914 (Miss. 1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Garrett v. Hart*,
        168 So. 2d 497 (Miss. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Grenada Auto Co. v. Waldrop*,
        195 So. 491 (Miss. 1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hopewell Enters., Inc. v. Trustmark Nat'l Bank*,
        680 So. 2d 812 (Miss. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Air Crash Disaster at Boston, Mass. on July 31, 1973*,
        349 F. Supp. 1106 (D. Mass. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ii

*In re Nice Systems, Ltd. Securities Litigation,*
    135 F.Supp.2d 551 (D.N.J. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Rockefeller Center Properties, Inc. Securities Litigation,*
    311 F.3d 198 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*In re Tempromandibular Joint (TMJ) Implants Products Litigation*,
    97 F.3d 1050 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IP Timberlands Operating Cor. v. Denmiss Corp.*,
    726 So. 2d 96 (Miss. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kelly v. Guess*,
    127 So. 274 (Miss. 1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Lamb Constr. Co. v. Town of Renova,*
    573 So. 2d 1378 (Miss. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Love Petroleum Co. v. Atlantic Oil Producing Co.*,
    152 So. 829 (Miss. 1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lum v. Bank of America,*
    361 F.3d 217 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*McPherson v. McLendon*,
    221 So.2d 75 (Miss.1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Memphis Hardwood Flooring Company v. Daniel*,
    771 So. 2d 924 (Miss. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

*Nichols v. Shelter Life Insurance Co.*,
    923 F. 2d 1158 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pursue Energy Corp. v. Perkins*,
    558 So. 2d 349 (Miss. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Reserve Life Ins. Co. v. McGee*,
    444 So. 2d 803 (Miss.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Rocks v. City of Philadelphia,*
    868 F.2d 644 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Scott v. Transport Indem. Co.*,
    513 So. 2d 889 (Miss.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10, 11

*Sistrunk v. Wilson*,
    54 So. 89 (Miss. 1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Southside, Inc. v. Clark*,
    460 So. 2d 113 (Miss.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Universal Underwriters Ins. Co. v. Buddy Jones Ford, Lincoln-Mercury, Inc.*,
    734 So. 2d 173 (Miss. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wallace v. United Mississippi Bank*,
    726 So. 2d 578, 588 (Miss. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Whittington v. Whittington*,
    608 So. 2d 1274 (Miss. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Williams v. Batson*,
    187 So. 236 (Miss. 1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wisniewski v. Johns-Manville Corp.*,
    759 F.2d 271 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wren v. Hoffman*,
    41 Miss. 616 (Miss. Err. & App. 1868) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## OTHER AUTHORITIES

24 Am.Jur. "Fraud and Deceit," Sec. 267 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C.A. § 1407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rules of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

Federal Rules of Civil Procedure 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16-18

iv

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **IN RE INSURANCE BROKERAGE** | ) | **Civil Action No. 04-5184; In the Southern** |
| | ) | **District of Mississippi, C.A. No. 3:04-893** |
| **ANTITRUST LITIGATION** | ) | |
| | ) | **MDL No. 1663** |
| | ) | |
| | ) | **Hon. Faith S. Hochberg** |
| | ) | |

### RESPONSE AND MEMORANDUM BRIEF IN OPPOSITION TO INSURER DEFENDANTS' MOTION TO DISMISS

Plaintiff KLLM, Inc. ("KLLM") files this response and memorandum brief in opposition to Insurer Defendants' motion to dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Insurer Defendants' motion should be denied.

As a preliminary matter, KLLM would state that the Insurer Defendants' motion seeks to dismiss a complaint filed in another action. The Second Amended Complaint attached as Exhibit B to the Insurer Defendants' motion, and which their motion seeks to dismiss, was filed in a separate case, *KLLM, Inc. v. Marsh USA, Inc., et al.,* in the United States District Court for the Southern District of Mississippi, Jackson Division, Civil Action No. 3:03cv1294BN. The Complaint filed in the instant matter, *KLLM, Inc. v. Marsh USA, Inc., et al.,* in the United States District Court for the Southern District of Mississippi, Jackson Division, Civil Action No. 3:04cv00893LN, is attached hereto as Exhibit "A." Inasmuch as the Insurer Defendants have moved to dismiss the complaint in another action, their motion should be denied. Nonetheless, because the same analysis applies with respect to the claims asserted in both cases, KLLM addresses the arguments set forth in the Insurer Defendants' motion below. A copy of the Second Amended Complaint to which the Insurer Defendants refer in their motion is attached hereto as Exhibit "B." As demonstrated below, KLLM

1

has stated claims for relief in both complaints.

## PRELIMINARY STATEMENT

This case arises from CV Starr and Insurance Company of the State of Pennsylvania's ("ICSP") (collectively "Insurer Defendants") fraudulent inducement of KLLM to enter a multi-year insurance contract, and their subsequent breach of that contract with KLLM.  *See* Second Amended Complaint, "General Facts," ¶¶ 1, 6, 16, 19-25, 25-37, 40.  In particular, the Insurer Defendants fraudulently induced KLLM to enter a three-year insurance contract written by ICSP through specific representations and promises that the policy would have a level premium rate (the "level rate guarantee") for the three-year policy period beginning January 1, 2000.  *See Id.*, "General Facts," ¶¶ 1, 6, 16, 23, 40; Counts ¶¶ 42, 51.[1]

On October 30, 2001, the Insurer Defendants notified KLLM of a purported intention to cancel the policy.[2]  KLLM claims that the Insurer Defendants threatened cancellation to avoid honoring the three-year rate guarantee and to exact larger premiums from KLLM.  KLLM was forced, under duress, to agree to the increase, and the insurance policy was replaced at higher rates.

The Insurer Defendants now seek to dismiss KLLM's Second Amended Complaint for failure to state a claim.  As shown below, KLLM's pleading states valid claims.  Fraud, as asserted by

---

[1]  Throughout this response and memorandum brief, references to the "complaint" refer to the Second Amended Complaint.  However, the arguments set forth are equally applicable to the Complaint attached as Exhibit A.

