## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ------------------------------------------------------------- ) | |
| ) | **MDL No. 1663** |
| ) | |
| **IN RE: INSURANCE BROKERAGE** ) | |
| **ANTITRUST LITIGATION** ) | **Civil No. 04-5184 (FSH)** |
| ) | |
| **APPLIES TO ALL ACTIONS** ) | **Hon. Faith S. Hochberg** |
| ) | |
| ------------------------------------------------------------- ) | |

### STIPULATION OF SETTLEMENT

WHEREAS, Zurich Financial Services Group, Zurich American Insurance Company, Steadfast Insurance Company, Fidelity and Deposit Company of Maryland, Empire Fire and Marine Insurance Company, American Guarantee and Liability Insurance Company, Empire Indemnity Insurance Company, and Assurance Company of America have been named as defendants in a putative class action styled *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663, Civil No. 04-5184 (FSH), in which Plaintiffs[1] allege that the Zurich Defendants engaged in certain conduct that, among other things, violated federal and state statutes and common law; and

WHEREAS, Zurich Financial Services is the indirect parent of the Zurich Defendants (other than Zurich Financial Services Group [corrected to be Zurich Financial Services]) and any and all of their respective parents, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), divisions, business units and subsidiaries; and

WHEREAS, Zurich Financial Services Group is not a legal entity; and

---

1. All capitalized terms used in this Stipulation of Settlement shall (unless otherwise noted) have the meanings ascribed to them in Section I of this Stipulation of Settlement.

WHEREAS, the Court's May 25 Order appointed the law firms of Milberg Weiss Bershad & Schulman LLP and Miller Faucher and Cafferty LLP as Co-Lead Counsel for Plaintiffs; and

WHEREAS, the Court's July 17, 2006 Order substituted the law firm of Whatley, Drake & Kallas, LLC as Co-Lead Counsel for the law firm of Milberg Weiss Bershad & Schulman LLP; and

WHEREAS, the May 25 Order provides that Co-Lead Counsel shall, among other things, conduct settlement negotiations on behalf of Plaintiffs and enter into binding agreements with respect to settlement as expressly authorized; and

WHEREAS, consistent with the May 25 Order, Co-Lead Counsel entered into an October 14, 2005 Memorandum of Understanding ("MOU") setting forth the principal terms under which Plaintiffs and the Zurich Defendants would settle all claims that have been made or that could have been made against the Zurich Defendants in the Action; and

WHEREAS, prior to entering into the MOU, Plaintiffs had obtained in excess of 12 million pages of documents from various defendants in the Action and in the related EB Action; and

WHEREAS, the MOU provided that Plaintiffs had discretion to terminate the MOU if, upon completion of confirmatory discovery, they and Co-Lead Counsel reasonably and in good faith believed that the terms of settlement set out in the MOU were not fair, reasonable and adequate; and

WHEREAS, since entering into the MOU, Co-Lead Counsel and Class Counsel have continued to pursue discovery from both the Zurich Defendants and the other defendants in the Action and in the EB Action, including the collection of additional documents, and deposed or

2

interviewed numerous individuals, including individuals associated or formerly associated with the Zurich Defendants; and

WHEREAS, as of the Execution Date, Plaintiffs had obtained in excess of 17.2 million pages of documents relevant to the claims made in this Action; and

WHEREAS, since entering into the MOU, Co-Lead Counsel has conducted extensive arm's length settlement negotiations with the Zurich Defendants on behalf of Plaintiffs and, consistent with the May 25 Order, is expressly authorized to enter into this Settlement Agreement on behalf of Plaintiffs; and

WHEREAS, the MOU provided for automatic termination if a settlement agreement was not executed by April 14, 2006; and

WHEREAS, Plaintiffs and the Zurich Defendants, with the Court's approval, agreed to extend to July 25, 2006 the deadline by which a settlement agreement had to be executed; and

WHEREAS, the MOU provided that the Zurich Defendants had the right to terminate the MOU if they were unable successfully to resolve the Governmental Investigations; and

WHEREAS, certain of the Zurich Insurers have also entered into a Multi-State Agreement, Regulatory Settlement Agreements and Parallel Agreements pursuant to which they have settled certain of the Governmental Investigations; and

WHEREAS, the MOU provided that if the MOU was not terminated, the Settling Parties would be bound to execute a settlement agreement consistent with the terms set out in the MOU, and that they would act in good faith to reach such a settlement agreement;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs and the Zurich Defendants, by and through their duly authorized counsel, that this Action and the matters raised by it hereby are settled and compromised as to the Zurich

Defendants, and that the Action will be dismissed with prejudice as to the Zurich Defendants, and that the Released Claims will be released as to the Releasees based upon the terms and conditions set forth in this Settlement Agreement and the Release set forth herein, subject to the approval of this Settlement Agreement by the Court and such approval becoming Final.

## I.   DEFINITIONS

   **A.**   As used in this Stipulation of Settlement and the attached Exhibits, the following terms have the indicated meanings:

   1.   "Action" means the consolidated putative class action pending in this Court under the caption *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663, Civil No. 04-5184 (FSH), including, without limitation, all cases consolidated with the foregoing as of the Final Settlement Date.

   2.   "Administrative Expenses" means all Court-approved expenses associated with the implementation and administration of the settlement contemplated by this Settlement Agreement, including, but not limited to the expenses associated with printing and mailing the Notice and publishing the Summary Notice, establishing, staffing and maintaining a toll-free telephone number, a website and an e-mail address, determining the amount (pursuant to the terms of the Plan of Allocation) of the Net Cash Settlement Amount to be allocated to each Settlement Class Member, and distributing the Net Cash Settlement Amount to or on behalf of Settlement Class Members; *provided however*, that Administrative Expenses shall not include (*i*) any amounts attributable to the Attorneys' Fees and Expenses Award or (*ii*) any costs associated with the publication of the Notice on the websites of certain Class Counsel as described in Section IV.A.3 below; *provided further* that Administrative Expenses shall be paid by the Zurich Defendants.

4

3.    "Administrator" means the person or entity to be chosen pursuant to Section V.A below, which person or entity shall be appointed by the Court in the Preliminary Approval Order to act in accordance with the terms of this Settlement Agreement and shall at all times work diligently, efficiently and in the best interests of the Settling Parties and Settlement Class Members; *provided* that the costs incurred by such Administrator shall be paid by the Zurich Defendants; *provided further* that the Settling Parties shall request, pursuant to Rule 53(c) of the Federal Rules of Civil Procedure, that the Court appoint such Administrator to supervise and administer the notice procedure as well as the processing of claims.

4.    "Approval Date" means the date on which the Judgment and the Order Approving Settlement are entered by the Court.

5.    "Attorneys' Fees and Expenses Award" means the amount awarded to Class Counsel as provided for in Section III.below.

6.    "Bar Order" means that portion of the proposed Order Approving Settlement that is set out in paragraph 12 of such Order, a copy of which is attached as Exhibit B to this Settlement Agreement.

7.    "Broker Defendants" means Marsh & McLennan Companies, Inc., Marsh Inc., Marsh USA, Inc., Marsh USA Inc. (Connecticut), Seabury & Smith, Inc., Aon Corporation, Aon Broker Services, Inc., Aon Risk Services Companies, Inc., Aon Risk Services Inc. U.S., Aon Risk Services, Inc. of Maryland, Aon Risk Services, Inc. of Louisiana, Aon Risk Services of Texas, Inc., Aon Risk Services, Inc. of Michigan, Aon Group Inc., Aon Services Group, Inc., Aon Re, Inc., Affinity Insurance Services, Inc., Aon Re Worldwide, Inc., Willis Group Holdings Limited, Willis Group Limited, Willis North America, Inc., Willis of New York, Inc., Stewart Smith Group, Willis Re Inc., Arthur J. Gallagher & Co., Arthur J. Gallagher Risk Management

Services, Inc., Wells Fargo & Company, Acordia, Inc., Brown & Brown, Inc., Hilb, Rogal & Hobbs Company, BB&T Corporation, Branch Banking and Trust Company, BB&T Insurance Services, Inc., USI Holding Corporation, Summit Global Partners of Florida, Inc., USI Insurance Services of Florida, Inc (d/b/a USI Florida), Hub International Limited and any other broker that is added as a defendant in the Action prior to the time that the Notice is mailed.

8.    "Business Day" means a day other than a Saturday, Sunday or a "legal holiday," as that term is defined in Section XIV.M of this Settlement Agreement.

9.    "Cash Settlement Account" means an interest-bearing account into which the Combined Settlement Balance shall be deposited, as described in Section III.D below, after the Final Settlement Date, which account shall be maintained as a Qualified Settlement Fund.

10.    "Claim" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, bonds, bills, specialties, variances, covenants, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees and losses, whether in law, in admiralty or in equity, and whether based on federal law, state law, foreign law, common law doctrine, rule, regulation or otherwise, foreseen or unforeseen, matured or un-matured, accrued or not accrued, existing now or arising in the future.

11.    "Class Counsel" means Co-Lead Counsel and all other counsel that are identified in Exhibit C to this Settlement Agreement.

12.    "Claim Form" means the form that must be submitted by Settlement Class Members with Settlement Class Policy Purchases from Insurer Defendants. A copy of the proposed Claim Form is attached as Exhibit D to this Settlement Agreement.

13. "Co-Lead Counsel" means the law firms of Whatley, Drake & Kallas, LLC and Miller Faucher and Cafferty LLP.

14. "Combined Settlement Amount" means the Initial Funding Amount, the Secondary Funding Amount (if any) and the Multi-State/Regulatory Settlement Amount.

15. "Combined Settlement Balance" means the Combined Settlement Amount less any expenses incurred in connection with the Escrow Account as set out in the Escrow Agreement.

16. "Complaints" means the Consolidated Commercial Complaint and the Consolidated EB Complaint.

17. "Confidentiality Agreement" means the November 20, 2005 agreement (including all addenda and/or exhibits that have been, or will be, executed thereto) between Co-Lead Counsel and the Zurich Defendants.

18. "Consolidated Commercial Complaint" means the First Corrected Consolidated Amended Commercial Class Action Complaint filed in this Action on or about August 15, 2005.

19. "Consolidated EB Complaint" means the First Corrected Consolidated Amended Employee Benefits Class Action Complaint filed in the EB Action on or about August 15, 2005.

20. "Court" means the Court in which the Action is pending.

21. "EB Action" means the consolidated putative class action pending in this Court under the caption *In Re: Employee Benefit Insurance Brokerage Antitrust Litigation*, Civil No. 05-1079 (FSH).

22.     "Escrow Account" means an interest-bearing account, established and administered pursuant to the Escrow Agreement, into which the Combined Settlement Amount shall be deposited, as described in Section III.B below.

