UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re INSURANCE BROKERAGE ANTITRUST LITIGATION | Civil Action No. 2:04-CV-5184, 2:05-CV-1079 and 2:05-CV-5533 (FSH)(PS) |
| APPLIES TO ALL ACTIONS | MDL No. 1663 |
| | Hon. Faith S. Hochberg |
| In re EMPLOYEE BENEFIT INSURANCE BROKERAGE ANTITRUST LITIGATION | STIPULATION OF SETTLEMENT BETWEEN CLASS PLAINTIFFS AND ARTHUR J. GALLAGHER & CO. DEFENDANTS |
| APPLIES TO ALL ACTIONS | |

Table of Contents

Page

1.   Additional Definitions ..................................................................... 5

2.   Preliminary Approval of Settlement ............................................... 22

3.   Settlement Consideration ................................................................ 22

4.   Attorneys' Fees and Expenses, and Incentive Awards.................... 30

5.   Cooperation.................................................................................... 32

6.   Notice to the Settlement Class; Notice to Parties  Pursuant to This
     Agreement; Settlement Administration Services ........................... 33

7.   Commitment to Support and  Communicate with Settlement Class
     Members ........................................................................................ 37

8.   Procedure For Final Approval: Limited Waiver............................. 38

9.   Termination of this Agreement....................................................... 44

10.  Eligibility, Allocation and Disbursements to Settlement Class
     Members ........................................................................................ 47

11.  Other Settlement Administration Provisions.................................. 48

12.  Class Certification for Settlement Purposes Only .......................... 49

13.  Claims Disputes ............................................................................ 50

14.  Consent to Jurisdiction.................................................................. 50

15.  Resolution of Disputes: Retention of Jurisdiction......................... 50

16.  Discharge of All Released Claims .................................................. 51

17.  Waiver of California Civil Code Section 1542 .............................. 52

18.  Preservation of Rights.................................................................... 53

Table of Contents
(continued)

Page

19.   Non-Released Persons and Non-Released Claims ........................................ 54

20.   Stay of Proceedings ..................................................................... 55

21.   No Evidence; No Admission of Liability .................................................... 58

22.   Entire Settlement Agreement; Amendment, and Waiver ............................ 59

23.   Construction ............................................................................. 61

24.   Authority to Enter Into Settlement Agreement........................................... 61

25.   Enforcement of Settlement ............................................................... 63

26.   Execution in Counterparts ............................................................... 63

27.   Successors and Assigns .................................................................. 63

28.   Governing Law ........................................................................... 64

29.   Headings Not Controlling................................................................. 64

30.   Severability .............................................................................. 64

31.   Notices ................................................................................... 64

NY:1068288.11

## Index of Exhibits

Exhibit A      Class Counsel Listing

Exhibit B      Listing of Commercial Broker Defendants

Exhibit C      Listing of Commercial Insurer Defendants

Exhibit D      Listing of EB Broker Defendants

Exhibit E      Listing of EB Insurer Defendants

Exhibit F      Final Judgment and Order Approving Settlement

Exhibit G      Listing of Gallagher Entities

Exhibit H      Mailed Notice

Exhibit I      Preliminary Approval Order

Exhibit J      Proof of Claim Form

Exhibit K      Published Notice

Exhibit L      Escrow Agreement

Exhibit M      Listing of Newspapers

Exhibit N      Confidentiality Order

This Stipulation of Settlement ( "Settlement Agreement") is submitted pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP"). This Settlement Agreement is made and entered into as of the date set forth on the signature pages hereto by and among the Class Plaintiffs (defined below in Section 1.10) and the defendants Arthur J. Gallagher & Co., Arthur J. Gallagher Risk Management Services, Inc. and Gallagher Benefit Services, Inc., (collectively, "Gallagher" or the "Gallagher Defendants"), by and through their counsel of record in the above-captioned action (the "Settling Parties"). Subject to the approval of the Court (defined below in Section 1.18), the Settling Parties, through their respective counsel ("Settlement Counsel"), intend this Settlement Agreement to resolve, discharge and settle the Released Claims (defined below in Section 1.47), fully, finally, and forever according to the terms and conditions set forth below.

## WITNESSETH:

**WHEREAS**, the Gallagher Defendants have been named as Defendants (defined below in Section 1.19) in the Action (defined below in Section 1.1) alleging that the Gallagher Defendants, among other things, engaged in certain conduct in violation of federal and state statutes and common law; and

**WHEREAS**, the Court had ordered that the Action proceed under: (a) a Consolidated Commercial Class Action Complaint; and (b) a Consolidated Employee Benefits Class Action Complaint (the "Complaints"); and

**WHEREAS**, a May 25, 2005 Order and a July 17, 2006 Order in the Action (the "Leadership Orders") appointed the law firms of Whatley, Drake & Kallas, LLP ("Whatley Drake") and Miller Faucher and Cafferty LLP ("Miller Faucher"), as co-lead counsel ("Co-Lead Counsel"); and

**WHEREAS**, the Leadership Orders provide that Co-Lead Counsel shall, among other things, conduct settlement negotiations on behalf of Class Plaintiffs and enter into binding agreements with respect to settlement as expressly authorized; and

**WHEREAS**, as of November 15, 2006, Class Plaintiffs have obtained in excess of 50 million pages of documents from various Defendants, including the Gallagher Defendants; and

