**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ——————————————— | : | |
| | : | MDL Docket No. 1663 |
| **IN RE INSURANCE BROKERAGE** | : | |
| **ANTITRUST LITIGATION** | : | Civ. No. 04-5184 (GEB) |
| | : | |
| | : | |
| ——————————————— | : | |
| | : | |
| **This Document Relates To:** | : | **MEMORANDUM OPINION** |
| | : | |
| **ALL ACTIONS** | : | |
| ——————————————— | : | |

**BROWN, Chief Judge**

    This matter comes before the Court upon the motion of Class Counsel for an award of attorneys fees, reimbursement of expenses and incentive award payments in connection with a settlement reached with defendant Zurich Financial Services, Zurich American Insurance Company, Steadfast Insurance Company, Fidelity and Deposit Company of Maryland, Empire Fire and Marine Insurance Company, American Guarantee and Liability Insurance Company, Empire Indemnity Insurance Company, and Assurance Company of America (collectively, the "Zurich Defendants"). The Court has reviewed and fully considered the parties' submissions and has decided the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Class Counsel's motion for an award of attorneys fees, reimbursement of expenses and incentive award payments is granted.

## I.    BACKGROUND

    This MDL docket involves various class actions filed against various insurance brokers and insurers. In August 2005, the Zurich Defendants were added to the class actions as defendants. The

class actions allege violations of federal and state antitrust laws, the Racketeer Influenced and Corrupt Organizations Act ("RICO") and common law. These class actions have been consolidated into the present action. On October 14, 2005, the Zurich Defendants and Plaintiffs entered into a Memorandum of Understanding (the "MOU") setting forth the principal terms of a settlement of the action. The MOU provided for a resolution of all claims for the class period of August 26, 1994 through September 1, 2005, as well as for the creation of a settlement fund of $100,000,000 payable to Settlement Class Members. The MOU was contingent upon several events, including successful resolution of the Governmental Investigations and successful negotiation and execution of a stipulation of settlement by the Zurich Defendants and Plaintiffs.

Through the Settlement Agreement and the Multi-State Agreement, Zurich Defendants created a $121,800,000 settlement fund. The Settlement Agreement requires the Zurich Defendants to pay $100,000,000 to policyholders who fall within the definition of the Settlement Class. However, some of the potential Settlement Class Members (those identified in the Three-State Agreement) might receive settlement relief under the Three-State Agreement rather than under the Settlement Agreement. Therefore, the Settlement Agreement provides that the Zurich Defendants would initially fund the class action settlement in the amount of $70,100,000 and would be required to fund the balance of the $100,000,000 settlement amount (i.e. $29,900,000) only if the Zurich Defendants failed to distribute at least that amount to policyholders (all of whom fall within the definition of the Settlement Class) pursuant to the Three-State Agreement. The Zurich Defendants have committed to pay $29,900,000 to policyholders (all of whom would otherwise be Settlement Class Members) under the Three-State Agreement. The Multi-State Agreement requires the Zurich Defendants to create a $51,700,000 settlement fund that will be distributed in conjunction with the

fund created under the Settlement Agreement.  Thus, the Zurich Defendants will create a settlement fund pursuant to the Settlement Agreement and Multi-State Agreement in the amount of $121,800,000 and have committed to pay $29,900,000 to policyholders who fall within the definition of Settlement Class, but who have elected to receive relief pursuant to the Three-State Agreement rather than under the Settlement Agreement.

On November 8, 2006, the Court entered an Order preliminarily approving the Zurich Settlement.  The Zurich Defendants filed a motion for final approval of the class action settlement on January 22, 2007.  On January 23, 2007, Plaintiffs filed a motion for final approval of the Settlement and Class Counsel filed the current motion for fees in connection with the Settlement reached with the Zurich Defendants (hereinafter, "Settlement").  A fairness hearing was held on January 26, 2007.  On February 16, 2007, this Court approved the class action settlement between Class Counsel and the Zurich Defendants.  The Court did not address Class Counsel's motion for fees, but will do so at this time.

