**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE INSURANCE BROKERAGE ANTITRUST LITIGATION | MDL Docket No. 1663<br><br>Civ. No. 04-5184 (GEB)<br><br>Civ. No. 05-1079 (GEB) |
| **This Document Relates To:**<br><br>ALL ACTIONS | **MEMORANDUM OPINION** |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion of Class Counsel for an award of attorneys' fees, reimbursement of expenses and incentive award payments in connection with a settlement reached with defendant Arthur J. Gallagher & Co., Arthur J. Gallagher Risk Management Services, Inc., and Gallagher Benefit Services, Inc. (collectively, the "Gallagher Defendants"). The Court has reviewed and fully considered the parties' submissions and has decided the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Class Counsel's motion for an award of attorneys' fees, reimbursement of expenses and incentive award payments is granted.

1.   **BACKGROUND**

This MDL docket involves various class actions filed against various insurance brokers and insurers. In December, 2004, the Gallagher Defendants were added to the class actions as defendants. The class actions allege violations of federal and state antitrust laws, the Racketeer Influenced and Corrupt Organizations Act ("RICO") and common law. These class actions have

been consolidated into the present action. The Gallagher Defendants were also the subject of investigations conducted by various state attorneys general and state departments of insurance for possible anti-competitive activities. On May 18, 2005, Gallagher, whose principle place of business and headquarters are located in the State of Illinois, entered into an Assurance of Voluntary Compliance ("AVC") with the Attorney General of Illinois and the Director of the Illinois Division of Insurance, and a Stipulation and Consent Order ("SCO") with the Director of the Illinois Division of Insurance. Under the terms of these agreements, Gallagher voluntarily implemented various business reforms and transferred $26,962,500 into a fund from which amounts were distributed to certain qualifying Gallagher customers.

On December 29, 2006, the Gallagher Defendants and Plaintiffs entered into a Stipulation of Settlement (Stipulation of Settlement between Class Plaintiffs and Arthur J. Gallagher & Co. Defendants ("Settlement Agreement"), Dec. 29, 2006). Amendments to the Settlement Agreement were filed on February 28, 2007 (including the submission of a Plan of Allocation), March 20, 2007, and again on May 11, 2007. (First Amendment to Settlement Agreement, Feb. 28, 2007; Second Amendment to Settlement Agreement, March 20, 2007; Third Amendment to Settlement Agreement, May 11, 2007). The Settlement Agreement was intended to resolve all claims that have been, or could have been, asserted in this action by Plaintiffs against the Gallagher Defendants.

The proposed Settlement Agreement created a fund of $28,000,000 ("Fund"), to be paid to those insureds who fall within the definition of the Settlement Class.[1] In addition, the Settlement Agreement contains several non-monetary provisions in which the Gallagher Defendants have agreed

---

[1] Unless otherwise specifically defined herein, terms relating to the definition of the Settlement Class have the same meaning as attributed to them in the accompanying Order approving the Settlement.

to reform certain alleged business practices. These include prohibitions on accepting contingent compensation, "pay to play" arrangements, "bid rigging" arrangements, reinsurance leveraging, and inappropriate use of wholesale insurance brokers. The Settlement Agreement also requires Gallagher Defendants to make certain disclosures to customers and to implement certain training for its employees. In addition, pursuant to the Settlement Agreement, and subject to approval by this Court, Gallagher Defendants have agreed to pay not more than $8,885,000 for Plaintiffs' attorneys' fees, litigation expenses, and incentive awards for each of the twenty-five named Plaintiffs. (Class Pls.' Br. 1). These payments would be in addition to other sums paid by Gallagher Defendants under the Agreement and would not diminish the Fund. Id. Finally, the Gallagher Defendants will pay all the administrative costs associated with implementing the Settlement Agreement in addition to the amounts described above.

