**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

.....................................................x
                   :

IN RE:  INSURANCE BROKERAGE      :     Hon. Garrett E. Brown, Jr.
ANTITRUST LITIGATION            :

                   :     MDL No. 1663
**APPLIES TO ALL ACTIONS**       :

_____  :     Civil Action No:  04-5184 (GEB)

                   :

IN RE:  EMPLOYEE-BENEFIT INSURANCE  :     Civil Action No: 05-1079 (GEB)
BROKERAGE ANTITRUST LITIGATION   :

                   :     ELECTRONICALLY FILED
**APPLIES TO ALL ACTIONS**       :

                   :
.....................................................x

## SETTLEMENT AGREEMENT

WHEREAS, the Marsh Defendants[1] have been named in the above-captioned putative

class action in which Plaintiffs allege, among other things, that the Marsh Defendants engaged in

an insurance brokerage scheme involving the receipt by the Marsh Defendants of undisclosed

payments or kickbacks from insurance carriers, steering insurance policyholders to carriers

paying the Marsh Defendants the most in "contingent commissions," and rigging bids for

insurance policies, all allegedly in violation of law and to the detriment of insurance

policyholders; and

WHEREAS, the Marsh Defendants deny that they have violated any law or other duty or

agreement or obligation to Plaintiffs or the putative class, deny any liability to Plaintiffs or the

putative class for any claims, causes of action, costs, expenses, attorneys' fees or damages of any

_____

[1]    All capitalized terms used in this Settlement Agreement shall (unless otherwise noted) have the meanings
ascribed to them in Section I of this Settlement Agreement.

kind, deny that they have done anything wrong and each deny the allegations of wrongdoing brought by Plaintiffs in the Action; and

WHEREAS, the Court's May 25, 2005 Order ("May 25 Order") designated the law firms of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") and Miller Faucher and Cafferty LLP (now Cafferty Faucher LLP) as Co-Lead Counsel on behalf of Plaintiffs and the putative class in this Action and Whatley, Drake & Kallas, LLC has since replaced Milberg Weiss as Co-Lead Counsel; and

WHEREAS, the May 25 Order provides that Co-Lead Counsel may, among other things, initiate and conduct settlement negotiations on behalf of Plaintiffs with counsel for the Marsh Defendants; and

WHEREAS, as of the Execution Date, Co-Lead Counsel had received and evaluated in excess of 60 million pages of documents relevant to the claims made in this Action; and

WHEREAS, the Marsh Entities filed successful motions to dismiss the Complaints in this Action, resulting in the dismissal, with prejudice, of all federal antitrust and RICO claims in the Action, which dismissal Plaintiffs have appealed; and

WHEREAS, a putative nationwide class action (defined below as the State Court Class Action) has also been brought in New York State Supreme Court (the "New York State Court") against certain of the Marsh Entities, which makes certain allegations similar to those made in the Complaints, and is the subject of a pending motion to dismiss the complaint; and

WHEREAS, on October 18, 2007, the New York State Court entered an order appointing the law firm of Kirby McInerney LLP (defined below as State Court Class Counsel) as lead counsel for plaintiff and the putative class in the State Court Class Action; and

WHEREAS, the New York State Court's October 18, 2007 order also provides that State Court Class Counsel may, among other things, initiate and conduct settlement negotiations on behalf of plaintiffs with the Marsh Defendants' Counsel; and

WHEREAS, as of the Execution Date, State Court Class Counsel had received and evaluated almost 14 millions pages of documents relevant to the claims made in this Action and the State Court Class Action; and

WHEREAS, no class has been certified in either the Action or the State Court Class Action; and

WHEREAS, the Marsh Defendants have engaged in extensive arm's length settlement negotiations with Co-Lead Counsel in the Action and separately with State Court Class Counsel to resolve the claims of plaintiffs in this Action and in the State Court Class Action, respectively; and

WHEREAS, consistent with the May 25 Order, Co-Lead Counsel is authorized to enter into this Settlement Agreement on behalf of Plaintiffs in this Action; and

WHEREAS, pursuant to the Settlement Agreement between certain of the Marsh Defendants, on the one hand, and the Office of the Attorney General for the State of New York and the Superintendent of the New York State Department of Insurance, on the other hand, without admitting any liability whatsoever, the Marsh Entities have already created a settlement fund of $850,000,000 for distribution to policyholders, much of which has already been distributed and has provided substantial compensation to certain members of the putative class who were clients of the Marsh Entities, released their claims against the Marsh Entities, and therefore are not members of the Settlement Class; and

WHEREAS, the Settling Parties wish to settle and dismiss the Action to bring to an end the substantial expense, burdens and uncertainties associated with continued litigation of the claims made in the Complaints and in the complaint in the State Court Class Action, and to confer substantial benefits upon Settlement Class Members, and the Marsh Defendants wish to avoid the further expense and disruption due to the pendency of the Action, and to finally put to rest the claims and underlying matters in the Action,

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs and the Marsh Defendants, by and through their duly authorized counsel, that this Action and the matters raised by it hereby are settled and compromised as to the Marsh Defendants, and that the Action is dismissed with prejudice, and that the Released Claims will be released as to the Releasees based upon the terms and conditions set forth in this Settlement Agreement and the consideration provided by the Marsh Defendants and the Releases set forth herein, subject to the approval of this Settlement Agreement by the Court and such approval becoming Final.

## I.   DEFINITIONS

As used in this Settlement Agreement and the attached Exhibits, the following terms have the indicated meanings:

A.    "Action" means the consolidated putative class action titled *In Re Insurance Brokerage Antitrust Litigation*, and *In Re Employee-Benefit Insurance Brokerage Antitrust Litigation*, MDL No. 1663, including the putative class actions *OLM Associates, Inc. v. Marsh & McLennan Companies, Inc., et al.*, Civ. No. 04-5184 (GEB), and *Waxman v. Marsh & McLennan Companies, Inc. et al.*, Civ. No. 05-1079 (GEB), previously pending in the United States District Court for the District of New Jersey.

B.    "<u>Administrative Expenses</u>" means all expenses associated with the implementation and administration of the settlement contemplated by this Settlement Agreement, including, but not limited to, the expenses associated with printing and mailing the Notice and publishing the Summary Notice; establishing, staffing and maintaining a toll-free telephone number, a website and an e-mail address; determining the amount (pursuant to the terms of the Plan of Allocation) of the Class Fund Amount to be allocated to each Settlement Class Member; and distributing that amount to or on behalf of Settlement Class Members; *provided* that Administrative Expenses shall include amounts reasonably estimated or reserved for future expenses; *provided further* that Administrative Expenses shall be paid from the Class Fund; *provided, however*, that Administrative Expenses shall not include (i) any amounts attributable to any attorneys' fees and expenses awards or (ii) any costs associated with the publication of the Notice on the websites of Co-Lead Counsel as described in Section VIII.D.

C.    "<u>Administrator</u>" means Complete Claim Solutions, LLC selected by the Settling Parties as specified in Section V.A.1., which shall be appointed by the Court in the Preliminary Approval Order to act in accordance with the terms of this Settlement Agreement and shall at all times work diligently, efficiently and in the best interests of the Settling Parties and Settlement Class Members; *provided* that the costs incurred by such Administrator shall be paid from the Class Fund.

D.    "<u>Attorneys' Fees and Expenses Awards Payment Date</u>" means the date on which the Marsh Defendants pay or cause to be paid the Class Counsel Attorneys' Fees and Expenses Award and the State Court Class Counsel Attorney's Fees and Expenses Award, which date shall be no later than ten (10) Business Days following the later of the date of the Order Approving Settlement (if it addresses and approves attorneys' fees and expenses) or the separate order of the

Court setting forth the Class Counsel Attorneys' Fees and Expenses Award and State Court Class

Counsel Attorneys' Fees and Expenses Award.

E.      "Bar Order" means that portion of the proposed Order Approving Settlement that

is set out in paragraph 12 of such proposed Order.

F.      "Broker" or "Brokers" means any of the Insurance brokerage entities listed on

Exhibit A to this Settlement Agreement, together with all of their respective direct and indirect,

current and former parents, predecessors, successors, affiliates, divisions, business units and

subsidiaries.

G.      "Business Day" means a day other than a Saturday or Sunday, or a "legal

holiday," as that term is defined in Section XII.I.

H.      "Claim" means any and all actions, causes of action, proceedings, adjustments,

executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money,

accounts, bonds, bills, specialties, variances, covenants, damages, demands (whether written or

oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees and losses,

whether in law, in admiralty or in equity, and whether based on federal law, state law, foreign

law, common law doctrine, rule, regulation or otherwise, foreseen or unforeseen, matured or un-

matured, accrued or not accrued, existing now or arising in the future.  The term "Claim" shall

include any Unknown Claim as that term is defined in this Section I.

I.      "Claim Form" means the form that must be submitted by Settlement Class

Members with Settlement Class Policy Purchases as described in Section IV.C.1.  The proposed

Claim Form is attached as Exhibit K to this Settlement Agreement.

J.      "Class Counsel" means Co-Lead Counsel and all other counsel of record, or any

of them, representing Plaintiffs in the Action.

K.    "Class Counsel Attorneys' Fees and Expenses Award" means the amount the Court awards to Class Counsel as provided for in Section VII.