[2]  Insurer Defendants state in their memorandum brief that KLLM "has already conceded [that] the decision to cancel the Policy was based on [a] loss of reinsurance."  *See* Insurer Defendants' Memorandum Brief, p. 5 (*citing* KLLM's Second Amended Complaint, ¶ 40, in *KLLM v. Marsh I*).  Insurer Defendants' statement, however, is misleading and incorrect.  KLLM was told the Insurer Defendants' stated intention to cancel was based on alleged loss of reinsurance, but the real reason, as pleaded in KLLM's Second Amended Complaint, was to coerce KLLM into paying a higher premium.  In paragraph 40 of its Second Amended Complaint in *KLLM v. Marsh I*, KLLM states that "CV Starr gave notice of cancellation of the ICSP policy, claiming loss of a reinsurance treaty, but in fact to avoid honoring the three (3) year rate guarantee."  *See* KLLM's Second Amended Complaint, ¶ 40, in *KLLM v. Marsh I*.  KLLM at no time, either in this action or in *KLLM v. Marsh I*, has "conceded" that the increase in rates was for any reason other than to avoid the rate guarantee and to charge KLLM a higher premium.

2

KLLM, is a recognized exception to the parol evidence argument advanced by the Insurer Defendants.

To the extent that the Insurer Defendants contend or imply that their motion should be granted because of a now-vacated order entered by the Mississippi district court on April 18, 2005, *see* Insurer Defendants' Memorandum of Law, pp. 6-7, the court should not consider such an implication and should disregard that portion of the Insurer Defendants' submission. That order was mistakenly entered, and then vacated because KLLM was never given a chance to respond to the motion due to the existence of a stay order. Recognizing this, Judge Lee immediately vacated the order. Insurer Defendants' continued reliance on the vacated order raises concerns about the propriety of their submission, but in any event the order has been vacated and should be ignored.

## ARGUMENT

For the reasons set forth below, KLLM's pleadings, when taken as true and construed in KLLM's favor, state valid claims against the Insurer Defendants. The standard to be met when seeking a motion to dismiss is a high one. In deciding a motion to dismiss, the court must accept the allegations as stated in the complaint, and all reasonable inferences from them, as true and view them in the non-moving party's favor. *See, e.g., Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir. 1989); *Wisniewski v. Johns-Manville Corp.,* 759 F.2d 271, 273 (3d Cir. 1985). Therefore, when considering a 12(b)(6) motion, the court's inquiry essentially is limited to the content of the complaint. The court must assume the factual allegations in the complaint are true, construe them in a manner most favorable to the non-movant, and decide if the facts alleged could give rise to an actionable claim. "The standard [for evaluating a Rule 12(b)(6) motion to dismiss] is whether taking the allegations of the complaint as true and viewing them liberally giving plaintiffs the benefit of all

3

inferences which fairly may be drawn therefrom, it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 444 (3d Cir. 1977) (internal citations omitted). *See also Wisniewski*, 759 F.2d at 273 (same). This is a high standard, which is not met in the instant action.

The Court should apply Mississippi law to the substantive issues in the instant motion. When considering issues of state law, a transferee court must apply the state law that would have applied absent transfer. *In re Tempromandibular Joint (TMJ) Implants Products Litigation*, 97 F.3d 1050, 1055 (8th Cir. 1996) (noting however, that on issues of federal law, the court transferee court applies the law of the circuit in which it sits). *See also In re Air Crash Disaster at Boston, Mass. on July 31, 1973*, 349 F. Supp. 1106, 1108 (D. Mass. 1975) ("[A] United States District Court to which an action is transferred pursuant to 28 U.S.C.A. § 1407 must apply the substantive law of the transferor state and circuit).

**I.  THE PAROL EVIDENCE RULE DOES NOT BAR CONSIDERATION OF EXTRINSIC OR PAROL EVIDENCE OF THE THREE YEAR RATE GUARANTEE UPON WHICH KLLM'S CLAIMS ARE BASED**

The Insurer Defendants, through their motion to dismiss, argue that each one of KLLM's claims, as premised on the Insurer Defendants' cancellation of the policy in issue, should be dismissed as a matter of law because they rely on an "extra-contractual representation that the premium rate for [the] insurance coverage would not increase for three years." According to the Insurer Defendants, KLLM cannot rely on the level rate guarantee because, they argue, it is precluded by the parol evidence rule, which dictates that the court look only to the "four corners" of the contract itself. While that is a general statement of the parol evidence rule, the rule is not without exceptions applicable to the instant matter.

4

According to the Insurer Defendants' own statement of the law, a court may consider of extrinsic or parol evidence if the examination of the language of the contract does not reveal the parties' intent.  *See* Insurer Defendants' Memorandum of Law, p. 9 (citing *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 353 (Miss. 1990).  This has long since been the rule in Mississippi.  For example, parol evidence is admissible to show that through the fraud of the draftsman, a writing does not evidence the real contract.  *Sistrunk v. Wilson*, 54 So. 89 (Miss. 1911).  In such situations, parol evidence is allowed to prove the contract, as stated by the written instrument, is not the actual contract entered into.  *Id.*

This exception to the rule is applicable in the instant matter because, according to KLLM's complaint (which must be taken as true for purposes of this motion), the Insurer Defendants who drafted the contract, knew KLLM relied on promises of a three-year rate guarantee, but fraudulently induced KLLM to enter the contract as written without any intent to honor their promise of a three-year rate guarantee.  Indeed, Insurer Defendants contend "that the right to cancel for any reason on thirty days' notice would be meaningless if the Insurer Defendants were simultaneously bound by a three-year rate guarantee." Insurer Defendants' Memorandum Brief, p. 9.  Yet, Insurer Defendants do not deny having made the three-year rate guarantee, as it is well-documented and will be proven as asserted.  They simply claim that a contract excluding that promise and inducement should be enforced irrespective of the parties' intent.  If Insurer Defendants knew, as they admit, that the rate guarantee could not co-exist with an unfettered cancellation right, they cannot benefit from their fraudulent inducement and rely solely on the contract cancellation provision without consideration of the extrinsic provisions on which KLLM relied to its detriment.  Parol evidence is admissible to show what the parties intended in this instance.  The policy itself contains both a three-year term at

5

the promised rate and a cancellation right.  One plausible interpretation is that Insurer Defendants could cancel, but could not do so in order to exact a higher rate, as KLLM claims they did.  The policy is therefore insufficiently clear on its face to preclude parol evidence, particularly in the context of the fraudulent inducements made by Insurer Defendants.