23.     "Escrow Agent" means the escrow agent for the Escrow Agreement.

24.     "Escrow Agreement" means the escrow agreement pursuant to which the Escrow Account is established and administered, which agreement shall be in a form substantially and materially consistent with the document attached as Exhibit E to this Settlement Agreement.

25.     "Execution Date" means the date on which this Settlement Agreement has been executed by all Settling Parties.

26.     "Fairness Hearing" means the hearing at or after which the Court will make a final decision pursuant to Fed. R. Civ. P. 23 as to whether to approve this Settlement Agreement.

27.     "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final and no longer subject to appeal:

a.      if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired, or

b.      if any appeal is taken therefrom, on the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for *certiorari* or any other form of review, have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in an affirmance of the order or judgment.

28.     "Final Settlement Date" means the date on which the Judgment and the Order Approving Settlement become Final.

29.     "Governmental Investigation" means an investigation, inquiry or proceeding initiated by any state department of insurance or state attorney general respecting one or more Zurich Insurer, arising under the laws of the relevant state (including its antitrust, consumer protection and insurance statutes and regulations) based upon, among other things, the alleged acts, practices or courses of conduct that give rise to the claims that have been made or that could have been made in this Action.

30.     "Guaranteed Gross Settlement Amount" means the amount of one hundred million dollars ($100,000,000), which amount shall be comprised of the Initial Funding Amount and the Secondary Funding Amount (if any); *provided* that the Secondary Funding Amount shall be paid only if the condition set out in Section I.A.55 below is met.

31.     "Initial Administrative Payment" means the amount of one million dollars ($1,000,000).

32.     "Initial Funding Amount" means the amount of Seventy Million One Hundred Thousand Dollars ($70,100,000).

33.     "Insurer Defendants" means American International Group, Inc., Lexington Insurance Company, American International Specialty Lines Insurance Co., Birmingham Fire Insurance Co. of Pennsylvania, American Home Assurance Co., National Union Fire Insurance Co. of Pittsburgh, Pa., National Union Fire Insurance Co. of Louisiana, American International Insurance Co., The Insurance Company of the State of Pennsylvania, AIU Insurance Co., Commerce and Industry Insurance Co., New Hampshire Insurance Co., Hartford Steam Boiler Inspection and Insurance Co., ACE Limited, ACE INA Holdings, Inc.,

9

ACE USA, Inc., ACE American Insurance Co., Westchester Surplus Lines Insurance Co., Illinois Union Insurance Co., Indemnity Insurance Co. of North America, The Hartford Financial Services Group, Inc., Hartford Fire Insurance Co., Twin City Fire Insurance Co., Pacific Insurance Co., Ltd., Nutmeg Insurance Co., The Hartford Fidelity & Bonding Co., Munich Reinsurance Co., American Re Corporation, American Re-Insurance Co., American Alternative Insurance Corp., Munich-American Risk Partners, Inc., St. Paul Travelers Companies, Inc., St. Paul Fire & Marine Insurance Co., Gulf Insurance Co., St. Paul Mercury Insurance Co., Travelers Casualty & Surety Co. of America, Travelers Indemnity Company, Athena Assurance Co., Berkshire Hathaway, Inc., Berkshire Hathaway Insurance Group, General Re Corporation, General Reinsurance Corp., The Chubb Corporation, Federal Insurance Co., Executive Risk Indemnity Inc., Vigilant Insurance Co., Crum & Forster Holdings Corp., United States Fire Insurance Co., Fireman's Fund Insurance Co., Chicago Insurance Co., National Surety Corp., RLI Corporation, RLI Insurance Co., Mt. Hawley Insurance Co., XL Capital Ltd., Greenwich Insurance Co., Indian Harbor Insurance Co., CNA Financial Corp., The Continental Insurance Corp., American Casualty Co. of Reading, PA, Continental Casualty Co., Liberty Mutual Holding Company, Inc., Liberty Mutual Insurance Co., Liberty Mutual Fire Insurance Co., Wausau Underwriters Insurance Co., AXIS Specialty Insurance Company, AXIS Surplus Insurance Company, AXIS Reinsurance Company and any other insurer (other than a Releasee) that is added as a defendant to the Action prior to the time that Notice is mailed.

34.    "Interest Rate" means interest calculated on a simple interest basis based upon the one-year US LIBOR rate; *provided* that for each month during which interest is to be calculated, the rate shall be established based upon the one-year US LIBOR rate on the first (1st)

day of each month, as published in *The Wall Street Journal* under the description of "Money Rates."

35.    "Investigatory Claims" means claims that have been made in any Governmental Investigation.

36.    "Judgment" means the judgment entered by the Court pursuant to the Order Approving Settlement, as contemplated in Section XII of this Settlement Agreement.  A copy of the Settling Parties' proposed Judgment is attached as Exhibit F to this Settlement Agreement.

37.    "May 25 Order" means the order entered by the Court on May 25, 2005 in which the Court, among other things, appointed Co-Lead Counsel.

38.    "Multi-State/Regulatory Settlement Amount" means the amount of Fifty-One Million Seven Hundred Thousand Dollars ($51,700,000), which amount is provided for in the Multi-State Agreement and the Regulatory Settlement Agreements, in conjunction with the settlement relief provided for under this Settlement Agreement.

39.    "Multi-State Agreement" means the settlement agreement between certain of the Zurich Insurers and certain state attorneys general resolving Investigatory Claims, a copy of which is attached as Exhibit A to this Settlement Agreement.

40.    "Negotiated Fee and Expense Amount" means the amount of twenty-nine million nine hundred fifty thousand dollars ($29,950,000), which amount was negotiated by the Settling Parties only after all other terms of the Settlement Agreement had been resolved.  Class Counsel intends to apply to the Court for permission to pay up to ten thousand ($10,000) to each class representative Plaintiff from the Negotiated Fee and Expense Amount based upon the effort that each class representative Plaintiff has devoted to this litigation.

41. "Net Cash Settlement Amount" means the balance remaining in the Cash Settlement Account (including any interest that has been earned) after the payments (if any) described in Section III.F below are made from the Combined Settlement Balance.

42. "Notice" means the notice sent to Settlement Class Members. A copy of the Settling Parties' proposed Notice is attached as Exhibit G to this Settlement Agreement.

43. "Order Approving Settlement" means the Court's order approving the settlement terms set out in this Settlement Agreement. A copy of the Settling Parties' proposed Order Approving Settlement is attached as Exhibit B to this Settlement Agreement.

44. "Parallel Agreement" means any settlement agreement that has been or that may be executed between the Zurich Insurers (or any of them) and a state attorney general and/or state department of insurance, which settlement agreement settles Governmental Investigations and requires the Zurich Insurers (or any of them) to pay or cause to be paid a monetary amount for distribution to persons or entities that are within the definition of Settlement Class Members pursuant to terms that are different from those set out in this Settlement Agreement, the Multi-State Agreement and the Regulatory Settlement Agreements.

45. "Plaintiffs" means OptiCare Health Systems, Inc.; Comcar Industries, Inc.; Sunburst Hospitality Corporation; Robert Mulcahy; Golden Gate Bridge, Highway and Transportation District; Glenn Singer; Redwood Oil Company; Omni Group of Companies; Bayou Steel Corporation; Clear Lam Packaging, Inc.; Cellect, LLC; The Enclave, LLC; Gateway Club Apartments, Ltd; Michigan Multi-King Inc.; and City of Stamford, or any of them, both in their individual capacity and in their capacity as representatives of the Settlement Class.

46. "Plan of Allocation" means the terms and procedures for allocating the Net Cash Settlement Amount among, and distributing the Net Cash Settlement Amount to,

Settlement Class Members, which Plan of Allocation shall be a joint product of Co-Lead Counsel and the Settling Attorneys General, prepared in consultation with, and with the cooperation of, the Settling Insurance Regulators. A copy of the proposed Plan of Allocation is attached as Exhibit I to this Settlement Agreement.

47. "Preliminary Approval Date" means the date on which the Preliminary Approval Order is entered.

48. "Preliminary Approval Hearing" means the hearing at or after which the Court will preliminarily approve this Settlement Agreement.

49. "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving this Settlement Agreement as contemplated in Section XI of this Settlement Agreement. A copy of the Settling Parties' proposed Preliminary Approval Order is attached as Exhibit J to this Settlement Agreement.

50. "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulations § 1.468B-1.

51. "Regulatory Settlement Agreement" means the settlement agreement between certain of the Zurich Insurers and certain state departments of insurance resolving Investigatory Claims, which agreement contains monetary relief provisions that are consistent with the monetary relief provisions set out in this Settlement Agreement and in the Multi-State Agreement, and which agreement is substantially and materially consistent with the document attached as Exhibit K to this Settlement Agreement.

52. "Release" means the release and waiver set forth in Section IX.A. of this Settlement Agreement.

53.     "Released Claims" means each and every Claim or Unknown Claim, whether arising under federal law, state law, foreign law, common law, rule, regulation, or otherwise, (*i*) that has been asserted in the Action and/or in a Governmental Investigation or (*ii*) that could have been asserted in the Action, in any other forum by any Settlement Class Member or in a Governmental Investigation against any of the Releasees where the Claim or Unknown Claim arises out of or is based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth or referred to in the Complaints and/or in a Governmental Investigation, *provided* that "Released Claims" shall not include Claims or Unknown Claims of Settlement Class Members to enforce the terms of coverage contained in contracts of insurance or reinsurance issued by a Zurich Insurer or claims (if any) related to (*i*) workers compensation (other than as identified in the Action), (*ii*) the purchase or sale of Zurich securities, including pending securities fraud litigation, (*iii*) derivative litigation, (*iv*) finite insurance, (*v*) the purchase, sale or retention of annuities, (*vi*) Claims or Unknown Claims on behalf of beneficiaries of employee benefit plans sponsored by Releasees, or (*vii*) any personal lines of insurance or life insurance products.

54.     "Releasee" means each and every one of, and Releasees means all of, the following:  the Zurich Defendants, the Zurich Insurers, any and all of their current and former respective parents, predecessors, successors, affiliates (as defined in C.F.R. Part 210.1-02.b), divisions, business units and subsidiaries, and, subject to Section XIV.B  below, each such entity's respective past and present directors, officers, employees, members, partners, principals, agents, attorneys and insurance carriers (but only to the extent such insurance carriers provide insurance coverage or indemnity to one or more Releasee for losses incurred in connection with the Action).