**WHEREAS**, consistent with the Leadership Orders, Co-Lead Counsel and other Class Counsel (defined below in Section 1.8) have conducted extensive settlement negotiations with the Gallagher Defendants on behalf of Class Plaintiffs; and

**WHEREAS**, the Gallagher Defendants, whose principal place of business and headquarters are in the State of Illinois, entered into an Assurance of Voluntary Compliance (the "Illinois AVC") with the Attorney General of Illinois and the Director of the Illinois Division of Insurance and a Stipulation and Consent Order with the Director of the Illinois Division of Insurance (the "Illinois Insurance

Stipulation") each dated May 18, 2005 (the Illinois AVC and Illinois Insurance Stipulation are hereafter referred to as the "Illinois Regulatory Settlements"); and

**WHEREAS**, without admitting any liability whatsoever, the Gallagher Defendants have, pursuant to the Illinois Regulatory Settlements, voluntarily implemented various business reforms (in addition to the proposed reforms set forth below in Section 3.2) related to their practices on the purchasing, renewal, placement or servicing of insurance for their clients and transferred $26,962,500 into a fund from which amounts were distributed to certain Brokerage (defined below in Section 1.5) customers of Gallagher who retained the Gallagher Defendants to place, renew, consult on or service insurance on a Retail (defined below in Section 1.50) basis where such placement resulted in Contingent Compensation (defined below in Section 1.17); and

**WHEREAS**, the Complaints were amended as of August 15, 2005 (the "Amended Complaints") and allegations in the Amended Complaints include, *inter alia* certain of the claims and allegations addressed in the Illinois Regulatory Settlements; and

**WHEREAS**, the Gallagher Defendants deny that they have violated any law or other duty or agreement or obligation to Class Plaintiffs, deny any liability to Class Plaintiffs for any claims, causes of action, costs, expenses, attorneys' fees or damages

- 3 -

of any kind, deny that they have done anything wrong and each deny the allegations of wrongdoing brought by Class Plaintiffs in the Action; and

**WHEREAS**, this Settlement Agreement sets out the terms of an agreement between the Settling Parties pursuant to which the Settling Parties agree to settle the claims that have been made or that could have been made against the Gallagher Defendants in the Action; and

**WHEREAS**, neither the Gallagher Defendants' agreement to the terms hereof, their execution of this Settlement Agreement, nor their good faith negotiation and execution of the Settlement Agreement shall constitute or be construed to be an admission by the Gallagher Defendants or any of the Gallagher Entities (defined below in Section 1.34) , that any wrongdoing has taken place, or that any federal or state laws or common law have been violated;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED BY THE SETTLING PARTIES**, by and through Settlement Counsel, that, subject to the approval of the Court, the Action and the Released Claims shall be finally and fully resolved, compromised, discharged and settled under the following terms and conditions:

- 4 -

1.    **Additional Definitions**

As used in this Settlement Agreement, the following terms have the meanings indicated below:

1.1.    "**Action**" means: (a) In re Insurance Brokerage Antitrust Litigation, MDL No. 1663, Civil Action No. 2:04-5184 (FSH) and In re Employee Benefit Insurance Brokerage Antitrust Litigation, MDL No. 1663 Civil Action No. 2:05-1079 (FSH), and Belmont Holdings Corp. vs. Marsh & McLennan Companies, Inc., et al. pending in the Court including, without limitation, all cases consolidated, transferred or conditionally transferred in the Action as of the date of entry of Final Judgment and Order Approving Settlement (defined below in Section 1.31); and (b) the State Action (defined in Section 1.58 below).

1.2.    "**Attorneys' Fees and Expenses**" means the attorneys' fees and expenses that are to be paid by the Gallagher Defendants, which were negotiated by Settlement Counsel after all other issues had been resolved, in an amount not to exceed $8,850,000, subject to Court approval.

1.3.    "**Bar Order**" means an order of the Court barring the assertion of claims against the Released Parties (defined below in Section 1.48) for contribution, indemnity or other similar claims by the Non-Settling Defendants (defined below in

Section 1.38) or other Persons (defined below in Section 1.40) in the form included as part of the Final Judgment and Order Approving Settlement.

1.4.    "**Broker**" shall mean a Person required to be licensed under applicable laws to sell, solicit or negotiate insurance.

1.5.    "**Brokerage**" shall mean the business of Brokers.

1.6.    "**Broker Defendants**" shall mean the Commercial Broker Defendants (defined below in Section 1.12) and the EB Broker Defendants (defined below in Section 1.20).

1.7.    "**Business Day**" means any day on which commercial banks are open for business in New York City, exclusive of Saturday or Sunday.

1.8.    "**Class Counsel**" means those Persons set forth in the Schedule annexed as Exhibit A.

1.9.    "**Class Period**" means August 26, 1994 through December 31, 2005, inclusive.

1.10.    "**Class Plaintiff(s)**" means   OptiCare Health Systems, Inc.; Comcar Industries, Inc.;   Sunburst Hospitality Corporation; Robert Mulcahy; Golden Gate

- 6-

Bridge, Highway and Transportation District; Glenn Singer; Redwood Oil Company; Omni Group of Companies; Bayou Steel Corporation; Clear Lam Packaging, Inc.; Cellect, LLC; The Enclave, LLC; Gateway Club Apartments, Ltd; Michigan Multi-King Inc.;  City of Stamford; David Boros; Cynthia C. Brandes; Alicia A. Pombo; MaryAnn Waxman, Richard H. Kimball, City of Danbury, Connecticut Spring & Stamp Company, Fire District of Sun City West; Belmont Holdings Corp.; and the Village of Orland Hills (Class Plaintiff in the State Action) or any of them, both in their individual capacity and in their capacity as representatives of the Settlement Class (defined below in Section 1.54).