In addition to and separate from the Settlement Fund, the Zurich Defendants have agreed to pay $29,950,000 for attorneys' fees, expense reimbursement and incentive awards for the named plaintiffs.  If approved by the Court, these payments will not diminish the Settlement Fund.  The total common fund recovery to the Settlement Class is no less than $129,950,000.[1]  Through July 31, 2006 (the month the Settlement Agreement was reached), Class Counsel contends that they expended

---

[1]  According to Class Counsel, this amount excludes the millions of dollars paid and to be paid by the Zurich Defendants for the costs of Notice and Settlement Administration and interest of over $750,000, which has already been earned on the Settlement Fund.

nearly 200,000 hours litigating the action with a lodestar amount in excess of $73 million.[2]  Class Counsel claims that these hours were comprised of professional services rendered by over fifty law firms, including the services of over six hundred attorneys and paralegals.  Class Counsel also claims that over seventy attorneys and paralegals expended more than one thousand hours each by July 31, 2006.  Class Counsel explains that there are twenty-six defendant groups in the commercial action (each group comprised of as many as seventeen individually named subsidiaries or member companies), which are represented by over forty defense firms.  Class Counsel also submits that one hundred-fifty attorneys performed services for the Defendants.  Class Counsel notes that they engaged in litigation with a number of law firms representing third parties.

Class Counsel claims that they have not received any compensation for the work they have done for over two years while litigating the Settlement Class' claims.  Through July 31, 2006, Class Counsel advanced just under $4 million in out-of-pocket expenses.  Class Counsel claims that the "requested fee award amounts to a negative risk multiplier."  Pl.'s Br. at 3 (citing Nichols v. SmithKline Beecham Corp., No. 00-6222, U.S. Dist. LEXIS 7061 (E.D. Pa. Apr. 22, 2005) (multiplier of over 3.15 awarded to class counsel)).

Class Counsel submits that while millions of settlement notices were mailed out in connection with the Zurich Settlement and the notice was also published in over fifty newspapers

---

[2]  Since July 31, 2006, Class Counsel contends that they have expended nearly an additional 100,000 hours of time litigating this matter as part of their ongoing litigation against the Non-Settling Defendants as well as certain confirmatory discovery and settlement related work as to Zurich.  This resulted in an additional lodestar of $28,551,415.  However, the Court notes that "[a]ttorney time spent on the case post-settlement . . . is not included in the lodestar calculation and is not subject to adjustments for risk or quality."  Dekro v. Stern Bros. & Co., 571 F.Supp. 97, 106 (W.D. Mo. 1983).  Thus, the Court will utilize July 31, 2006 as the cut-off date for performing the lodestar cross-check.  See, infra Section D.

and industry magazines, only eight objections were filed opposing the fee petition.[3]  According to

Class Counsel, the fee petition seeks an award which is at most 23% of the minimum recovery

attributable to their efforts.   Class Counsel asks this Court to apply the awards as follows:

$3,957,000 for reimbursement of litigation expenses; $150,000 for payment of incentive awards to

fifteen Plaintiffs; and $25,803,000 for attorneys fees incurred in the prosecution of this litigation.

Class Counsel contend that upon subtraction of the reimbursement of expenses and incentive awards,

Class Counsel's fee would amount to 19.9% of the minimum recovery attributable to the efforts of

Class Counsel.

In response to this motion for fees, several objections were filed by various parties.[4]  The crux

of the Objectors' arguments can be summarized into a few points, namely, that: (1) the value of

benefits to class members is lower than stated by Class Counsel based on the participation of several

attorneys general; (2) Class Counsel's fee request is based on time spent on non-Zurich Settlement

related matters; (3) Class Counsel has violated its gatekeeper function; (4) the fees are exorbitant;

and (5) the $10,000 class representative fee is too high.

---

[3]  See infra, fn 4.

[4]  In response to the motion for final approval of the Zurich Settlement, the following Objectors
submitted objections regarding attorneys fees: Romero General Construction Corp.; Scott
Schmelter and Freedom Rent-A-Car; Iaad O. Trustee of 8 Pacific Street Trust and Zorkess, LLC;
Anderson Excavating Company; William J. Ackers, Esq., Harold B. Wolfe, The Chaba Law
Group, LLC; Dan C.D. Sturdevant; Shapiro & Lodwick Co. LPA, Sports & Spine Physical
Therapy Inc., Irene Pekoe, Hoffman Legal Group, LLC, Lacy Redd and Sir and Cross; and
Harold Folsom Jensen, Palomar Grading and Paving, Inc., and Emerald Financial Group, Inc.
("Kennedy Objectors").  In response to the present motion for attorneys fees, four new objections
were submitted by: Van Enterprises, Inc.; Dan C.D. Sturdevant; Iaad O. Inc., Trustee of 8 Pacific
Trust and Zorkess LLC; and Shapiro & Lodwick Co. LPA, et al.