On April 13 2007, this Court entered an Order Preliminarily Certifying a Class for Settlement Purposes and Preliminarily Approving Proposed Settlement ("Preliminary Approval Order"). A fairness hearing was held on July 24, 2007. On September 4 2007, this Court approved the class action settlement between Class Counsel and the Gallagher defendants. The Court did not address Class Counsels' motion for fees, but will do so at this time.

Gallagher Defendants have agreed to pay not more than $8,885,000 for Plaintiffs' attorneys' fees, litigation expenses, and incentive awards for each of the twenty-five named Plaintiffs. These payments would be in addition to other sums paid by Gallagher Defendants under the Agreement and would not diminish the Fund. Thus, there will be a total common fund recovery of $36,885.000 to

the Settlement Class.[2] (Plaintiff's Br. 1). Through December 29, 2006 (the date the Stipulation of Settlement Agreement was executed), Class Counsel contends that they expended nearly 301,000 hours litigating the action with a lodestar amount in excess of $110 million.[3] Class Counsel claims that these hours were comprised of professional services rendered by over fifty law firms, including the services of over six hundred attorneys and paralegals. Class Counsel also claims that over seventy attorneys and paralegals expended more than one thousand hours each by December 29, 2006. Class Counsel explains that each defendant groups in the commercial action was comprised of up to seventeen individually named subsidiaries or member companies, and have been represented by over forty defense firms. Class Counsel also submits that "hundreds" of attorneys have performed services for the Defendants. Class Counsel notes that they engaged in litigation with a number of law firms representing third parties and had to coordinate with a number of "tag-along plaintiffs" who filed separate complaints.

Class Counsel have thus far been awarded a total of $29,950,000.00. Through December 29, 2006, Class Counsel advanced just under $6.37 million in out-of-pocket expenses. Class Counsel claims that the "requested fee award amounts to a negative risk multiplier." significantly

---

[2] According to class counsel, this amount does not include payments to be made by Gallagher to Defendants for the costs of Settlement Notice and Settlement Administration. (Pl's Br. 1).

[3] Since December 29, 2006 and through April 20, 2007, Class Counsel contends that they have expended nearly an additional 89,000 hours of time litigating this matter as part of their ongoing litigation against the Non-Settling Defendants as well as certain confirmatory discovery and settlement related work as to Gallagher. This resulted in an additional lodestar of approximately $31,000.00. However, the Court notes that "[a]ttorney time spent on the case post-settlement . . . is not included in the lodestar calculation and is not subject to adjustments for risk or quality." Dekro v. Stern Bros. & Co., 571 F.Supp. 97, 106 (W.D. Mo. 1983). Thus, the Court will utilize December 29, 2006 as the cut-off date for performing the lodestar cross-check. See, infra Section D.

lower than awards that have been approved in other complex cases. Pl.'s Br. at 3 (citing <u>Nichols v. SmithKline Beecham Corp.</u>, No. 00-6222, U.S. Dist. LEXIS 7061 (E.D. Pa. Apr. 22, 2005) (multiplier of over 3.15 awarded to class counsel)).

Class Counsel submits that while over 288,000 settlement notices were mailed out in connection with the Gallagher Settlement and the notice was also published in over fifty newspapers and industry magazines, only one objection had been submitted by June 19, 2007 (the date class counsels' brief was submitted)[4] and that objection did not address the Fee Petition. According to Class Counsel, the fee petition seeks an award which is at most 24% of the minimum recovery attributable to their efforts. Class Counsel asks this Court to apply the awards as follows: $2,413,520.00 for reimbursement of litigation expenses; $250,000 for payment of incentive awards to twenty-five Plaintiffs; and $6,221,480.00 for attorneys fees incurred in the prosecution of this litigation. Class Counsel contends that upon subtraction of the reimbursement of expenses and incentive awards, Class Counsel's fee would amount to 16.8% of the minimum recovery attributable to the efforts of Class Counsel. Class Counsel notes that this percentage is lower than the percentage approved by this Court in the Zurich Settlement.