L.    "Class Fund" means sixty-two million dollars ($62,000,000).

M.    "Class Fund Amount" means the Class Fund, together with any interest earned thereon, less any Administrative Expenses, and less any Escrow Expenses and taxes attributable thereto.

N.    "Class Counsel Negotiated Fee and Expense Amount" means the amount of fourteen million five hundred thousand dollars ($14,500,000), which amount was negotiated by the Settling Parties as the total amount of attorneys' fees and expenses to be paid to Class Counsel.  Class Counsel intends to apply to the Court for permission to pay ten thousand dollars ($10,000) to each Plaintiff from the Class Counsel Negotiated Fee and Expense Amount based upon the effort that each Plaintiff has devoted to the Action.

O.    "Class Representatives" means the Plaintiffs in this Action.

P.    "Co-Lead Counsel" means Cafferty Faucher LLP and Whatley, Drake & Kallas, LLC.

Q.    "Complaints" means the First Corrected Consolidated Amended Commercial Class Action Complaint filed in this Action on or about August 15, 2005; the First Corrected Consolidated Employee-Benefits Class Action Complaint filed in this Action on or about August 29, 2005; the Second Consolidated Amended Commercial Class Action Complaint filed in this Action on or about May 22, 2007; and the Second Consolidated Amended Employee-Benefits Class Action Complaint filed in this Action on or about May 22, 2007, together with any supplemental statements of particularity and RICO case statements filed in this Action.

R.    "Court" means the United States District Court for the District of New Jersey.

- 7 -

S.      "Effective Date" means the first Business Day after which all of the events and conditions specifiied in Section XI have been met and have occurred.

T.      "Escrow Account" means an interest-bearing account, established and administered pursuant to an escrow agreement, into which the Settlement Fund Amount shall be deposited, as described in Section IV.A.1 and as more specifically defined in the Escrow Agreement.

U.      "Escrow Agreement" means the escrow agreement pursuant to which the Escrow Account is established and administered, which agreement shall be in a form substantially and materially consistent with the document attached as Exhibit G to this Settlement Agreement.

V.      "Escrow Expenses" means the reasonable out-of-pocket expenses incurred in connection with the Escrow Account (including with respect to the payment of any taxes due on any monies in the Escrow Account).

W.      "Execution Date" means the date on which this Settlement Agreement has been executed by all Settling Parties.

X.      "Existing Litigants" means the plaintiff(s) in the pending actions listed on Exhibit C to this Settlement Agreement.

Y.      "Existing Litigants Fund" means the Settlement Fund Amount less the Class Fund.

Z.      "Existing Litigants Fund Amount" means the Existing Litigants Fund, together with any interest earned thereon, less any Escrow Expenses and taxes attributable thereto.

AA.     "Fairness Hearing" means the hearing at or after which the Court will make a decision, pursuant to Fed. R. Civ. P. 23, as to whether to approve this Settlement Agreement.

BB.    "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final and no longer subject to appeal:  (i) if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired, or (ii) if any appeal is taken therefrom, on the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for *certiorari* or any other form of review, have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in an affirmance of the order or judgment.

CC.    "Final Settlement Date" means the date on which the Judgment and the Order Approving Settlement become Final.

DD.    "Governmental Investigation" means an investigation, inquiry, examination or proceeding initiated by any State Official respecting one or more of the Marsh Defendants, arising under the laws of the relevant state (including its antitrust, consumer protection and insurance statutes and regulations or otherwise) based upon the alleged acts, practices or courses of conduct that give rise to the claims that have been made or that could have been made in this Action.

EE.    "Insurance" means insurance or reinsurance coverage and includes any form of commercial insurance as well as any employee benefits insurance provided through an ERISA (Employee Retirement Income Security Act of 1974) or non-ERISA employee benefit plan, whether paid for, in full or in part, by employees or employers as part of such plan.

FF.    "Insurer Defendants" means the insurance company entities listed on Exhibit B to this Settlement Agreement.

GG.    "Interest Rate" means interest calculated on a simple interest basis based upon the one-year LIBOR rate; *provided* that for each month during which interest is to be calculated, the rate shall be established based upon the one-year LIBOR rate on the first (1st) day of each month, as published in *The Wall Street Journal* under the description of "Money Rates."

HH.    "Judgment" means the judgment entered by the Court pursuant to the Order Approving Settlement, as contemplated in Section IX.D, which judgment shall be in a form substantially and materially consistent with the document attached as Exhibit J to this Settlement Agreement.

II.    "Marsh Defendants" means Marsh & McLennan Companies, Inc.; Marsh Inc.; Marsh USA, Inc.; Marsh USA Inc. (Connecticut); Mercer, Inc.; Mercer Human Resource Consulting LLC; Mercer Human Resource Consulting of Texas, Inc.; and Seabury & Smith, Inc.

JJ.    "Marsh Defendants' Counsel" means the law firm of Willkie Farr & Gallagher LLP.

KK.    "Marsh Entities" means the Marsh Defendants and all of their respective direct and indirect, current and former parents, predecessors, successors, affiliates, divisions, business units and subsidiaries.

LL.    "Non-Participating Policyholders" shall mean clients of the Marsh Entities who were eligible to receive a cash distribution from the settlement fund created pursuant to the NYAG Settlement Agreement but elected not to participate or otherwise did not respond.

MM.    "Notice" means the notice sent to Settlement Class Members.  The Settling Parties' proposed Notice is attached as Exhibit F to this Settlement Agreement.

NN.    "NYAG Settlement Agreement" means the Agreement Between the Attorney General of the State of New York and the Superintendent of Insurance of the State of New York,

and Marsh & McLennan Companies, Inc., Marsh Inc. and their subsidiaries and affiliates dated January 30, 2005.

OO.    "NYAG Settlement Fund Remainder" means the allocated shares of the Non-Participating Policyholders under the NYAG Settlement Agreement.

PP.    "Order Approving Settlement" means the Court's order approving the settlement terms set out in this Settlement Agreement.  The Settling Parties' proposed Order Approving Settlement is attached as Exhibit I to this Settlement Agreement.

QQ.    "Participating Policyholders" means those persons or entities which elected to receive a cash distribution pursuant to the NYAG Settlement Agreement and tendered a release in connection with the same.

RR.    "Plaintiffs" means OptiCare Health Systems, Inc.; Comcar Industries, Inc.; Sunburst Hospitality, Corp.; Robert Mulcahy; Golden Gate Bridge, Highway & Transportation District; Glenn Singer; Redwood Oil Co.; The Omni Group of Companies; Bayou Steel Corp.; Clear Lam Packaging, Inc.; Cellect, LLC; The Enclave, LLC; Gateway Club Apartments, Ltd; Michigan Multi-King Inc.; City of Stamford; Belmont Holdings Corporation; Tri-State Container Corporation; Christopher Bare; David Boros; Cynthia C. Brandes; Hans Fuson; Sharon Cheringer; Larry Hayes; Brannen Henn; Wayne Moran; Alicia A. Pombo; MaryAnn Waxman; Richard H. Kimball; City of Danbury, Connecticut; Connecticut Spring & Stamp Co.; Fire District of Sun City West; Hollander Home Fashions Corporation,  and/or any of them, both in their individual capacities and in their capacities as representatives of the Settlement Class, together with each of their current and former parents, predecessors, successors, heirs, affiliates, agents, attorneys (other than Class Counsel), representatives and assigns.

SS.    "Plan of Allocation" means the terms and procedures for allocating the Class

Fund Amount less the State Fund among, and distributing such amount to, Settlement Class

Members.  The proposed Plan of Allocation is attached as Exhibit H to this Settlement

Agreement.

TT.    "Policyholder" means a person or entity which purchased, procured or otherwise

obtained Insurance coverage, an Insurance policy, and/or any Insurance-related administrative,

advisory or claims services.

UU.    "Preliminary Approval Order" means the order to be entered by the Court

preliminarily approving this Settlement Agreement as contemplated in Section IX.A.  The

Settling Parties' proposed Preliminary Approval Order is attached as Exhibit D to this Settlement

Agreement.

VV.    "Qualified Settlement Fund" means a fund within the meaning of Treasury

Regulations § 1.468B-1.

WW.    "Release" means the release and waiver set forth in Section VI.A.

XX.    "Released Claims" means each and every Claim or Unknown Claim, whether

arising under federal law, state law, foreign law, common law, rule, regulation or otherwise, (i)

that has been asserted in the Action and/or in a Governmental Investigation or (ii) that could

have been asserted in the Action, in any other forum by any Settlement Class Member or in a

Governmental Investigation against any of the Releasees where the Claim or Unknown Claim

arises out of or is based upon the allegations, transactions, facts, matters or occurrences,

representations or omissions involved, set forth or referred to in the Complaints and/or in a

Governmental Investigation; *provided* that "Released Claims" shall not include (i) claims of

Settlement Class Members to enforce the contractual terms of insurance or reinsurance issued by

an Insurer Defendant, except to the extent any such claims relate to the matters alleged in the Complaints; or (ii) claims related to (a) the purchase or sale of securities issued by the Marsh Entities, including pending securities fraud litigation, (b) shareholder derivative litigation; or (iii) claims on behalf of beneficiaries of employee benefit plans sponsored by Releasees.