Moreover, the parol evidence rule is rendered inapplicable as a result of the well-settled Mississippi rule that fraud, deceit and misrepresentation provide an exception to the rule.  *Grenada Auto Co. v. Waldrop*, 195 So. 491 (Miss. 1940);  *Wren v. Hoffman*, 41 Miss. 616 (Miss. Err. & App. 1868).  This exception exists for good reason.  As the Mississippi Supreme Court explained:

> Actions for the recovery of damages for fraud and deceit are usually based upon misrepresentations which amount to fraud in inducing a party to enter into a contract as contrasted with fraud in procuring a signature to and thereby completing the execution of a contract, and *the law is well-settled that parol evidence is admissible to prove fraud and misrepresentations in either instance.  It is one of the exceptions to the general rule that parol evidence cannot be received to alter the terms of a valid written contract.*  In 24 Am.Jur. in the Chapter on Fraud and Deceit, Section 267, at page 102, the subject of parol evidence in such actions is dealt with at length and it is there said: 'The view asserted directly in many decisions and implied in others that parol evidence is admissible to prove fraud is not in conflict with the well-known parol evidence rule which renders parol or extrinsic evidence inadmissible to contradict or vary the terms of a written contract, since *the latter rule does not apply where the issue is whether the contract was procured by fraud.  The fact that a contract is in writing does not preclude the introduction of evidence to show that a material stipulation therein was founded on the misrepresentations and fraud of one of the parties, or inserted by fraud, or that a material stipulation was omitted on account of fraud.*
>
> 'The admission of parol evidence of fraud in a contract is sometimes referred to as marking an exception to the general rule which excludes parol evidence...according to sound theory, when fraud enters into a transaction to the extent of inducing a written contract, the instrument never becomes a valid contract and hence, as stated above, the parol evidence rule is not applicable.  In many cases the courts have pointed out that fraud cannot be merged; hence, *the doctrine that prior negotiations and conveyances leading up to the formation of a written contract are merged therein is not applicable to preclude the admission of parol or extrinsic evidence to prove that a written contract was induced by fraud.  The reduction of an agreement to writing is not at all conclusive against fraud in the contract, and the admission of*

6

*extrinsic evidence which bears clearly upon the existence of fraud sought to be established for the purpose of avoiding the effect of the written agreement--as by rescission, reformation, or the establishment of a trust--or as the basis of a tort action, does not constitute an attempt to vary the terms of the agreement by parol.* It was never intended that the parol evidence rule be used as a shield to prevent the proof of fraud, or that a person could arrange to have an agreement obtained by him through fraud exercised upon the other contracting party reduced to writing and formally executed, and thereby deprive the courts of the power to prevent him from reaping the benefits of his chicanery.  The principle which prohibits the application of the parol evidence rule to prevent the admission of oral evidence of fraud which induced the execution of a written contract rests on a basis as sound as that which supports the parol evidence rule itself and is applicable in law as well as in equity to written contracts of all kinds, such as contracts of guaranty and of insurance, and to other instruments of a contractual nature such as bills, notes, drafts, and other commercial paper, bonds, releases, receipts, waivers, leases, mortgages, deeds, or articles of agreement relating to the sale and exchange of lands, contracts involving the sale or exchange of personalty generally, and contracts of subscription to, or of purchase of, corporate stock.  *The general rule that parol or extrinsic evidence is admissible to prove that a written contract was procured by fraud applies to both sealed and unsealed instruments, and without reference to whether the instrument is acknowledged or whether the evidence offered relates to fraud in the omission of a material provision or to fraud in the insertion of, or a misrepresentation concerning, a certain term in the instrument, or whether the evidence offered directly contradicts the writing or merely covers a point not referred to in the writing, and in spite of special provisions in the contract which purport to limit the application of parol evidence by stating that the writing contains all the terms involved and the representations made, or that the written contract shall be the sole evidence of the transaction, or that each contracting party relies and acts only upon his own knowledge, and not upon the representations of his adversary.'*

*Brown v. Ohman*, 42 So. 2d 209, 212-213 (Miss. 1949) (emphasis added).  The Mississippi Supreme Court recently reaffirmed this long-standing rule, recognizing fraud in negotiations as an exception to the parol evidence rule in *Memphis Hardwood Flooring Company v. Daniel*, 771 So. 2d 924 (Miss. 2000).  *See also Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172 (Miss.1990); *Scott v. Transport Indem. Co.*, 513 So. 2d 889 (Miss.1987); *Southside, Inc. v. Clark*, 460 So. 2d 113 (Miss.1984); *Reserve Life Ins. Co. v. McGee*, 444 So. 2d 803 (Miss.1983); *Fornea v. Goodyear Yellow Pine Co.*, 178 So. 914, 918 (Miss. 1938); *Nichols v. Shelter Life Insurance Co.*, 923 F. 2d

7

1158 (5th Cir. 1991).

In the instant matter, throughout its complaint, KLLM states:

> When [it] purchased the Policy from Insurer Defendants, they [the Insurer Defendants] promised and represented to KLLM that the premium rate would remain unchanged for three years. That representation was a material inducement to KLLM to enter into the Policy with Insurer Defendants. Insurer Defendants had no intention of honoring their promises and representations concerning the premium rate under the Policy. KLLM trusted Insurer Defendants, and reasonably relied on these representations to its detriment. As a consequence, KLLM has been damaged . . . .

*See e.g.*, Second Amended Complaint, ¶ 51. KLLM has alleged that it was fraudulently induced to enter the contract at issue through the Insurer Defendants' fraudulent promises and representations of a three-year level rate guarantee that was made to induce KLLM to enter the contract. Insurer Defendants admit in their brief that an unfettered cancellation right cannot co-exist with the level rate guarantee. The level rate guarantee was, therefore, known by Insurer Defendants to be an illusory promise that Insurer Defendants had no intention of fulfilling. Pursuant to Mississippi law, extrinsic proof may be utilized and considered in proving that fraud. Indeed, "the law is well-settled that parol evidence is admissible to prove fraud and misrepresentations ['in inducing a party to enter into a contract']." *Brown v. Ohman,* 42 So.2d at 212. That is precisely what KLLM has alleged. Thus, because KLLM's allegations must be taken as true, parol evidence may be considered. Accordingly, the Insurer Defendants' arguments (that KLLM can only prove the existence of the three year rate guarantee through parol; that parol evidence is not allowed; and that, therefore, KLLM's claims as premised on the same must fail as a matter of law) necessarily fail.