14

55. "Secondary Funding Amount" means an amount up to twenty-nine million, nine hundred thousand dollars ($29,900,000), which amount shall be calculated and owed by the Zurich Defendants only to the extent that the Three-State Distributed Amount is less than the Three-State Minimum Amount as follows:

Three-State Minimum Amount – Three-State Distributed Amount = Secondary Funding Amount

*provided* that notwithstanding anything in this Settlement Agreement, the aggregate of the Initial Funding Amount and the Secondary Funding Amount shall not exceed the Guaranteed Gross Settlement Amount.

56. "Settled Parties' Claims" means, subject to Section IX below, each and every Claim or Unknown Claim, whether arising under any federal law, state law, foreign law, common law doctrine, rule, regulation or otherwise, that has been or could have been asserted in the Action or any other forum by any party, counsel, or the successors and assigns of any of them, against any of the Plaintiffs, Settlement Class Members, Class Counsel, the Zurich Insurers, the Zurich Defendants' Counsel, or any agents or experts of the foregoing and that arise out of or relate in any way to the institution, prosecution, assertion, defense, settlement or resolution of this Action.

57. "Settlement Agreement" means this Stipulation of Settlement and the accompanying Exhibits, including any subsequent amendments thereto and any Exhibits to such amendments.

58. "Settlement Class" or "Settlement Class Members" means all individuals or entities, who during the Settlement Class Period, engaged the services of (*i*) one of the Broker Defendants or any subsidiary or affiliate of a Broker Defendant in connection with a Settlement

15

Class Policy Purchase from any Zurich Insurer or any Insurer Defendant or (*ii*) any other broker

(which, for the avoidance of doubt, shall have the same meaning as in Section III.4.c of Exhibit

B to the Multi-State Agreement) in connection with a Settlement Class Policy Purchase from any

Zurich Insurer; *provided* that the Settlement Class shall be modified as necessary to include any

other individuals or entities who are certified by the Court as members of any other class in the

Action prior to the time that Notice is mailed to the Settlement Class; *provided further* that

"Settlement Class" or "Settlement Class Members" does not include (*a*) such persons or entities

who submit valid and timely requests for exclusion from the Settlement Class in accordance with

the procedures set out in Section VII.A. of this Settlement Agreement, (*b*) such persons or

entities who settled an actual or threatened lawsuit or other proceeding with the Zurich Insurers,

or any of them, and released the Zurich Insurers from any further claims concerning their

Settlement Class Policy Purchase, (*c*) such persons or entities who have elected or will elect by

no later than the Three-State Deadline to receive monetary payments pursuant to the Three-State

Agreement, *provided however*, that such persons or entities who have elected or will elect by the

Three-State Deadline to receive monetary payments pursuant to the Three-State Agreement shall

be Settlement Class Members respecting their Settlement Class Policy Purchases that are not

eligible to receive relief under the Three-State Agreement, with respect to which the Zurich

Insurers shall waive enforcement of the Three-State Release to the extent that such persons or

entities participate in the Settlement Class with respect to such purchases, *provided further* that

the Zurich Insurers reserve the right to enforce the Three-State Release in its entirety as to any

persons or entities who have elected or will elect prior to the Three-State Deadline to receive

monetary payments pursuant to the Three-State Agreement to the extent such persons or entities

seek relief outside of this Settlement Agreement for Settlement Class Policy Purchases that are

not eligible to receive relief under the Three-State Agreement, (*d*) such entities who are named defendants in the Action (including their officers and directors), (*e*) any entity in which the Zurich Insurers, or any of them, has or had a controlling interest during the Settlement Class Period and the legal representatives, heirs, executors, successors or assigns of any such excluded entity, and (*f*) any directors or officers of the Zurich Insurers, or any of them, during the Settlement Class Period.

59.      "Settlement Class Period" means the period of time from August 26, 1994 through September 1, 2005, inclusive.

60.      "Settlement Class Policy Purchase" means the purchase or renewal of commercial insurance or reinsurance from a Zurich Insurer or from an Insurer Defendant where the coverage under such commercial insurance or reinsurance incepts or renews during the Settlement Class Period pursuant to a contract, policy, agreement, arrangement or understanding where the insurance or reinsurance (*a*) involved an insured or a policy owner or an affiliate thereof, any of which was either domiciled in or resident in, or had any other significant contact with, the United States, its territories or possessions, (*b*) involved a contract, policy, agreement, arrangement or understanding entered into in the United States, its territories or possessions, (*c*) involved a contract, policy, agreement, arrangement or understanding subject to federal law or to the law of any of the states of the United States, its territories or possessions, or (*d*) provided coverage for an insurable exposure in the United States, its territories or possessions.

61.      "Settling Attorneys General" means each of the state attorneys general who have entered into the Multi-State Agreement.

62.      "Settling Insurance Regulators" means each of the state governmental entities that have entered into a Regulatory Settlement Agreement.

63. "Settling Parties" means the Zurich Defendants and Plaintiffs, or any of them.

64. "State Liaison Counsel" means the Office of the Attorney General of the State of Texas or any Office of the Attorney General of the Settling Attorneys General, as to whom the Settling Parties may agree.

65. "Stipulation and Order of Confidentiality" means the Court-approved stipulation and order described in Section VIII.D. below.  A copy of the Settling Parties' proposed Stipulation and Order of Confidentiality is attached as Exhibit L to this Settlement Agreement.

66. "Summary Notice" means the published notice of the proposed settlement. A copy of the Settling Parties' proposed Summary Notice is attached as Exhibit M to this Settlement Agreement.

67. "Tax Expenses" means (*i*) all taxes on the income of the Combined Settlement Amount and (*ii*) expenses and costs incurred in connection with the taxation of the Combined Settlement Amount (including, without limitation, expenses of tax attorneys and accountants).

68. "Three-State Agreement" means the Parallel Agreement that has been executed between certain of the Zurich Insurers (or any of them) and the Office of the Attorney General for the States of New York, Illinois and Connecticut, and the Superintendent of the New York Department of Insurance, a copy of which is attached as Exhibit H to this Settlement Agreement.

69. "Three-State Deadline" means December 27, 2006 (the date by which a person or entity must tender a Three-State Release to receive monetary relief under the Three-

State Agreement) or such other date as to which the parties to the Three-State Agreement might agree.

70.     "Three-State Distributed Amount" means the total amount of monetary relief that is distributed pursuant to the Three-State Agreement.

71.     "Three-State Minimum Amount" means the amount of Twenty Million Nine Hundred Thousand Dollars ($29,900,000).

72.     "Three-State Release" means the release that persons or entities who have elected or will elect by the Three-State Deadline to receive a monetary payment pursuant to the Three-State Agreement have executed or will execute consistent with the form attached to the Three-State Agreement.

73.     "Unknown Claim" means any Claim that any Settlement Class Member does not know or suspect to exist in his, her or its favor at any time on or before the date that the Settlement Class Member's release becomes effective, and that, if known by him, her or it, might have affected his, her or its settlement with any of the Releasees or might have affected his, her or its decision not to request exclusion from the Settlement Class or not to object to this Settlement Agreement.

74.     "Zurich Defendants" means Zurich Financial Services, Zurich American Insurance Company, Steadfast Insurance Company, Fidelity and Deposit Company of Maryland, Empire Fire and Marine Insurance Company, American Guarantee and Liability Insurance Company, Empire Indemnity Insurance Company, and Assurance Company of America.

75.     "Zurich Defendants' Counsel" means the law firm of LeBoeuf, Lamb, Greene & MacRae LLP.

76.   "Zurich Insurers" means the Zurich Defendants, American Zurich Insurance Company, Colonial American Casualty and Surety Company, Maine Bonding and Casualty Company, Maryland Casualty Company, Maryland Insurance Company, National Standard Insurance Company, Northern Insurance Company of New York, Valiant Insurance Company, Universal Underwriters Insurance Company, Universal Underwriters of Texas Insurance Company, Zurich American Insurance Company, Zurich American Insurance Company of Illinois, Zurich Specialties London. Ltd (ZSL), Zurich International (Bermuda)Ltd (ZIB) and Zurich Insurance Bermuda Branch (ZIBB).

## II.   BACKGROUND

### A.   Procedural History

1.   Several putative class actions were filed against, among others, the Zurich Defendants alleging violations of federal and state antitrust laws, the Racketeer Influenced and Corrupt Organizations Act and common law.

2.   The class actions were consolidated in this Court and, pursuant to the May 25 Order, the law firms of Milberg Weiss Bershad & Schulman LLP and Miller Faucher and Cafferty LLP were appointed as Co-Lead Counsel.  In the Court's July Order , the Court substituted the law firm of Whatley, Drake & Kallas, LLC for the law firm of Milberg Weiss Bershad & Schulman LLP as Co-Lead Counsel .

3.   The May 25 Order further provides that Co-Lead Counsel shall be generally responsible for coordinating Plaintiffs' pre-trial activities, including conducting settlement negotiations on behalf of Plaintiffs.

4.   Plaintiffs filed the Consolidated Commercial Complaint and the Consolidated EB Complaint on or about August 15, 2005.

5.   On October 14, 2005 the Settling Parties executed the MOU.

6.      On November 23, 2005, the Court issued an order staying the proceedings with respect to the Zurich Defendants in light of the executed MOU and based upon the Settling Parties' agreement to act in good faith to negotiate a settlement agreement consistent with the MOU. The Court's stay order indicated that the stay would remain in effect until further action was taken by the Court.

7.      In April 2006, the Settling Parties advised the Court of their agreement to extend the April 14, 2006 deadline by which the MOU required the Settling Parties to negotiate a settlement agreement to June 13, 2006.

8.      In June 2006, the Settling Parties advised the Court of their agreement to extend the June 13, 2006 deadline until July 13, 2006. At that time, the Court advised the Settling Parties that, if settlement negotiations were to falter, the Zurich Defendants would be subject to the Court's scheduling order. The Court ordered that the stay of proceedings in effect as to the Zurich Defendants be lifted.

9.      In July 2006, the Settling Parties advised the Court of their agreement to extend the July 13, 2006 deadline until July 25, 2006.

**B.      Settlement Discussions and Discovery**

1.      Co-Lead Counsel (consulting and working with other Class Counsel) met with the Zurich Defendants' Counsel in July 2005 for the purpose of having an initial discussion regarding the possibility of settlement. No agreement was reached during these initial discussions. However, the Settling Parties agreed to continue their discussions to see whether the Action could be settled.

2.      While these initial discussions between the Zurich Defendants' Counsel, Co-Lead Counsel and certain other Class Counsel were proceeding, discovery continued in the

Action.  Prior to reaching any agreement with the Zurich Defendants, Class Counsel obtained in excess of 12 million pages of documents from the various defendants in the Action, including documents from the Zurich Defendants.