**1.11.** "**Company**" means the Gallagher Entities.

**1.12.** "**Commercial Broker Defendants**" means those Defendants set forth on Exhibit B.

**1.13.** "**Commercial Class**" or "**Commercial Class Member**"  means all Persons who, had a Commercial Settlement Class Policy Purchase (defined below in Section 1.16), *provided further* that "Commercial Class" or "Commercial Class Member" does not include:  (a) such Persons who submit valid and timely requests for exclusion from the Settlement Class in accordance with the procedures set out in Section 8.1 of this Settlement Agreement ("Opt-Outs"); (b) such Persons who settled

an actual or threatened lawsuit or other proceeding with the Gallagher Entities or any

of them, and released Gallagher from any further claims concerning their Commercial

Settlement Class Policy Purchase; (c) such Persons who have elected to receive

monetary payments pursuant to the Illinois Regulatory Settlements *provided however*,

that such Persons who have elected to receive monetary payments pursuant to the

Illinois Regulatory Settlements shall be Settlement Class Members (defined below in

Section 1.54) respecting their Settlement Class Policy Purchases (defined below in

Section 1.55) that are not eligible to receive relief under the Illinois Regulatory

Settlements, with respect to which the Gallagher Defendants shall waive enforcement

of the release provided in the Illinois Regulatory Settlements (the "Regulatory

Release") to the extent that such Persons participate in the Settlement Class with

respect to such purchases, *provided further* that the Gallagher Defendants reserve the

right to enforce the Regulatory Release in its entirety as to any Persons who have

elected to receive monetary payments pursuant to Illinois Regulatory Settlements to

the extent such Persons seek relief from the Gallagher Defendants outside of this

Settlement Agreement for Commercial Settlement Class Policy Purchases that are not

eligible to receive relief under the Illinois Regulatory Settlements; (d) such Persons

who are Defendants (including their officers and directors); (e) any Persons in which

the Gallagher Defendants, or any of them, has or had a controlling interest during the

Class Period and the legal representatives, heirs, executors, successors or assigns of any such excluded Persons; and (f) any director or officer of the Gallagher Defendants, or any of them, during the Class Period (the "Excluded Persons").

1.14. **"Commercial Insurance"** means allied lines, blanket, boiler and machinery, burglary and theft, business interruption, business owners, casualty, commercial auto, comprehensive general liability, credit, crime, directors and officers liability, employment practices liability, fire, flood, general liability, inland marine, key person, malpractice, marine, municipal bond, national flood, occurrence, ocean marine, package, primary, product liability, professional liability, surety and fidelity, and workers compensation insurance.

1.15. **"Commercial Insurer Defendants"** mean those Defendants set forth on Exhibit C.

1.16. **"Commercial Settlement Class Policy Purchase"** means all the insurance Brokerage and any related administrative, advisory or claims services provided by the Gallagher Entities or any other Broker Defendant to any Settlement Class Member during the Class Period where the coverage or services incepts, begins or renews during the Class Period pursuant to a contract, policy, agreement, arrangement or understanding where the insurance or reinsurance: (a) involved an

- 9-

insured or Policyholder (defined below in Section 1.42) thereof, any of which was either domiciled in or resident in, or had any other significant contact with, the United States, its territories or possessions; (b) involved a contract, policy, agreement, arrangement or understanding entered into in the United States, its territories or possessions; (c) involved a contract, policy, agreement, arrangement or understanding subject to federal law or to the law of any of the states of the United States, its territories or possessions; or (d) provide coverage for an insurable exposure in the United States, its territories or possessions.

1.17. "**Contingent Compensation**" means any commissions, fees, performance bonuses, overrides, or other consideration of any nature, whatsoever, received by or for the benefit of the Gallagher Entities  in connection with their services in placing, renewing, consulting on or servicing any insurance policy which consideration is:  (a) contingent upon:

(1)    Placing a particular number of policies or dollar value of premium with the insurer;

(2)    Achieving a particular level of growth in the number of policies placed or dollar value of premium with the insurer;

(3)    Meeting a particular rate of retention or renewal of policies in force with the insurer;

(4)    Placing or keeping sufficient insurance business with the insurer to achieve a particular loss ratio or any other measure of profitability; and

(5)    Providing preferential treatment in the placement process, including, but not limited to, the giving of last looks, first looks, rights of first refusal, or limiting the number of bids sought from insurers or insurance placements; or

(b)    is challenged because it allegedly was undisclosed or disclosed in a misleading manner. Contingent Compensation does not include specific fees to be paid directly by the Broker's customer to the Broker or specific percentage commission on premiums to be paid by the insurer on an individual policy, where the dollar value of such commission is ascertainable at the time of purchase, renewal, placement or servicing of that insurance policy and does not depend upon the Broker's placement of other policies with the insurer paying the specific percentage commission.

(c)    Contingent Compensation does not include Supplemental Compensation as defined in Section 1.59.