## II.    DISCUSSION

### A.    Standard for Judicial Approval of Fees

Class Counsel seeks approval of its application for attorneys' fees and expenses in the amount of $29,950,000, which represents 23% of the combination of the $100,000,000 created by the MOU and the Settlement Agreement and the $29,950,000 for fees and expenses (that the Zurich Defendants must pay separately).  The awarding of fees is within the discretion of the court, so long as the court employs the proper legal standards, follows the proper procedures, and makes findings of facts that are not clearly erroneous.  In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 727 (3d Cir. 2001).

District courts are given great deference in determining whether a request for attorneys' fees should be granted.  Notwithstanding this deferential standard, a district court is required to clearly articulate the reasons which support its conclusion.  In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 301 (3d Cir. 2005).  The Third Circuit identified several factors that a district court should consider.  These factors include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases.

Rite Aid, 396 F.3d at 301 (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)).  The district court need not apply these fee award factors in a formulaic way.  Certain factors may be afforded more weight than others.  Rite Aid, 396 F.3d at 301.  The Third Circuit emphasized

in Rite Aid, however, that the district court must engage in a robust assessment of these factors. Rite Aid, 396 F.3d at 302; see also Gunter, 223 F.3d at 196 (vacating district court's ruling because the fee-award issue was resolved in a "cursory and conclusory" fashion).

Although this Settlement is not strictly a common fund, Class Counsel contends that where defendants have agreed to pay an amount certain for fees and costs in addition to the amount designated to go to the class members directly, the analysis is analogous to that performed to the common fund doctrine. See Varacallo v. Massachusetts Mutual Life Ins. Co., 226 F.R.D. 207, 249 (D.N.J. 2005). "Relevant law evidences two basic methods for evaluating the reasonableness of a particular attorneys' fee request -- the lodestar approach and the percentage-of-recovery approach. Each has distinct attributes suiting it to particular types of cases." Id. (citing In re Prudential Ins. Co. of America Sales Practices Litig. (Prudential I), 962 F. Supp. 450, 478 (D.N.J. 1997). The percentage-of-recovery method is used in common fund cases as Courts have determined that "class members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund." Varacallo, 226 F.R.D. at 249 (quoting In re AremisSoft Corp. Sec. Litig., 210 F.R.D. 109, 128 (D.N.J. 2002)). "While either the lodestar or percentage-of-recovery method should ordinarily serve as the primary basis for determining the fee, the Third Circuit has instructed that it is sensible to use the alternative method to double check the reasonableness of the fee." Varacallo, 226 F.R.D. at 249 (Prudential I, 962 F. Supp. at 478).

### B.    Zurich's Agreement to Pay Attorneys Fees, Expenses and Incentive Awards

At the outset, Class Counsel notes that the Zurich Defendants have agreed to pay the requested attorneys' fees in addition to the Settlement Fund. Class Counsel submits that Plaintiffs had claims against the Zurich Defendants for statutory attorneys' fees and costs under the antitrust laws (15

U.S.C. § 15)[5] and RICO.  Class Counsel claims that this means without the Settlement, if they were successful on the merits, they would have had a significant claim to attorneys' fees against the Zurich Defendants.  Class Counsel contends that they commenced negotiations with the Zurich Defendants for payment of attorneys fees after the consideration to the Settlement Class was agreed upon.

### C.    Relevant Factors

The Court finds that the totality of the Gunter factors weighs strongly in favor of approval of the fee award for the same reasons provided in this Court's previous analysis of the Girsch factors.[6]  Given the similarity and overlap of the Girsch factors with the factors the Court must consider here, the Court incorporates by reference the reasons given for approval of the Settlement.  The Court will now discuss additional reasons that support approval of attorneys' fees in this matter.

#### 1.    Size of the Fund Created and Number of Persons Benefitted

With regard to the size and nature of the common fund and the number of persons benefitted by the Settlement, Class Counsel were able to obtain a sizeable result, $121,800,000, on behalf of the Class despite the risks they faced in establishing liability.  Further, the number of persons benefitting

---

[5]  "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore . . . shall recover threefold the damages by him sustained, and the cost of suit, including reasonable attorney's fee."