## II.    DISCUSSION

### A.    Standard for Judicial Approval of Fees

Class Counsel seeks approval of its application for attorneys' fees and expenses in the amount of $8,885,000, which represents 24% of the combination of the $28,000,000 created by the Settlement Agreement and the $8,885,000 for fees and expenses (that the Gallagher Defendants must

---

[4] One additional objection, which also did not address the Fee Petition was filed on June 27, 2007.

5

pay separately). The awarding of fees is within the discretion of the court, so long as the court employs the proper legal standards, follows the proper procedures, and makes findings of facts that are not clearly erroneous. In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 727 (3d Cir. 2001).

District courts are given deference in determining whether a request for attorneys' fees should be granted. Notwithstanding this deferential standard, a district court is required to clearly articulate the reasons which support its conclusion. In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 301 (3d Cir. 2005). The Third Circuit identified several factors that a district court should consider. These factors include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases.

Rite Aid, 396 F.3d at 301 (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)). The district court need not apply these fee award factors in a formulaic way. Certain factors may be afforded more weight than others. Rite Aid, 396 F.3d at 301. The Third Circuit emphasized in Rite Aid, however, that the district court must engage in a robust assessment of these factors. Rite Aid, 396 F.3d at 302; see also Gunter, 223 F.3d at 196 (vacating district court's ruling because the fee-award issue was resolved in a "cursory and conclusory" fashion).

Although this Settlement is not strictly a common fund, Class Counsel contends that where defendants have agreed to pay an amount certain for fees and costs in addition to the amount designated to go to the class members directly, the analysis is analogous to that performed to the common fund doctrine. See Varacallo v. Massachusetts Mutual Life Ins. Co., 226 F.R.D. 207, 249

(D.N.J. 2005). "Relevant law evidences two basic methods for evaluating the reasonableness of a particular attorneys' fee request -- the lodestar approach and the percentage-of-recovery approach. Each has distinct attributes suiting it to particular types of cases." Id. (citing In re Prudential Ins. Co. of America Sales Practices Litig. (Prudential I), 962 F. Supp. 450, 478 (D.N.J. 1997). The percentage-of-recovery method is used in common fund cases as Courts have determined that "class members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund." Varacallo, 226 F.R.D. at 249 (quoting In re AremisSoft Corp. Sec. Litig., 210 F.R.D. 109, 128 (D.N.J. 2002)). "While either the lodestar or percentage-of-recovery method should ordinarily serve as the primary basis for determining the fee, the Third Circuit has instructed that it is sensible to use the alternative method to double check the reasonableness of the fee." Varacallo, 226 F.R.D. at 249 (Prudential I, 962 F. Supp. at 478).

### B. Gallagher's Agreement to Pay Attorneys' Fees, Expenses and Incentive Awards

At the outset, Class Counsel notes that the Gallagher Defendants have agreed to pay the requested attorneys' fees in addition to the Settlement Fund. Class Counsel submits that Plaintiffs had claims against the Gallagher Defendants for statutory attorneys' fees and costs under the antitrust laws (15 U.S.C. § 15)[5] and RICO. Class Counsel claims that this means without the Settlement, if they were successful on the merits, they would have had a significant claim to attorneys' fees against the Gallagher Defendants. Class Counsel contends that they commenced negotiations with the Gallagher Defendants for payment of attorneys fees after the consideration to the Settlement Class was agreed upon.

---

[5] "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore . . . shall recover threefold the damages by him sustained, and the cost of suit, including reasonable attorney's fee."

## C. Relevant Factors

The Court finds that the totality of the Gunter factors weighs strongly in favor of approval of the fee award for the same reasons provided in this Court's previous analysis of the Girsch factors.[6] Given the similarity and overlap of the Girsch factors with the factors the Court must consider here, the Court incorporates by reference the reasons given for approval of the Settlement. The Court will now discuss additional reasons that support approval of attorneys' fees in this matter.