YY.    "Releasee" means each and every one of, and Releasees means all of, the following:  the Marsh Entities and each such entity's respective past and present directors, officers, employees, members, partners, principals, agents, attorneys and insurance carriers (but only to the extent such insurance carriers provide insurance coverage or indemnity to one or more Releasee for losses incurred in connection with the Action).  All Releasees who are not parties to this Settlement Agreement are intended third-party beneficiaries entitled to enforce the terms of the Release set forth herein.

ZZ.    "Settled Party Claims" and "Settled Parties' Claims" mean, subject to Section VI.A, each and every Claim, whether arising under any federal law, state law, foreign law, common law doctrine, rule, regulation or otherwise, that has been or could have been asserted in the Action or any other forum by any party, counsel, or the successors and assigns of any of them, against any of the Plaintiffs, Settlement Class Members, Class Counsel, State Court Class Counsel, the Marsh Defendants, the Marsh Defendants' Counsel, the Marsh Entities, or any agents or experts of the foregoing and that arise out of or relate in any way to the institution, pursuit, assertion, defense, settlement or resolution of this Action.

AAA.  "Settlement Agreement" means the terms of the settlement embodied herein and in the accompanying Exhibits, together with any subsequent amendments to this agreement and/or to any of the Exhibits.

BBB.   "Settlement Class" or "Settlement Class Member(s)" means all persons or entities who, during the Settlement Class Period, engaged or retained any of the Brokers to provide Insurance brokerage and any Insurance-related administrative, advisory or claims services with respect to any Settlement Class Policy Purchase; *provided* that the Settlement Class shall be modified as necessary to include any other persons or entities who are certified by the Court as members of any other class in the Action prior to the time that Notice is mailed to the Settlement Class; *provided however* that "Settlement Class" or "Settlement Class Member(s)" does not include (a) such persons or entities who submit valid and timely requests for exclusion from the Settlement Class; (b) such persons or entities who settled an actual or threatened lawsuit or other proceeding with the Marsh Entities and released the Marsh Entities from any further claims concerning their purchase of Insurance, including but not limited to any Participating Policyholders in the NYAG Settlement Agreement; (c) the Marsh Entities; (d) any entity in which any of the Marsh Entities has or had a controlling interest during the Settlement Class Period and the legal representatives, heirs, executors, successors or assigns of any such excluded entity; and (e) any Insurer Defendant or Broker, including any officer, director or employee of such Insurer Defendant or Broker during the Settlement Class Period.

CCC.   "Settlement Class Period" means the period of time from August 26, 1994 through September 1, 2005, inclusive.

DDD.   "Settlement Class Policy Purchase" means the purchase or renewal of Insurance where the Insurance coverage incepted or renewed during the Settlement Class Period pursuant to a contract, policy, agreement, arrangement or understanding where the Insurance (a) involved a Policyholder or an affiliate thereof, any of which was either domiciled in or resident in, or had any other significant contact with, the United States, its territories or possessions; (b) involved a

contract, policy, agreement, arrangement or understanding entered into in the United States, its territories or possessions; (c) involved a contract, policy, agreement, arrangement or understanding subject to federal law or the law of any of the states of the United States, its territories or possessions; or (d) provided coverage for an insurable exposure in the United States, its territories or possessions.

EEE.   "Settlement Fund Amount" means the amount described in Section IV.A.1 of this Settlement Agreement.

FFF.   "Settling Parties" means the Marsh Defendants and Plaintiffs.

GGG.   "State Court Class Action" means the putative class action pending in the Supreme Court of the State of New York, County of New York entitled *In re Marsh & McLennan Contingent Commission Litigation*, Index No. 603711/2004.

HHH.   "State Court Class Counsel" means Kirby McInerney LLP.

III.   "State Court Class Counsel Negotiated Fee and Expense Amount" means the amount of four million five hundred thousand dollars ($4,500,000), which amount was negotiated by the Marsh Defendants and State Court Class Counsel as the total amount of attorneys' fees and expenses to be paid to State Court Class Counsel.

JJJ.   "State Court Class Counsel Attorneys' Fees and Expenses Award" means the amount the Court awards to State Court Class Counsel as provided for in Section VII.B.

KKK.   "State Official" means any Office of Attorney General, Department of Insurance, or any comparable state official, or any employee or representative thereof, in any state of the United States, its territories or possessions.

LLL.   "State Fund" means five million dollars ($5,000,000).

MMM. "State Fund Amount" shall mean the State Fund, together with any interest earned thereon, less any Escrow Expenses and taxes attributable thereto.

NNN.   "Summary Notice" means the published notice of the proposed settlement.  The Settling Parties' proposed Summary Notice is attached as Exhibit E to this Settlement Agreement.

OOO.   "Unknown Claim" means any Claim that any Settlement Class Member does not know or suspect to exist in his, her or its favor at any time on or before the date the Settlement Class Member's release becomes effective, and that, if known by him, her or it, might have affected his, her or its settlement with any of the Releasees or might have affected his, her or its decision not to request exclusion from the Settlement Class or not to object to this Settlement.

## II.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY

Subject to Court approval, the Settling Parties have agreed to seek certification of the Settlement Class, for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23.  Plaintiffs will serve as the Class Representatives.  In the event that this Settlement Agreement is terminated for any reason, the Marsh Defendants reserve the right to reassert all of their objections and defenses to certification of any class for trial purposes, and Plaintiffs and Class Counsel will not offer the conditional stipulation to certification as part of this Settlement Agreement as any evidence in support of a motion to certify a class for trial purposes.

## III.    STATEMENT OF THE PARTIES

A.    The Marsh Defendants expressly deny the wrongdoing alleged in the Complaints, and do not concede any wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against them in the Action.  The Marsh Defendants nevertheless consider it desirable for the Action to be settled and dismissed because the settlement terms set out in the Settlement Agreement will, among other things:  (i) bring to an end the substantial

expense, burdens and uncertainties associated with continued litigation of the claims made in the

Complaints; (ii) finally put to rest those claims and the underlying matters; and (iii) confer

substantial benefits upon Settlement Class Members and the Marsh Defendants including,

without limitation, the avoidance of further expense and disruption due to the pendency and

defense of the Action.  Neither this Settlement Agreement nor compliance with this Settlement

Agreement shall constitute or be construed to be an admission by the Marsh Defendants or the

Releasees, or any of them individually, of any wrongdoing or liability.

B.      This Settlement Agreement shall not be admissible in any judicial, regulatory,

administrative or other proceeding or cause of action as an admission of liability or for any

purpose other than to enforce the terms of this Settlement Agreement.

## IV.    SETTLEMENT CONSIDERATION

A.      <u>Payments into the Escrow Account</u>

1.      <u>Funding.</u>  At any time following the Execution Date, but in no event later

than fourteen (14) Business Days following the date of the Preliminary Approval Order, the

Marsh Defendants shall deposit or cause to be deposited into the Escrow Account the amount of

sixty-nine million, twenty-five thousand, seven hundred sixty nine dollars and forty-two cents

($69,025,769.42), which amount is the NYAG Settlement Fund Remainder, and which amount,

together with any interest earned thereon, shall hereinafter be known as the Settlement Fund

Amount.

2.      <u>Interest.</u>  The Escrow Account into which the Settlement Fund Amount is

deposited shall be an interest-bearing account, which shall be invested in interest-bearing

instruments selected by the Escrow Agent, as that term is defined in the Escrow Agreement.  All

interest earned shall remain in the Escrow Account until distributed or transferred pursuant to

this Settlement Agreement.

B.     Payments From the Escrow Account

1.     <u>Administrative Expenses.</u>  Administrative Expenses shall be paid from the Class Fund.

2.     <u>Taxes.</u>  All taxes on the income of the Escrow Account, and expenses and costs incurred in connection with the taxation of the Escrow Account (including, without limitation, expenses of tax attorneys and accountants), shall be paid from the Settlement Fund Amount.

C.     <u>Distributions of the Settlement Fund Amount</u>

1.     <u>Submission of Claim Forms.</u>  Settlement Class Members must submit a Claim Form in order to receive a distribution from the Class Fund Amount.

2.     <u>Allocation of the Settlement Fund Amount.</u>  The Class Fund Amount (*i.e.*, sixty-two million dollars ($62,000,000), together with any interest earned thereon, less any Administrative Expenses, and less any Escrow Expenses and taxes attributable thereto) shall be distributed to Settlement Class Members, subject to Section IV.C.5.a. below and consistent with the Plan of Allocation; *provided* that the State Fund Amount shall be available to resolve and settle the Claims of State Officials representing the interests of potential Settlement Class Members (the "Claims of State Officials").  The Existing Litigants Fund Amount (*i.e.*, $69,025,769.42 less $62,000,000, equaling $7,025,769.42**,** together with any interest, less any Escrow Expenses and taxes), shall be available to resolve and settle the Claims of Existing Litigants.