## II.    ORAL REPRESENTATIONS MAY BE MADE PART OF THE CONTRACT

When fraud, deceit and/or misrepresentation are involved in the formation of a contract, the

8

parol evidence rule does not prevent the consideration of extrinsic evidence to show the existence of that fraud or to show the true terms of the contract "without reference to . . . whether the evidence offered directly contradicts the writing or merely covers a point not referred to in the writing." *Id.* Indeed, the terms of the contract may be deduced from oral representations made contemporaneously with, or before, the execution of the written agreement. *Scott v. Transport Indemnity Co.*, 513 So. 2d 889, 894 (Miss. 1987). As a result, "[t]he content and terms of [an] insurance contract are not necessarily to be divined exclusively from the printed pages of [a] . . . policy . . . . Certain verbal representations made by persons in authority may become equally parts of the contract." *Id.*

Thus, an "insurance contract . . . may become supplemented and modified by anything [an insurer's authorized] representative may [say]." *Id.* at 895. Additionally, "statements and representations made by [an insurer's] agents before or contemporaneous with entering into the insurance contract . . . become binding" if relied upon by the insured. *Id.* at 894 (citing *Reserve Life Insurance Co. v. McGee*, 444 So.2d 803, 811 (Miss.1983)). "This rule applies to formally designated agents of [the insurer], agents on [the insurer's] payroll or otherwise under formal contractual relationship with [the insurer] and, as well, to those having apparent authority to act for [the insurer]." *Id.* (citing *McPherson v. McLendon*, 221 So.2d 75, 78 (Miss.1969)). Thus, the level rate guarantee promises are a part of the insurance contract and are plainly actionable under applicable Mississippi law.

While it is true that KLLM relied on Marsh to ensure that a three-year rate guarantee was in place, Marsh acted, at least in part, as Insurer Defendants' agent for purposes of placement of the policy and earned agent commissions on that placement. Insurer Defendants' efforts to now distance themselves from Mash are misleading and self-serving, but insufficient in any event to demonstrate

failure of KLLM to state a claim.

In the instant action, KLLM states numerous times in its complaint that it was promised that the policy at issue would have a guaranteed premium rate for a period of three years. *See* Second Amended Complaint, "General Facts," ¶¶ 1, 6, 19, 23, 40; Counts ¶¶ 42, 51. KLLM states that the *Insurer Defendants* made these promises and misrepresentations for the purpose of inducing it to enter the contract at issue. *See* Second Amended Complaint, ¶¶ 33, 51. Further, KLLM states that Marsh made such promises and representations to it for the purpose of inducing it to enter the contract with the Insurer Defendants and that Marsh, as a result of an undisclosed "placement service agreement," was actually acting for the benefit of the Insurer Defendants in making those promises and representations to KLLM. *See* Second Amended Complaint, ¶¶ 49, 56. These facts, taken as true as they must be, indicate that the Insurer Defendants, or their formally designated agents, or Marsh, agents on the Insurer Defendants' payroll or otherwise under formal contractual relationship with the Insurer Defendants, made certain representations and promises to KLLM that the premium rate under the policy would be guaranteed for a period of three years.

KLLM also pleads in its complaint that it relied upon those promises and misrepresentations of the Insurer Defendants and Marsh that a three-year level rate guarantee was part of the contract. *See* Second Amended Complaint, "General Facts," ¶ 6, 33 of Counts ¶¶ 19, 51. Specifically, KLLM states that it "relied heavily on Marsh and Insurer Defendants for guidance in making decisions respecting the Policies," that "the negotiation of a rate that would not change or increase over a three year period was a substantial, material and prime consideration of KLLM in deciding to place its business with and through Marsh and the Insurer Defendants" and that "KLLM reasonably relied on [Marsh and Insurer Defendants' representation that 'the rate negotiation for KLLM's coverage under

10

the Policy was fixed for three (3) years and would not be subject to increase'] in deciding to procure coverage under the policy."  *See* Second Amended Complaint, ¶¶ 4, 6.

When taken as true, as they must be, these facts evidence statements and representations made by the Insurer Defendants and their authorized agents which pertain to a term of the contract at issue.  More specifically, they evidence promises and representations made by the Insurer Defendants that the premium rate on the policy would remain unchanged for three years.  KLLM relied on these representations in making its decision to procure coverage under the contract.  Thus, pursuant to Mississippi law, these representations are terms of the contract; the contract was "supplemented and modified" by these promises and representations.  *Scott*, 513 So. 2d at 895.  As such, pursuant to Mississippi law and the facts set forth by KLLM's complaint, the three-year rate guarantee is part of the contract and is binding on the Insurer Defendants.  *Id.* at 894.  KLLM's claims as premised thereon, then, do not fail as a matter of law simply because they were not included in the written agreement.

III.    **THE PRESENCE OF THE RIGHT TO CANCEL IN THE CONTRACT DOES NOT PRECLUDE THE INCLUSION OF THE THREE-YEAR GUARANTEE**

The Insurer Defendants further argue that the Policy includes a right to cancel on thirty days' notice that "would be meaningless if the Insurer Defendants were simultaneously bound by a three-year rate guarantee."  *See* Insurer Defendants Memorandum Brief, p 9.  According to the Insurer Defendants, the right to cancel and the three-year rate guarantee are "flatly inconsistent" and, therefore, cannot co-exist in the same contract.[3]  *See* Insurer Defendants Memorandum Brief, p 9.

---

[3]  KLLM does not view the two provisions as necessarily conflicting.  In KLLM's view, the two provisions can be read together to the effect that the policy could be cancelled for any reason save for an increase in premium.  Under this reading, KLLM's complaint clearly alleges a breach of contract by the Insurer Defendants inasmuch as it alleges that the Insurer Defendants cancelled the policy in efforts to exact increased premiums from KLLM.  *See* Second Amended Complaint, ¶¶ 34, 37-38.  This reading of the contract is supported by the various rules of contract interpretation,

For this reason, the Insurer Defendants argue that the three-year rate guarantee cannot be read into the policy.  However, this argument overlooks the fact that Mississippi law, when applied to the facts alleged in KLLM's complaint (as read in the light most favorable to KLLM as required), mandates that the three-year rate guarantee be read into the contract without regard to its effect.

The Insurer Defendants' argument ignores the fact that "the general rule that parol or extrinsic evidence is admissible to prove that a written contract was procured by fraud applies . . . whether the evidence offered directly contradicts the writing or merely covers a point not referred to in the writing."  *Brown*, 42 So. 2d at 213.  If the evidence offered contradicts the writing, the contract is simply rendered ambiguous.  *See e.g. Universal Underwriters Ins. Co. v. Buddy Jones Ford, Lincoln-Mercury, Inc.*, 734 So. 2d 173, 176 (Miss. 1999); *IP Timberlands Operating Cor. v. Denmiss Corp.*, 726 So. 2d 96, 110 (Miss. 1998).  Such, however, does not prevent the term from being read into the contract and does not weigh in favor of the Insurer Defendants' motion.  In fact, if the rate guarantee and right to cancel provisions of the contract are "flatly inconsistent," as the Insurer Defendants argue, the inconsistently, in and of itself, provides a basis to deny the Insurer Defendants' motion.