3.       After extensive and contentious arm's-length settlement negotiations, the Settling Parties executed the MOU on October 14, 2005.  The MOU sets out the principal terms pursuant to which the Settling Parties agreed to settle the Action, and provides, among other things, that Plaintiffs have the absolute discretion to terminate the MOU if, upon completion of confirmatory discovery, they and Co-Lead Counsel reasonably and in good faith do not believe that the terms of the settlement are fair, reasonable and adequate.

4.       Since execution of the MOU in October 2005, Plaintiffs have conducted extensive confirmatory discovery of the Zurich Defendants, including obtaining in excess of 2.5 million pages of additional relevant documents from them, meeting on multiple occasions with the Zurich Defendants' Counsel to discuss the claims, and interviewing  four individuals.

5.       During this same period, Class Counsel has also been engaged in discovery with the Broker Defendants and the Insurer Defendants, and has obtained from these defendants and third parties in excess of 14.7 million pages of additional documents (including voluminous electronic and data files) and has deposed 70 individuals.

6.       While Plaintiffs' confirmatory discovery and general discovery were ongoing, the Settling Parties also began to discuss and draft the terms of the settlement agreement.  Numerous discussions were held and drafts exchanged.  During the negotiations, the Settling Parties agreed to certain revisions to the provisions of the settlement, which led to modification and/or elimination of certain of the MOU terms.  The negotiations between the Settling Parties culminated in the execution of this Settlement Agreement.

7.      Within ten (10) days following the Preliminary Approval Date, (*i*) all documents and data that have been produced by the Zurich Defendants in connection with the confirmatory discovery undertaken in connection with this Settlement Agreement other than that designated "For Settlement Purposes Only" shall be placed into the joint depository established by the Court, for the continued prosecution of any claims in the Action; *provided* that (*i*) such documents and data shall be subject to the confidentiality provision set forth in the September 23, 2005 Corrected Discovery Confidentiality Order on Informal Application and (*ii*) the Settling Parties shall file with the Court a stipulation regarding the authentication of business records produced by the Zurich Defendants.

### C.      Settlements Relating to Governmental Investigations

1.      In addition to being named as defendants in this Action, certain of the Zurich Insurers have been involved in Governmental Investigations.

2.      The MOU provides that the Zurich Defendants may terminate the MOU if they are unable to resolve the Governmental Investigations, which right to terminate has, except as set out in Section II.C.3. below, been extinguished as of the Execution Date.

3.      As of the Execution Date, certain of the Zurich Insurers have executed the Multi-State Agreement with the Settling Attorneys General, a number of Regulatory Settlement Agreements with Settling Insurance Regulators and the Three-State Agreement, all of which resolve Governmental Investigations respecting the participating states.  As of the Execution Date, certain of the Zurich Insurers were still in negotiations with one other state attorney general and with a number of departments of insurance.

4.      The Multi-State Agreement and the Regulatory Settlement Agreements provide that payments under those agreements will be made to Settlement Class Members pursuant to the Plan of Allocation.

5.      The Three-State Agreement provides for payment of restitution to certain insureds who are within the definition of the Settlement Class by creation of a fund and distribution to such insureds directly from such fund, outside of the Plan of Allocation.

### D.      Zurich Defendants' Settlement Considerations

1.      The Zurich Defendants expressly deny the wrongdoing alleged in the Complaints, that any federal or state laws or common law have been violated, or that any antitrust injury has occurred, and do not concede any wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against them in the Action.  The Zurich Defendants nevertheless consider it desirable for the Action to be settled and dismissed because the settlement terms set out in the Settlement Agreement will, among other things: (*i*) bring to an end the substantial expense, burdens and uncertainties associated with continued litigation of the claims made in the Complaints; (*ii*) finally put to rest those claims and the underlying matters; and (*iii*) confer substantial benefits upon Settlement Class Members and the Zurich Defendants including, without limitation, the avoidance of further expense and disruption due to the pendency and defense of the Action.  Neither the MOU, this Settlement Agreement, the offer of this Settlement Agreement nor compliance with this Settlement Agreement shall constitute or be construed to be an admission by the Zurich Insurers or Releasees, or any of them individually, of any wrongdoing or liability.

2.      Except as provided in Section XI, this Settlement Agreement shall not be admissible in any judicial, regulatory, administrative, or other proceeding or cause of action as

an admission of liability or for any purpose other than to enforce the terms of this Settlement Agreement.

## III.   TERMS AND CONDITIONS OF THE SETTLEMENT

### A.   Payment of Administrative Expenses

1.   Within five (5) Business Days following the Execution Date, the Zurich Defendants shall advance or cause to be advanced to the Administrator the Initial Administrative Payment to be used for Administrative Expenses.

2.   Within twenty (20) Business Days following receipt of any estimate or invoice from the Administrator for Administrative Expenses in excess of the Initial Administrative Payment, the Zurich Defendants shall pay or cause to be paid such invoice; *provided however*, that prior to undertaking any tasks that in the aggregate will incur expenses in excess of Five Hundred Thousand Dollars ($500,000) in any thirty-day (30-day) period, the Administrator shall advise the Zurich Defendants (or their designees) of the estimated amount of Administrative Expenses to be incurred in connection with such tasks and shall seek the approval of the Zurich Defendants (or their designees) to undertake such tasks, which approval shall not be unreasonably withheld; *provided* that if any portion of any funds paid by the Zurich Defendants for Administrative Expenses (including, without limitation, the Initial Administrative Payment) remains unused after all Administrative Expenses that are incurred in connection with the implementation of this Settlement Agreement have been paid, such remaining funds shall be refunded to the Zurich Defendants.

### B.   Payments into the Escrow Account

1.   Within ten (10) Business Days following the Preliminary Approval Date, the Zurich Defendants shall deposit or cause to be deposited into the Escrow Account:

a.   the Initial Funding Amount and

b.      the Multi-State/Regulatory Settlement Amount.

2.      The Zurich Defendants shall pay or cause to be paid into the Escrow Account the Secondary Funding Amount within ten (10) Business Days following the date on which the Secondary Funding Amount (if any) is calculated; *provided* that as set out in Section I.A.55. above, the Secondary Funding Amount shall be calculated only to the extent that the Three-State Distributed Amount is less than the Three-State Minimum Amount.

### C.      Payment of Attorneys' Fees and Expenses Award

1.      Subject to the terms (including, without limitation, the repayment provisions) set out in Sections X.D, X.E and X.F below, within five (5) Business Days following the later of the Approval Date or such other date on which the Court issues an order setting out the Attorneys' Fees and Expenses Award, the Zurich Defendants shall pay or cause to be paid to Co-Lead Counsel the Attorneys' Fees and Expenses Award.

### D.      Transfer of Combined Settlement Balance to Cash Settlement Account

1.      Subject to Section X.D.2 below, within twenty (20) Business Days following the Final Settlement Date, the Escrow Agent shall, consistent with the terms of the Escrow Agreement, be instructed to cause to be deposited into the Cash Settlement Account the Combined Settlement Balance.

2.      The Multi-State/Regulatory Settlement Amount shall not be deposited into the Cash Settlement Account as described in Section X.D.1 above until a Final order has been entered in each of the states whose attorneys general are parties to the Multi-State Agreement consistent with the terms of the Multi-State Agreement; *provided* that if such a Final order has not been entered in one or more such states at the time the payment required by Section X.D.1 above is required, the Escrow Agent shall, consistent with the terms of the Escrow Agreement,

maintain the Multi-State/Regulatory Settlement Amount (and the interest attributable to it) in the Escrow Account until such time as a Final order has been entered in each such state.

        3.      On the date on which the last of the deposits required by Sections X.D.1 and X.D.2 above are made, the Zurich Defendants and Co-Lead Counsel shall instruct the Escrow Agent (*i*) to prepare an accounting as to the interest that accrued on the Combined Settlement Amount starting from the date the Initial Funding Amount, the Secondary Funding Amount (if any) and the Multi-State/Regulatory Settlement Amount were deposited into the Escrow Account and ending on the date that the disbursements are made pursuant to Sections X.D.1 and X.D.2. above.  and (*ii*) to calculate for the same period of time an imputed interest amount that is equal to the total amount of interest that would have accrued on the Combined Settlement Amount if interest were accrued at the Interest Rate for the entire period and if the Secondary Funding Amount had been deposited in the Escrow Account at the same time as the Initial Funding Amount was deposited into the Escrow Account; *provided* that such calculation shall take into account all disbursements made from Combined Settlement Amount pursuant to the terms of the Escrow Agreement; *provided further* that if the imputed interest amount calculated by the Escrow Agent is larger than the actual interest that accrued on the Combined Settlement Amount, the Zurich Defendants shall pay the difference between the two amounts within five (5) Business Days following notification of such deficiency.

      **E.**     **The Cash Settlement Account**

        1.      The funds in the Cash Settlement Account shall not be distributed except in accordance with this Settlement Agreement or by order of the Court.

        2.      All Tax Expenses (if any) due respecting the Combined Settlement Balance shall be paid out of the monies held in the Cash Settlement Account.

**F.     Distribution of the Net Cash Settlement Amount**

1.      The Net Cash Settlement Amount shall be distributed to Settlement Class Members pursuant to the Plan of Allocation.

2.      Settlement Class Members whose Settlement Class Policy Purchases were from one or more Zurich Insurer shall automatically receive relief as to such policies pursuant to the Plan of Allocation.

3.      Settlement Class Members whose Settlement Class Policy Purchases were from one or more of the Insurer Defendants must submit a Claim Form respecting such policies in order to receive relief pursuant to the Plan of Allocation.

4.      No person or entity shall have any claim against Plaintiffs, Class Counsel, the Zurich Insurers, the Zurich Defendants' Counsel, the Settling Attorneys General, the Settling Insurance Regulators, the Administrator, the Escrow Agent, any Releasee, or any agent of any of the foregoing with respect to or arising out of any distribution or lack thereof made under the Plan of Allocation, this Settlement Agreement or an order of the Court.

5.      Releasees and/or their respective counsel, including, but not limited to the Zurich Defendants' Counsel, shall have no role in, responsibility for, or liability with respect to the Plan of Allocation, the form, substance, method or manner of allocation, administration, or distribution of the Net Cash Settlement Amount, any tax liability that a Settlement Class Member may incur as a result of this Settlement Agreement, or as a result of any action taken pursuant to this Settlement Agreement, the administration or distribution of the Net Cash Settlement Amount, or the maintenance of the Cash Settlement Account as a Qualified Settlement Fund; *provided however*, that the Zurich Defendants will cooperate with Co-Lead Counsel as required

to ensure that Co-Lead Counsel has all information necessary to allow the Plan of Allocation to be prepared and the distribution required by such Plan of Allocation to be implemented.