1.18.   "**Court**" shall mean the United States District Court for the District of New Jersey, where the Action is pending before the Honorable Judge Faith S. Hochberg.

1.19.   "**Defendant(s)**" mean   the Broker Defendants and the Insurer Defendants.

1.20.   "**EB Broker Defendants**" means those Defendants set forth on Exhibit D.

1.21.   "**EB Class**" and "**EB Class Member**" means all Persons within the Employee Class (defined below in Section 1.26) and/or the Employer Class (defined below in Section 1.27).

1.22.   "**EB Insurer Defendants**" means those Defendants set forth on Exhibit E.

1.23.   "**EB Insurance**" means group coverage or supplemental coverage for accidental injury, accidental death, life and health related insurance.

1.24.   "**EB Settlement Class Policy Purchase**" means the purchase or renewal of EB Insurance or reinsurance thereof and related administrative, advisory or claims services obtained through engaging the services of the Gallagher Entities or any other

- 12-

Broker Defendant where the coverage or services under such EB Insurance, or reinsurance thereof incepts, begins or renews during the Class Period pursuant to a contract, policy, agreement, arrangement or understanding where the EB Insurance or reinsurance thereof: (a) involved an insured or Policyholder thereof, any of which was either domiciled in or resident in, or had any other significant contact with, the United States, its territories or possessions; (b) involved a contract, policy, agreement, arrangement or understanding entered into in the United States, its territories or possessions; (c) involved a contract, policy, agreement, arrangement or understanding subject to federal law or to the law of any of the states of the United States, its territories or possessions; or (d) provided coverage for an insurable exposure in the United States, its territories or possessions.

**1.25.** "**Effective Date**" means the date on which the Final Judgment and Order Approving Settlement become Final (defined below in Section 1.30).

**1.26.** "**Employee Class**" and "**Employee Class Member**" means all Persons that: (a) were employees in the United States receiving EB Insurance from a plan governed by ERISA, exclusive of Excluded Persons; and/or (b) were employees, including governmental or religious employees or members of associations or groups

- 13-

providing EB Insurance, exclusive of Excluded Persons; and (c) have paid in full or in part for an EB Settlement Class Policy Purchase.

1.27.    "**Employer Class**" and "**Employer Class Member**" means all Persons that: (a) were employers providing EB Insurance pursuant to a plan governed by ERISA, exclusive of Excluded Persons; or (b) were employers, including governmental or religious employers, or associations or groups of Persons providing EB Insurance, exclusive of Excluded Persons; and (c) have paid in full or in part for an EB Settlement Class Policy Purchase.

1.28.    "**Execution Date**" means the latter of: (a) the date on which the signature of the Gallagher Defendants' Counsel (defined below in Section 1.33) has been delivered to Co-Lead Counsel; and (b) the date on which the signatures of Co-Lead Counsel have been delivered to the Gallagher Defendants' Counsel.

1.29.    "**Fairness Hearing**" means the hearing at or after which the Court will make a final decision pursuant to FRCP 23 as to whether to approve this Settlement Agreement.

1.30.    "**Final**" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final and no longer subject to appeal:

- 14-

a.      if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired, or

b.      if any appeal is taken therefrom, on the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for *certiorari* or any other form of review, have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in an affirmance of the order of judgment.

1.31.   **"Final Judgment and Order Approving Settlement"** means the order and form of judgment approving this Settlement Agreement and substantially in the form attached as Exhibit F.

1.32.   **"Gallagher Client"** means Persons within the Settlement Class that used a Gallagher Entity to make a Settlement Class Policy Purchase.

1.33.   **"Gallagher Defendants' Counsel"** means the law firm of Winston & Strawn LLP.

1.34.   **"Gallagher Entities"** means the Gallagher Defendants and all of their direct and indirect subsidiaries, affiliates and units, as set forth on Exhibit G.

1.35.   **"Insurer Defendants"** mean the Commercial Insurer Defendants and the EB Insurer Defendants.

1.36.   "**Interest Rate**" means interest calculated on a simple interest basis based upon the one-year US LIBOR rate; *provided* that for each month during which interest is to be calculated, the rate shall be established based upon the one-year US LIBOR rate on the first day of each month, as published in *The Wall Street Journal* under the description of "Money Rates".

1.37.   "**Mailed Notice**" means the form of notice approved by the Court in the Preliminary Approval Order (defined below in Section 1.44), substantially in the form annexed as Exhibit H.

1.38.   "**Negotiated Fee and Expense Amount**" means the amount of Eight Million Eight Hundred Eighty Five Thousand Dollars ($8,885,000.00), which amount was negotiated by the Settling Parties only after all other terms of the Agreement had been resolved.

1.39.   "**Non-Settling Defendants**" means the Defendants, exclusive of the Gallagher Defendants

1.40.   "**Person**" and "**Persons**" shall mean all persons and entities, including without limitation natural persons, firms, corporations, limited liability companies, joint ventures, joint stock companies, unincorporated organizations, political

subdivisions, associations, partnerships, limited liability partnerships, trusts, and their predecessors, successors, administrators, executors, heirs and assigns.

1.41. "**Plan of Allocation**" means the terms and procedures for allocating the Settlement Fund (defined below in Section 1.56) and distributing the Settlement Fund to Settlement Class Members. A copy of the proposed Plan of Allocation will be submitted to the Court with Motion for entry for the Preliminary Approval Order.