[6]  See Court's Memorandum Opinion, filed February 16, 2007 [Docket No. 1004], at 8-21.  In Girsh, the Third Circuit identified nine factors that a district court should consider when determining whether a proposed class action settlement warrants approval.  Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975).  These factors include: (1) "the complexity, expense and likely duration of the litigation"; (2) "the reaction of the class to the settlement"; (3) "the stage of the proceedings and the amount of discovery completed"; (4) "the risks of establishing liability"; (5) "the risks of establishing damages"; (6) "the risks of maintaining the class action through the trial"; (7) "the ability of the defendants to withstand a greater judgment"; (8) "the range of reasonableness of the settlement fund in light of the best possible recovery"; (9) "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." Id.  at 157.

from this award is expected to be large considering the Notices of Settlement were sent to millions of Settlement Class Members. This award will not be reduced by attorneys' fees and expenses. This factor weighs in favor of approval.

### 2.    Presence or Absence of Substantial Objections by Members of the Class to Settlement Terms and/or Fees Requested by Counsel

First, the absence of substantial objections by class members to the fees requested by Class Counsel strongly supports approval.  The Objectors contend that: (1) the value of benefits to class members is lower than stated by Class Counsel based on the participation of several attorneys general; (2) that Class Counsel's fee request is based on time spent on non-Zurich Settlement related matters; (3) Class Counsel has violated its gatekeeper function; (4) the fees are exorbitant; and (5) the $10,000 class representative fee is too high.

The majority of the objectors oppose the attorneys' fees because they claim that the requested fee is based on an exaggeration of the benefits secured by Class Counsel.  For example, one Objector claims that Class Counsel achieved the first $100 million of the Settlement which will total approximately $210 million ($121,800,000 under the Multi-State and Zurich settlements plus $88 million under the Three-State Agreement).  Iaad O Inc. Obj. [Docket No. 1035], at 2.  The Objectors contend that the attorneys general achieved an additional $110 million above the $100 million contained in the MOU, and Class Counsel were forced to cede $29,900,000 to the Three-State Settlement to make the overall agreement work.  The Objectors submit that Class Counsel is only entitled to take credit for $70 million of the overall settlement, as they claim the Notice states that Zurich agreed to pay $51.7 million as part of the settlement with the attorneys general and that amount

was added to the $70 million Class Counsel obtained.[7]  Id.  The Objectors also claim that it is "reversible error" to base an attorney's fee award to class counsel on settlement benefits created by governmental agencies.  Iaad O Inc. Obj. [Docket No. 1035], at 3;  In re Prudential Ins. Co. America Sales Practice Litig., 148 F.3d 283, 338 (3d Cir. 1998).

In response to this objection, Class Counsel explains that the Objectors misunderstand the Settlement's economics and misrepresent the negotiation history.  According to Class Counsel, the Zurich Defendants executed the MOU with the Class Plaintiffs on October 14, 2005, which was seven months before Zurich settled with the attorneys general and other regulators in March 2006.  Pl.'s Reply Br., at 3-4.  Class Counsel also points out that the MOU with Zurich was "contingent upon several events, including successful resolution of the Governmental Investigations."  Id.  Class Counsel maintains that it was a requirement under the MOU negotiated and entered into by Class Counsel that Zurich settle with the attorneys general.  Class Counsel contends that it based its fee request on the $100,000,000 guaranteed to Class Members plus the $29,950,000 in separate fees and expenses payable directly by Zurich under the settlement, or 23% of the entire settlement amount. Class Counsel claims that it is not taking credit for the additional $58,100,000 that Zurich will pay under the Three-State Agreement or the $51,700,000 Zurich will pay under the Multi-State Agreement.  Because no portion of their fee is based upon benefits created by governmental agencies, Class Counsel contends that it does not violate In re Prudential Ins. Co. Am. Sales Practice Litig. as alleged by the Objectors.

_____

[7]Other objectors make similar arguments regarding the percentage of the Settlement that Class Counsel may receive credit for negotiating - ranging from $30 to 70 million.  See, e.g. Shapiro Objection [Docket No. 1039]; Dan C.D. Sturdevant Objection [Docket No. 1033]; Iaad O Inc. Objection [Docket No. 1035].