### 1. *Size of the Fund Created and Number of Persons Benefitted*

With regard to the size and nature of the common fund and the number of persons benefitted by the Settlement, Class Counsel was able to obtain the significant result of $28,000,000 for of the Class, despite the substantial risks of establishing liability. Further, a significant number of people are expected to benefit from this award considering the Notices of Settlement were sent to millions of Settlement Class Members. This award will also not be reduced by attorneys' fees and expenses. As such, this factor weighs in favor of approval.

### 2. *Presence or Absence of Substantial Objections by Members of the Class to Settlement Terms and/or Fees Requested by Counsel*

The absence of substantial objections by class members to the fees requested by Class

---

[6] See Court's Memorandum Opinion, filed September 4, 2007 [Docket No. 1300], at 6-13. In Girsh, the Third Circuit identified nine factors that a district court should consider when determining whether a proposed class action settlement warrants approval. Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975). These factors include: (1) "the complexity, expense and likely duration of the litigation"; (2) "the reaction of the class to the settlement"; (3) "the stage of the proceedings and the amount of discovery completed"; (4) "the risks of establishing liability"; (5) "the risks of establishing damages"; (6) "the risks of maintaining the class action through the trial"; (7) "the ability of the defendants to withstand a greater judgment"; (8) "the range of reasonableness of the settlement fund in light of the best possible recovery"; (9) "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." Id. at 157.

Counsel strongly supports approval. There were only two objections to the settlement and neither objection discussed the Fee Petition. As such, this factor weighs in favor of approving the fee application.

### 3. *Skill and Efficiency of Attorneys*

The factor concerning the skill and efficiency of the attorneys prosecuting the action also favors approval of the fee award. Class Counsel are highly skilled attorneys with experience in antitrust, class actions and RICO litigation. The substantial Settlement amount negotiated by Class Counsel further evidences their competence. In re Warfarin Sodium Antitrust Litig, 212 F.R.D. 231, 261 (D.Del. 2002)(class counsel "showed their effectiveness . . . through the favorable cash settlement they were able to obtain"). Moreover, the Gallagher Defendants were represented by highly skilled attorneys from a prominent firm with experience in these matters. In re Warner Communications Sec. Litig., 618 F.Supp. 735, 749 (S.D.N.Y. 1985)("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsel's work.").

### 4. *The Complexity and Duration of the Litigation*

As noted in the Court's previous Opinion approving the Settlement, this factor weighs strongly in favor of approval. This action involved federal and state antitrust laws, RICO and common law. An antitrust action is clearly a complex action to prosecute. In re Linerboard Litig., MDL 1261, 2004 U.S. Dist. LEXIS 10532, *34 (E.D. Pa. June 2, 2004). The claims involved alleged conspiracy violations by dozens of large brokerage and insurance companies with highly complex legal and factual issues. Class Counsel engaged in extensive discovery and motion practice, and the litigation of this matter was a costly and lengthy process for all parties. See In re Warfarin Sodium Antitrust Litig., 391F.3d 516, 535-36 (3d Cir. 2004).

### 5. *The Risk of Non-Payment*

Class Counsel submits that they undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts. Class Counsel contends that courts recognize the risk of non-payment as a major factor in considering an award of attorneys' fees. See In re Prudential-Bache Energy Income P'ships Sec. Litig., No. 888, 1994 U.S. Dist. LEXIS 6621, *16 (E.D. La. May 18, 1994) (stating that "[c]ounsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable."). Class Counsel invested a substantial amount of time and effort to reach this point and obtain the favorable Settlement. Class Counsel accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award. Accordingly, this factor weighs in favor of approval.