3.     <u>Plan of Allocation.</u>  The Class Fund Amount shall be distributed pursuant to the Plan of Allocation designed by Co-Lead Counsel and State Court Class Counsel.

a.     Except as provided for herein, all determinations as to the extent to which each Settlement Class Member will participate in the distribution of the Class Fund

- 18 -

Amount under the terms of the Plan of Allocation shall be made by Co-Lead Counsel, their

designees or agents, the Administrator, or such other person or entities as Co-Lead Counsel may,

in their sole discretion, deem necessary or advisable to assist it in the administration of this

Settlement Agreement.

b.      No person or entity shall have any claim against Plaintiffs, Co-

Lead Counsel, State Court Class Counsel, the Marsh Defendants, the Marsh Defendants'

Counsel, the Administrator, any Releasee, any agent of any of the foregoing, or actor under this

Settlement Agreement with respect to or arising out of any distribution or lack thereof made

under the Plan of Allocation, this Settlement Agreement or an order of the Court.

c.      Releasees and/or their respective counsel, including, but not

limited to, the Marsh Defendants' Counsel, shall have no role in, responsibility for, or liability

with respect to the Plan of Allocation, the form, substance, method or manner of allocation,

administration, or distribution of the Class Fund Amount, any tax liability that a Settlement Class

Member may incur as a result of this Settlement Agreement, or as a result of any action taken

pursuant to this Settlement Agreement, the administration or distribution of the Class Fund

Amount, or the maintenance of the Escrow Account as a Qualified Settlement Fund.

d.      The administration of the Class Fund Amount and decisions on all

disputed questions of law and fact with respect to distribution of the Class Fund Amount, shall

remain under the exclusive jurisdiction of the Court.

4.      Sole Source of Funding.   Settlement Class Members shall look solely to

the Class Fund Amount for settlement and satisfaction of all Released Claims.  Except as

expressly provided by this Settlement Agreement, under no circumstances shall any of the

Settling Parties or any Releasees be responsible for payment of any fees, costs, expenses or other

monies associated with or arising out of the settlement contemplated by this Settlement Agreement.

5.      Remaining Monies.

a.      If and to the extent that the Class Fund Amount exceeds one hundred percent (100%) of the total amount of eligible premiums Settlement Class Members report on their Claim Forms, such excess amount may be added to the State Fund to resolve and settle the Claims of State Officials.

b.      If, on the first Business Day following the sixty (60)-month anniversary of the Preliminary Approval Order, any portion of the Settlement Fund Amount has not been distributed (by reason of leftover money in the Existing Litigants Fund or the State Fund, tax refunds, uncashed checks or otherwise), such amount shall be distributed to Settlement Class Members in an equitable and economic manner as determined by Co-Lead Counsel or as otherwise ordered by the Court.  In no event shall any monies revert to the Marsh Defendants.

6.      Other Distributions Prohibited.  None of the monies in the Escrow Account shall be distributed except in accordance with this Settlement Agreement or any amendment or modification thereto or by order of the Court.

D.      Maintenance of Escrow Account as Qualified Settlement Fund

1.      Co-Lead Counsel shall take all necessary steps to enable the Escrow Account to be a Qualified Settlement Fund, including the timely filing by Co-Lead Counsel and/or their agent of all elections and statements required pursuant to Treas. Reg. §§ 1.468B-0 through 1.468B-5, or any other relevant statutes, regulations or published rulings now or hereafter enacted or promulgated, for all taxable years in which the Escrow Account is in existence, beginning with the date of its establishment.  Co-Lead Counsel shall be the "administrator" of the Qualified Settlement Fund for purposes of the taxation of the Escrow

- 20 -

Account under Treas. Reg. §§ 1468B-0 through 1.468B-5.  Co-Lead Counsel and/or their agent, on behalf of the Escrow Account, shall file or cause to be filed on a timely basis all required federal, state and local tax returns and shall pay taxes in a manner consistent with treatment of the Escrow Account as a Qualified Settlement Fund, as provided in Treas. Reg. §§ 1.468B-0 through 1.468B-5.  The Settling Parties agree that the Escrow Account shall be treated as a Qualified Settlement Fund from the earliest date possible, and they agree and elect to treat the Escrow Account as a Qualified Settlement Fund from the earliest date possible.  The Marsh Defendants agree to provide promptly the statement described in Treasury Reg. § 1.468B-3(e). Except as provided in this Settlement Agreement, in no event shall the Marsh Defendants have any responsibility whatsoever for filing other required statements, or tax returns, or for paying the costs associated therewith, the payment of any taxes due, or the expenses of administration of the Escrow Account.

        2.     Upon request by the Marsh Defendants' Counsel, Co-Lead Counsel shall promptly provide to the Marsh Defendants' Counsel all information requested in connection with any tax returns a Releasee must file or with any other report or filing a Releasee must make with respect to the Escrow Account.

## V.    IMPLEMENTATION AND ADMINISTRATION OF THE SETTLEMENT

    A.    <u>Retention of an Administrator</u>

        1.     The Settling Parties and State Court Class Counsel hereby agree to retain Complete Claim Solutions, LLC as the Administrator to help implement the settlement contemplated by this Settlement Agreement, subject to Court approval.  Such Administrator shall be appointed by the Court in the Preliminary Approval Order.

        2.     The Administrator may assist with various tasks, including, without limitation:  (i) mailing or arranging for the mailing (and re-mailing, if required) of the Notice; (ii)

arranging for publication of the Summary Notice; (iii) publishing the Notice, Summary Notice and Claim Form on the Administrator's website; (iv) providing Claim Forms to Settlement Class Members; (v) answering written inquiries from Settlement Class Members and/or forwarding such inquiries to Co-Lead Counsel or their designee(s); (vi) receiving and maintaining on behalf of the Court any requests for exclusion and receiving and maintaining on behalf of Co-Lead Counsel all Claim Forms submitted by Settlement Class Members; (vii) establishing a call center with a toll-free number, website and e-mail address to answer inquiries from Settlement Class Members, including a system for e-mail inquiries and replies; (viii) providing additional copies of the Notice, upon request, to Settlement Class Members; (ix) calculating and arranging for allocation of the Class Fund Amount consistent with the Plan of Allocation; and (x) otherwise assisting Co-Lead Counsel or their designees with the administration and implementation of this Settlement Agreement.

B.    Payment of Administrative Expenses

1.    Within sixteen (16) Business Days following the Court appointment of an Administrator, Co-Lead Counsel shall cause to be advanced to the Administrator an initial administrative payment to be used for Administrative Expenses in the amount of two hundred fifty thousand dollars ($250,000), which initial administrative payment shall be paid from the Escrow Account.

2.    For all Administrative Expenses in excess of and following the initial administrative payment, the Administrator shall submit to Co-Lead Counsel invoices for Administrative Expenses.  Such invoices shall be submitted by the Administrator to Co-Lead Counsel on a timely basis, and in no event later than the month in which the Administrative Expenses were incurred.  Such invoices shall be subject to review and approval by Co-Lead

Counsel, which approval shall not be unreasonably withheld.  Co-Lead Counsel shall cause all approved expenses to be paid from the Class Fund.

       3.     To the extent that Administrative Expenses do not equal or exceed two million dollars ($2,000,000), the amount remaining may only be used by the Marsh Defendants to resolve and settle the Claims of State Officials.

       4.     If any portion of any amount paid to the Administrator for Administrative Expenses remains unused after all Administrative Expenses incurred in connection with the implementation of this Settlement Agreement have been paid, such monies shall be treated as remaining monies under Section IV.C.5.b. of this Settlement Agreement.

## VI.    RELEASES AND WAIVER, AND ORDER OF DISMISSAL

    A.    <u>Releases and Waiver</u>

       1.     Pursuant to the Order Approving Settlement and the Judgment, without further action by anyone, and subject to Paragraph 5 below, on and after the Final Settlement Date, any and all Settlement Class Members (including Settlement Class Members who are parties to any other litigation, arbitration or other proceedings pending on the Final Settlement Date to the extent such litigation, arbitration or other proceeding is based upon a Released Claim and is brought against any or all of the Releasees) on behalf of themselves, each of their present and former heirs, executors, administrators, parents, subsidiaries, affiliates, predecessors, successors, insurers, co-insurers, representatives and assigns, any person or entity claiming by or through a Settlement Class Member, and any person or entity representing any or all Settlement Class Members, for good and sufficient consideration the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever released, relinquished, settled and discharged all Released Claims against each and every one of the Releasees, Plaintiffs, Class Counsel, State Court Class

Counsel, and the Marsh Defendants' Counsel, including such Released Claims as already have been, could have been or could be asserted in any pending litigation, arbitration or other proceeding, whether formal or informal.

2.     Pursuant to the Order Approving Settlement and the Judgment, without further action by anyone, and subject to Paragraph 5 below, on and after the Final Settlement Date, each of Plaintiffs, Settlement Class Members (including Settlement Class Members who are parties to any other litigation, arbitration or other proceedings pending on the Final Settlement Date to the extent such litigation, arbitration or other proceeding is based upon a Released Claim and is brought against any or all of the Releasees), Class Counsel, State Court Class Counsel, the Marsh Defendants, the Marsh Defendants' Counsel, or any agents or experts of the foregoing, on behalf of themselves, each of their present and former heirs, executors, administrators, parents, subsidiaries, affiliates, predecessors, successors, insurers, co-insurers, representatives and assigns, any person or entity claiming by or through any of the Plaintiffs, Settlement Class Members, Class Counsel, State Court Class Counsel, the Marsh Defendants, the Marsh Defendants' Counsel or any agents or experts of the foregoing, and any person or entity representing any or all Settling Parties, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever released, relinquished, settled and discharged any and all Settled Parties' Claims.