Indeed, while it is a job for the court to determine, as a matter of law, if the presence of two terms render a contract ambiguous, *see Clark v. State Farm Mut. Auto. Ins. Co.*, 725 So. 2d 779, 781 (Miss. 1998); *Lamb Constr. Co. v. Town of Renova*, 573 So. 2d 1378, 1383 (Miss. 1990); *Whittington v. Whittington*, 608 So. 2d 1274, 1278 (Miss. 1992), the determination of what two

---

including the rules of contra proferentem (which mandates that the contract be construed most strongly against the drafting party), *see Wallace v. United Mississippi Bank*, 726 So. 2d 578, 588 (Miss. 1998); *Love Petroleum Co. v. Atlantic Oil Producing Co.*, 152 So. 829, 831 (Miss. 1934), and the rules mandating that more specific terms govern over more generic terms.  *See e.g., Estate of Parker v. Dorchak*, 673 So. 2d 1379, 1382 (Miss. 1996); *Garrett v. Hart*, 168 So. 2d 497, 503 (Miss. 1964); *Williams v. Batson*, 187 So. 236, 239 (Miss. 1939).

ambiguous terms in a contract actually mean is a job for the trier of fact. *See Clark*, 725 So. 2d 781;

*Lamb Constr.*, 573 So. 2d at 1383; *Dennis v. Searle*, 457 So. 2d 941, 945 (Miss. 1984). Thus, if the

two terms are "flatly inconsistent," as the Insurer Defendants argue, their ultimate meaning and the

manner in which they are read must be determined as a matter of fact by the jury. It cannot be ruled

upon as a matter of law by the court under the guise of a motion to dismiss. Therefore, the Insurer

Defendants' motion must be denied.

## IV.   A FIDUCIARY RELATIONSHIP EXISTED BETWEEN KLLM AND THE INSURER DEFENDANTS

The Insurer Defendants also maintain that no fiduciary relationship exists between

themselves and KLLM. In support of their position, the Insurer Defendants rely on a recitation of

familiar cases standing for the general proposition that no fiduciary relationship is created when the

relationship between the parties is nothing more than an arm's length transaction. *See* Insurer

Defendants' Memorandum Brief, p. 13. The Insurer Defendants specifically rely on the basic

premise that the purchase of insurance is generally considered an arm's length transaction and,

hence, no fiduciary duty arises in the sale of insurance. *See* Insurer Defendants' Memorandum Brief,

p. 13. Without such a duty, the Insurer Defendants argue, there was no duty to disclose the

"placement service agreement" and its relationship with Marsh. Such, however, is only a partial

statement of the law and is wholly inapplicable to the instant matter.

As the Insurer Defendants readily recognize, under Mississippi law, a fiduciary duty may

arise where "(1) the activities of the parties go beyond their operating on their own behalf, and the

activities for the benefit of both; (2) where the parties have a common interest and profit from the

activities of the other; (3) where the parties repose trust in one another; and (4) where one party has

dominion or control over the other." *See* Insurer Defendants' Memorandum Brief, pp. 12-13 (*citing*

*Hopewell Enters., Inc. v. Trustmark Nat'l Bank*, 680 So. 2d 812, 816 (Miss. 1996). In short, a fiduciary relationship may be created any time a transaction exceeds a mere arm's length transaction. The instant action is an example of such an instance.

In the instant action, it cannot be argued that the Insurer Defendants and Marsh did not benefit from their relationship with each other and KLLM and the subsequent issuance of the policy (with the three-year rate level guarantee included). Marsh benefitted from the relationship through the receipt of fees paid by KLLM for its consulting services and through the receipt of compensation paid by the Insurer Defendants for placing business with the Insurer Defendants. This provided Marsh with incentive to place KLLM's business with the Insurer Defendants and, in effect, allowed Marsh to benefit twice from the same policy placement. The Insurer Defendants benefitted by the receipt of premium payments made by KLLM and the right to receive premium payments throughout the duration of the policy. The Insurer Defendants also benefitted by the placement of certain volumes of business with it by Marsh through their undisclosed agreement. Therefore, Marsh had an interest in maintaining its relationship with both KLLM and the Insurer Defendants, and the Insurer Defendants had an interest in maintaining their relationship with both Marsh and KLLM. This is sufficient to give rise to a fiduciary relationship and a duty to disclose the relationship between Marsh and the Insurer Defendants. *See Memphis Hardwood Flooring Company v. Daniel*, 771 So. 2d 924, 930 - 931 (Miss. 2000).

The fiduciary relationship involved did not end there. KLLM asserts numerous times in its complaint that it trusted and relied on both Insurer Defendants and Marsh in advising it with regard to the policy. *See* Second Amended Complaint, ¶¶ 4, 6, 33. While such trust and reliance reposed in the Insurer Defendants alone would generally be insufficient to create a fiduciary duty if it were

14

based solely on the Insurer Defendants' position as KLLM's insurer, KLLM's trust was not simply premised upon the Insurer Defendants' status, as the Insurer Defendants contend. Rather, KLLM's trust was also rightfully reposed in Marsh, the Insurer Defendants' undisclosed agent, which KLLM had hired to act as its broker, advisor and consultant to the world insurance market. The fiduciary relationship between KLLM and Marsh is beyond doubt, as the law is that an undisclosed principal (the Insurer Defendants) may be held liable for the acts of its agents (Marsh). *See, e.g., Bailey v. Worton*, 752 So. 2d 470, 475 - 476 (Miss. App. 1999) (citing *Kelly v. Guess*, 127 So. 274, 276 (Miss. 1929); *Estes v. Jones*, 80 So. 526, 528 (Miss. 1919)).

Stated otherwise, Marsh did not act independently in securing its fiduciary relationship with KLLM or in conducting itself in that capacity. Rather, Marsh acted on behalf of the Insurer Defendants, in creating its relationship with KLLM for the purpose of furthering its attempts to place certain volumes of insurance with the Insurer Defendants. The Insurer Defendants benefitted from that relationship through an increase in policies placed. Thus, because KLLM rightly reposed trust and reliance on Marsh, who was actually acting on behalf of the Insurer Defendants unbeknownst to KLLM, a fiduciary relationship arose between KLLM and the Insurer Defendants' agent, Marsh, and, therefore, between KLLM and the Insurer Defendants.[4] These facts, as they appear in KLLM's complaint, are a sufficient basis upon which to base a fiduciary breach claim against the Insurer Defendants.