   6.  Unless otherwise ordered by the Court, Settlement Class Members shall look solely to the Net Cash Settlement Amount for settlement and satisfaction of all Released Claims. Except as expressly provided by this Settlement Agreement, under no circumstances shall any of the Settling Parties or any Releasees be responsible for payment of any fees, costs, expenses or other funds associated with or arising out of the settlement contemplated by this Settlement Agreement. Except as expressly provided by this Settlement Agreement, the Plan of Allocation or order of the Court, no Settlement Class Member shall have any interest in the Net Cash Settlement Amount or any portion of it.

   7.  If there is a balance remaining in the Cash Settlement Account six (6) months following the date of the final distribution of the Net Cash Settlement Amount (whether by reason of tax refunds, uncashed checks or otherwise), to the extent practicable, such balance shall be reallocated to Settlement Class Members in an equitable and economic manner. If the remaining balance is such that a direct reallocation to Settlement Class Members is neither feasible nor practicable (*e.g.*, the individual check amounts would be too small), then such remaining balance shall be donated to charitable organizations and/or state agencies that provide appropriate risk management information or training to Settlement Class Members, as agreed to by Class Counsel, the Zurich Defendants' Counsel and the State Liaison Counsel, as approved by the Court, but in no event shall any such monies revert to the Zurich Defendants.

   8.  Plaintiffs shall seek the Court's approval of the Plan of Allocation and the Zurich Defendants shall not object to such approval.

9.      All initial determinations as to the extent to which each Settlement Class Member will participate in the distribution of the Net Cash Settlement Amount under the terms of the Plan of Allocation shall be made by Co-Lead Counsel and the State Liaison Counsel, their designees or agents, the Administrator, or such other person or entities as Co-Lead Counsel may, in their sole discretion, deem necessary or advisable to assist them in the administration of this Settlement Agreement.  The administration of the monies in the Cash Settlement Account, and decisions on all disputed questions of law and fact with respect to distribution of the Net Cash Settlement Amount, shall remain under the exclusive jurisdiction of the Court.

### G.      Maintenance of Accounts as Qualified Settlement Accounts

1.      All necessary steps to enable the Escrow Account and the Cash Settlement Account to be Qualified Settlement Funds shall be taken, including the timely filing by the Co-Lead Counsel and/or its agent of all elections and statements required pursuant to Treas. Reg. §§ 1.468B-0 through 1.468B-5, or any other relevant statutes, regulations or published rulings now or hereafter enacted or promulgated, for all taxable years in which the Escrow Account and the Cash Settlement Account are in existence, beginning with the date of their establishment. Co-Lead Counsel shall be the "administrator" of the Qualified Settlement Fund for purposes of the taxation of the Escrow Account and the Cash Settlement Account under Treas. Reg. §§ 1468B-0 through 1.468B-5.  Co-Lead Counsel and/or its agent, on behalf of the Escrow Account and the Cash Settlement Account, shall file or cause to be filed on a timely basis all required federal, state and local tax returns and shall pay taxes in a manner consistent with treatment of the Escrow Account and the Cash Settlement Account as Qualified Settlement Funds, as provided in Treas. Reg. §§ 1.468B-0 through 1.468B-5.  The Settling Parties agree that the Escrow Account and the Cash Settlement Account shall be treated as Qualified Settlement

Funds from the earliest date possible, and they agree and elect to treat the Escrow Account and the Cash Settlement Account as a Qualified Settlement Fund from the earliest date possible. The Zurich Defendants agree to provide promptly the statement described in Treasury Regulation § 1.468B-3(e). Except as provided in this Settlement Agreement, in no event shall the Zurich Defendants have any responsibility whatsoever for filing other required statements, or tax returns, or for paying the costs associated therewith, the payment of any taxes due, or the expenses of administration of the Escrow Account or of the Cash Settlement Account.

2.      Upon request by the Zurich Defendants' Counsel, Co-Lead Counsel shall promptly provide to the Zurich Defendants' Counsel all information requested in connection with any tax returns a Releasee must file or with any other report or filing a Releasee must make with respect to the Escrow Account or the Cash Settlement Account.

## IV.   NOTICE TO THE CLASS

### A.    Mailing of the Notice

1.      Subject to the requirements of the Preliminary Approval Order and no later than forty-five (45) days before the Fairness Hearing, the Settling Parties shall cause to be mailed, by first-class mail, postage prepaid, a copy of the Notice to each person or entity in the Settlement Class that can be identified by reasonable effort. In cases of pending litigation, arbitration or mediation against the Zurich Insurers, or any of them, involving any Released Claims, a copy of the Notice shall also be mailed to all legal counsel known by the Zurich Insurers to represent the Settlement Class Member in such litigation, arbitration or mediation; *provided* that the Zurich Insurers shall describe such pending litigation (if any) to Co-Lead Counsel within ten (10) days following the Execution Date.

2.      If the mailings described in the preceding paragraph result in any Notice being returned to the Administrator with an updated address, the Notice shall be re-mailed to the

addressee within two (2) business days of receipt of the updated address; *provided however,* that if such updated address is received by the Administrator less than five (5) business days prior to, or after, the date of the Fairness Hearing, no re-mailing shall be required.

3.      No later than thirty-five (35) days before the Fairness Hearing, (*i*) the Settling Parties shall cause the Administrator to publish the Notice, Summary Notice and Claim Form on its website, (*ii*) Co-Lead Counsel shall cause the Notice to be published on the websites of Co-Lead Counsel and of Lerach Coughlin Stoia Geller Rudman & Robbins, Zwerling, Schachter & Zwerling, LLP, LLP, Foote Meyers, Mielke & Flowers, Levin, Fishbein, Sedran & Berman, Lite DePalma Greenberg & Rivas, LLC and The Furth Firm LLP, and (*iii*) the Zurich Defendants shall cause the Notice to be published on the website found at *www.zurichna.com.*

4.      The Notice shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of the Court and any other applicable law, and shall otherwise be in the manner and form agreed upon by the Settling Parties and approved by the Court.

5.      A copy of the Notice, substantially in the form found in Exhibit G to this Settlement Agreement, shall be submitted to the Court for its approval at the time the Settling Parties submit this Settlement Agreement to the Court pursuant to Section XI below.

**B.      Summary Notice**

1.      No later than thirty-five (35) days before the Fairness Hearing, the Settling Parties shall cause the Summary Notice to be published two (2) times in all editions of *The New York Times*, *The Wall Street Journal* and *USA Today*, and one (1) time in the newspaper with the highest circulation in each of the fifty (50) states and in the District of Columbia (as identified by the Administrator, subject to the approval of Co-Lead Counsel, the State Liaison Counsel and the

Zurich Defendants, which approval shall not be unreasonably withheld), and in Business Insurance and RM Magazine.

2.    A copy of the Summary Notice, substantially in the form found in Exhibit M to this Settlement Agreement, shall be submitted to the Court for its approval at the time the Settling Parties submit this Settlement Agreement to the Court pursuant to Section XI below.

## V.    RETENTION OF ADMINISTRATOR

A.    Pursuant to the Preliminary Approval Order, the Zurich Defendants and Co-Lead Counsel shall jointly agree to the retention of an Administrator to help implement the settlement contemplated by this Settlement Agreement.

B.    The Administrator may assist with various tasks, including, without limitation: (*i*) mailing or arranging for the mailing (and remailing, if required) of the Notice; (*ii*) arranging for publication of the Summary Notice; (*iii*) publishing the Notice, Summary Notice and Claim Form on the Administrator's website; (*iv*) providing Claim Forms to those Settlement Class Members who are required to submit such forms in order to receive settlement relief; (*v*) answering written inquiries from Settlement Class Members and/or forwarding such inquiries to Co-Lead Counsel or its designee(s); (*vi*) receiving and maintaining on behalf of the Court any requests for exclusion received from potential Settlement Class Members and receiving and maintaining on behalf of Class Counsel all Claim Forms submitted by Settlement Class Members; (*vii*) establishing a call center with a toll-free number, website and e-mail address to answer inquiries from Settlement Class Members, including a system for e-mail inquiries and replies; (*viii*) providing additional copies of the Notice, upon request, to Settlement Class Members; (*ix*) calculating and arranging for allocation of the Net Cash Settlement Amount to Settlement Class Members consistent with the Plan of Allocation; and (*ix*) otherwise assisting

Co-Lead Counsel, , the State Liaison Counsel  and the Zurich Defendants' Counsel or their designees with the administration and implementation of this Settlement Agreement.

## VI.    RIGHT TO COMMUNICATION WITH SETTLEMENT CLASS MEMBERS

A.    Co-Lead Counsel acknowledges and agrees that the Zurich Insurers have the right to communicate orally and in writing with, and to respond to inquiries from, Settlement Class Members, including (without limitation):

1.    Communications between Settlement Class Members and representatives of the Zurich Insurers whose responsibilities include client relations to the extent such communications are initiated by Settlement Class Members;

2.    Communications between Settlement Class Members who are ongoing clients of any of the Zurich Insurers, or who seek to become clients of any of the Zurich Insurers, regarding the insurance products they have purchased or might purchase from the Zurich Insurers; *provided* that if any such client has questions about the terms of this Settlement Agreement, the Zurich Insurers shall refer such client to the toll-free number or e-mail address for the Administrator; and

3.    Communications that might be necessary to conduct the Zurich Insurers' normal business.

B.    Co-Lead Counsel and the Zurich Defendants' Counsel agree to cooperate in good faith to ensure that any comments about or descriptions of the proposed settlements are balanced, fair and accurate; *provided however*, that the Releasees, or any of them, shall be able to make, without notification to, or prior review or approval by, Co-Lead Counsel, any and all disclosures regarding the Settlement Agreement that the Releasees, or any of them, believe may be required or appropriate under applicable law, or as required in connection with a judicial or regulatory proceeding.

## VII.   REQUESTS FOR EXCLUSION

**A.**     Any potential Settlement Class Member who wishes to be excluded from the Settlement Class must mail by first-class mail or deliver a written request for exclusion to the Clerk of the Court, care of the address provided in the Notice, postmarked or delivered no later than fifteen (15) days before the Fairness Hearing, or as the Court may otherwise direct.  A list of the persons and entities who have requested exclusion shall be provided by the Settling Parties to the Court at or before the Fairness Hearing.

**B.**     A potential Settlement Class Member's request for exclusion shall include the following information:  (*i*) his, her or its name, (*ii*) his, her or its address, (*iii*) his, her or its telephone number, and (*iv*) information respecting each Settlement Class Policy Purchase, including the following:  (*a*) the insurer that issued each policy, (*b*) the policy number, (*c*) the broker used, (*d*) the face amount of each policy, (*e*) the annual premium associated with each policy, and (*f*) the effective date and expiration date for each policy.