1.42. "**Policyholder**" shall mean a Retail policyholder who retained a Gallagher Entity in the United States to place, renew, consult or administer insurance Brokerage services and any related administrative, advisory or claims services.

1.43. "**Preliminary Approval Date**" means the date the Preliminary Approval Order is entered by the Court.

1.44. "**Preliminary Approval Order**" means the Preliminary Approval Order, substantially in the form attached as Exhibit I.

1.45. "**Proof of Claim Form**" means the document substantially in the form attached as Exhibit J.

1.46. "**Published Notice**" means the document substantially in the form attached as Exhibit K.

**1.47.** "**Released Claims**" means any and all claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Releasors (defined below in Section 1.49) ever has, now has, or hereafter can, shall or may have, directly, or in any capacity, arising out of any conduct, events or transactions alleged against the Gallagher Entities, in the Action. Released Claims shall not include claims, whether known or unknown, of Settlement Class Members to enforce the contractual terms of insurance or reinsurance issued by an Insurer Defendant or pending claims, cases, litigation or demands (if any) related to (a) securities fraud, (b) derivative litigation or (c) claims on behalf of beneficiaries of employee benefit plans sponsored by Releasees. All Releasors covenant and agree that, after the Effective Date, they shall not seek to establish liability based, in whole or in part, against any of the Released Parties on any of the Released Claims.

**1.48.** "**Releasee**," "**Released Parties**", or "**Released Persons**" means the Gallagher Entities and their current and former parent corporations, predecessors, successors in interest, subsidiaries, divisions, affiliated or related entities, successors and assigns and each of their past and present directors, officers, employees and Settlement Counsel.

1.49.   "**Releasors**" means all Settlement Class Members who have not timely submitted an Opt-Out, as well as their successors, assigns, heirs, executors, trustees, parents, subsidiaries, divisions, partners, affiliates, present and former stockholders, officers, directors, employees and any future operating entities created and controlled by such a Settlement Class Member, and any predecessors, administrators, and any Persons on whose behalf a Settlement Class Member is authorized to act.   All Released Claims are forever discharged, and such claims cannot be asserted by any of Releasors' future, direct and indirect, parents, subsidiaries, divisions, partners and affiliates, their respective future stockholders, officers, directors, employees, and any of their successors, heirs, executors or trustees of each of the foregoing.

1.50.   "**Retail**" shall mean where Gallagher is the direct, primary provider of insurance Brokerage services to a Policyholder and excluding where Gallagher provides services to other Brokers as a managing general agent, managing general underwriter or wholesaler.

1.51.   "**Settlement**" means the terms encompassed in the Settlement Agreement.

1.52.   "**Settlement Administrator**" means Complete Claim Solutions, LLC, ("CCS"), subject to approval by the Court in the Preliminary Approval Order.   The

Settlement Administrator shall perform or be responsible for *inter alia*: (a) mailing and publishing the Settlement Notice (defined below in Section 1.57); (b) training operators and maintaining a toll-free number for inquiries; (c) maintaining a website respecting the Settlement (the "Settlement Administrator's Website"); (d) processing the Proof of Claim Forms; (e) informing Settlement Class Members of any deficiencies in their Proof of Claim Form; (f) processing the distribution of the Settlement Fund; (g) providing reports to Settlement Counsel; (h) filing reports with Court as provided by the Settlement Agreement or otherwise ordered by the Court (collectively, the "Settlement Administration Services").

**1.53.** **"Settlement Amount"** means Twenty Eight Million Dollars ($28,000,000.00). The Settlement Amount is exclusive of any payments for Attorneys' Fees and Expenses of any kind, including the cost of dissemination of the Settlement Notice and all Settlement Administration Services performed by CCS.

**1.54.** **"Settlement Class"** and **"Settlement Class Member"** mean all Persons within the Commercial Class or the EB Class.

**1.55.** **"Settlement Class Policy Purchase"** means a Commercial Settlement Class Policy Purchase and/or an EB Settlement Class Policy Purchase.

**1.56.** "**Settlement Fund**" means the Settlement Amount together with interest at the Interest Rate.

**1.57.** "**Settlement Notice**" means the Mailed Notice, the Published Notice, Proof of Claim Form, and the website notice described below in Section 6.3 ("Website Notice").

**1.58.** "**State Action**" means the case entitled *Village of Orland Hills v. Arthur J. Gallagher & Co.,* Case No. 00 CH 13855 pending in the Circuit Court of Cook County, Illinois.

**1.59.** "**Supplemental Compensation**" shall mean any periodic Compensation paid to Gallagher that is based on the amount of some or all premiums in respect of Covered Insurance in force with an underwriter through Gallagher during a previous year. The Supplemental Compensation percentage payable to Gallagher must be fixed prior to the start of the year in which Supplemental Compensation is payable to Gallagher, and the percentage may not be varied during the year.

**1.60.** "**Wholesale Insurance Broker**" shall mean a Broker who accesses multiple Wholesale Insurance Markets (defined in Section 1.61) on behalf of a Retail Broker.

1.61.    "**Wholesale Insurance Markets**" shall mean individual excess and surplus lines insurance markets that do not have Binding Authorities, Managing General Agents or Program Administration.