Based on details of the Settlement Agreements, it does not appear that Class Counsel has run afoul of this Circuit's prohibition of collecting fees based on the work of governmental agencies. Accordingly, this objection does not persuade this Court to make a downward adjustment of the attorneys' fees or reject the negotiated amount requested by Class Counsel.

The next objection set forth is that Class Counsel should not recover fees for its work on non-Zurich-related issues. Objectors cite to case law involving a 42 U.S.C. §1988 claim, under which plaintiff had to be the prevailing party to recover attorney's fees. See Iaad O Inc.Obj., at 5-6 (citing Hensley v. Eckerhart, 461 U.S. 424, 439 (1983)). In Hensley, the Court stated that "the hours spent on the unsuccessful claims should be excluded in considering the amount of a reasonable fee." Id. at 439. However, Hensley also stood for the proposition that "[t]he congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." Id. at 435. The Court in Hensley found that there are situations where "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories" and that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Id. Accordingly, the Court is not persuaded that Class Counsel must segregate the time spent on the Zurich Settlement from the time spent on litigating other related claims. See also In re Worldcom, Inc. Sec. Litig., No. 02-3288, 2004 U.S. Dist. LEXIS 22992, *78-79 (S.D.N.Y. Nov. 16, 2004).

Objectors also contend that Class Counsel has failed to perform its gatekeeper function by including the claimed lodestars of forty-four law firms without any evidence that most of that time contributed anything to the Zurich Settlement. The Objectors generally suggest that the fees are

excessive, and that documentation should be provided to substantiate the award. The Objectors question the work performed by these law firms and whether the work actually benefitted the class. Objectors ask this Court to closely scrutinize Class Counsel's time records.  Class Counsel responds to this objection by stating that fee requests should not be converted into full-blown trials, and that it is within the Court's discretion to review time records where fees are based on a percentage of the recovery rather than a lodestar calculation.  Class Counsel contends that it has reviewed every Class Counsel firm's detailed billing record and specifically established controls in this action to minimize the amount of time billed to the case and effectively coordinate all Class Counsel so as to prevent unnecessary work and duplication of efforts.  Class Counsel also claims that since the requested fee amount is no more than a fraction of the total lodestar  and the fee is being paid separately from the settlement fund, the Class will not be harmed by approval of this fee.

The Objectors also contend that the requested fees are exorbitant based on the anticipated benefit provided to the class and the amount of work performed by Class Counsel.  The Objectors attempt to re-calculate and reduce the amount actually recovered for Plaintiffs by Class Counsel.  As stated above, this Court concluded that there is no basis to reduce the recovery amount as attributable to a governmental agency.  The Objector's arguments that the fee percentages are too high based on a reduced amount and that Class Counsel violated it gatekeeping function are not persuasive.  With respect to the class representative fee, the Objectors claim that the $10,000 fee is too high.  The Objectors contend that because of the variable nature of the benefits to the class and the amount of work performed by various levels of state governments, this fee is exorbitant. However, the Objectors fail to put forth any authority to support this argument, and this Court is not persuaded.

Accordingly, the Court concludes that based on the small number of objections to the

attorneys' fees and the above analysis of the merits of those objections, this factor does not weigh against approving this fee application.

### 3.      *Skill and Efficiency of Attorneys*

The factor concerning the skill and efficiency of the attorneys prosecuting the action also favors approval of the fee award.  Class Counsel are highly skilled attorneys with experience in antitrust, class actions and RICO litigation.  The substantial Settlement amount negotiated by Class Counsel further evidences their competence.  In re Warfarin Sodium Antitrust Litig, 212 F.R.D. 231, 261 (D.Del. 2002)(class counsel "showed their effectiveness . . . through the favorable cash settlement they were able to obtain").  Moreover, the Zurich Defendants were represented by highly skilled attorneys from a prominent firm with experience in these matters.  In re Warner Communications Sec. Litig., 618 F.Supp. 735, 749 (S.D.N.Y. 1985)("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsel's work.").