### 6. *The Amount of Time Devoted to the Litigation*

Class Counsel claims that they have devoted a tremendous amount of time to litigate this action. Specifically, Class Counsel submits that through December 29, 2006, they spent 3000,941.22 hours in prosecuting this case on behalf of the Settlement Class for an aggregate lodestar of approximately $110,000,000 and have incurred nearly $6,370,000 in expenses. Class counsel claims further that as of April 30 2007, they spent a total of 389,922.42 hours for an aggregate lodestar in excess of $141,000,000, incurring nearly $7,200,000 in expenses. Over fifty law firms were involved on behalf of Plaintiffs, with the work allocated to specific firms to avoid duplication and to deal with specific areas of the litigation. Class Counsel maintains that this Settlement is with one of many Defendant groups in this action, and litigation continues against the Non-Settling Defendant groups. Based on the amount of time expended on this matter and the number of attorneys involved

in the negotiation and ongoing litigation, this factor weighs in favor of approval.

### 7. *Awards in Similar Cases*

The Court must also take into consideration amounts awarded in similar actions when approving attorneys' fees.  Specifically, the Court must: (1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market.  In re Remeron Direct Purchaser Antitrust Litig., No. 03-0085, 2005 U.S. Dist. LEXIS 27013, *42-46 (D.N.J. Nov. 9, 2005).  "Courts within the Third Circuit often award fees of 25% to 33 1/3% of the recovery."  Id. at 44 (citing In re Linerboard Antitrust Litig., 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) (approving 30% fee of a $202 million settlement in an antitrust class action); Rite Aid, 396 F.3d at 306-307 (review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71% with a median value that "turns out to be one-third"); In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 822 (3d Cir. 1995) (in common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"); Cullen v. Whitman Medical Corp., 197 F.R.D. 136, 150 (E.D. Pa. 2000) ("the award of one-third of the fund for attorneys' fees is consistent with fee awards in a number of recent decisions within this district"); In re Linerboard Antitrust Litig., 2004 U.S. Dist. LEXIS 10532, *43 (citing with approval "a recent Federal Judicial Center study that found that in federal class actions generally median attorney fee awards were in the range of 27 to 30 percent.").

According to Class Counsel, the requested award in this matter is 16.8% (after deducting expenses and awards to plaintiffs).  This percentage is below or within the range found acceptable

11

in this district. Class Counsel also notes that this Court approved the award of 19.9% for fees awarded with regard to the Zurich settlement.

The second part of this analysis involves whether the requested fee is consistent with a privately negotiated contingent fee in the marketplace. The percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee which would be negotiated if the lawyer were offering the services in the private marketplace. In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013, * 46. "The object . . . is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible." In re Continental Illinois Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992); In re Synthroid Marketing Litig., 264 F.3d 712, 718 (7th Cir. 2001) ("When deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."). To determine the market price for an attorney's services, the Court should look to evidence of negotiated fee arrangements in comparable litigation. Continental Illinois Sec. Litig., 962 F.2d at 573 (stating that the judge must try to simulate the market "by obtaining evidence about the terms of retention in similar suits, which differ only because, as they are not class actions, the market fixes the terms"). "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation." In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013, * 46. See, e.g. In re Ikon Office Solutions, Inc. 194 F.R.D. 166, 194 (E.D. Pa. 2000); In re Orthopedic Bone Screws Products Liability Litig., No. 97-381, 2000 U.S. Dist. LEXIS 15980, *7 (E.D. Pa. Oct. 23, 2000); Durant v. Traditional Invest., Ltd., No. 88-9048, 1992 U.S. Dist. LEXIS 12273, *4 n. 7 (S.D.N.Y. Aug. 12, 1992). Accordingly, Class Counsel's requested fee amount is

within the range of privately negotiated contingent fees.

### 8. *Conclusion*

In sum, for all the reasons stated above, the Court concludes that the requested fee by Class Counsel is fair and reasonable according to the Gunter factors.