3.     Subject to Paragraph 5 below, with respect to any and all Released Claims, any and all Settlement Class Members (including Settlement Class Members who are parties to any other litigation, arbitration or other proceedings pending on the Final Settlement Date to the extent such litigation, arbitration or other proceeding is based upon a Released Claim and is

brought against any or all of the Releasees) on behalf of themselves, each of their present and

former heirs, executors, administrators, parents, subsidiaries, affiliates, predecessors, successors,

insurers, co-insurers, representatives and assigns, any person or entity claiming by or through a

Settlement Class Member, and any person or entity representing any or all Settlement Class

Members, shall have and be deemed to have waived and relinquished, to the fullest extent

permitted by law, any and all provisions, rights and benefits conferred by Section 1542 of the

California Civil Code or any federal, state or foreign law, rule, regulation or common law

doctrine that is similar, comparable, equivalent or identical to, or which has the effect of, Section

1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or
> suspect to exist in his favor at the time of executing the release, which if known
> by him must have materially affected his settlement with the debtor.

Notwithstanding the provisions of Section 1542 and any similar provisions, rights and benefits

conferred by any law, rule, regulation or common law doctrine of California or in any federal,

state or foreign jurisdiction, Settlement Class Members understand and agree that, subject to

Paragraph 5 below, the Release is intended to include all Released Claims that Settlement Class

Members have or may have, including Released Claims that are Unknown Claims.

        4.      Subject to Paragraph 5 below, with respect to any and all Settled Party

Claims, each of Plaintiffs, Settlement Class Members (including Settlement Class Members who

are parties to any other litigation, arbitration or other proceedings pending on the Final

Settlement Date to the extent such litigation, arbitration or other proceeding is based upon a

Released Claim and is brought against any or all of the Releasees), Class Counsel, State Court

Class Counsel, the Marsh Defendants, the Marsh Defendants' Counsel or any agents or experts

of the foregoing, on behalf of themselves, each of their present and former heirs, executors,

administrators, parents, subsidiaries, affiliates, predecessors, successors, insurers, co-insurers,

representatives and assigns, any person or entity claiming by or through any of Plaintiffs,

Settlement Class Members, Class Counsel, State Court Class Counsel, the Marsh Defendants, the

Marsh Defendants' Counsel or any agents or experts of the foregoing, and any person or entity

representing any or all of Plaintiffs, Settlement Class Members, Class Counsel, State Court Class

Counsel, the Marsh Defendants, the Marsh Defendants' Counsel or any agents or experts of the

foregoing shall have and be deemed to have waived and relinquished, to the fullest extent

permitted by law, any and all provisions, rights and benefits conferred by Section 1542 of the

California Civil Code or any federal, state or foreign law, rule, regulation or common law

doctrine that is similar, comparable, equivalent or identical to, or which has the effect of, Section

1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or
> suspect to exist in his favor at the time of executing the release, which if known
> by him must have materially affected his settlement with the debtor.

Notwithstanding the provisions of Section 1542 and any similar provisions, rights and benefits

conferred by any law, rule, regulation or common law doctrine of California or in any federal,

state or foreign jurisdiction, Plaintiffs, Settlement Class Members, Class Counsel, State Court

Class Counsel, the Marsh Defendants, the Marsh Defendants' Counsel or any agents or experts

of the foregoing understand and agree that, subject to Paragraph 5 below, the Release is intended

to include all Settled Party Claims that Plaintiffs, Settlement Class Members, Class Counsel,

State Court Class Counsel, the Marsh Defendants, the Marsh Defendants' Counsel or any agents

or experts of the foregoing have or may have, including Settled Party Claims that are Unknown

Claims.

5.      Notwithstanding Paragraphs 1 through 4 above, nothing in the Judgment shall bar any action or claim by the Settling Parties to enforce the terms of this Settlement Agreement or the Judgment.

6.      The releases and waivers contained in this Section were separately bargained for and are essential elements of this Settlement Agreement.

B.      <u>Order of Dismissal.</u>  The Settling Parties will seek from the Court an Order Approving Settlement and a Judgment as further described in Section IX.D.  The Order Approving Settlement and Judgment shall, among other things, (i) approve this Settlement Agreement, (ii) dismiss the Action with prejudice and on the merits as to the Marsh Defendants, (iii) enter the Bar Order, and (iv) incorporate the Releases and Waiver.

## VII.   ATTORNEYS' FEES AND EXPENSES

A.      The Marsh Defendants agree (i) that Class Counsel and State Court Class Counsel, or any of them, are entitled to seek attorneys' fees and expenses, (ii) that the Marsh Defendants shall pay such attorneys' fees and expenses as awarded by the Court to Class Counsel in an amount not to exceed the Class Counsel Negotiated Fee and Expense Amount, (iii) that the Marsh Defendants shall pay such attorneys' fees and expenses as awarded by the Court to State Court Class Counsel in an amount not to exceed the State Court Class Counsel Negotiated Fee and Expense Amount, and (iv) that such payment of the Class Counsel Negotiated Fee and Expense Amount and State Court Class Counsel Negotiated Fee and Expense Amount shall be in addition to all other amounts required to be paid by the Marsh Defendants pursuant to the terms of this Settlement Agreement.

B.      Class Counsel agrees to make an application for an attorneys' fees and expenses award not to exceed the Class Counsel Negotiated Fee and Expense Amount for attorneys' fees and related expenses.  State Court Class Counsel agrees to make an application for an attorneys'

fees and expenses award not to exceed the State Court Class Counsel Negotiated Fee and

Expense Amount for attorneys' fees and related expenses.  The Marsh Defendants agree that

Class Counsel and State Court Class Counsel are entitled to such awards and further agree not to

oppose such applications.  Class Counsel and State Court Class Counsel each agree not to oppose

each other's applications.  The Marsh Defendants shall pay or cause to be paid (i) a Class

Counsel Attorneys' Fees and Expenses Award equal to or less than the Class Counsel Negotiated

Fee and Expense Amount pursuant to Section VII.A., and (ii) a State Court Class Counsel

Attorneys' Fees and Expenses Award equal to or less than the State Court Class Counsel

Negotiated Fee and Expense Amount pursuant to Section VII.A.,which payments shall be in

addition to all other payments that the Marsh Defendants shall pay or cause to be paid under this

Settlement Agreement.  Class Counsel and State Court Counsel agree that if the Class Counsel

Attorneys' Fees and Expenses Award is in excess of the Class Counsel Negotiated Fee and

Expense Amount and/or the State Court Class Counsel Attorneys' Fees and Expenses Award is

in excess of the State Court Class Counsel Negotiated Fee and Expense Amount, they will not

seek to require the Marsh Defendants to pay such excess amount and the Marsh Defendants shall

have no obligation to pay such excess amount.

  C.  No counsel other than Class Counsel and State Court Class Counsel shall be

entitled to apply for or receive attorneys' fees or reimbursement of expenses in connection with

this Settlement.

  D.  Subject to the terms (including, without limitation, the repayment provisions) set

forth below, the Marsh Defendants shall pay or cause to be paid the Class Counsel Attorneys'

Fees and Expenses Award and State Court Class Counsel Attorneys' Fees and Expenses Award

on the Attorneys' Fees and Expenses Awards Payment Date.

E.     The Class Counsel Attorneys' Fees and Expenses Award made by the Court shall be the sole aggregate compensation for Class Counsel respecting this Settlement Agreement. The State Court Class Counsel Attorneys' Fees and Expenses Award made by the Court shall be the sole compensation for State Court Class Counsel.

F.     No Releasee shall be liable or obligated to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of, any person or entity (including, without limitation, Plaintiffs), directly or indirectly, in connection with the Action or this Settlement Agreement, except as expressly provided for in this Settlement Agreement.

G.     If, after the Attorneys' Fees and Expenses Awards Payment Date, this Settlement Agreement is properly and timely terminated in accordance with its terms, Co-Lead Counsel and State Court Class Counsel shall, within five (5) Business Days following the effective date of such termination return to the Marsh Defendants the Class Counsel Attorneys' Fees and Expenses Award and the State Court Class Counsel Attorneys' Fees and Expenses Award, with interest on such amount, such interest to be calculated at the Interest Rate beginning as of the Attorneys' Fees and Expenses Award Payment Date and ending as of the date either such amount is returned to the Marsh Defendants pursuant to this Section.

H.     If, after the Attorneys' Fees and Expenses Awards Payment Date, either the Class Counsel Attorneys' Fees and Expenses Award or State Court Class Counsel Attorneys' Fees and Expenses Award is reduced or both awards are reduced, then Co-Lead Counsel and/or State Court Class Counsel, as the case may be, shall, within five (5) Business Days following such reduction return to the Marsh Defendants the amount by which the Class Counsel Attorneys' Fees and Expenses Award and/or State Court Class Counsel Attorneys' Fees and Expenses Award have been reduced, with interest on such amount, such interest to be calculated at the

Interest Rate beginning as of the Attorneys' Fees and Expenses Award Payment Date and ending as of the date such amount is returned to the Marsh Defendants pursuant to this Section.