## V.    KLLM'S FRAUD CLAIMS ARE SUFFICIENT TO DEFEAT THE INSTANT MOTION TO DISMISS

The Insurer Defendants assert that breach of a promise of future action is not fraudulent

---

[4] Even if this were not the case, the Insurer Defendants would remain vicariously liable for the breach of fiduciary duties alleged as a matter of law. *See e.g., Bailey*, 752 So. 2d at 475 - 476; *Kelly*, 127 So. at 276; *Estes*, 80 So. at 528.

absent a present intent not to perform. Insurer Defendants Memorandum Brief, p. 17. This argument fails for two reasons. First, Insurer Defendants argue that KLLM's allegation that subsequent to the issuance of the policy, insurance rates in the trucking industry dramatically increased precludes any present intent. However, KLLM also alleges that "[a]t the time and sale of the Policy, the Insurer Defendants had no intention of honoring their promise and representations concerning the premium rate under the Policy." Second Amended Complaint, ¶ 51. Because the court must take the facts as alleged in the complaint as true when deciding a motion to dismiss, KLLM's complaint clearly includes a present intent not to perform. Secondly, the case on which the Insurer Defendants rely for their argument is factually distinguishable from the instant matter. In *Chris Albritton Construction Co., Inc. v. Pitney Bowes Inc.,* 304 F.3d 527 (5th Cir. 2002), in the course affirming a grant of summary judgment on claims of fraud and misrepresentation in favor of the defendant, the Fifth Circuit did note that a breach of a promise of future action is not fraud absent a present intent not to perform. *Id.* at 530. However, there, the issue was decided on a summary judgment motion, with the benefit of discovery having been conducted. The Court engaged in an analysis of the evidence submitted by the plaintiffs and determined that the evidence was insufficient to support their claim. *Id.* at 530-531. Here, by contrast, the court is presented with a motion to dismiss, which is evaluated under a similar standard, but, significantly, without considering any evidence. Taking the allegations set forth in KLLM's complaint as true, KLLM has alleged a present intent not to perform.

The Insurer Defendants argue that KLLM has failed to plead fraud with the particularity required under Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, the Insurer Defendants argue that KLLM has failed to plead the "who, what when, where and how" of the fraud.

16

*See* Insurer Defendants' Memorandum Brief, pp. 15-16.  What constitutes 'particularity', however, will necessarily differ with the facts of each case.  Therefore, the Third Circuit has recognized that Rule 9(b) "falls short of requiring every material detail of the fraud such as date, location, and time" and allows plaintiffs to use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *In re Rockefeller Center Properties, Inc. Securities Litigation,* 311 F.3d 198, 216 (3d Cir. 2002) (quoting *In re Nice Systems, Ltd. Securities Litigation,* 135 F.Supp.2d 551, 577 (D.N.J. 2001)). In *Lum v. Bank of America,* 361 F.3d 217 (2004), the Third Circuit discussed the requirements of Rule 9(b) and articulated the purpose of the particularity requirement:

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.  Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision into their allegations of fraud. [Internal citation omitted.] Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation. [Internal citations omitted.]

*Id.* at 224.  *See also In re Rockefeller,* 331 F.3d at 216 ("Rule 9(b)'s heightened pleading standard gives notice of the claims against them, provides an increased measure for their reputations, and reduces the number of frivolous suits brought solely to extract settlements) (internal citation omitted).  KLLM's complaint satisfies these purposes.

In its complaint, KLLM states that the Insurer Defendants and Marsh represented that a three-year rate level guarantee would be part of the contract.  *See* Second Amended Complaint, "General Facts," ¶¶ 1 and  6.  More specifically, KLLM asserts that Marsh and the Insurer Defendants "represented to KLLM that the rate negotiated for KLLM's coverage under the Policy was fixed for three (3) years and would not be subject to increase."  Such represents both the "who" (the Insurer

17

Defendants and Marsh) and the "what" (the existence of a three-year rate guarantee) of the fraud. Second Amended Complaint, "General Facts," ¶ 6. KLLM also states in its complaint that that representation was made as an inducement to convince KLLM to enter the contract at issue and that Marsh received undisclosed compensation from the Insurer Defendants for placing coverage with them. *See* Complaint, ¶¶ 49 and 51. Such represents the "why" (to induce KLLM to enter the contract, to receive compensation and to place policies with the Insurer Defendants) of the fraud.

Together, these statements spell out the exact fraud alleged and provide adequate notice to the Insurer Defendants as to what that fraud is. Indeed, it is clear from the Insurer Defendants' motion that they are aware, and on notice, of the exact fraud alleged - the inducement of KLLM to enter the contract at issue through the promise of a three-year level rate guarantee. In order to craft a lengthy memorandum brief filled with arguments pertaining and relating specifically to the alleged fraud, Insurer Defendants must have known what the fraud is. Therefore, the Insurer Defendants have been sufficiently apprised by KLLM's complaint of the details of the alleged fraud, and the particularity requirement and its underlying purposes have been satisfied.[5]

The fact that KLLM's averments of fraud are sufficiently particularized is further supported by the Insurer Defendants' argument pertaining to the merits of KLLM's fraud claims. Pursuant to the Insurer Defendants' argument, KLLM cannot recovery on its fraud claims as a matter of law because KLLM "could not have relied on the alleged representation of a level rate" inasmuch as it is contradictory to the cancellation clause in the policy. The fact that the Insurer Defendants would argue that the alleged representation constituting the fraud is inconsistent with a term in the contract,

---

[5] Should, however, the court determine that the particularity requirements of Rule 9(b) have, in fact, not been met, KLLM respectfully requests leave to amend its complaint to comply with the rule.

again, indicates the Insurer Defendants have been sufficiently apprised of what the fraudulent misrepresentation alleged is.  Otherwise they could not argue its inconsistency with another term.