**C.**     Any potential Settlement Class Member who does not file a timely written request for exclusion as provided in Section VII.A shall be bound by the Release and by all proceedings, orders and judgments in this Action, even if he, she or it has pending, or subsequently initiates, litigation, arbitration or any other action against any or all of the Zurich Insurers or the Releasees relating to Released Claims.

## VIII.   OBJECTIONS TO SETTLEMENT

**A.**     Any Settlement Class Member who wishes to object to the fairness, reasonableness or adequacy of this Settlement Agreement, to the Plan of Allocation, any term(s) of this Settlement Agreement or to the proposed Attorneys' Fees and Expenses Award must both serve on Co-Lead Counsel, the Zurich Defendants' Counsel and the State Liaison Counsel (as identified in the Notice) and file with the Court a statement of his, her or its objection(s);

*provided* that any such objection statement must be received by Co-Lead Counsel, by the Zurich Defendants' Counsel, by the State Liaison Counsel and by the Court no later than fifteen (15) days before the Fairness Hearing or as the Court may otherwise direct.

      **B.**     The Settlement Class Member's statement of objection shall provide evidence of the objector's membership in the Settlement Class and shall state the specific reason(s), if any, for each such objection made by the Settlement Class Member, including any legal support the Settlement Class Member wishes to bring to the Court's attention and any evidence the Settlement Class Member wishes to introduce in support of such objection.

      **C.**     Any Settlement Class Member may file an objection on his, her or its own, or through an attorney hired at his, her or its own expense.  If a Settlement Class Member hires an attorney to represent him, her or it in connection with filing an objection, the attorney must serve on Co-Lead Counsel, the Zurich Defendants' Counsel and the State Liaison Counsel (as identified in the Notice) and file with the Court a notice of appearance; *provided* that any such notice of appearance must be received by Co-Lead Counsel, by the Zurich Defendants' Counsel, by the State Liaison Counsel and by the Court no later than fifteen (15) days before the Fairness Hearing, or as the Court may otherwise direct.

      **D.**     Settlement Class Members and any attorneys hired at their expense may obtain access to the discovery materials produced by the Zurich Defendants in this Action for the sole purpose of assessing this Settlement Agreement, but must first agree in writing to be bound by the Stipulation and Order of Confidentiality.  A copy of the Stipulation and Order of Confidentiality proposed by the Settling Parties (attached as Exhibit  L to this Settlement Agreement) will be submitted to the Court for its approval at the time the Settling Parties submit this Settlement Agreement to the Court pursuant to Section XI below.

1.      The discovery materials in this Action shall be made available to a Settlement Class Member (or his, her or its attorney (if any)) for inspection up to the date of the Fairness Hearing by appointment during normal business hours at the offices of Whatley, Drake & Kallas, LLC in New York, New York.

2.      Co-Lead Counsel shall inform the Zurich Defendants' Counsel promptly of any request by a Settlement Class Member or his, her or its attorney for access to the discovery materials, and shall advise the Zurich Defendants' Counsel of the dates on which any such Settlement Class Member (as well as his, her or its attorney (if any)) has been granted access to the discovery materials.  Co-Lead Counsel shall promptly provide the Zurich Defendants' Counsel with a copy of the executed Stipulation and Order of Confidentiality.

**E.**      Any Settlement Class Member who files and serves a written objection pursuant to this Section VIII– and only such Settlement Class Members – may appear at the Fairness Hearing, either in person or through counsel hired at the Settlement Class Member's expense, to object to (*i*) the fairness, reasonableness or adequacy of this Settlement Agreement, (*ii*) the Plan of Allocation, or (*iii*) any term(s) of this Settlement Agreement (including, without limitation, the proposed Attorneys' Fees and Expenses Award).  Settlement Class Members or their attorneys intending to make an appearance at the Fairness Hearing must serve on Co-Lead Counsel, the Zurich Defendants' Counsel and the State Liaison Counsel (as identified in the Notice) and file with the Court a notice of intention to appear; *provided* that any such notice of intention to appear must be received by Co-Lead Counsel, by the Zurich Defendants' Counsel, by the State Liaison Counsel and by the Court no later than fifteen (15) days before the Fairness Hearing, or as the Court may otherwise direct.

**F.**      Any Settlement Class Member who fails to comply with any of the provisions of this Section VIII shall waive and forfeit any and all rights he, she or it may otherwise have to appear separately at the Fairness Hearing and/or to object to this Settlement Agreement, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders and judgments in this Action.

## IX.    RELEASES AND WAIVER, AND ORDER OF DISMISSAL

### A.    Releases and Waiver

1.      Pursuant to the Order Approving Settlement and the Judgment, without further action by anyone, and subject to Section IX.A.5 below, on and after the Final Settlement Date, any and all Settlement Class Members (including Settlement Class Members who are parties to any other litigation, arbitrations or other proceedings pending on the Final Settlement Date to the extent such litigation, arbitration or other proceeding is based upon a Released Claim and is brought against any or all of the Releasees) on behalf of themselves, their heirs, executors, administrators, beneficiaries, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), assigns, any person or entity claiming by or through a Settlement Class Member and any person or entity representing any or all Settlement Class Members, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged all Released Claims against each and every one of the Releasees, Plaintiffs, Class Counsel and the Zurich Defendants' Counsel, including such Released Claims as already have been, could have been or could be asserted in any pending litigation, arbitration, or other proceeding, whether formal or informal.

2.      Pursuant to the Order Approving Settlement and the Judgment, without further action by anyone, and subject to Section IX.A.5 below, on and after the Final Settlement

Date, each of Plaintiffs, Settlement Class Members (including Settlement Class Members who

are parties to any other litigation, arbitrations or other proceedings pending on the Final

Settlement Date to the extent such litigation, arbitration or other proceeding is based upon a

Released Claim and is brought against any or all of the Releasees), Class Counsel, the Zurich

Insurers, the Zurich Defendants' Counsel, or any agents or experts of the foregoing, on behalf of

themselves, their heirs, executors, administrators, predecessors, successors, affiliates (as defined

in 17 C.F.R. Part 210.1-02.b), assigns, any person or entity claiming by or through any of the

Plaintiffs, Settlement Class Members, Class Counsel, the Zurich Insurers, the Zurich Defendants'

Counsel, or any agents or experts of the foregoing, and any person or entity representing any or

all Settling Parties, for good and sufficient consideration, the receipt and adequacy of which are

hereby acknowledged, shall be deemed to have, and by operation of law and of the Judgment

shall have, fully, finally, and forever released, relinquished, settled, and discharged any and all

Settled Parties' Claims.

        3.      Subject to Section IX.A.5 below, with respect to any and all Released

Claims, any and all Settlement Class Members (including Settlement Class Members who are

parties to any other litigation, arbitrations or other proceedings pending on the Final Settlement

Date to the extent such litigation, arbitration or other proceeding is based upon a Released Claim

and is brought against any or all of the Releasees) on behalf of themselves, their heirs, executors,

administrators, beneficiaries, predecessors, successors, affiliates (as defined in 17 C.F.R. Part

210.1-02.b), assigns, any person or entity claiming by or through a Settlement Class Member and

any person or entity representing any or all Settlement Class Members shall have and be deemed

to have waived and relinquished, to the fullest extent permitted by law, any and all provisions,

rights and benefits conferred by Section 1542 of the California Civil Code or any federal, state,

or foreign law, rule, regulation or common law doctrine that is similar, comparable, equivalent, or identical to, or which has the effect of, Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Notwithstanding the provisions of Section 1542 and any similar provisions, rights and benefits conferred by any law, rule, regulation or common law doctrine of California or in any federal, state or foreign jurisdiction, Settlement Class Members understand and agree that, subject to Section IX.A.5 below, the Release is intended to include all Released Claims that Settlement Class Members have or may have, including Released Claims that are Unknown Claims.

4.      Subject to Section IX.A.5 below, with respect to any and all Settled Party Claims, each of Plaintiffs, Settlement Class Members (including Settlement Class Members who are parties to any other litigation, arbitrations or other proceedings pending on the Final Settlement Date to the extent such litigation, arbitration or other proceeding is based upon a Released Claim and is brought against any or all of the Releasees), Class Counsel, the Zurich Insurers, the Zurich Defendants' Counsel, or any agents or experts of the foregoing, on behalf of themselves, their heirs, executors, administrators, beneficiaries, predecessors, successors, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), assigns, any person or entity claiming by or through any of Plaintiffs, Settlement Class Members, Class Counsel, the Zurich Insurers, the Zurich Defendants' Counsel or any agents or experts of the foregoing, and any person or entity representing any or all Plaintiffs, Settlement Class Members, Class Counsel, the Zurich Insurers,

the Zurich Defendants' Counsel or any agents or experts of the foregoing shall have and be deemed to have waived and relinquished, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by Section 1542 of the California Civil Code or any federal, state, or foreign law, rule, regulation or common law doctrine that is similar, comparable, equivalent, or identical to, or which has the effect of, Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Notwithstanding the provisions of Section 1542 and any similar provisions, rights and benefits conferred by any law, rule, regulation or common law doctrine of California or in any federal, state or foreign jurisdiction, Plaintiffs, Settlement Class Members, Class Counsel, the Zurich Insurers, the Zurich Defendants' Counsel or any agents or experts of the foregoing understand and agree that, subject to Section IX.A.5 below above, the Release is intended to include all Settled Party Claims that Plaintiffs, Settlement Class Members, Class Counsel, the Zurich Insurers, the Zurich Defendants' Counsel or any agents or experts of the foregoing have or may have, including Settled Party Claims that are Unknown Claims.

     5.    Notwithstanding Sections IX.A.1, IX.A.2, IX.A.3 and IX.A.4 above, nothing in the Judgment shall bar any action or claim by the Parties to enforce the terms of this Settlement Agreement or the Judgment.

     6.    The releases and waivers contained in this Section IX were separately bargained for and are essential elements of this Settlement Agreement.

### B.    Order of Dismissal

1.    The Settling Parties will seek from the Court a Judgment and an Order Approving Settlement as further described in Section XII below.  The Judgment and Order Approving Settlement shall, among other things, (*i*) approve this Settlement Agreement as fair, reasonable and adequate, (*ii*) dismiss the Action with prejudice and on the merits as to the Zurich Defendants, (*iii*) enter the Bar Order, and (*iv*) incorporate the Release.

## X.    ATTORNEYS' FEES AND EXPENSES

A.    The Zurich Defendants agree (*i*) that Class Counsel are entitled to seek attorneys' fees and expenses, (*ii*) that the Zurich Defendants shall pay such attorneys' fees and expenses as awarded by the Court in an amount not to exceed the Negotiated Fee and Expense Amount and (*iii*) that such payment of the Negotiated Fee and Expense Amount shall be in addition to all other amounts required to be paid by the Zurich Defendants pursuant to the terms of this Settlement Agreement.