## 2.    Preliminary Approval of Settlement

Pursuant to FRCP Rule 23(e), within thirty (30) days following the Execution Date, Settlement Counsel shall submit to the Court a motion for entry of the Preliminary Approval Order.

## 3.    Settlement Consideration

### 3.1.    Monetary Relief

Subject to the provisions hereof, and as consideration for the full, complete, and final settlement of all Released Claims, the Gallagher Defendants agree to payment of the Settlement Amount within thirty (30) days following the Effective Date *provided* that the Gallagher Defendants shall pay interest on the Settlement Amount, with such interest to be calculated at the Interest Rate for the period starting the day following the day entry of the Final Judgment and Order Approving Settlement until such date as the Settlement Amount is wired into the escrow account maintained at a bank agreed upon by Settlement Counsel (the "Escrow Account").    Payment of the Settlement Amount shall be by wire transfer to an Escrow Account designated by Settlement Counsel.    The Escrow Account shall be established and administered

pursuant to an Escrow Agreement substantially in the form annexed as Exhibit L (the "Escrow Agreement").

**3.2.   Non-Monetary Benefits**:

### 3.2.1  Permissible Forms of Compensation

3.2.1.1      In connection with its Retail insurance Brokerage, agency, producing, consulting and other services in placing, renewing, consulting on or servicing any insurance policy, the Gallagher Defendants shall accept only: (a) a specific fee to be paid by the client; (b) a specific fee and/or percentage commission on premium to be paid by the insurer set at the time of purchase, renewal, placement or servicing of the insurance policy; or (c) a combination of both.  Nothing in this Section relieves the Gallagher Defendants of complying with additional requirements imposed by law and the Illinois Regulatory Settlements, including the requirements for written documentation relating to fees paid directly by clients.  The Gallagher Defendants may retain interest earned on premiums collected on behalf of insurers when such retention is consistent with the requirements of, and is permitted by, applicable law.

3.2.1.2      The Gallagher Defendants will not directly or indirectly accept or request anything with a material value ($500 or more) from an insurance company, including, but not limited to, money, credits, loans, equity

investments, forgiveness of principal or interest, vacations, prizes, gifts or the payment of employee salaries or expenses; provided however, this limitation will not apply to expenses associated with customary conventions or business meetings sponsored by an insurance company or trade association, for the purpose of business or professional education and development.

### 3.2.2  Prohibition on Contingent Compensation

In placing, renewing, consulting on or servicing any Retail insurance policy when one or more of the Gallagher Defendants is serving as a Broker for any insured, the Gallagher Defendants shall not directly or indirectly accept from or request of any insurer any Contingent Compensation.  Gallagher will also not accept Contingent Compensation relating to insurance placements on behalf of Gallagher's Retail clients on an individual basis in the Wholesale Insurance Market.

### 3.2.3  Prohibition of "Pay-to-Play" Arrangements

In placing, renewing, consulting on or servicing any Retail insurance policy, the Gallagher Defendants shall not directly or indirectly accept from or request of any insurer any compensation in connection with the Gallagher Defendants' selection of insurance companies from which to solicit bids for its clients.

### 3.2.4  Prohibition of "Bid-Rigging" Arrangements

In placing, renewing, consulting on or servicing any Retail insurance policy, the Gallagher Defendants shall not directly or indirectly solicit or knowingly accept from or request of any insurer any false, fictitious, inflated, artificial, "B" or "throw away" quote or indication, or any other quote or indication except for a quote or indication that represents the insurer's most appropriate evaluation at the time when the quote or indication is given of the minimum premium, as well as the ultimate premium the insurer would require to bind the insurance coverage desired by the Gallagher Defendants' client.  Nothing herein shall preclude the Gallagher Defendants from accepting or requesting any bona fide quote or indication.

### 3.2.5  Prohibition of Reinsurance "Leveraging"

In placing, renewing, consulting on or servicing any Retail insurance policy, the Gallagher Defendants shall not directly or indirectly accept from or request of any insurer any promise or commitment to use any of the Gallagher Defendants' Brokerage, agency, producing or consulting services, including reinsurance and/or Wholesaler Insurance Brokerage, agency or producing services.

### 3.2.6  Prohibition of Inappropriate Use of Wholesaler Insurance Brokers

In placing, renewing, consulting on or servicing any insurance policy, the Gallagher Defendants shall not directly or indirectly knowingly place, renew, consult

- 25-

on or service its clients' insurance business in the Wholesale Insurance Markets through a Wholesale Insurance Broker unless Gallagher discloses to the client: (a) the compensation received or to be received by the Gallagher Defendants; (b) any Gallagher Defendants' ownership interest in or contractual agreement with the Wholesale Insurance Broker; and (c) any alternatives to using a Wholesale Insurance Broker.

### 3.2.7  Mandated Disclosures to Clients

The Gallagher Defendants in placing, renewing, consulting on or servicing any Retail Commercial Insurance policy shall: prior to binding in all written proposals and otherwise whenever practical, disclose to each such client the line of business, insurer, premium, effective date, limits and deductibles relevant to all bindable quotes, or in the alternative, copies of all bindable quotes, received prior to binding by the Gallagher Defendants in connection with the coverage of the client's risk, and all compensation excluding treaty reinsurance fees or commissions to be received by the Gallagher Defendants for each quote, in dollars if known at that time or as a percent of premium if the dollar amount is not known at that time, from any insurer or third party in connection with the placement, renewal, consultation on or servicing of insurance for that client.