### 4.      *The Complexity and Duration of the Litigation*

As noted in the Court's previous Opinion approving the Settlement, this factor weighs strongly in favor of approval.  This action involves federal and state antitrust laws, RICO and common law.  An antitrust action is clearly a complex action to prosecute.  In re Linerboard Litig., MDL 1261, 2004 U.S. Dist. LEXIS 10532, *34 (E.D. Pa. June 2, 2004).  The claims involve alleged conspiracy violations by dozens of large brokerage and insurance companies with highly complex legal and factual issues.  Class Counsel have engaged in extensive discovery and motion practice, and while negotiating with the Zurich Defendants also coordinated their efforts with the Settling Attorneys General and Settling Insurance Regulators.  To proceed with litigation of this matter would have undoubtedly become a costly and lengthy process for all parties.  See In re Warfarin Sodium Antitrust

13

Litig., 391F.3d 516, 535-36 (3d Cir. 2004).

### 5.    *The Risk of Non-Payment*

Class Counsel submits that they undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts.  Class Counsel contends that courts recognize the risk of non-payment is a major factor in considering an award of attorneys' fees. In re Prudential-Bache Energy Income P'ships Sec. Litig., No. 888, 1994 U.S. Dist. LEXIS 6621, *16 (E.D. La. May 18, 1994) (stating that "[c]ounsel's contingent fee risk is an important factor in determining the fee award.  Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.").   Class Counsel invested a substantial amount of time and effort to reach this point and obtain the favorable Settlement.  Class Counsel accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award.  Accordingly, this factor weighs in favor of approval.

### 6.    *The Amount of Time Devoted to the Litigation*

Class Counsel claims that they have devoted a tremendous amount of time to litigate this action.  Specifically, Class Counsel submits that through July 31, 2006, they spent nearly 200,000 hours in prosecuting this case on behalf of the Settlement Class for an aggregate lodestar of nearly $74,000,000 and have incurred nearly $4,000,000 in expenses.  Over fifty law firms were involved on behalf of Plaintiffs, with the work allocated to specific firms to avoid duplication and deal with specific areas of the litigation.  Class Counsel maintains that this Settlement is with one of twenty-six Defendant groups in this action, and litigation continues against the Non-Settling Defendant groups. Based on the amount of time expended on this matter and the number of attorneys involved in the negotiation and ongoing litigation, this factor weighs in favor of approval.

7.      *Awards in Similar Cases*

The Court must also take into consideration amounts awarded in similar actions when approving attorneys' fees.  Specifically, the Court must: (1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market.  In re Remeron Direct Purchaser Antitrust Litig., No. 03-0085, 2005 U.S. Dist. LEXIS 27013, *42-46 (D.N.J. Nov. 9, 2005). "Courts within the Third Circuit often award fees of 25% to 33 1/3% of the recovery." Id. at 44 (citing In re Linerboard Antitrust Litig., 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) (approving 30% fee of a $202 million settlement in an antitrust class action); Rite Aid, 396 F.3d at 306-307 (review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71% with a median value that "turns out to be one-third"); In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 822 (3d Cir. 1995) (in common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"); Cullen v. Whitman Medical Corp., 197 F.R.D. 136, 150 (E.D. Pa. 2000) ("the award of one-third of the fund for attorneys' fees is consistent with fee awards in a number of recent decisions within this district"); In re Linerboard Antitrust Litig., 2004 U.S. Dist. LEXIS 10532, *43 (citing with approval "a recent Federal Judicial Center study that found that in federal class actions generally median attorney fee awards were in the range of 27 to 30 percent.").

According to Class Counsel, the requested award in this matter is 19.9% (after deducting expenses and awards to plaintiffs).[8]  This percentage is within the range found acceptable in this

---

[8]  Class Counsel also provides that based on the $100,000,000 award to class members plus the $29,950,000 in separate fees and expenses payable directly by Zurich under the Settlement, the percentage of the attorneys' fees is 23%.

district.