### D. **Lodestar Cross-Check**

The Third Circuit has articulated that when an award is based on percentage of recovery, it is sensible to confirm the reasonableness of the award using the lodestar method. Rite Aid, 396 F.3d at 305-06. The lodestar analysis is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." Id. at 305. When performing this analysis, the court "should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." Id. at 306. Thus, the lodestar multiplier is equal to the proposed fee award divided by the product of the total hours and the blended billing rate. If the lodestar multiplier is large, the award calculated under the percentage-of-recovery method may be deemed unreasonable, and a trial judge may consider reducing the award appropriately. Id. at 306.

The multiplier, however, "need not fall within any pre-defined range, provided that the [d]istrict [c]ourt's analysis justifies the award." Id. at 307. Further, the court is not required to engage in this analysis with mathematical precision or "bean-counting." Id. at 306. Instead, the court may rely on summaries submitted by the attorneys, and is not required to scrutinize every billing record. Id. at 306-07.

In the present case, the proposed fee award presented by Lead Counsel is approximately 24%

of the settlement in combination with fees and expenses, or $8,885,000.[7] Class Counsel submits that the total number of hours expended by the attorneys and paraprofessionals in this case by April 30, 2007 is 389,922.42 hours. See Exhibit A to Class Counsel's Br., [Docket No. 1217]. The Court further notes that this lodestar value is based on the blended billing rates of all attorneys and paraprofessionals who were involved with this case. Accordingly, the Court accepts these calculations as the basis for performing the lodestar cross-check.

Class Counsel claims that its lodestar through December 29, 2006 (the day in which the Gallagher Settlement was reached) was $110,825,159.75 and $141,838,973.40 through April 30, 2007.[8] Class Counsel submits that this results in a multiplier of .08 or .06, respectively. This multiplier is within an accepted range and as Class Counsel points out, is less than was found to be acceptable in the Zurich Settlement. See, e.g. In re Cendant Corp. PRIDES Litig., 243 F.3d at 734, 742 (approving a suggested multiplier of 3 and stating that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"); Nichols, 2005 U.S. Dist. LEXIS 7061 (approving a multiplier of 3.15); In re Linerboard Antitrust Litig., 2004 U.S. Dist. LEXIS 10532 (approving a 2.66 multiplier).

The reasonable attorney rate is determined by reference to the marketplace. Missouri v.

---

[7] Or 16.8% after deducting expenses and awards to plaintiffs.

[8] The Court will rely upon the December 29, 2006 settlement date in performing the lodestar cross-check. See Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207, 252 (D.N.J. 2005) (fee award will be sole compensation for counsel "despite the continuing responsibilities [counsel] will have in responding to Class Member inquiries, assisting the Claim Evaluator, consulting on individual cases, and any post-judgment proceedings and appeals."); In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013 (D.N.J. 2005) ("Class Counsel will likely incur hundreds of additional hours in connection with administering the settlement, without prospect for further fees.").

Jenkins, 491 U.S. 274, 285 (1989) ("we have consistently looked to the marketplace as our guide to what is 'reasonable'"). The Third Circuit, as well as other courts, have held that an attorney's customary billing rate is the proper starting point for calculating fees. Cunningham v. City of McKeesport, 753 F.2d 262, 268 (3d Cir. 1985). However, the Third Circuit has determined that once a party meets its prima facie burden of establishing the "community market rate," and the opposing party does not produce contradictory evidence, the trial court does not have discretion to adjust the requested rate downward. Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996).

To establish a market rate, the prevailing party must offer evidence that the attorney's usual rate is in line with the market rate in the community. Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). This evidence takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate, Glover v. Johnson, 934 F.2d 703, 716 (6th Cir. 1991), and a court may not vary the rates competently set forth in uncontested affidavits. Black Grievance Comm. v. Philadelphia Elec. Co., 802 F.2d 648, 657 (3d Cir. 1986) (*vacated on other grounds*, 483 U.S. 1015 (1987). The market rate to be used is the current prevailing market rate at the time the request for fees is made. Lanni v. New Jersey, 259 F.3d 146, 149-50 (3d Cir. 2001).