I.       The obligation of Class Counsel to return the Class Counsel Attorneys' Fees and Expenses Award or any portion thereof, as described above, shall be evidenced by a promissory note, which note shall be executed prior to the receipt of the Class Counsel Attorneys' Fees and Expenses Award on behalf of the following firms, and individually by the partners or members of the executive committees of such firms:  Whatley, Drake & Kallas, LLC and Cafferty Faucher LLP.  In addition, as a condition of receiving the Class Counsel Attorneys' Fees and Expenses Award, Whatley, Drake & Kallas, LLC and Cafferty Faucher LLP, on behalf of themselves and each of their partners and/or shareholders, agree that the law firms and their partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing this Section. Without limitation, Whatley, Drake & Kallas, LLC and Cafferty Faucher LLP, on behalf of themselves and each of their partners and/or shareholders, agree that the Court may, upon application of the Marsh Defendants, on notice to Whatley, Drake & Kallas, LLC and Cafferty Faucher LLP, summarily issue orders, and may make appropriate findings of and/or sanctions for contempt, against them or any of them (if applicable) should Whatley, Drake & Kallas, LLC and/or Cafferty Faucher LLP fail timely to repay any amounts pursuant to this Section.

J.       The obligation of State Court Class Counsel to return the State Court Class Counsel Attorneys' Fees and Expenses Award or any portion thereof, as described above, shall be evidenced by a promissory note, which note shall be executed prior to the receipt of the State Court Class Counsel Attorneys' Fees and Expenses Award on behalf of Kirby McInerney LLP, and individually by its partners and/or shareholders, and by Richard L. Stone ("Stone").  In addition, as a condition of receiving the State Court Class Counsel Attorneys' Fees and Expenses

Award, Kirby McInerney LLP, on behalf of itself and each of its partners and/or shareholders,
agrees that the law firm and its partners and/or shareholders is subject to the jurisdiction of the
Court for the purpose of enforcing this Section.  Without limitation, Kirby McInerney LLP, on
behalf of itself and each of its partners and/or shareholders, agrees that the Court may, upon
application of the Marsh Defendants, on notice to Kirby McInerney LLP, summarily issue
orders, and may make appropriate findings of and/or sanctions for contempt, against it (if
applicable) should Kirby McInerney LLP or its partners and/or shareholders or Stone fail timely
to repay the amount required to be repaid to the Marsh Defendants pursuant to this Section.

## VIII.   NOTICE TO AND COMMUNICATIONS WITH THE SETTLEMENT CLASS

A.   <u>Form of Notice.</u>  The Notice shall conform to all applicable requirements of the
Federal Rules of Civil Procedure, the United States Constitution (including the Due Process
Clause), the Rules of the Court and any other applicable law, and shall otherwise be in the
manner and form agreed upon by the Settling Parties and approved by the Court.

B.   <u>Court Approval.</u>  Copies of the Notice and Summary Notice shall be submitted to
the Court for its approval.

C.   <u>Notice by Mail.</u>  No later than forty-five (45) days before the Fairness Hearing,
the Settling Parties shall cause to be mailed, by first-class mail, postage pre-paid, a copy of the
Notice to each Settlement Class Member that engaged or retained any of the Marsh Defendants
to provide Insurance brokerage or Insurance-related administrative, advisory or claims services
and can be identified to the extent reasonably practicable and technologically feasible based on
the Marsh Defendants' current records.  If any such mailing is returned to the Administrator with
an updated address, the Notice shall be re-mailed to the addressee within two (2) Business Days
of receipt of the updated address; *provided, however*, that if such updated address is received by

the Administrator less than five (5) Business Days prior to, or after, the date of the Fairness Hearing, no re-mailing shall be required.

        D.     <u>Website Notice.</u>  No later than thirty-five (35) days before the Fairness Hearing, (i) the Settling Parties shall cause the Administrator to publish the Notice, Summary Notice and Claim Form on its website, (ii) Co-Lead Counsel shall cause the Notice to be published on their websites with a link to the Administrator's website, and (iii) the Marsh Defendants shall cause the Notice to be published on the website found at **www.marsh.com** with a link to the Administrator's website.

        E.     <u>Publication Notice.</u>  No later than thirty-five (35) days before the Fairness Hearing, the Settling Parties shall cause the Summary Notice to be published (*i*) one (1) time in all editions of *The New York Times*, *The Wall Street Journal* and *USA Today*; (*ii*) one (1) time in *Parade Magazine*; and (*iii*) one (1) time in *Business Insurance* and *RM Magazine*.

        F.     <u>The Marsh Entities' Communications with Settlement Class Members.</u>  Co-Lead Counsel acknowledge and agree that the Marsh Entities have the right to communicate orally and in writing with, and to respond to inquiries from, Settlement Class Members, including (without limitation):  (i) communications between Settlement Class Members and representatives of the Marsh Entities whose responsibilities include client relations to the extent such communications are initiated by Settlement Class Members; (ii) communications between Settlement Class Members who are ongoing clients of any of the Marsh Entities, or who seek to become clients of any of the Marsh Entities, regarding the Insurance products they have purchased or might purchase using the services of the Marsh Entities, provided that if any such client has questions about the terms of this Settlement Agreement, the Marsh Entities shall refer such client to the

toll-free number or e-mail address for the Administrator; and (iii) communications that might be necessary to conduct the Marsh Entities' normal business.

G.     Comments About the Settlement.  Class Counsel, State Court Class Counsel, and the Marsh Defendants' Counsel agree to cooperate in good faith to ensure that any comments about or descriptions of the proposed settlement are balanced, fair and accurate; *provided*, *however*, that the Releasees, or any of them, shall be able to make, without notification to, or prior review or approval by, Co-Lead Counsel, any and all disclosures regarding the Settlement Agreement that the Releasees, or any of them, believe may be required or appropriate under applicable law, or as required in connection with a judicial or regulatory proceeding.

H.     Communications Regarding Tax Consequences.  No opinion or advice concerning the tax consequences of the proposed settlement to individual Settlement Class Members is being given or will be given by the Marsh Defendants' Counsel and/or Co-Lead Counsel and/or State Court Class Counsel, nor is any representation or warranty in this regard made by virtue of this Settlement Agreement.  The Notice will direct Settlement Class Members to consult their own tax advisors regarding the tax consequences of the proposed settlement and any tax reporting obligations they may have with respect thereto.  Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

IX.     **PROCESS FOR COURT APPROVAL OF SETTLEMENT**

A.     Preliminary Approval.  Within fourteen (14) days following the Execution Date, the Settling Parties shall submit the Settlement Agreement to the Court and apply for a Preliminary Approval Order.

B.     Requests for Exclusion.

- 33 -

1.    Submission of Requests.    Any potential Settlement Class Member who wishes to be excluded from the Settlement Class must mail by first-class mail or deliver a written request for exclusion to the Clerk of the Court, care of the address provided in the Notice, postmarked or delivered no later than fifteen (15) days before the Fairness Hearing, or as the Court may otherwise direct.  A list of the persons and entities who have requested exclusion shall be provided by the Settling Parties to the Court at or before the Fairness Hearing.

2.    Form of Requests.    A potential Settlement Class Member's request for exclusion shall include the following information:  (i) his, her or its name, (ii) his, her or its address, (iii) his, her or its telephone number, and (iv) information describing why said individual or entity believes that he, she or it is a Settlement Class Member, including, specifically, with respect to the Settlement Class Period, (a) which Broker(s) he, she, or it has engaged or retained, (b) the type of coverage and policy numbers for any Insurance purchased through a Broker, (c) the insurer(s) that issued such coverage, (d) the face amount of each policy, (e) the annual premium associated with each policy, and (f) the effective date and expiration date for each policy.

3.    Untimely Requests.    Any potential Settlement Class Member who does not file a timely written request for exclusion as provided in Paragraph B.1 above shall be bound by the Release and by all proceedings, orders and judgments in this Action, even if he, she or it has pending, or later initiates, any other litigation, arbitration or proceedings against any or all Releasees relating to Released Claims.

C.    Objections to Settlement.    Any Settlement Class Member who wishes to object to the fairness, reasonableness or adequacy of this Settlement Agreement, to the Plan of Allocation, or to any term(s) of this Settlement Agreement must both serve on Co-Lead Counsel and the

Marsh Defendants' Counsel (as identified in the Notice) and file with the Court a statement of his, her or its objection(s); *provided* that any such objection statement must be received by Co-Lead Counsel, the Marsh Defendants' Counsel, and the Court no later than fifteen (15) days before the Fairness Hearing or as the Court may otherwise direct.  Co-Lead Counsel shall provide to State Court Class Counsel a copy of any such objection no later than three (3) days after the filing of the objection.

   1. <u>Form of Objection.</u>  The Settlement Class Member's statement of objection shall provide evidence of the objector's membership in the Settlement Class (in the form described above at Section IX.B.2) and shall state the specific reason(s), if any, for each such objection made by the Settlement Class Member, including any legal support the Settlement Class Member wishes to bring to the Court's attention and any evidence the Settlement Class Member wishes to introduce in support of such objection.

   2. <u>Legal Representation.</u>  Any Settlement Class Member may file an objection on his, her or its own, or through an attorney hired at his, her or its own expense.  If a Settlement Class Member hires an attorney to represent him, her or it in connection with filing an objection, the attorney must serve on Co-Lead Counsel and the Marsh Defendants' Counsel (as identified in the Notice) and file with the Court a notice of appearance; *provided* that any such notice of appearance must be received by Co-Lead Counsel, the Marsh Defendants' Counsel, and the Court no later than fifteen (15) days before the Fairness Hearing, or as the Court may otherwise direct.  Co-Lead Counsel shall provide to State Court Class Counsel a copy of any such notice of appearance no later than three (3) days after the filing of the notice.