Finally, the existence of the cancellation provision does not, in and of itself, preclude the fraud claim.  As set forth in Section III above, the level rate guarantee is not necessarily inconsistent with the policy provision allowing a right to cancel.  Indeed, while the two terms may be read as conflicting to an extent (as argued by the Insurer Defendants), they may also be read together, meaning that the parties had the right to cancel for any reason, save an increase in premium rates.  When read in this light, the two terms are not inconsistent or irreconcilable, but they create ambiguity because they can be read to have more than one meaning.  As stated above, however, the actual meaning to be afforded ambiguous terms is a question of fact for the jury which, under the standard applicable to this motion, mandates the contract be read in the light most favorable to KLLM, i.e., that they are not inconsistent (and, thus, mean that the parties had the right to cancel for any reason, save an increase in premium rates).  As such, the level rate guarantee provided orally was not inconsistent with the written terms of the contract for purposes of this motion.  Therefore, KLLM was entitled to reasonably rely on the same, and the fraud claim is adequately stated.[6]

### CONCLUSION

The Insurer Defendants' motion to dismiss is not favored under the law and should be denied.  The facts plead in KLLM's complaint must be taken as true and viewed in the light most favorable to KLLM.  Viewed in this light, it cannot be argued that "it appears beyond doubt that [KLLM] can

---

[6]  Although the Insurer Defendants do not attack any element of KLLM's fraud claim except the reliance prong, it should be noted that each element is met in the instant action.  Specifically, fraud requires a plaintiff show (or in the case of a motion to dismiss, plead): (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (8) his right to rely thereon; and (9) his consequent and proximate injury.  KLLM has plead each of these elements in and through its complaint.  *See* Complaint, ¶ 33.

prove no set of facts in support of [its] claims" as required by the applicable standard.  Accordingly,

the Insurer Defendants' motion to dismiss should be denied.

Respectfully submitted,

**KLLM, INC.**


By: s/Roy H. Liddell
      Roy H. Liddell (MB # 1252)
      Thomas M. Louis (MB # 8484)
      Julie C. Skipper (MB # 101591)
      Its Attorneys

OF COUNSEL:

WELLS MARBLE & HURST, PLLC
Post Office Box 131
Jackson, Mississippi 39205-0131
Telephone: (601) 355-8321

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2005, I electronically filed the foregoing with the

Clerk of the Court using the ECF system which sent notification of such filing to the following:

**Robert M. Foote**
rmf@foote-meyers.com

**Mark C. Rifkin**
rifkin@whafh.com

**Travis Scott Crabtree**
tcrabtree@lrmlaw.com

**Frederick P. Furth**
fpfurth@furth.com

**Thomas P. Dove**
tdove@furth.com

**Jon T. King**
king@furth.com

**Julio J. Ramos**
jramos@furth.com

**Michael P. Lehmann**
mplehmann@furth.com

**Roy H. Liddell**
royliddell@wellsmar.com

**Thomas M. Louis**
tlouis@wellsmar.com

**Julie C. Skipper**
jskipper@wellsmar.com

**Theodore Joseph Pintar**
tedp@lerachlaw.com

**Lili R. Sabo**

**Mary Lynne Calkins**
mcalkins@lerachlaw.com

**Bonny Elaine Sweeney**
bonnys@erachlaw.com

**Charlene P. Ford**
cford@whatleydrake.com

**Edith M. Kallas**
ekallas@milbergweiss.com

**James Daniel McNamara**
jimm@lrerachlaw.com

**Joe R. Whatley**
jwhatley@whatleydrake.com

**John J. Stoia**
johns@lerachlaw.com

**Joseph P. Guglielmo**
jguglielmo@milbergweiss.com

**Othni J. Lathram**
olathram@whatleydrake.com

**Rachel Lynn Jensen**
rachelj@lerachlaw.com

**Richard P. Rouco**
rrouco@whatleydrake.com

**Melody Forrester**
mforrester@millerfaucher.com

lsabo@milbergweiss.com

**Louis G. Corsi**
lcorsi@lcbf.com

**Peter S. Pearlman**
PSP@njlawfirm.com

**Jeffrey J. Lowe**
jeff@jefflowepc.com

**Stephen L. Brodsky**
sbrodsky@zsz.com

**Allyn Zissel Lite**
alite@ldgrlaw.com

**Justin Michael Tarshis**
jtarshis@zsz.com

**Lisa J. Rodriguez**
lisa@trrlaw.com

**Robert S. Schachter**
rschachter@zsz.com

**W. Timothy Needham**
tneedham@janssenlaw.com

**Bryan L. Clobes**
bclobes@millerfaucher.com

**Timothy Fraser**
tfraser@millerfaucher.com

**Leda Dunn Wettre**
lwettre@robinsonlivelli.com

**Daniel Edward Laytin**
dlaytin@kirkland.com

**Leslie M. Smith**
lsmith@kirkland.com

**James S. Richter**
jrichter@winston.com

**Ellen Meriwether**
emeriwether@millerfaucher.com

**Michael Steven Tarringer**
mtarringer@millerfaucher.com

**Liza M. Walsh**
lwalsh@connellfoley.com

**Sonya Rae Braunschweig**
sbraunschweig@oppenheimer.com

**Alan L. Kildow**
Akildow@oppenheimer.com

**Kenneth A. Gallo**
kgallo@paulweiss.com

**Martin Flumenbaum**
mflumenbaum@paulweiss.com

**Rebecca Caren Shore**
rshore@paulweiss.com

**Roberta A. Kaplan**
rkaplan@paulweiss.com

**Molly Lehr**
mlehr@dbllp.com

**Donald A. Robinson**
drobinson@robinsonlivelli.com

**Robert W. Trenchard**
robert.trenchard@wilmerhale.com

**Robin L. Alperstein**
robin.alperstein@wilmerhale.com

**Mary Susan Henifin**
henifinms@bipc.com

**Jonathan Michael Wilan**
jwilan@hunton.com

**James Paul Wehner, Jr.**
Jwehner@ssd.com

**Alan L. Briggs**
abriggs@ssd.com

**David A. Gabianelli**
dgabianelli@hrblaw.com

**Stephen P. Younger**
spyounger@pbwt.com

**Barry G. Sher**
barrysher@paulhastings.com

**Kevin C. Logue**
kevinlogue@paulhastings.com

**Theodore Allan Kittila**
theodorekittila@paulhastings.com

**Gregory M. Reiser**
gregory.reiser@wilmerhale.com

**John R. Middleton**
jmiddleton@lowenstein.com

**Paul C. Curnin**
pcurnin@stblaw.com

**Michael J. Garvey**
mgarvey@stblaw.com

**Robert Hardy Pees**
rpees@akingump.com

**Richard B. Zebel**
rzabel@akingump.com

**Neil Keith Gilman**
ngilman@hunton.com

**Michael R. Griffinger**
griffinger@gibbonslaw.com

**Shawn Patrick Regan**
sregan@hunton.com

**Mitchell Jay Auslander**
mauslander@willkie.com

**Frederick Bartlett Wulff, Sr.**
bwulff@jw.com

**James W. Carbin**
jwcarbin@duanemorris.com

**Margaret Mary O'Rourke**
mmwood@duanemorris.com

**William F. Clarke**
wclarke@skadden.com

**Anastasia Angelova**
angelovaa@sullcrom.com

**Richard C. Pepperman, II**
peppermanr@sullcrom.com

**Jonathan E. Richman**
jrichman@llgm.com

**Douglas Scott Eakeley**
deakeley@lowenstein.com

**Patricia C. Crowley**
pcrowley@paulweiss.com

**Rachel L. Gerstein**
rgerstein@akingump.com

**Augusta Morgan Ridley**
aridley@kslaw.com

**Daniel J. Leffell**
dleffell@paulweiss.com

**Steven Paul Del Mauro**
**sdelmauro@mdmc-law.com**

**Graciela Rodriguez**
gmrodriquez@kslaw.com

**Sonya R. Braunschweig**
sonya.braunschweig@dlapiper.com

**Randi F. Knepper**
rknepper@mdmc-law.com

**Kevin Richard Sullivan**
krsullivan@kslaw.com

**Brian Robert Meiners**
bmeiners@kslaw.com

**Alan L. Kildow**
alan kildow@dlapiper.com

**DELIVERY BY MAIL:**

George E. Anhang
Ann M. Ashton
Ralph C. Ferrara
Leboeuf, Lamb, Greene & Macrae, LLP
1875 Connecticut Ave., N.W.
Washington, DC 20009

Mark A. Aronchick
Hangley Aronchick Segal & Pudlin
One Logan Square, 27th Floor
Philadelphia, PA 19103

P. Ryan Beckett
Daniel P. Jordan
Butler, Snow, O'Mara, Stevens & Cannada
P. O. Box 22567
Jackson, MS 39225-2567

H. Lee Godfrey
Vineet Bhatia
Johnny W. Carter
Michael P. Geiser
Neal S. Manne
Jeffrey R. Seely
Susman Godfrey, LLP
1000 Louisiana Street, Suite 5100
Houston, TX 77002

Richard C. Godfrey
Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, IL 60601

Katherine E. Borden
Danielle A. R. Coffman
Terry M. Grimm
Stephen Charles Schulte
Winston & Strawn
35 West Wacker Drive, 41st Floor
Chicago, IL 60601

Robin Brewer
Bonsignore & Brewer
23 Forest Street
Medford, MA 02155

Russell Thomas Burke
Amy D. Harmon
Nexsen Pruet Jacobs and Pollard
P. O. Drawer 2426
Columbia, SC 29202

Matthew J. Cannon
Katen Muchin Zavis Rosenman
525 W. Monroe Street, Suite 1600
Chicago, IL 60661-3693

Kathleen Currie Chavez
Chavez Law Firm
416 South Second Street
Geneva, IL 60134

Austin B. Cohen
Howard J. Sedran
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

C. Larry Corbo, III
Carole Elaine Howard
Jackson Walker LLP
1401 McKinney, Suite 1900
Houston, TX 77010

Larry R. Drury
Two North Lasalle Street, Suite 700
Chicago, IL 60602

Marci A. Eisenstein
William M. Hannay
Schiff Hardin LLP
223 South Wacker Drive
660 Sears Tower
Chicago, IL 60606

Paul Adam Engelmayer
Wilmer, Butler & Pickering, Esqs.
300 Park Avenue, 30th Floor
New York, NY 10022

Mary Jane Edelstein Fait
Fred Taylor Isquith
Adam J. Levitt
Wolf Haldenstein Adler
   Freeman & Hertz LLP
656 West Randolph Street, Suite 500W
Chicago, IL 60661

David A. Gabianelli
Hancock Rothert & Bunshoft LLP
Four Embarcadero Center, Suite 300
San Francisco, CA 94111

Jayne Goldstein
Mager White & Goldstein LLP
2825 University Drive, Suite 350
Coral Springs, FL 33065

M. Duncan Grant
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-2799

James M. Griffin
James M. Griffin Law Office
P. O. Box 999
Columbia, SC 29202

Richard A. Harpootlian
P. O. Box 1090
Columbia, SC 19202

Michael S. Hilicki
Tony Kim
James S. Shedden
Beller, Schad & Diamond, PC
332 S. Michigan Avenue, Suite 1000
Chicago, IL 60604

Samuel Bayard Isaacson
Carl H. Pocdtke
Stephen W. Schwab
D'La Piper Rudick Gray Cary US LLP
203 N. Lasalle Street, Suite 1900
Chicago, IL 60603

Steven A. Kanner
William Henry London
Douglas A. Millen
Much, Shelist, Freed, Denenberg, Ament &
   Rubenstein, PC
191 W. Wacker Drive, Suite 1800
Chicago, IL 60606

Robert J. Kriss
Mayer, Brown, Rowe & Maw LLP
190 S. Lasalle Street
Chicago, IL 60603

Edwin Michael Larkin
David Emilio Mollon
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166

Elizabeth A. Larsen
Kirkpatrick & Lockhart, Nicholson, Graham,
LLP
200 E. Randolph Drive
Chicago, IL 60601

Arthur Camden Lewis
Lewis Babcock & Hawkins
P. O. Box 11208
Columbia, SC 29211

Eric Neal Macey
303 West Madison Street, Suite 1500
Chicago, IL 60606

Donna L. McDevitt
Timothy Alan Nelsen
Skadden Arps Slate Meagher & Flom LLP
333 West Wacker Drive, Suite 2100
Chicago, IL 60606

Jennifer Bates McIntyre
Roseann Oliver
Perkins Coie LLC
131 South Dearborn, Suite 1700
Chicago, IL 60603-5559

Howard J. C. Nicols
Squire, Sanders & Dempsey, LLP
350 Park Avenue
New York, NY 10022-6022

John Robert Oller
Wilkie Farr & Gallagher LLP
767 Seventh Avenue
New York, NY 10019-6099

Benjamin R. Ostapuk
Kirkland & Ellis LLP
555 California Street
San Francisco, CA 94104

James L. Reed
Looper Reed & McGraw
1300 Post Oak Blvd., Suite 2000
Houston, TX 77056

Paul Jeffrey Riehle
Sedgwick Detert Moran & Arnold
One Embarcadero Center, 16th Floor
San Francisco, CA 94111-3628

Andrea Robinson
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, MA 02109

Richard Alexander Saveri
Geoffrey C. Rushing
Guido Saveri
Saveri & Saveri
111 Pine Street, Suite 1700
San Francisco, CA 94111-5630

Alan N. Salpeter
190 South LaSalle Street, 39th Floor
Chicago, IL 60603

Lawrence Wiley Schad
Beeler, Schad & Diamond, PC
332 South Michigan Ave., Suite 1000
Chicago, IL 60604

By:___s/Roy H. Liddell_____