B.    Class Counsel agrees to make, and the Zurich Defendants agree not to oppose, an application for an Attorneys' Fees and Expenses Award not to exceed the Negotiated Fee and Expense Amount for attorneys' fees and related expenses.  The Zurich Defendants shall pay or cause to be paid an Attorneys' Fees and Expenses Award in that or a lesser amount pursuant to Section X.A. above, which payment shall be in addition to all other payments that the Zurich Defendants shall pay or cause to be paid under this Settlement Agreement.

C.    The Attorneys' Fees and Expenses Award made by the Court shall be the sole aggregate compensation for all Class Counsel respecting this Settlement Agreement.

D.    If this Settlement Agreement is properly and timely terminated in accordance with the terms of this Settlement Agreement after the Attorneys' Fees and Expenses Award has been paid, then Co-Lead Counsel shall, within five (5) Business Days following such termination,

return to the Zurich Defendants the Attorneys' Fees and Expenses Award with interest at the

Interest Rate to be paid on the Attorneys' Fees and Expenses Award, such interest to be

calculated beginning as of the date the Attorneys' Fees and Expenses Award was paid pursuant

to Section X.B above and ending as of the date the Attorneys' Fees and Expenses Award is

returned to the Zurich Defendants pursuant to this Section X.D.

   **E.**  If, after payment of the Attorneys' Fees and Expenses Award pursuant to Section

X.B above, the Attorneys' Fees and Expenses Award is reduced, then Co-Lead Counsel shall,

within five (5) Business Days, return to the Zurich Defendants the amount by which the

Attorneys' Fees and Expenses Award has been reduced with interest on such amount, such

interest to be calculated at the Interest Rate beginning as of the date the Attorneys' Fees and

Expenses Award was paid pursuant to Section X.B above and ending as of the date such amount

is returned to the Zurich Defendants pursuant to this Section X.E.

   **F.**  Co-Lead Counsel's obligation to return the Attorneys' Fees and Expenses Award

or any portion of it, as described, respectively, in Sections X.D and X.E above, shall be

evidenced by a promissory note, which note shall be executed on behalf of the following firms,

and individually by the partners or the members of the executive committees of such firms:

Whatley, Drake & Kallas, LLC and Miller Faucher and Cafferty LLP.  In addition, as a condition

of receiving the Attorneys' Fees and Expenses Award, Whatley, Drake & Kallas, LLC and

Miller Faucher and Cafferty LLP, on behalf of themselves and each of their partners and/or

shareholders, agree that the law firms and their partners and/or shareholders are subject to the

jurisdiction of the Court for the purpose of enforcing this Section X.F.  Without limitation,

Whatley, Drake & Kallas, LLC and Miller Faucher and Cafferty LLP, and each of their partners

and/or members agree that the Court may, upon application of the Zurich Defendants, on notice

to Whatley, Drake & Kallas, LLC and Miller Faucher and Cafferty LLP, summarily issue orders, including, but not limited to, judgments and attachment orders, and may make appropriate findings of and/or sanctions for contempt, against them or any of them (if applicable) should Whatley, Drake & Kallas, LLC and/or Miller Faucher and Cafferty LLP fail timely to repay any amounts pursuant to this Section X.

G.      No Releasee nor any of his, her or its predecessors, successors, parents, subsidiaries, partners, principals, affiliates (as defined in 17 C.F.R. Part 210.1-02. b), heirs, administrators, executors, attorneys, successors in interest or assigns shall be liable or obligated to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of, any person or entity (including, without limitation, Plaintiffs), directly or indirectly, in connection with the Action or this Settlement Agreement, except as expressly provided for in this Settlement Agreement.

XI.     **PRELIMINARY ORDER CERTIFYING THE SETTLEMENT CLASS AND APPROVING NOTICE**

A.      Within thirty (30) days following the Execution Date, the Settling Parties shall submit the Settlement Agreement to the Court and apply for a Preliminary Approval Order substantially in the form of Exhibit J to this Settlement Agreement.

XII.    **APPROVAL, JUDGMENT AND THE ORDER APPROVING SETTLEMENT**

A.      After the Fairness Hearing, and upon the Court's approval of this Settlement Agreement, the Settling Parties shall seek from the Court a Judgment and an Order Approving Settlement substantially in the form of Exhibits F and B, respectively, attached to this Settlement Agreement.

## XIII.   MODIFICATION OR TERMINATION OF THIS AGREEMENT

A.      The terms and provisions of this Settlement Agreement may be amended,

modified or expanded by agreement of the Settling Parties; *provided however*, that, after entry of

the Judgment and Order Approving Settlement, the Settling Parties may, by written agreement,

effect any amendments, modifications or expansions of this Settlement Agreement and its

implementing documents (including all exhibits to this Settlement Agreement) without notice to

or approval by the Court only if such changes are not materially inconsistent with the Court's

Judgment and Order Approving Settlement and do not materially limit the rights of Settlement

Class Members under this Settlement Agreement; *provided further* that a decision by the

Plaintiffs to modify the Plan of Allocation shall not be deemed to be a change that materially

limits the rights of Settlement Class Members under this Settlement Agreement to the extent

such modification involves an amount equal to or less than ten percent (10%) of the Net Cash

Settlement Amount.

B.      Subject to Sections XIII.C, XIII.D and XIII.E below, this Settlement Agreement

will terminate at the sole option and discretion of the Zurich Defendants or Co-Lead Counsel if

(*i*) the Court, or any appellate court(s), rejects, modifies or denies approval of any portion of this

Settlement Agreement or the proposed settlement that the terminating Settling Party reasonably

and in good faith determines is material, including, without limitation, the terms of relief, the Bar

Order, the findings of the Court, the provisions relating to Notice, the definition of the Settlement

Class and/or the terms of the Release or (*ii*) the Court, or any appellate court(s), does not enter or

completely affirm, or alters or expands, any portion of the Preliminary Approval Order, the

Judgment or the Order Approving Settlement, including the Bar Order, or any of the Court's

findings of fact or conclusions of law that the terminating  Settling Party reasonably and in good

faith believes is material.

**C.**     Subject to Sections XIII.D, XIII.E and XIII.F below, this Settlement Agreement will terminate at the sole option and discretion of the Zurich Defendants if (*i*) the Multi-State Agreement is terminated pursuant to Paragraph 27 of the Multi-State Agreement or (*ii*) the Attorneys' Fees and Expenses Award is in excess of the Negotiated Fee and Expense Amount.

**D.**     A Settling Party seeking to terminate this Settlement Agreement pursuant to the terms set out in Sections XIII.B or XIII.C must exercise the option to withdraw from and terminate this Settlement Agreement no later than ten (10) days after receiving actual notice of the event prompting the termination.

**E.**     Notwithstanding the preceding Section XIII.D, neither Plaintiffs nor Class Counsel may terminate this Settlement Agreement because of the amount of the Attorneys' Fees and Expenses Award.

**F.**     If an option to withdraw from and terminate this Settlement Agreement arises pursuant to the terms set out above, (*i*) the Settling Party(ies) having such option will not be required for any reason or under any circumstance to exercise that option, and (*ii*) any exercise of that option shall be made in good faith.

**G.**     If this Settlement Agreement is terminated pursuant to the terms set out above, then:

1.     This Settlement Agreement shall be null and void and shall have no force or effect, and no Settling Party to this Settlement Agreement shall be bound by any of its terms, except for the terms of this Section XIII;

2.     This Settlement Agreement, all of its provisions, and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of the Zurich Defendants, Plaintiffs or any other Settlement Class Member, all of whom shall be restored to

their respective positions existing immediately before the execution of this Settlement Agreement, except with respect to the payment of Administrative Expenses as described in Section III.A above;

3.      Releasees and their current and former parents, predecessors, successors, heirs, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), agents, attorneys, representatives and assigns expressly and affirmatively reserve all defenses, arguments and motions as to all claims that have been or might later be asserted in the Action, including (without limitation) any argument that the Action may not be litigated as a class action;

4.      Plaintiffs and their current and former parents, predecessors, successors, heirs, affiliates (as defined in 17 C.F.R. Part 210.1-02.b), agents, attorneys, representatives and assigns expressly and affirmatively reserve all motions as to, and arguments in support of, all claims that have been or might later be asserted in the Action, including (without limitation) any argument concerning class certification;

5.      Neither this Settlement Agreement, nor the fact of its having been made, shall be admissible or entered into evidence for any purpose whatsoever;

6.      Neither the Zurich Defendants' agreement to the terms set out in this Settlement Agreement nor their execution of this Settlement Agreement shall constitute or be construed to be an admission by the Zurich Insurers, or any of them that any wrongdoing has taken place, that any federal or state laws or common law have been violated, or that any antitrust injury occurred.

7.      Any monies in the Escrow Account shall be distributed pursuant to the terms of the Escrow Agreement;

8.     The terms of the Confidentiality Agreement shall remain in full force and effect; and

9.     Except as expressly set out in Section X above, nothing in this Settlement Agreement shall create obligations on the part of any Settling Party to pay any other Party's fees or expenses.

## XIV.   GENERAL MATTERS AND RESERVATIONS

**A.**     Plaintiffs agree that they will support any motion filed by the Zurich Defendants with the Court seeking to have the Court declare as unenforceable any claim that the Zurich Insurers, or any of them, are required to pay any contingent commissions under agreements, arrangements or understandings with the Broker Defendants (or any of their affiliates or subsidiaries) unless such monies after being paid to a Broker Defendant are being refunded or repaid by such Broker Defendant to Settlement Class Members.

**B.**     The Zurich Defendants on behalf of themselves and all other Releasees shall agree to act with reasonable diligence in fully and completely cooperating in response to Class Counsel's inquiries in connection with the continued prosecution of any claims in the Action subject to the terms of the Confidentiality Agreement; *provided however*, that, subject to the appropriate protection of trade secrets and confidential commercial information, Co-Lead Counsel shall be able to use information obtained from the Zurich Defendants in any judicial proceedings involving nonsettling defendants in this Action and the EB Action, which information shall be placed into the joint depository established by the Court, for the continued prosecution of any claims in the Action and the EB Action and shall be subject to the confidentiality provisions set forth in the Corrected Discovery Confidentiality Order on Informal Application dated September 23, 2005; *provided further* that in complying with this Section XIV.B, the Zurich Defendants shall not be obligated to provide Class Counsel with any

48

information that is subject to any privilege; *provided further* that any former employee of a Zurich Defendant or a Zurich Insurer who has pled (or in the future pleads) guilty, or has been (or in the future is) indicted, in connection with a Governmental Investigation shall not be a Releasee under the Settlement Agreement unless such individual agrees to comply with this Section XIV.B; *provided further* that, if any Settlement Class Member obtains a judgment against any such unreleased former employee, such Settlement Class Member (*i*) will not seek to recover any portion of that judgment from any Releasee and (*ii*) will reduce its judgment against any such former employee by any amount that the former employee might recover from any Releasee, to ensure that such Releasee will not have to make any payments to or on behalf of that former employee; *provided however*, that the Zurich Defendants shall oppose any effort by a noncooperating former employee to recover any such amount from a Releasee.