- 26-

### 3.2.8  Standards of Conduct and Training

3.2.8.1       The Gallagher Defendants have implemented Company-wide written standards of conduct and appropriate training of relevant employees, including but not limited to, training in business ethics, professional obligations, conflicts of interest, anti-trust and trade practices compliance, and record keeping pursuant to the Illinois Regulatory Settlements.

3.2.8.2       The Gallagher Defendants shall not place their own financial interest ahead of their clients' interests when providing insurance products or services for their clients.  Gallagher Defendants agree that they will recommend moving a book of business from one insured to another only when it is in the best interest of a Gallagher client.

### 3.2.9  Limitation of Extraterritorial Effect

The provisions of Section 3 shall apply only to those United States domiciled Gallagher Entities that: (a) service clients domiciled in the United States; (b) place, renew, consult on or provide services for policies covering risks in the United States; or (c) are, themselves, domiciled in the United States.

### 3.2.10       Illinois Regulatory Settlements

In the event that any business reform provision in either of the Illinois Regulatory Settlements is eliminated, supplemented, altered, or amended by agreement of the Illinois Attorney General or the Illinois Department of Financial and Professional Regulation or otherwise, the Settling Parties intend and agree that such change shall be made to the corresponding provision in Section 3.2 hereof unless, within fifteen (15) days of written notice by priority FedEx and email to Co-Lead Counsel of any elimination, supplementation, alteration or amendment as set forth above, Class Plaintiffs file an objection with the Court to such change. Should an objection be filed, the Class Plaintiffs will have the burden of proof to demonstrate that the modification of this Settlement Agreement is not warranted. Additionally, should an objection be filed within fifteen (15) days, the Court will make a determination concerning the amendment after due consideration of such evidence as the Court may order. The time period for Class Plaintiffs to object under this Section shall begin to run when notice of a proposed change is received by Co-Lead Counsel via priority FedEx and email and such receipt is confirmed by telephone.

        3.2.10.1      The obligations contained in Section 3.2 shall terminate and cease on December 31, 2009. If prior to December 31, 2009, Class Plaintiffs reach settlement with any other Broker Defendant which contains terms less

restrictive than those in Section 3.2 hereof, the provisions of Section 3.2 shall be amended to reflect the terms of agreement with such other Broker Defendant.  If Class Plaintiffs reach settlement with any other Broker Defendant which contains no restrictions on business activities, the provisions of Section 3.2 hereof shall terminate upon the Court's final approval of the settlement with such other Broker Defendant, which approval is no longer subject to appeal.

       3.2.10.2     Gallagher will not be in violation of this Settlement Agreement if within three (3) years of the date it acquires any business subsequent to May 18, 2005, it brings such business into compliance with Section 3.2 hereof provided further that the receipt by such business of Contingent Compensation under agreements in effect at the time of acquisition shall be permitted during such three (3)-year period.  If Gallagher acquires any business that is a Broker Defendant, such Broker Defendant and any continuing receipt by it of Contingent Compensation, shall remain subject to the claims asserted and the relief sought in this Action.  In addition, if Gallagher acquires any business that is a Broker Defendant who has reached agreement concerning receipt of Contingent Compensation with either its principal state regulator or the Settlement Class which is more restrictive than the provisions of this Section, then this Section shall be inapplicable as to the acquisition of such Broker Defendant.

4.      **Attorneys' Fees and Expenses, and Incentive Awards**

**4.1.**      The Gallagher Defendants agree: (i) the Class Counsel are entitled to seek Attorneys' Fees and Expenses, (ii) the Gallagher Defendants shall pay such Attorneys Fees and Expenses as awarded by the Court in an amount not to exceed the Negotiated Fee and Expense Amount and (iii) that such payment of the Attorneys' Fees and Expenses shall be in addition to all other amounts required to be paid by the Gallagher Defendants pursuant to the terms of this Settlement Agreement.

**4.2.**      Class Counsel agrees to make, and the Gallagher Defendants agree not to oppose, an application for Attorneys' Fees and Expenses not to exceed the Negotiated Fee and Expense Amount.  The Gallagher Defendants shall pay or cause to be paid an Attorneys' Fees and Expenses award in that or a lesser amount pursuant to Section 4.1 above, which payment shall be in addition to all other payments that the Gallagher Defendants shall pay or cause to be paid under this Settlement Agreement.

**4.3.**      The Attorneys' Fees and Expenses awarded by the Court shall be the sole aggregate compensation for all Class Counsel respecting the Settlement.

**4.4.**      In addition to Attorneys' Fees and Expenses, Class Counsel intend to apply to the Court for incentive awards for Class Plaintiffs ("Incentive Award

- 30-

Petition") to be paid by the Gallagher Defendants for the time, effort and expenses the Class Plaintiffs put forth on behalf of the Settlement Class.