The second part of this analysis involves whether the requested fee is consistent with a privately negotiated contingent fee in the marketplace.  The percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee which would be negotiated if the lawyer were offering the services in the private marketplace.  In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013, * 46.  "The object . . . is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible."  In re Continental Illinois Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992); In re Synthroid Marketing Litig., 264 F.3d 712, 718 (7th Cir. 2001) ("When deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.").  To determine the market price for an attorney's services, the Court should look to evidence of negotiated fee arrangements in comparable litigation.  Continental Illinois Sec. Litig., 962 F.2d at 573 (stating that the judge must try to simulate the market "by obtaining evidence about the terms of retention in similar suits,  which differ only because, as they are not class actions, the market fixes the terms").  "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."  In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013, * 46.  See, e.g. In re Ikon Office Solutions, Inc. 194 F.R.D. 166, 194 (E.D. Pa. 2000); In re Orthopedic Bone Screws Products Liability Litig., No. 97-381, 2000 U.S. Dist. LEXIS 15980, *7 (E.D. Pa. Oct. 23, 2000); Durant v. Traditional Invest., Ltd., No. 88-9048, 1992 U.S. Dist. LEXIS 12273, *4 n. 7 (S.D.N.Y. Aug. 12, 1992).  Accordingly, Class Counsel's requested fee amount is within the range of privately negotiated contingent fees.

### 8.    *Conclusion*

In sum, for all the reasons stated above, the Court concludes that the requested fee by Class Counsel is fair and reasonable according to the <u>Gunter</u> factors.

### D.    <u>Lodestar Cross-Check</u>

The Third Circuit has articulated that when an award is based on percentage of recovery, it is sensible to confirm the reasonableness of the award using the lodestar method.  <u>Rite Aid</u>, 396 F.3d at 305-06.  The lodestar analysis is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." <u>Id.</u> at 305.  When performing this analysis, the court "should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." <u>Id.</u> at 306.  Thus, the lodestar multiplier is equal to the proposed fee award divided by the product of the total hours and the blended billing rate.  If the lodestar multiplier is large, the award calculated under the percentage-of-recovery method may be deemed unreasonable, and a trial judge may consider a reducing the award appropriately. <u>Id.</u> at 306.

The multiplier, however, "need not fall within any pre-defined range, provided that the [d]istrict [c]ourt's analysis justifies the award." <u>Id.</u> at 307.  Further, the court is not required to engage in this analysis with mathematical precision or "bean-counting." <u>Id.</u> at 306.  Instead, the court may rely on summaries submitted by the attorneys, and is not required to scrutinize every billing record. <u>Id.</u> at 306-07.

In the present case, the proposed fee award presented by Lead Counsel is 23% of the proposed

settlement, or $29,950,000.[9]  Class Counsel submits that the total number of hours expended by the attorneys and paraprofessionals in this case is 279,843 hours.  See Exhibit A to Class Counsel's Br., [Docket No. 942].  The Court further notes that this lodestar value is based on the blended billing rates of all attorneys and paraprofessionals who were involved with this case.  Accordingly, the Court accepts these calculations as the basis for performing the lodestar cross-check.

Class Counsel claims that its lodestar through July 31, 2006 (the month in which the Zurich Settlement was reached) was $73,884,807 and $102,396,258 through November 20, 2006.[10]  Class Counsel submits that this results in a multiplier of .4 or .3, respectively.  This multiplier is within an accepted range.  See, e.g. In re Cendant Corp. PRIDES Litig., 243 F.3d at 734, 742 (approving a suggested multiplier of 3 and stating that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"); Nichols, 2005 U.S. Dist. LEXIS 7061 (approving a multiplier of 3.15); In re Linerboard Antitrust Litig., 2004 U.S. Dist. LEXIS 10532 (approving a 2.66 multiplier).

The reasonable attorney rate is determined by reference to the marketplace.  Missouri v. Jenkins, 491 U.S. 274, 285 (1989) ("we have consistently looked to the marketplace as our guide to what is 'reasonable'").  The Third Circuit, as well as other courts, have held that an attorney's

---

[9]  Or 19.9% after deducting expenses and awards to plaintiffs.

[10]  The Court will rely upon the July 31, 2006 settlement date in performing the lodestar cross-check.  See Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207, 252 (D.N.J. 2005) (fee award will be sole compensation for counsel "despite the continuing responsibilities [counsel] will have in responding to Class Member inquiries, assisting the Claim Evaluator, consulting on individual cases, and any post-judgment proceedings and appeals."); In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013 (D.N.J. 2005) ("Class Counsel will likely incur hundreds of additional hours in connection with administering the settlement, without prospect for further fees.").

customary billing rate is the proper starting point for calculating fees.  Cunningham v. City of McKeesport, 753 F.2d 262, 268 (3d Cir. 1985).  However, the Third Circuit has determined that once a party meets its prima facie burden of establishing the "community market rate," and the opposing party does not produce contradictory evidence, the trial court does not have discretion to adjust the requested rate downward.  Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996).