While Class Counsel submitted a summary detailing the hours, costs and lodestar through both December 29, 2006 and April 30, 2007, Class Counsel did not provide declarations in support of any particular hourly rate. It appears that the hourly rate being used by Class Counsel is approximately $363.76 [9] Based on the lack of objections to this rate and the experience of Class

---

[9] The Court arrived at this rate by dividing the total lodestar amounts by the total hours worked. Through April 30, 2007, the total hours worked were 389,922.42 and the lodestar provided was $141,838,973.40. The result is a rate of $363.76 per hour.

15

Counsel, this Court will consider the approximate hourly rate of $363.76 reasonable.

### E. Reimbursement of Expenditures

Class Counsel also requests reimbursement for expenses incurred during this litigation. Class Counsel incurred expenses in the amount of $6,370,520 through December 29, 2006 and a total of $7,196,570.76 through April 30, 2007. Class Counsel's Br., at 24 and Exh. A. Offsetting the award this Court granted to counsel for reimbursement of reasonable litigation expenses in connection with the Zurich Settlement, Class Counsel now asks for an additional $2,413,520.[10] "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." In re Safety Components, Inc. Sec. Litig., 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing Abrams v. Lightolier, Inc., 50 F.3d 1204, 1225 (3d Cir.1995)). Class Counsel contends that these expenses reflect costs expended for the purposes of litigating this action, including fees for experts, costs associated with creating and maintaining electronic document databases, travel and lodging expenses, copying, mail, telephone and the costs of deposition transcripts. Class Counsel's Br., at 24-25. The Court concludes that while Class Counsel did not submit declarations detailing the exact expenditures, based on the summary provided, these expenses were reasonably and appropriately incurred during the prosecution of this case. Consequently, the Court approves Class Counsel's request for reimbursement.

### F. Incentive Awards for Named Plaintiffs

---

[10] This amount represents the total expenses incurred by Class Counsel through December 29, 2006 ($6,370,520) less the amount awarded in connection with the Zurich Settlement ($3,957,000). While class counsel explains this calculation on page 4 of its brief, it seems to overlook this computation on page 24 of its brief, where it asks for reimbursement of all of its expenses without deducting the amount already awarded to Class Counsel in connection with the Zurich Settlement.

Class Counsel also requests that the Court approve the payment of incentive awards for named plaintiffs in the amount of $10,000 each, totaling $250,000, and notes that an identical award was approved when this Court approved the Zurich fee petition. Class Counsel contends that the Plaintiffs spent a significant amount of their own time and expense litigating these cases for the benefit of the absent members of the Settlement Class, and should be compensated for their efforts. See, e.g. In re Lorazepam & Clorazepate Antitrust Litig., 205 F.R.D. 369, 400 (D.D.C. 2002) ("Incentive awards are 'not uncommon in class action litigation and particularly where . . . a common fund has been created for the benefit of the entire class.'"). Class Counsel claims that the amount requested for the class representatives is similar to awards in analogous settlements. See, e.g. Nichols, 2005 U.S. Dist. LEXIS 7061 (approving $5,000 to each third-party payor named plaintiff, $2,500 to each consumer named plaintiff); In re Linerboard Antitrust Litig., 2004 U.S. Dist. LEXIS 10532, *58 (approving $25,000 to each representative of the classes).

No objections were made to the requested amount, and as such, this Court will approve the $10,000 payment of incentive awards for each named Plaintiff, totaling $250,000.

### III.   CONCLUSION

For the foregoing reasons, the Court grants the application of Class Counsel for an award of attorneys' fees, reimbursement of expenses and incentive award payments. The appropriate form of Order accompanies this Memorandum Opinion.

Dated: October 5, 2007

                <u> s/ Garrett E. Brown, Jr.  </u>
                GARRETT E. BROWN, JR., U.S.D.J.