   3. <u>Appearances at Fairness Hearing.</u>  Settlement Class Members who timely file and serve written objections pursuant to this Section IX — and only such Settlement Class

- 35 -

Members — may appear at the Fairness Hearing, either in person or through counsel hired at the Settlement Class Member's expense, to object to this Settlement Agreement and any of its terms or to the Plan of Allocation; *provided* that any such counsel shall have timely filed and served a notice of appearance as set forth in Section IX.C.2.  Settlement Class Members not represented by counsel who intend to make an appearance at the Fairness Hearing must serve on Co-Lead Counsel and the Marsh Defendants' Counsel (as identified in the Notice) and file with the Court a notice of intention to appear; *provided* that any such notice of intention to appear must be received by Co-Lead Counsel, the Marsh Defendants' Counsel, and the Court no later than fifteen (15) days before the Fairness Hearing, or as the Court may otherwise direct.  Co-Lead Counsel shall provide to State Court Class Counsel a copy of any such notice of intention to appear no later than three (3) days after the filing of the notice.

4.      Waiver.  Any Settlement Class Member who fails to comply with any of the provisions of this Section IX shall waive and forfeit any and all rights he, she or it may otherwise have to appear separately at the Fairness Hearing and/or to object to this Settlement Agreement, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders and judgments in this Action.

D.      Court Approval.  After the Fairness Hearing, and upon the Court's approval of this Settlement Agreement, the Settling Parties shall seek from the Court a Judgment and an Order Approving Settlement.

## X.    MODIFICATION AND TERMINATION OF THE AGREEMENT

A.      Modification.  The terms and provisions of this Settlement Agreement may be amended, modified or expanded by agreement of the Settling Parties; *provided, however*, that, after entry of the Judgment and Order Approving Settlement, the Settling Parties may, by written agreement, effect any amendments, modifications or expansions of this Settlement Agreement

and its implementing documents (including all Exhibits) without notice to or approval by the

Court only if such changes are not materially inconsistent with the Court's Judgment and Order

Approving Settlement and do not materially limit the rights of Settlement Class Members under

this Settlement Agreement; *provided further* that a decision by the Plaintiffs to modify the Plan

of Allocation shall not be deemed to be a change that materially limits the rights of Settlement

Class Members under this Settlement Agreement to the extent such modification involves an

amount equal to or less than ten percent (10%) of the Settlement Fund Amount.

      B.    <u>Termination Rights</u>.

      1.    This Settlement Agreement may be terminated at the sole option and

discretion of the Marsh Defendants or Plaintiffs if (i) the Court, or any appellate court(s), rejects,

modifies or denies approval of any portion of this Settlement Agreement or the proposed

settlement that the terminating Settling Party reasonably and in good faith determines is material,

including, without limitation, the terms of relief, the Bar Order, the findings of the Court, the

provisions relating to Notice, the definition of the Settlement Class and/or the terms of the

Release (but excluding the Class Counsel Attorneys' Fees and Expenses Award and/or State

Court Class Counsel Attorneys' Fees and Expenses Award) or (ii) the Court, or any appellate

court(s), does not enter or completely affirm, or alters or expands, any portion of the Preliminary

Approval Order, the Judgment or the Order Approving Settlement, including the Bar Order, or

any of the Court's findings of fact or conclusions of law that the terminating Settling Party

reasonably and in good faith believes is material.

      2.    This Settlement Agreement may be terminated at the sole option and

discretion of the Marsh Defendants (i) if the Policyholders submitting timely and valid requests

for exclusion (that conform to the requirements of Section IX.B. of this Settlement Agreement),

in the aggregate, would have been entitled to receive distributions from the Class Fund Amount (as calculated pursuant to the Plan of Allocation) equaling or exceeding fifteen percent (15%) of the Class Fund Amount; or (ii) if the NYAG Settlement Fund Remainder cannot be used as the settlement consideration described in Section IV.

       3.     If an option to terminate this Settlement Agreement arises pursuant to the terms of this Section X, the Settling Party(ies) having such option will not be required for any reason or under any circumstance to exercise that option.

       4.     A Settling Party seeking to terminate this Settlement Agreement pursuant to this Section X must exercise the option to withdraw from and terminate this Settlement Agreement no later than ten (10) days after receiving actual notice of the event prompting the termination; *provided, however,* that the Marsh Defendants may opt to terminate this Settlement Agreement pursuant to Section X.B.2(ii) at any time no later than three (3) Business Days following the entry of the Order Approving Settlement. Any termination shall take effect three (3) Business Days after providing notice to the other Settling Party pursuant to Section XII.H.

       5.     Neither Plaintiffs nor Co-Lead Counsel may terminate this Settlement Agreement because of the amount of the Class Counsel Attorneys' Fees and Expenses Award or the State Court Class Counsel Attorneys' Fees and Expenses Award.

     C.     <u>Effect of Termination.</u>  If this Settlement Agreement is terminated pursuant to the terms set out above, then:

       1.     This Settlement Agreement shall be null and void and shall have no force or effect, and no Settling Party to this Settlement Agreement shall be bound by any of its terms, except for the terms of Sections II, III, VII.G., VII.I., VII.J. and X and Exhibit G (the Escrow Agreement).

2.      This Settlement Agreement, all of its provisions and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of the Marsh Defendants, Plaintiffs or any other Settlement Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Settlement Agreement except with respect to the payment of Administrative Expenses as described in Sections IV.B.1. and V.B.

3.      Releasees expressly and affirmatively reserve all defenses, arguments and motions as to all claims that have been or might later be asserted in the Action, including (without limitation) any argument that the Action should not be litigated as a class action.

4.      Plaintiffs expressly and affirmatively reserve all motions as to, and arguments in support of, all claims that have been or might later be asserted in the Action, including (without limitation) any argument concerning class certification.

5.      Neither this Settlement Agreement, nor the fact of its having been made, shall be admissible or entered into evidence for any purpose whatsoever.

6.      Neither the Marsh Defendants' agreement to the terms set out in this Settlement Agreement nor their execution of this Settlement Agreement shall constitute or be construed to be an admission by the Marsh Defendants, or any of them, that any wrongdoing has taken place, that any federal or state laws or common law have been violated, or that any antitrust injury occurred.

7.      All funds shall remain in the Escrow Account until such time as the Marsh Entities further direct.  The Marsh Entities shall bear any expenses associated with maintaining the Escrow Account after the effective date of termination.

8.      Except as expressly set out in this Section X, nothing in this Settlement Agreement shall create obligations on the part of any Settling Party to pay any other Settling Party's fees or expenses.

## XI.   CONDITIONS TO THE EFFECTIVENESS OF SETTLEMENT

The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events:

A.      No Settling Party having a right to terminate the Settlement under Section X gives a timely notice of termination;

B.      The Court signs the Preliminary Approval Order;

C.      The Marsh Defendants shall have funded the Escrow Account pursuant to Section IV.A.

D.      The Court signs the Order Approving Settlement and the Judgment; and

E.      The Order Approving Settlement and the Judgment become Final.

## XII.   GENERAL MATTERS

A.      <u>Bar Order.</u>  The Settling Parties agree to the inclusion of a "Bar Order" in the Order Approving Settlement that is substantially in the form set forth in paragraph 12 of such Order.

B.      <u>Costs and Expenses of the Marsh Defendants.</u>  By execution of this Settlement Agreement, the Marsh Defendants do not intend to release any claim against any Insurer Defendant for any cost or expense hereunder, including attorneys' fees and costs.

C.      <u>Plaintiffs' Representative Capacity.</u>  Plaintiffs represent and certify that (i) they have agreed to serve as Class Representatives of the Settlement Class proposed to be certified herein; (ii) they are willing, able and ready to perform all of the duties and obligations as representatives of the Settlement Class, including, but not limited to, being available for, and

involved in, discovery and fact finding; (iii) they have read the pleadings in this Action, or have had the contents of such pleadings described to them; (iv) they have been kept apprised of the progress of the Action and/or the settlement negotiations among the Settling Parties, and have either read this Settlement Agreement, including the Exhibits attached to the Settlement Agreement, or have received a description of it from Class Counsel, and they have agreed to its terms; (v) they have consulted with Class Counsel about the Action, this Settlement Agreement and the obligations of representatives of a class; (vi) they have authorized Co-Lead Counsel to execute this Settlement Agreement on their behalf; and (vii) they will remain and serve as Class Representatives until all of the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that said Plaintiffs cannot represent the Settlement Class.

D.     <u>Authority of Signatories.</u>  The undersigned signatories represent that they have authority from their respective clients to execute this Settlement Agreement, and Co-Lead Counsel represents that it has authority to execute this Settlement Agreement on behalf of Class Counsel.  The terms of this Settlement Agreement shall be binding upon the Settling Parties and their successors in interest.

E.     <u>Entire Agreement.</u>  This Settlement Agreement sets forth the entire agreement among the Settling Parties with respect to its subject matter, and it may not be altered or modified except by written instrument executed by Co-Lead Counsel and the Marsh Defendants' Counsel.  The Settling Parties expressly acknowledge that no agreements, arrangements or understandings not expressed in this Settlement Agreement exist among or between them.  In entering into this Settlement Agreement, no party has relied upon any representation or warranty not set forth expressly herein.