     **C.**     Plaintiffs and Co-Lead Counsel agree that the terms and provisions of the Confidentiality Agreement shall continue to be in effect until such time as the Settling Parties mutually agree to terminate such agreement.

     **D.**     By execution of this Settlement Agreement, the Zurich Defendants do not intend to release any claim against any insurer for any cost or expense hereunder, including attorneys' fees and costs.

     **E.**     Co-Lead Counsel represents that, consistent with the May 25 Order, it is expressly authorized to enter into this Settlement Agreement on behalf of Plaintiffs and any other attorneys, including Class Counsel, who have represented or who now represent Plaintiffs in this Action and/or with respect to the Released Claims.   Notwithstanding the foregoing, Co-Lead Counsel's execution of the Settlement Agreement is subject to the Plaintiffs' approval of the Negotiated Fee and Expense Amount, which approval will be communicated in writing by Co-

Lead Counsel to the Zurich Defendants' counsel within ten (10) days following the Execution Date.

      **F.**     Plaintiffs represent and certify that (*i*) they have agreed to serve as representatives of the Settlement Class proposed to be certified herein; (*ii*) they are willing, able and ready to perform all of the duties and obligations as representatives of the Settlement Class, including, but not limited to, being available for, and involved in, discovery and fact finding; (*iii*) they have read the pleadings in this Action, including the Consolidated Commercial Complaint, or have had the contents of such pleadings described to them; (*iv*) they have been kept apprised of the progress of the Action and/or the settlement negotiations among the Settling Parties, and have either read this Settlement Agreement, including the exhibits attached to the Settlement Agreement, or have received a description of it from Co-Lead Counsel, and they have agreed to its terms; (*v*) they have consulted with Class Counsel about the Action, this Settlement Agreement and the obligations of a representative of a class; (*vi*) they have authorized Co-Lead Counsel to execute this Settlement Agreement on their behalf, and (*vii*) they will remain and serve as representatives of the Settlement Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that said Plaintiffs cannot represent the Settlement Class.

      **G.**     Ralph C. Ferrara and Ann M. Ashton represent that they are authorized to enter into this Settlement Agreement on behalf of the Zurich Defendants and any attorneys who have represented or who now represent the Zurich Defendants, or any of them, in the Action.

      **H.**     This Settlement Agreement sets forth the entire agreement among the Settling Parties with respect to its subject matter, and it may not be altered or modified except by written instrument executed by Co-Lead Counsel and the Zurich Defendants' Counsel. The Settling

Parties expressly acknowledge that no other agreements, arrangements or understandings not expressed in this Settlement Agreement exist among or between them.  In entering into this Settlement Agreement, no party has relied upon any representation or warranty not set forth expressly herein.

     **I.**     This Settlement Agreement and any ancillary agreements shall be governed by and interpreted according to the law of the state of New Jersey, excluding its conflict of laws provisions.

     **J.**     This Settlement Agreement supersedes the MOU.

     **K.**     The Court retains continuing and exclusive jurisdiction over this Settlement Agreement, the Settling Parties, all Settlement Class Members and all Releasees to adjudicate all issues relating to this Settlement Agreement.  Any action arising under or to enforce this Settlement Agreement shall be commenced and maintained only in this Court; *provided, however*, that jurisdiction to enforce this Settlement Agreement shall not constitute a basis for nor give rise to personal jurisdiction over Zurich Financial Services, or over any of its subsidiaries whose principal places of business are located outside of the United States to the extent such jurisdiction does not already exist.

     **L.**     Whenever this Settlement Agreement requires or contemplates that a Settling Party shall or may give notice to the other, notice shall be provided by facsimile and/or next-day (excluding Saturday and Sunday) express delivery service as follows and shall be deemed effective upon such facsimile transmission, or delivery, to the facsimile number, or address, as the case may be, below:

          1.     If to the Zurich Defendants, then to:

Alice Kane, Esq.
Zurich North America
105 E. 17th Street
New York, New York  10004
Telephone:  (917) 534-4500
Facsimile:  (866) 670-2154

*and*

David Bowers, Esq.
Zurich North America
1400 American Lane
Schaumburg, Illinois  60196
Telephone:  (847) 605-6120
Facsimile:  (847) 413-5574

*and*

Ralph C. Ferrara, Esq.
Ann M. Ashton, Esq.
LeBoeuf, Lamb, Greene & MacRae LLP
1875 Connecticut Ave., NW
Washington, D.C.  20009
Telephone:  (202) 986-8000
Facsimile:  (202) 986-8102

2. If to Plaintiffs, then to:

Edith M. Kallas, Esq.
Whatley, Drake & Kallas, LLC
75 Rockefeller Plaza, 19th Floor
New York, New York 10019
Telephone:  (212) 447-7070
Facsimile:  (212) 447-7077

*and*

Bryan L. Clobes, Esq.
Miller Faucher and Cafferty LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103
Telephone:  (215) 864-2800
Facsimile:  (215) 864-2810

3. If to the Settling Attorneys General:

> Mark Tobey, Esq.
> Chief, Antitrust and Civil Medicaid Fraud Division
> Office of the Attorney General – State of Texas
> 300 W. 15th Street, 9th Floor
> Austin, Texas 78701
> Telephone: (512) 463-1262
> Facsimile: (512) 320-0975

**M.** All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Settlement Agreement or by order of court, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, or, when the act to be done is the filing of a paper in Court, a day on which weather or other conditions have made the office of the Clerk of the Court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days. As used in this Section, "legal holiday" includes New Year's Day, the observance of the birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day and any other day appointed as a federal or a New Jersey state holiday.

**N.** The Settling Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

**O.** All Settling Parties agree that this Settlement Agreement was drafted by counsel for the Settling Parties at arm's-length, and that no parol or other evidence may be offered to explain, construe, contradict or clarify its terms, the intent of the Settling Parties or their counsel, or the circumstances under which the Settlement Agreement was made or executed. Nor shall

there be any presumption for or against any Settling Party that drafted all or any portion of this Settlement Agreement.

    **P.**    In no event shall the Settlement Agreement, any of its provisions, or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in this Action, any other action, or any judicial, administrative, regulatory or other proceeding, except a proceeding to enforce this Settlement Agreement.  Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including but not limited to the Zurich Insurers, or as a waiver by the Zurich Insurers of any applicable defense or as a waiver by Plaintiffs or the Settlement Class of any claims, causes of action or remedies.

    **Q.**    No opinion or advice concerning the tax consequences of the proposed settlement to individual Settlement Class Members is being given or will be given by the Zurich Defendants' Counsel and/or Class Counsel; nor is any representation or warranty in this regard made by virtue of this Settlement Agreement.  The Notice will direct Settlement Class Members to consult their own tax advisors regarding the tax consequences of the proposed settlement and any tax reporting obligations they may have with respect thereto.  Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

    **R.**    The Settling Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Settlement Agreement in good faith and to act in good faith in

resolving any disputes that may arise in the implementation of the terms of this Settlement

Agreement.

      S.     This Settlement Agreement may be signed in counterparts, each of which shall

constitute a duplicate original.  Execution by facsimile or by an electronically transmitted

signature shall be fully and legally binding on a Settling Party.

      T.     All Releasees who are not parties to this Settlement Agreement are intended third-

party beneficiaries entitled to enforce the terms of the Release set forth herein.

Agreed to as of this 28th day of July , 2006.


_Edith M. Kallas_
Edith M. Kallas
Whatley, Drake & Kallas, LLC
75 Rockefeller Plaza, 19th Floor
New York, New York  10019

Ralph C. Ferrara
Ann M. Ashton
LeBoeuf, Lamb, Greene & MacRae LLP
1875 Connecticut Avenue, N.W.
Suite 1200
Washington, D.C.  20009

_On Behalf of the Zurich Defendants_

Bryan L. Clobes
Miller Faucher and Cafferty LLP
One Logan Square, Suite 1700
18th and Cherry Streets
Philadelphia, Pennsylvania  19103

_On Behalf of Plaintiffs_

resolving any disputes that may arise in the implementation of the terms of this Settlement

Agreement.

      **S.**    This Settlement Agreement may be signed in counterparts, each of which shall

constitute a duplicate original. Execution by facsimile or by an electronically transmitted

signature shall be fully and legally binding on a Settling Party.

      **T.**    All Releasees who are not parties to this Settlement Agreement are intended third-

party beneficiaries entitled to enforce the terms of the Release set forth herein.

      Agreed to as of this 28th day of July, 2006.


_____      _____
Edith M. Kallas                    Ralph C. Ferrara
Whatley, Drake & Kallas, LLC         Ann M. Ashton
75 Rockefeller Plaza, 19th Floor      LeBoeuf, Lamb, Greene & MacRae LLP
New York, New York 10019        1875 Connecticut Avenue, N.W.
                              Suite 1200
                              Washington, D.C. 20009
_____
Bryan L. Clobes
Miller Faucher and Cafferty LLP       *On Behalf of the Zurich Defendants*
One Logan Square, Suite 1700
18th and Cherry Streets
Philadelphia, Pennsylvania 19103

*On Behalf of Plaintiffs*

resolving any disputes that may arise in the implementation of the terms of this Settlement Agreement.

      **S.**     This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original. Execution by facsimile or by an electronically transmitted signature shall be fully and legally binding on a Settling Party.

      **T.**     All Releasees who are not parties to this Settlement Agreement are intended third-party beneficiaries entitled to enforce the terms of the Release set forth herein.

      Agreed to as of this 28 day of July , 2006.

_____

Edith M. Kallas
Whatley, Drake & Kallas, LLC
75 Rockefeller Plaza, 19th Floor
New York, New York 10019

_____

Bryan L. Clobes
Miller Faucher and Cafferty LLP
One Logan Square, Suite 1700
18th and Cherry Streets
Philadelphia, Pennsylvania 19103

*On Behalf of Plaintiffs*

_____

Ralph C. Ferrara
Ann M. Ashton
LeBoeuf, Lamb, Greene & MacRae LLP
1875 Connecticut Avenue, N.W.
Suite 1200
Washington, D.C. 20009

*On Behalf of the Zurich Defendants*