    **4.5.**    The amount of the incentive award for each Class Plaintiff that Class Counsel will seek in the Incentive Award Petition is ten thousand dollars ($10,000.00). The Gallagher Defendants agree not to oppose the Incentive Award Petition in the amount of ten thousand dollars ($10,000.00) for each Class Plaintiff. The Gallagher Defendants shall pay incentive awards in the amount awarded by the Court, up to but not exceeding such unopposed amount in accordance with the provisions of this Settlement Agreement. If the Court awards the Class Plaintiffs amounts in excess of ten thousand dollars ($10,000.00) for a Class Plaintiff, Class Plaintiffs through Class Counsel hereby covenant and agree to waive, release, and forever discharge the amount of any such excess award and to make no effort of any kind or description to collect that amount. The Class Plaintiffs' awards to be paid pursuant to this provision are in addition to and separate from all other consideration and remedies to be paid by Gallagher to and available for the Settlement Class Members. Such amounts are the only consideration and fees that Released Persons shall be obligated to give Class Plaintiffs as a result of prosecuting and settling this Action, other than the additional express agreements made herein.

**4.6.**     No later than within twenty (20) Business Days after the award of Attorneys' Fees and Expenses or the award of incentive fees to the Class Plaintiffs by the Court becomes final and no longer subject to appeal, the Gallagher Defendants shall pay such awards.  In addition, with respect to Attorneys' Fees and Expenses, the Gallagher Defendants shall pay interest accrued at the Interest Rate on such amounts from the date of entry of the order awarding attorneys' fees and expenses to the date of payment.  Payment of the Attorneys' Fees and Expenses and the incentive awards shall be made by wire transfer to the Trust Account of Miller Faucher and Cafferty, LLP, for the benefit of Class Counsel (with respect to Attorneys' Fees and Expenses) and the benefit of Class Plaintiffs (with respect to the incentive awards) for the distribution by Class Counsel.

**5.     Cooperation**

**5.1.**     Within ten (10) days following the Preliminary Approval Date, (a) all documents and data that have been produced by the Gallagher Defendants in connection with the confirmatory discovery undertaken in connection with this Settlement Agreement other than that designated "For Settlement Purposes Only" shall be placed into the joint depository established by the Court, for the continued prosecution of any claims in the Action; *provided* that such documents and data shall be subject to the confidentiality provision set forth in the September 23, 2005

Corrected Discovery Confidentiality Order on Informal Application, and (b) the Settling Parties shall file with the Court a stipulation regarding the authentication of business records produced by the Gallagher Defendants.

    **5.2.**    The Gallagher Defendants shall agree to reasonably and fully cooperate in responding to Class Counsels' inquiries and requests for documents and other things in connection with the continued prosecution of any claims in the Action subject to the terms of a confidentiality agreement pursuant to which Class Plaintiffs and Class Counsel shall agree to keep any information obtained from the Gallagher Defendants confidential; *provided however*, that, subject to the appropriate protection of trade secrets and confidential commercial information, Class Counsel shall be able to use all materials produced in the Action by the Gallagher Defendants in any judicial proceedings in this Action, including but not limited to discovery and trial, involving Non-Settling Defendants.

## 6.    Notice to the Settlement Class; Notice to Parties Pursuant to This Agreement; Settlement Administration Services

    In the event that the Court enters the Preliminary Approval Order, the Settling Parties shall, in accordance with FRCP 23 and the Preliminary Approval Order, provide all Persons potentially within the Settlement Class with notice of this Settlement Agreement in such a form as the Court shall direct, provided that the forms

of notice are substantially similar to the Mailed Notice, Published Notice and Website Notice.

### 6.1.    Mailed Notice

(a)    Subject to the requirements of the Preliminary Approval Order and no later than forty-five (45) days before the Fairness Hearing, the Settling Parties shall cause to be mailed, by first-class mail, postage prepaid, a copy of the Mailed Notice ("Notice") to each Person that is a Gallagher Client and can be identified to the extent reasonably practicable and technologically feasible based on the Gallagher Defendants' current records. In cases of pending litigation, arbitration or mediation against the Gallagher Defendants, or any of them, involving any Released Claims, a copy of the Notice shall also be mailed to all legal counsel known by the Gallagher Defendants to represent the Settlement Class Member in such litigation, arbitration or mediation; *provided* that the Gallagher Defendants shall describe such pending litigation (if any) to Co-Lead Counsel within ten (10) days following the Execution Date.

(b)    If the mailings described in the preceding paragraph result in any Notice being returned with an updated address, the Notice shall be re-mailed to the addressee within two (2) business days of receipt of the updated address; *provided however,* that if such updated address is received by the Settlement Administrator less

- 34-

than five (5) business days prior to the date of the Fairness Hearing, no re-mailing shall be required.

### 6.2.    Published Notice

No later than thirty-five (35) days before the Fairness Hearing, the Settling Parties shall cause the Published Notice to be published two (2) times in all editions of *The New York Times*, *The Wall Street Journal* and *USA Today*, and one (1) time in the newspaper with the highest circulation in each of the fifty (50) states and in the District of Columbia, as identified in Exhibit M, and in *Business Insurance* and *RM Magazine*.

### 6.3.    Website

No later than thirty-five (35) days before the Fairness Hearing, (a) the Settling Parties shall cause the Settlement Administrator to post the Notice, Published Notice and Proof of Claim Form on its website, (b) Co-Lead Counsel shall cause the Notice to be published on the websites of:

i.      Miller Faucher www.millerfaucher.com;

ii.     Whatley Drake  www.whatleydrake.com;

iii.    Foote, Meyers, Mielke & Flowers LLC, www.foote-meyers.com;

vii.    Furth, Lehman & Grant www.furth.com.