To establish a market rate, the prevailing party must offer evidence that the attorney's usual rate is in line with the market rate in the community.  Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984).  This evidence takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate, Glover v. Johnson, 934 F.2d 703, 716 (6th Cir. 1991), and a court may not vary the rates competently set forth in uncontested affidavits.  Black Grievance Comm. v. Philadelphia Elec. Co., 802 F.2d 648, 657 (3d Cir. 1986) (*vacated on other grounds*, 483 U.S. 1015 (1987).  The market rate to be used is the current prevailing market rate at the time the request for fees is made.  Lanni v. New Jersey, 259 F.3d 146, 149-50 (3d Cir. 2001).

While Class Counsel submitted a summary detailing the hours, costs and lodestar through both July 31, 2006 and November 30, 2006, Class Counsel did not provide declarations in support of any particular hourly rate.  It appears that the hourly rate being used by Class Counsel is approximately $365.[11]  The Objections submitted in the matter take issue with the amount of the Settlement that Class Counsel negotiated and took credit for, not the reasonableness of the hourly rate.  Therefore, based on the lack of objections and the experience of Class Counsel, this Court will

---

[11]  The Court arrived at this rate by dividing the total lodestar amounts by the total hours worked.  Through November 30, 2006, the total hours worked were 279,843 and the lodestar provided was 102,396,258.15.  The result is a rate of $365.90 per hour.

consider the approximate hourly rate of $365 reasonable.

      E.    **Reimbursement of Expenditures**

Class Counsel also requests reimbursement for expenses incurred during this litigation in the amount of $3,956,830 through July 31, 2006 and a total of $6,143,560 through November 30, 2006. Class Counsel's Br., at 26 and Exh. A. "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." In re Safety Components, Inc. Sec. Litig., 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing Abrams v. Lightolier, Inc., 50 F.3d 1204, 1225 (3d Cir.1995)). Class Counsel contends that these expenses reflect costs expended for the purposes of litigating this action, including fees for experts, costs associated with creating and maintaining electronic document databases, travel and lodging expenses, copying, mail, telephone and the costs of deposition transcripts. Class Counsel's Br., at 26-27. The Court concludes that while Class Counsel did not submit declarations detailing the exact expenditures, based on the summary provided, these expenses were reasonably and appropriately incurred during the prosecution of this case. Consequently, the Court approves Class Counsel's request for reimbursement.

      F.    **Incentive Awards for Named Plaintiffs**

Class Counsel also requests that the Court approve the payment of incentive awards for named plaintiffs in the amount of $10,000 each, totaling $150,000. Class Counsel contends that the Plaintiffs spent a significant amount of their own time and expense litigating these cases for the benefit of the absent members of the Settlement Class, and should be compensated for their efforts. See, e.g. In re Lorazepam & Clorazepate Antitrust Litig., 205 F.R.D. 369, 400 (D.D.C. 2002) ("Incentive awards are 'not uncommon in class action litigation and particularly where . . . a common

fund has been created for the benefit of the entire class.'").  Class Counsel claims that the amount requested for the class representatives is similar to awards in analogous settlements.  See, e.g. Nichols, 2005 U.S. Dist. LEXIS 7061 (approving $5,000 to each third-party payor named plaintiff, $2,500 to each consumer named plaintiff); In re Linerboard Antitrust Litig., 2004 U.S. Dist. LEXIS 10532, *58 (approving $25,000 to each representative of the classes).

Only one objection was made to the requested fee, and as discussed above, lacked any supporting case law or a thorough explanation why this fee should be considered excessive. Accordingly, this Court will approve the $10,000 payment of incentive awards for each named Plaintiff, totaling $150,000.

## III.    CONCLUSION

For the foregoing reasons, the Court grants the application of Class Counsel for an award of attorneys' fees, reimbursement of expenses and incentive award payments.  The appropriate form of Order accompanies this Memorandum Opinion.

Dated: June 5, 2007

<div style="margin-left:40%">

___s/ Garrett E. Brown, Jr._____
GARRETT E. BROWN, JR., U.S.D.J.

</div>