F.      Governing Law.  This Settlement Agreement and any ancillary agreements shall be governed by and interpreted according to the law of the State of New Jersey, excluding its conflict of laws provisions.

G.      Exclusive Jurisdiction.  The Court retains continuing and exclusive jurisdiction over this Settlement Agreement, the Settling Parties, all Settlement Class Members and all Releasees to adjudicate all issues relating to this Settlement Agreement.  Any action arising under or to enforce this Settlement Agreement shall be commenced and maintained only in this Court.

H.      Notice.  Whenever this Settlement Agreement requires or contemplates that a Settling Party shall or may give notice to the other, notice shall be provided by facsimile and/or next-day (excluding Saturday and Sunday) express delivery service as follows and shall be deemed effective upon such facsimile transmission, or delivery, to the facsimile number, or address, as the case may be, below:

1.      If to the Marsh Defendants, then to:

Peter J. Beshar, Esq.
Marsh & McLennan Companies, Inc.
1166 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 345-5000
Facsimile:  (212) 345-1074

*and*

Mitchell J. Auslander, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York  10019
Telephone:  (212) 728-8201
Facsimile:  (212) 728-8111

2.      If to Plaintiffs, then to:

Edith M. Kallas, Esq.
Whatley, Drake & Kallas, LLC
1540 Broadway, 37th Floor
New York, New York  10036
Telephone:  (212) 447-7070
Facsimile:  (212) 447-7077

*and*

Bryan L. Clobes, Esq.
Cafferty Faucher LLP
1717 Arch Street, Suite 3610
Philadelphia, Pennsylvania  19103
Telephone: (215) 864-2800
Facsimilie: (215) 864-2810

I.      <u>Computation of Time.</u>  All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Settlement Agreement or by order of court, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, or, when the act to be done is the filing of a paper in Court, a day on which weather or other conditions have made the office of the Clerk of the Court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days. As used in this Section, "legal holiday" includes New Year's Day, the observance of the birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day and any other day appointed as a federal holiday.

J.      <u>Construction of Settlement Agreement.</u>  All Settling Parties agree that this Settlement Agreement was drafted and negotiated by counsel for the Settling Parties at arm's length, and that no parol or other evidence may be offered to vary, contradict or add to its terms.

- 43 -

Nor shall there be any presumption for or against any Settling Party that drafted all or any portion of this Settlement Agreement.

K.     Not to Be Used as Evidence.  In no event shall the Settlement Agreement, any of its provisions, or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in this Action, any other action, or any judicial, administrative, regulatory or other proceeding, except a proceeding to enforce this Settlement Agreement.  Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including but not limited to the Marsh Defendants, or as a waiver by the Marsh Defendants of any applicable defense or as a waiver by Plaintiffs or the Settlement Class of any claims, causes of action or remedies.

L.     Use of Documents.  Co-Lead Counsel shall be able to use documents produced in the Action by the Marsh Defendants in any judicial proceedings in this Action, including but not limited to, discovery and trial, subject to the provisions of the Court's September 23, 2005 Corrected Discovery Confidentiality Order on Informal Application.  The Marsh Defendants agree to reasonably and timely respond to Co-Lead Counsel's inquiries and requests for discoverable documents and requests concerning authentication of the documents produced in the Action by the Marsh Defendants.  The Marsh Defendants are not required to produce any documents obtained by the Marsh Defendants or the Marsh Defendants' Counsel solely in connection with their roles in coordinating among the defendants and their counsel in the Action. The Settling Parties agree that the Marsh Defendants' Counsel shall be authorized to accept

service of a subpoena for deposition or trial testimony in the Action of any then-current employee of the Marsh Defendants; however, acceptance of service by the Marsh Defendants' Counsel shall waive no other objection any party may have to any such subpoena.

      M.    <u>Business Practices.</u>  Plaintiffs have alleged in the Action that, in their relations and transactions with brokerage clients, the Marsh Defendants did not act in accordance with applicable law and regulations.  While expressly denying these allegations, the Marsh Defendants agree to use best efforts to conduct their brokerage business in accordance with applicable law, regulations, and accepted industry standards of conduct.  The obligations in this paragraph shall terminate and cease on December 31, 2009.  If, prior to December 31, 2009, Plaintiffs reach a settlement with any other Broker that contains terms less restrictive than those in this paragraph, this paragraph shall be automatically amended to reflect the terms of agreement with the other Broker.

      N.    <u>Good Faith Cooperation in Implementing Settlement.</u>  The Settling Parties agree to cooperate in the filing of a motion to dismiss the appeals of the Action as to the Marsh Defendants.  The Settling Parties and their successors, assigns and attorneys undertake to implement the terms of this Settlement Agreement in good faith and to act in good faith in resolving any disputes that may arise in the implementation of the terms of this Settlement Agreement, including agreement on any reasonable extensions of time that might be necessary to carry out any of the provisions of the Settlement Agreement and that are not prejudicial to any of the Settling Parties' interests.

      O.    <u>Counterparts.</u>  This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile or by an electronically transmitted signature shall be fully and legally binding on a Settling Party.

P.    Claims and Defenses in the Action.  The Settling Parties and their respective

counsel agree that all claims and defenses asserted in this Action were asserted in good faith and

in accordance with applicable conduct rules and statutes and that this Action is being voluntarily

settled by the Settling Parties after consultation with legal counsel.

Q.    Headings.  The headings in this Settlement Agreement have been inserted for

convenience only and are not to be considered when construing the provisions of this Settlement

Agreement.

Agreed to as of this 19th day of June, 2008.

Dated:                                          PLAINTIFFS AND THE PUTATIVE CLASS
_____June 19, 2008_____

By: ___Edith M. Kallas___
    Edith M. Kallas
    Whatley, Drake & Kallas, LLC
    1540 Broadway, 37th Floor
    New York, New York  10036
    Telephone:  (212) 447-7070
    Facsimile:  (212) 447-7077

By: _____
    Bryan L. Clobes
    Cafferty Faucher LLP
    1717 Arch Street, Suite 3610
    Philadelphia, Pennsylvania  19103
    Telephone: (215) 864-2800
    Facsimilie: (215) 864-2810

Dated:                                          THE MARSH DEFENDANTS
_____

By: _____
    Mitchell J. Auslander
    WILLKIE FARR & GALLAGHER LLP
    787 Seventh Avenue
    New York, New York  10019
    Telephone:  (212) 728-8201
    Facsimile:  (212) 728-8111

- 46 -

P.    <u>Claims and Defenses in the Action.</u>  The Settling Parties and their respective

counsel agree that all claims and defenses asserted in this Action were asserted in good faith and

in accordance with applicable conduct rules and statutes and that this Action is being voluntarily

settled by the Settling Parties after consultation with legal counsel.

Q.    <u>Headings.</u>  The headings in this Settlement Agreement have been inserted for

convenience only and are not to be considered when construing the provisions of this Settlement

Agreement.


Agreed to as of this 19th day of June, 2008.

Dated:                                          PLAINTIFFS AND THE PUTATIVE CLASS
_____

                                                By: _____
                                                      Edith M. Kallas
                                                      Whatley, Drake & Kallas, LLC
                                                      1540 Broadway, 37th Floor
                                                      New York, New York  10036
                                                      Telephone:  (212) 447-7070
                                                      Facsimile:  (212) 447-7077

                                                By: _____
                                                      Bryan L. Clobes
                                                      Cafferty Faucher LLP
                                                      1717 Arch Street, Suite 3610
                                                      Philadelphia, Pennsylvania  19103
                                                      Telephone: (215) 864-2800
                                                      Facsimilie: (215) 864-2810


Dated:                                          THE MARSH DEFENDANTS
_____

                                                By: _____
                                                      Mitchell J. Auslander
                                                      WILLKIE FARR & GALLAGHER LLP
                                                      787 Seventh Avenue
                                                      New York, New York  10019
                                                      Telephone:  (212) 728-8201
                                                      Facsimile:  (212) 728-8111

4199635.14

P.   Claims and Defenses in the Action.  The Settling Parties and their respective counsel agree that all claims and defenses asserted in this Action were asserted in good faith and in accordance with applicable conduct rules and statutes and that this Action is being voluntarily settled by the Settling Parties after consultation with legal counsel.

Q.   Headings.  The headings in this Settlement Agreement have been inserted for convenience only and are not to be considered when construing the provisions of this Settlement Agreement.

Agreed to as of this 19th day of June, 2008.

Dated: _____

PLAINTIFFS AND THE PUTATIVE CLASS

By: _____
    Edith M. Kallas
    Whatley, Drake & Kallas, LLC
    1540 Broadway, 37th Floor
    New York, New York  10036
    Telephone:  (212) 447-7070
    Facsimile:  (212) 447-7077

By: _____
    Bryan L. Clobes
    Cafferty Faucher LLP
    1717 Arch Street, Suite 3610
    Philadelphia, Pennsylvania  19103
    Telephone: (215) 864-2800
    Facsimilie: (215) 864-2810

Dated: June 19, 2008

THE MARSH DEFENDANTS

By: _____
    Mitchell J. Auslander
    WILLKIE FARR & GALLAGHER LLP
    787 Seventh Avenue
    New York, New York  10019
    Telephone:  (212) 728-8201
    Facsimile:  (212) 728-8111

- 46 -