<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| : | MDL Docket No. 1663 |
| **IN RE INSURANCE BROKERAGE** : | |
| **ANTITRUST LITIGATION** : | Civ. No. 04–5184 (GEB) |
| : | **MEMORANDUM OPINION** |
| : | |
| **This Document Relates To:** : | **R E C E I V E D** |
| : | |
| **ALL ACTIONS** : | FEB 1 7 2009 |
| : | |

AT 8:30_____M
WILLIAM T. WALSH
CLERK

<u>BROWN, Chief District Judge</u>

This matter comes before the Court upon the following two motions:

(1) motion for final approval of the proposed settlement agreement by Defendants Marsh & McLennan Companies, Inc.; Marsh Inc.; Marsh USA, Inc.; Marsh USA Inc. (Connecticut); Mercer, Inc.; Mercer Human Resource Consulting LLC; Mercer Human Resource Consulting of Texas, Inc.; and Seabury & Smith, Inc. (collectively the "Marsh Defendants") [# 1462];

(2) motion for final approval of settlement with the Marsh Defendants by the preliminarily approved Plaintiff Class (collectively the "Plaintiffs") [# 1464].

On August 20, 2008, this Court issued an order that preliminarily certified the Plaintiff Class, and preliminarily approved the proposed Settlement Agreement between the Marsh Defendants and Plaintiffs [Docket # 1418]. A fairness hearing was held on December 15, 2008. The Court has considered the parties' submissions and the oral arguments made at the fairness hearing. For the reasons that follow, the Court will grant the parties' motions [# 1462, 1464], certify the plaintiff class, and approve the settlement between the Marsh Defendants and

Plaintiffs.

## I.   BACKGROUND

This multidistrict litigation involves numerous class actions filed in August 2004 against various insurance brokers and insurers, including the Marsh Defendants. (Pls.' Mot. Br. at 3.) [# 1464] The class actions allege violations of federal and state antitrust laws, the Racketeer Influences and Corrupt Organizations Act ("RICO"), the Employee Retirement Income Security Act ("ERISA") and various state statutes and common law. (*Id.*) In 2005, the class actions were consolidated by the Judicial Panel on Multidistrict Litigation into MDL 1663, *In Re Insurance Brokerage Antitrust Litigation*, and transferred to the District of New Jersey for coordinated pre-trial proceedings. In March 2007, MDL 1663 was reassigned to this Court [# 1040].

By orders entered on May 25, 2005 and July 17, 2006, the law firms of Miller Faucher and Cafferty LLP (now Cafferty Faucher LLP), and Whatley Drake & Kallas, LLC, respectively, were appointed Co-Lead Counsel for Plaintiffs. The aforementioned orders provide that Co-Lead Counsel shall, among other things, conduct settlement negotiations on behalf of Plaintiffs in this Action and enter into binding agreements with respect to settlement. (Order, May 25, 2005; Order, July 17, 2006).

Between August 2005 and June 2007, Plaintiffs filed two additional amended complaints and other supplemental pleadings. (Pls.' Mot. Br. at 3.) [# 1464] The Marsh Defendants moved to dismiss those amended complaints. On August 31, 2007 and September 28, 2007, the Court granted the Marsh Defendants' motions and dismissed Plaintiffs' claims. (GEB Order 8/31/07; GEB Order 9/28/07) [# 1299, 1316] Plaintiffs appealed those rulings to the United States Court of Appeals for the Third Circuit. (Pls.' Mot. Br. at 3.) [# 1464] However, on June 23, 2008,

2

before Plaintiffs' appeals were ruled upon by the Third Circuit, the settling parties filed joint

motions to dismiss the pending appeals without prejudice. (*Id.*) The parties also requested

remand of the matter so this Court could consider the proposed Settlement Agreement ratified by

the parties on June 19, 2008. (Settlement Agreement) [# 1403] The parties assert that the

proposed Settlement Agreement is the product of arm's-length negotiations conducted after

extensive discovery concluded. In the present motions, the parties call upon the Court to approve

the proposed Settlement Agreement, the essential terms of which follow.

  The Settlement Agreement provides for a resolution of all claims for the Settlement Class

Period of August 26, 1994 through September 1, 2005. (Settlement Agreement at 14.) [# 1403]

With certain exceptions as set forth in the Settlement Agreement, the Settlement Class is

comprised of "all persons or entities who, during the Settlement Class Period, engaged or

retained any of the Brokers to provide Insurance brokerage and any Insurance-related

administrative, advisory or claims services with respect to any Settlement Class Policy Purchase .

. . ." (*Id.*) The Settlement Class does not include, among others, "such persons or entities who

submit valid and timely requests for exclusion from the Settlement Class . . . ." (*Id.*)

  The Settlement Agreement creates a Settlement Fund of $69,025,769.42. (Settlement

Agreement at 18.) [# 1403] The Marsh Defendants have deposited that amount in an interest

bearing account. (Pls.' Mot. Br. at 6.) [# 1464] Upon this Court's approval of the proposed

Settlement Agreement, $62 million of the total Settlement Fund, plus any accrued interest, less

certain administrative expenses, will be distributed to the Settlement Class Members. (*Id.*) The

$ 7 million differential shall be utilized by the Marsh Defendants to settle non-Class Member

"tag-along" actions. 90% of the $62 million Class Settlement Fund will be allocated to "Marsh

Claimants," defined as Settlement Class Members who are "policyholders that purchased insurance or reinsurance through the Marsh Entities." (*Id.* at fn 5.)  No more than 10% of the total Class Settlement Fund will be allocated to "Non-Marsh Claimants," defined as Settlement Class Members who "are not and were not policy holders that purchased insurance or reinsurance through the Marsh entities." (*Id.* at fn 5.)  Additionally, up to $5 million of the total Class Settlement Fund will be available for the Marsh Defendants to settle the claims of "State Officials representing insurance policy holders who are potential Settlement Class Members." (*Id.*)  In addition to the approximately $69 million Settlement Fund, the parties' counsel have agreed to an award of attorney fees, expenses and incentives, and have filed motions that seek approval of that settlement [# 1463].  The Court will not address either the merits of those motions, or that proposed settlement in this memorandum opinion.

Following this Court's preliminary approval of the Plaintiff Class and the proposed Settlement Agreement in August 2008, Complete Claims Solutions, LLC ("CCS") was engaged to apprise the Plaintiff Class of the potential settlement. (Pls.' Mot. Br. at 9.) [ # 1464]  To that end, on September 29, 2008, CCS mailed 218,216 "notice packets" that informed the Settlement Class Members of their rights, and how they could participate in the proposed settlement. (*Id.*)  Of the 218,216 notice packets mailed, 845 were returned undeliverable with a forwarding address, and 46,544 were returned undeliverable without a forwarding address. (*Id.*)  Of the latter, CCS located updated addresses and resent 21,325 notice packets. (*Id.*)  In addition to these mailings, summary notice of the proposed settlement was published one time in all editions of *The New York Times*, *The Wall Street Journal*, and *USA Today*. (*Id.* at 10.)  Summary notice was also published one time in *Parade Magazine*, *Business Insurance*, and *RM Magazine*. (*Id.*)

4

Further, the web-site www.insurancebrokeragemarsh.com was established to provide summary notice, and contained links to the web-pages of Co-Lead Counsel and the Marsh Defendants. (*Id.*) Finally, CCS established a toll-free telephone hotline and an e-mail service through which Settlement Class Members could obtain additional information and pose questions about the proposed settlement. (*Id.*)

The Court's August 20, 2008 order that preliminarily certified the Plaintiff Class and preliminarily approved the proposed settlement [# 1418] established the following deadlines and dates: (1) any potential Settlement Class Member who wished to be excluded from the class was required to file a notice containing certain information no later than October 20, 2008; (2) any potential Settlement Class Member who wished to object to any aspect of the proposed settlement was required to file their objection no later than October 20, 2008; (3) the Court scheduled a fairness hearing on December 15, 2008; and (4) any potential Settlement Class Member who filed an objection to the proposed settlement and wished to appear at the fairness hearing was required to file a notice stating their intention to appear no later than October 20, 2008. (GEB Order 8/20/08) [# 1418]  In accordance with the Court's order, 375 potential Settlement Class Members timely requested exclusion from the proposed Settlement Class. (Pls.' Mot. Br. at 16.) [# 1464]   Further, the following three potential Settlement Class Members timely filed objections to the proposed settlement: (1) Van Enterprises, Inc.; (2) Connie Pentz Realty Company; and (3) Mr. Stanley H. Epstein. (*Id.* at 31, 32.)

Plaintiffs and the Marsh Defendants filed their instant motions for approval of the settlement on November 10, 2008 [# 1462, 1464].  On December 15, 2008, the Court held the fairness hearing contemplated in the August 20, 2008 order.  At the fairness hearing, the

5

following parties appeared: (1) Co-Lead Plaintiff Class Counsel; (2) Counsel for the State Court

Class; (3) Counsel for the Marsh Defendants; and (4) Counsel for potential Settlement Class

Member Connie Pentz Realty Company.  The Court has considered the written submissions of

the various parties as well as the oral arguments made at the fairness hearing.  As discussed in

detail below, the Court concludes that the proposed Settlement Agreement is fair, reasonable,

adequate, and in the best interest of the Settlement Class Members.  In light of that conclusion,

the Court will grant the parties' motions [# 1462, 1464], certify the Plaintiff Class, and approve

the proposed Settlement Agreement between the Marsh Defendants and Plaintiffs.

## II.       DISCUSSION

Before discussing the merits of the instant motions, the Court notes that it has previously

approved two settlements between various parties to MDL 1663.  *See In re Ins. Brokerage*

*Antitrust Litig.*, MDL No. 1663, 2007 WL 542227 (D.N.J. Feb. 16, 2007) (hereinafter the

"Zurich Settlement") [#1004]; *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL

2589950 (D.N.J. Aug. 31, 2007) (hereinafter the "Gallagher Settlement") [#1300].  The

memorandum opinions and orders issued by the Court in connection with those settlements

addressed legal issues similar to those presented by the motions at bar.  As such, the following

discussion draws upon the Court's legal analysis in those prior memorandum opinions.

### A.       Fairness of Class Action Settlement and Plan of Allocation

#### i.       Standard for Judicial Approval of Settlement in Class Action

Under Federal Rule of Civil Procedure 23(e), the district court must approve any

settlement in a class action, and direct reasonable notice to all class members who may be bound

by such settlement.  Fed. R. Civ. P. 23(e).  Approval is warranted only if the settlement is "fair,

reasonable, and adequate." Fed. R. Civ. P. 23(e)(4).  Acting as a fiduciary responsible for

protecting the rights of absent class members, the court is required to "independently and

objectively analyze the evidence and circumstances before it in order to determine whether the

settlement is in the best interest of those whose claims will be extinguished." *In re Cendant*

*Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001) (quoting *In re Gen. Motors Corp. Pick-Up Truck*

*Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 782 (3d Cir. 1995)).  This determination rests within

the sound discretion of the court.  *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975).

        In *Girsh*, the Third Circuit identified nine factors that a district court should consider

when determining whether a proposed class action settlement warrants approval.  *Girsh*, 521

F.2d at 157.  These factors include: (1) "the complexity, expense and likely duration of the

litigation"; (2) "the reaction of the class to the settlement"; (3) "the stage of the proceedings and

the amount of discovery completed"; (4) "the risks of establishing liability"; (5) "the risks of

establishing damages"; (6) "the risks of maintaining the class action through the trial"; (7) "the

ability of the defendants to withstand a greater judgment"; (8) "the range of reasonableness of the

settlement fund in light of the best possible recovery"; (9) "the range of reasonableness of the

settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id.*  The

burden of proving that these factors weigh in favor of approval rests on the proponents of a

settlement.  The *Girsh* factors, however, "do not provide an exhaustive list of factors to be

considered when reviewing a proposed settlement." *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160,

165 (3d Cir. 2006).[1]  The Court may take these other factors into consideration, if appropriate, in

---

[1]        Other relevant factors include: "[T]he maturity of the underlying substantive issues, as measured by the
experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on
the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability

order to determine whether final approval is warranted.

### ii.     Application of the *Girsh* Factors

Based on the facts and circumstances of this case, the Court concludes that factors one

through five overwhelmingly weigh in favor of approval of settlement, and factors six through

nine weigh slightly or moderately in favor of approval.  Significantly, the Court finds that none

of the *Girsh* factors suggest that the proposed settlement should not be approved.  The Court will

now discuss its reasons for arriving at this conclusion.

### (1)     Complexity, Expense and Likely Duration of the Litigation

The first factor concerning the complexity, expense and duration of litigation, is

considered to evaluate "the probable costs, in both time and money, of continued litigation."

*Cendant*, 264 F.3d at 233 (quoting *GM Trucks*, 55 F.3d at 812).  This action involves federal and

state antitrust laws, RICO and common law.  An antitrust action is clearly a complex action to

prosecute.  *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, *34

(E.D. Pa. June 2, 2004).  In addition, Plaintiffs allege conspiracy violations by dozens of large

brokerage and insurance companies.  Thus, this case involves highly complex legal and factual

issues.  The case has been litigated for nearly four years, and the proposed settlement was

reached between the parties following extensive negotiations conducted after the conclusion of

discovery that included the depositions of nearly 200 people and the production of over 60

million pages of documents.  (Pls.' Mot. Br. at 17.) [# 1464]   To proceed with litigation of this

---

and individual damages; the existence and probable outcome of claims by other classes and subclasses; the
comparison between the results achieved by the settlement for individual class or subclass members and the results
achieved - or likely to be achieved - for other claimants; whether class or subclass members are accorded the right to
opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for
processing individual claims under the settlement is fair and reasonable." *In re Prudential Ins. Co. Am. Sales
Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).

matter would undoubtedly become a costly and lengthy process for all parties. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535-36 (3d Cir. 2004) (finding this factor weighed in favor of settlement because "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial"). This proposed settlement provides an immediate benefit to Plaintiffs. Accordingly, the Court finds that the first *Girsch* factor weighs strongly in favor of approval.

### (2)   Reaction of the Class to the Settlement

Following this Court's preliminary approval of the Plaintiff Class and the proposed Settlement Agreement in August 2008, Complete Claims Solutions, LLC ("CCS") was engaged to apprise the Plaintiff Class of the potential settlement. (Pls.' Mot. Br. at 9.) [ # 1464]  To that end, on September 29, 2008, CCS mailed 218,216 "notice packets" that informed the Settlement Class Members of their rights, and how they could participate in the proposed settlement. (*Id.*) Of the 218,216 notice packets mailed, 845 were returned undeliverable with a forwarding address, and 46,544 were returned undeliverable without a forwarding address. (*Id.*) Of the latter, CCS located updated addresses and resent 21,325 notice packets. (*Id.*) In addition to these mailings, summary notice of the proposed settlement was published one time in all editions of *The New York Times, The Wall Street Journal*, and *USA Today*. (*Id.* at 10.) Summary notice was also published one time in *Parade Magazine, Business Insurance*, and *RM Magazine*. (*Id.*) Further, the web-site www.insurancebrokeragemarsh.com was established to provide summary notice, and contained links to the web-pages of Co-Lead Counsel and the Marsh Defendants. (*Id.*) Finally, CCS established a toll-free telephone hotline and an e-mail service through which

9

Settlement Class Members could obtain additional information and pose questions about the proposed settlement. (*Id.*)

In response, 375 individuals/entities requested exclusion, one of which was filed after the Court-established deadline of October 20, 2008.[2] (Pls.' Mot. Br. at 16.) [# 1464]  In addition, only three potential Class Members filed objections, which are addressed in detail below. (*Id.* at 31, 32.)  As the Third Circuit articulated in *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 305 (3d Cir. 2005), "such a low level of objection is a 'rare phenomenon.'"  Consequently, the Court concludes that the small number of objections by Class Members to the settlement award strongly weighs in favor of approval.

### (3)    The Stage of the Proceedings and the Amount of Discovery Completed

The Court should consider this factor to evaluate "the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Cendant,* 264 F.3d at 235 (quoting *GM Trucks,* 55 F.3d at 813).  The Court notes that this action has been vigorously litigated for nearly four years.  During that period, a considerable amount of time, money and effort was expended by all parties in litigating the action - as evidenced by the parties' proposed attorney fee and expense settlement that exceeds $14 million [# 1463].

As previously noted, the parties engaged in extensive discovery in this action. Indeed, during discovery, the parties deposed nearly 200 persons, and produced over 60 million pages of

---

[2]    Potential Plaintiff Class Member Consolidated Electrical Distributors, Inc. ("CED") did not file a timely request for exclusion, but sought exclusion in a motion filed on November 11, 2008 [#1469].  The Marsh Defendants opposed CED's exclusion [# 1471].  The Court granted CED's motion on the record during the December 15, 2008 fairness hearing, and CED is excluded from the Plaintiff Class.

documents. (Pls.' Mot. Br. at 17.) [# 1464]  Based upon the amount of time Counsel expended

in negotiations and the extent of the discovery process, the Court concludes that Counsel had a

thorough appreciation for the merits of the case prior to settlement.  Accordingly, the Court

determines that this factor weighs strongly in favor of settlement.

### (4)  Risks of Establishing Liability

This factor should be considered to "examine what potential rewards (or downside) of

litigation might have been had class counsel decided to litigate the claims rather than settle

them." *Cendant*, 264 F.3d at 237 (quoting *GM Trucks*, 55 F.3d at 814).  "The inquiry requires a

balancing of the likelihood of success if 'the case were taken to trial against the benefits of

immediate settlement.'" *In re Safety Components, Inc. Sec. Litig.*, 166 F.Supp. 2d 72, 89 (D.N.J.

2001) (quoting *Prudential Ins.*, 148 F.3d at 319).

To succeed at trial, Plaintiffs must prove the elements of their various claims, which

include federal antitrust and RICO claims.  Between August 2005 and June 2007, Plaintiffs filed

two additional amended complaints and other supplemental pleadings. (Pls.' Mot. Br. at 3.) [#

1464]  The Marsh Defendants moved to dismiss those amended complaints.  On August 31, 2007

and September 28, 2007, the Court granted the Marsh Defendants' motions and dismissed

Plaintiffs' claims. (GEB Order 8/31/07; GEB Order 9/28/07) [# 1299, 1316]  Though Plaintiffs

had appeals pending before the Third Circuit, Plaintiffs themselves recognize the difficulty of

establishing the Marsh Defendants' liability under these circumstances. (*Id.* at 18-19.)

In sum, this case involves difficult factual and legal issues which would have translated

into protracted litigation and accumulating expenses, in both time and money.  Accordingly, the

Court concludes that this *Girsch* factor weighs strongly in favor of approval.

11

(5)    **Risk of Establishing Damages**

This factor also "attempts to measure the expected value of litigating the action rather than settling it at the current time." *Cendant*, 264 F.3d at 238-39 (quoting *GM Trucks*, 55 F.3d at 816). Plaintiffs' allegations of damages would require a complicated analysis involving sophisticated expert opinions. The Marsh Defendants would likely counter with their own experts, and a "battle of the experts" would ensue. Plaintiffs acknowledge the inherent risks this situation presents. (Pls.' Mot. Br. at 19.) [# 1464]    Thus, the Court agrees that a significant risk exists in establishing both liability and damages, and concludes that this factor weighs strongly in favor of approval.

(6)    **Additional *Girsh* Factors**

The sixth factor concerns the risks of maintaining the class action through the trial and weighs somewhat in favor of approval of the settlement. The class has been preliminarily certified for settlement purposes only, and if this case were to proceed to trial both parties agree that the Marsh Defendants will "undoubtedly" contest class certification on various grounds. (Pls.' Mot. Br. at 19; Marsh Defs.' Br. at 29.) [# 1464, 1462] Indeed, various defendants, including the Marsh Defendants, have opposed Plaintiffs' motion for class certification. The Defendants that oppose Plaintiffs' class certification argue that issues of "manageability, classwide impact and damages, adequacy and predominance" weigh against class certification in this case. (Pls.' Mot. Br. at 19.) [# 1464] Plaintiffs acknowledge Defendants' arguments in opposition to the motion for class certification, but contend that they will succeed with the certification of the class. (*Id.* at 19-20.) However, since the motions have not been ruled upon by this Court, the outcome is still uncertain. In sum, the Court concludes this sixth factor weighs

12

somewhat in favor of the proposed settlement.

The seventh factor concerning the ability of defendants to withstand a greater judgment also slightly favors approval. In *Cendant*, the Third Circuit interpreted this factor as concerning "whether the defendants could withstand a judgment for an amount sufficiently greater than the Settlement." *Cendant*, 264 F.3d at 240. Plaintiffs do not contend that the Marsh Defendants could not withstand a larger judgment, however, they submit that many settlements are approved even where a settling party has the ability to pay a greater amount. *See, e.g., Warfarin Sodium*, 391 F.3d at 538; *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 150-51 (D.N.J. 2004). The Marsh Defendants, in addition to the multi-million dollar settlement amount, have agreed to pay Plaintiff Class Counsel's attorney fees and litigation expenses and the expenses associated with implementing the Settlement Agreement. (Pls.' Mot. Br. at 20; Marsh Defs.' Br. at 29.) [# 1464, 1462] In light of these considerations, the Court concludes that this factor weighs slightly in favor of approval.

Lastly, the eighth and ninth factors concerning the range of reasonableness of the Settlement Fund in light of the best possible recovery and the attendant risks of litigation weigh in favor of settlement. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather must represent a material percentage recovery to plaintiff in light of all the risks considered under *Girsh*." *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000) (citation and quotations omitted). The parties argue that the significant and immediate monetary and non-monetary benefits that will accrue to Settlement Class Members outweigh the risks and uncertainties that Plaintiffs will face

at trial. (Pls.' Mot. Br. at 20-21; Marsh Defs.' Br. at 29-30.) [# 1464, 1462]   Further, the relief provided to Class Members is not subject to reduction for administrative expenses and attorneys fees. (Pls.' Mot. Br. at 6-7) [# 1464]   Plaintiffs submit that Class Counsel engaged economic experts to evaluate the possible range of damages, and that $69 million represents a material percentage, considering the significant risks faced by Plaintiffs if litigation proceeds. (*Id.* at 21) As with the other factors, the Court finds that this favors settlement.

### iii.    Summary of *Girsh* Factors

In conclusion, the Court finds that factors one through five all weigh heavily in favor of approval of the Settlement Agreement.   Factors six through nine weigh slightly or moderately in favor of approval.   The Settlement Agreement was reached after arm's-length negotiations between experienced, capable counsel after significant confirmatory discovery.   Consequently, the Court finds that none of the *Girsch* factors weigh against settlement.   As the above analysis demonstrates, the Court concludes that the settlement of $69 million represents a reasonable and adequate result for the Class considering the substantial risks Plaintiffs face, the immediate benefits provided, and the absence of any guarantee of a favorable verdict.

### iv.    Objectors' Arguments

As noted above, only three potential Class Members objected to the proposed Settlement Agreement.   None of those objectors appear to challenge the fairness, reasonableness, or adequacy of the $69 million Settlement Fund.   In fact, two of the three objectors - Van Enterprises, Inc. and Connie Pentz Realty Company - appear to challenge only the proposed class certification in this case.   The only objection to the proposed settlement was lodged by potential Class Member Stanley H. Epstein, who argues that the notice packets sent to potential Class

14

Members by CCS, "fail[] to satisfy the requirements of Rule 23 and Constitutional requirements

of Due Process and will discourage participation in the settlement." (Epstein Br.) [# 1452].

Specifically, Mr. Epstein asserts that the notice packets were flawed for the following three

reasons: (1) the word "insurance" is not adequately defined or described; (2) the claim form is

too onerous and requires irrelevant information; (3) the role of Non-Marsh brokers is not

explained nor is the allocation to Non-Marsh claimants. The Court concludes that Mr. Epstein's

arguments are without merit. In each of the two class settlements previously approved by this

Court, virtually identical objections were made to the claim forms and notice packets. Each time

the Court noted that the various claim forms do not impose an onerous burden on potential Class

Members, and provide sufficiently detailed, yet understandable information that enable potential

Class Members to make informed decisions. (*See* Zurich, Gallagher GEB Mem. Ops.) [#1004,

1300] As in the Zurich and Gallagher Settlements, this Court concludes that the information

contained in the 218,216 notice packets mailed to potential Class Members was sufficient in this

case.

### v.    Plan of Allocation of the Settlement Fund

The Court must determine whether the Plan of Allocation ("Plan") contemplated in the

Settlement Agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As noted

above, the Settlement Agreement creates a Settlement Fund of $69,025,769.42. (Settlement

Agreement at 18.) [# 1403] The Marsh Defendants have deposited that amount in an interest

bearing account. (Pls.' Mot. Br. at 6.) [# 1464] Upon this Court's approval of the proposed

Settlement Agreement, $62 million of the total Settlement Fund, plus any accrued interest, less

certain administrative expenses, will be distributed to the Settlement Class Members. (*Id.*) The

$7 million differential shall be utilized by the Marsh Defendants to settle non-Class Member "tag-along" actions. 90% of the $62 million Class Settlement Fund will be allocated to "Marsh Claimants," defined as Settlement Class Members who are "policyholders that purchased insurance or reinsurance through the Marsh Entities." (*Id.* at fn 5.) No more than 10% of the total Class Settlement Fund will be allocated to "Non-Marsh Claimants," defined as Settlement Class Members who "are not and were not policy holders that purchased insurance or reinsurance through the Marsh entities." (*Id.* at fn 5.) Additionally, up to $5 million of the total Class Settlement Fund will be available for the Marsh Defendants to settle the claims of "State Officials representing insurance policy holders who are potential Settlement Class Members."

Of the three objections to the proposed settlement filed by potential Class Members, none appear to directly challenge allocation of the Settlement Fund established in the Plan, or specifically identify how the Plan's allocation is unfair. Rather, the objections of Van Enterprises, Inc. and Connie Pentz Realty Company apparently challenge certification of the proposed class. Those arguments are addressed below. In the absence of any substantive objections to the Plan, this Court concludes that the Plan satisfies the standard set forth in FED. R. CIV. P. 23(e).

## B.    Class Certification for Purposes of Settlement

On August 20, 2008, the Court preliminarily approved the proposed Settlement Agreement and preliminarily certified the Settlement Class. Rule 23 of the Federal Rules of Civil Procedure requires this Court to engage in a two-step analysis to determine whether it should certify a class action for settlement purposes. First, the Court must determine whether Plaintiffs have satisfied the prerequisites for maintaining a class action as set forth in Fed. R. Civ.

P. 23(a).  If Plaintiffs can satisfy these prerequisites, the Court must then determine whether the

alternative requirements of Rule 23(b)(2) or 23(b)(3) are met.  *See* Fed. R. Civ. P. 23(a) Advisory

Committee's note.  "Confronted with a request for settlement-only class certification, a district

court need not inquire whether the case, if tried, would present intractable management

problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997).

### vi.    The Requirements of Fed. R. Civ. P. 23(a)

Rule 23(a) provides that class members may maintain a class action as representatives of

a class if they show the court that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or
> defenses of the class; and
> (d) the representative parties will fairly and adequately protect the interests of the
> class.

Fed. R. Civ. P. 23(a).

### (1)    Numerosity

Courts will ordinarily discharge the prerequisite of numerosity if the class is so large that

"joinder of all members is impracticable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th

Cir. 1998).  Plaintiffs "need not precisely enumerate the potential size of the proposed class, nor

[are] plaintiff[s] required to demonstrate that joinder would be impossible." *Cannon v. Cherry

Hill Toyota, Inc.*, 184 F.R.D. 540, 543 (D.N.J. 1999).

In this case, CCS mailed 218,216 "notice packets" to potential Class Members

nationwide. (Pls.' Mot. Br. at 9.) [#1464]  "There can be no serious question that joinder of all

17

these parties, geographically dispersed throughout the United States, would be impracticable." *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 247 (S.D. Tex. 1978). The class thus easily satisfies the numerosity requirement, as "numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the [numerosity] requirement." *Weiss v. York Hosp.*, 745 F.2d 786, 808 n.35 (3d Cir. 1984).

### (2)    Commonality

Plaintiffs must demonstrate that there are questions of fact or law that are common to the class to satisfy the commonality requirement, though the Third Circuit has determined that the threshold to satisfy the requirement is "not high." Fed. R. Civ. P. 23(a)(2); *In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986). "[C]ommonality does not require an identity of claims or facts among class members;" rather, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001) (citation omitted). Class treatment is not precluded "[e]ven where individual facts and circumstances do become important to the resolution [of a case]." *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994).

Due to the conspiratorial nature of allegations in antitrust and RICO actions, such cases often present common questions of law and fact and are frequently certified as class actions. *See, e.g., In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 478 (W.D. Pa. 1999) (noting that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement") (citation omitted); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 231-32 (D.N.J. 2005)

18

(noting that "even a few common issues can satisfy this requirement where their resolution will significantly advance the litigation" and finding commonality satisfied in a RICO class action); *Hoffman Elec., Inc. v. Emerson Elec. Co.*, 754 F. Supp. 1070 (W.D. Pa. 1991) (finding commonality where both named Plaintiffs and class members sought to bring RICO and breach of fiduciary claims).

In this case, there are many common questions of law and fact. These include, *inter alia*, whether: (1) the Marsh Defendants entered into a contract, combination or conspiracy to allocate the market for sale of insurance; (2) the Marsh Defendants' contract, combination or conspiracy had the purpose and effect of reducing and unreasonably restraining competition in the sale of insurance; (3) the Marsh Defendants' conduct violated § 1 of the Sherman Act; (4) the Marsh Defendants conduct breached their fiduciary duty; (5) the Marsh Defendants failed to disclose contingent compensation to Marsh clients in violation of fiduciary duties; (6) the Marsh Defendants engaged in a pattern of racketeering activity; and (7) the Marsh Defendants violated RICO. (Pls.' Mot. Br. at 25.) [# 1464]  The commonality requirement is therefore clearly satisfied.

### (3)    Typicality

"The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Barnes v. Am. Tobacco Co.*, 259 F.3d 127, 141 (3d Cir. 1998).  As with numerosity, the Third Circuit has "set a low threshold for satisfying" typicality, holding that "[i]f the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established." *Newton*, 259 F.3d at 183-84; *see also Baby Neal*, 43 F.3d at 58.  The typicality

requirement does not "mandate[] that all putative class members share identical claims."

*Newton*, 259 F.3d at 183; *see also Hassine v. Jeffes*, 846 F.2d 169, 176-77 (3d Cir. 1988).

Here, the claims made by named Plaintiffs and those made on behalf of the Settlement

Class Members are indistinguishable, encompassing identical allegations that the Marsh

Defendants violated RICO, federal and state antitrust laws, and common law obligations. These

claims arise in each case from the same course of action taken by the Marsh Defendants.

Consequently, the named Plaintiffs' claims are typical of those brought by the Settlement Class

Members at large. *See, e.g., Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977)

(finding that because "[t]he claims pressed by the representatives are identical to those which

they press on behalf of the class generally," the named plaintiffs' claims satisfied the typicality

requirement); *Grasty v. Amalgamated Clothing and Textile Workers Union*, 828 F.2d 123, 130

(3d Cir. 1987), *cert. denied*, 484 U.S. 1042 (Jan. 25, 1988) (finding the typicality requirement

met because the claims brought by the named plaintiffs and those brought on behalf of the class

"stem from a single course of conduct").

### (4)    Adequacy of Representation

The Third Circuit has held that the final requirement of Rule 23(a), that the class

representatives "fairly and adequately protect the interests of the class," can be deemed met only

after two factors are satisfied: (i) that counsel for the class is "qualified, experienced, and

generally able to conduct the proposed litigation" and (ii) that the class representatives "must not

have interests antagonistic to those of the class." *Hoxworth v. Blinder, Robinson & Co.*, 980

F.2d 912, 923 (3d Cir. 1992); *accord Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 630 (3d

Cir. 1996); *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).

As to the first factor, this Court has assessed the qualification, experience and ability of Plaintiffs Class Co-Lead Counsel on two previous occasions, and each time determined that those attorneys are clearly "well qualified and experienced class action attorneys who have been involved in similar . . . litigation around the country." *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL 542227, at *14 (D.N.J. Feb. 16, 2007) (quoting *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 250 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004)); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL 2589950, at *11 (D.N.J. Aug. 31, 2007). Nothing has been presented to this Court that would alter this assessment.

As to the second factor, in order to find an "antagonism between [named Plaintiffs'] objectives and the objectives of the [class]", there would need to be a "legally cognizable conflict of interest" between the two groups. *Jordan v. Commonwealth Fin. Sys., Inc.*, 237 F.R.D. 132, 139 (E.D. Pa. 2006). In fact, courts have found that a conflict will not be sufficient to defeat class action "unless [that] conflict is apparent, imminent, and on an issue at the very heart of the suit." *Flat Glass*, 191 F.R.D. at 482 (*citing In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 513 (S.D.N.Y. 1996)). Here, it is clear that the named Plaintiffs' interests are not antagonistic to those of the absent class members. The central questions in this case regarding the Marsh Defendants' alleged conduct, and the impact of that conduct on both the named Plaintiffs and the absent class members, animates in an identical fashion the claims of both groups. In addressing these common questions, the named Plaintiffs have advocated as vigorously for the absent class members as they have for themselves. Consequently, the adequacy requirement has been met.

With this last requirement satisfied, it is clear that the class in this case has demonstrated

compliance with each of the four prongs of Rule 23(a).

### vii.    The Requirements of Fed. R. Civ. P. 23(b)(3)

The Court must next address the question of whether the class action also comports with

the requirements of either Rule 23(b)(3) or Rule 23(b)(2).  The named Plaintiffs have asked this

Court to consider only whether the class meets the standards set forth in Rule 23(b)(3), which

requires the court to find both that "the questions of law or fact common to the members of the

class predominate over any questions affecting only individual members, and that a class action

is superior to other available methods for the fair and efficient adjudication of the controversy."

Fed. R. Civ. P. 23(b)(3); (Pls.; Mot. Br. at 28-29.) [#1464].  As explained below, the class action

in this case readily meets these requirements of predominance and superiority.

### (1)    Questions of Law and Fact Common to the Class Predominate

To satisfy the predominance requirement, parties must do more than merely demonstrate

a "common interest in a fair compromise"; instead, they must provide evidence that the proposed

class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v.*

*Windsor*, 521 U.S. 591, 623 (1997).  However, the "presence of individual questions . . . does not

mean that the common questions of law and fact do not predominate . . . ." *Eisenberg v.*

*Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (finding that, in the context of a securities class

action, even the presence of individual questions as to the reliance of each individual class

member did not negate the predominance of the class's common claims).

Given that antitrust class action suits, as discussed above, are particularly likely to contain

common questions of fact and law, it is not surprising that these types of class action suits are

also generally found to meet the predominance requirement with ease.  In *Amchem*, the Supreme

Court noted that "[p]redominance is a test readily met in certain cases alleging . . . violations of

the antitrust laws." 521 U.S. at 625.  Moreover, "[a]ntitrust actions involving common question

of liability for monopolization . . . have frequently been held to predominate for the preliminary

stage of class certification."  *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 29

(D.D.C. 2001).  The Third Circuit has agreed with this analysis, and has indicated that because

the clear focus of an antitrust class action is on the allegedly deceptive conduct of the defendant

and not on the conduct of individual class members, common issues necessarily predominate.

*Warfarin Sodium*, 391 F.3d at 528-29; *accord In re Linerboard Antitrust Litig.*, 305 F.3d 145,

162 (3d Cir. 2002), *cert. denied*, 538 U.S. 977 (2003).

 Here, as discussed in the sections on commonality and typicality, the identical claims of

both the named Plaintiffs and the absent class members arise from the same set of facts regarding

the alleged collusive and anticompetitive behavior of the Marsh Defendants.  Consequently, the

predominance requirement is satisfied.

### (2)   A Class Action is Superior to Other Available Methods

 To demonstrate that a class action is "superior to other available methods" for bringing

suit in a given case, the Court must "balance, in terms of fairness and efficiency, the merits of a

class action against those of 'alternative available methods' of adjudication." *Georgine*, 83 F.3d

at 632 (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 757 (3d Cir. 1974) (en banc), *cert.

denied*, 419 U.S. 885 (1974)).  One consideration is the economic burden that class members

would have to bear in bringing suits on a case-by-case basis; class actions have been held to be

especially appropriate where it would be "it would be economically infeasible for [individual

class members] to proceed individually."  *Stephenson v. Bell Atlantic Corp.*, 177 F.R.D. 279, 289

(D.N.J. 1997).  Another consideration is judicial economy.  In a case with many thousands of

class members, whose individual cases would each "require[] weeks or months" to litigate,

would result in "needless duplication of effort" by all parties and the court, and would raise the

very real "possibility of conflicting outcomes," the balance may weigh "heavily in favor of the

class action." *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 252-53 (D.C. Tex.

1978).  *See also Klay v. Humana, Inc.*, 382 F.3d 1241, 1270 (11th Cir. 2004) (finding a class

action to be the superior method because it was costly, inefficient, and would burden the court

system to "forc[e] individual plaintiffs to repeatedly prove the same facts and make the same

legal arguments before different courts"); *Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121

F.R.D. 417, 436 (D.N.M. 1988) (finding that, in contrast to the multiple lawsuits that members of

a class would have to file individually, the "efficacy of resolving all [of] plaintiffs' claims in a

single proceedings is beyond discussion").

     To litigate the individual claims of even a tiny fraction of the 218,216 potential class

members would place a heavy burden the judicial system and require unnecessary duplication of

effort by all parties.  In addition, 60 million pages of documents have been produced and nearly

200 depositions have been taken to this point in the litigation; as such, it would also not have

been economically feasible for most of the class members to seek individual redress.  The

litigation of such claims in one action is thus far more desirable than numerous, separate actions

litigating the same issues.  The superiority requirement is therefore met in this case.

### viii.    Objections to Class Certification

     Prior to making a final determination regarding class certification, the Court will address

the arguments raised by the two potential Class Members who object to class certification in this

case.

### (1)    Connie Pentz Realty Company's Objection

Potential Class Member Connie Pentz Realty Company ("Pentz") argues that subclasses amongst Class Members are required in this case, and objects to certification of the settlement class on that ground.  (Pentz Br.) [# 1451]  As this Court previously noted when certifying the settlement class in the Zurich Settlement, subclasses of plaintiffs are not required under the circumstances presented in the present matter.  *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL 542227, at *33-35 (D.N.J. Feb. 16, 2007)

The Court's decision whether or not to create subclasses is governed by FED. R. CIV. P. 23(c)(5), which allows a class to be divided into subclasses "when appropriate."  *See In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (noting that subclasses are necessary where certain class members "require specialized or distinct treatment" so that they "differ from other class members").  A class need not be divided into subclasses merely because different groups have alternative legal theories for recovery, or because those groups have different factual bases for relief.  *See* 7AA C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1790 (2006); *see also Ortiz v. Eichler*, 616 F.Supp. 1046, (D.Del. 1985) (declining to create subclasses where different groups of a potential class sought recovery under different legal theories, as no divergent interests existed among class members); *In re: Deutsche Telekom AG Secs. Litigation*, D.C.N.Y.2002, 229 F.Supp.2d 277, 283 (holding that subclasses would not be created despite the fact that the class encompassed plaintiffs whose claims arose from two different disclosures by defendants, as the respective claims arose out of "a common core of facts and legal issues, deal[t] with overlapping or intertwined defendants, and

25

attack[ed] various aspects of a uniform course of conduct").

In this case, Pentz argues that subclasses are necessary because of different allocations between Marsh and Non-Marsh Claimants.  Essentially, Pentz argues that the Non-Marsh Claimants are entitled to independent representation to ensure that they get "the best deal possible." (Pentz Br. at 6) [# 1451]  Pentz's bases its objection largely upon *Smith v. Sprint Comms. Co.*, 387 F.3d 612 (7th Cir. 2004).  This Court, however, has previously analyzed *Smith*, and found it inapposite under circumstances similar to those presented by the present matter.  *See In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL 542227, at *34-35 (D.N.J. Feb. 16, 2007).  In the memorandum opinion that accompanied the Zurich Settlement, the Court stated that, "[c]learly, the subgroups identified in *Smith* had interests divergent from the rest of the class based on their unique position due to the aforementioned parallel litigation." (*Id.*)

Here, similar to the unsuccessful objectors in the Zurich Settlement, Pentz has failed to raise, let alone describe, any divergent or antagonistic interests between the two groups, as is required in order for subclasses to be mandated.  *See* FED. R. CIV. P. 23(c)(5).  Instead, Pentz's objection appears derived entirely from the fact that the proposed settlement's Plan of Allocation distributes different percentages of the Settlement Fund between the Marsh and Non-Marsh Claimants.  That "the relief sought may vary among named representatives and members of the class does not, however, show conflicting or antagonistic interests and the court finds none here." *Roe v. Operation Rescue*, 123 F.R.D. 500, 504 (E.D.Pa.1988).

### (2)   Van Enterprises, Inc.'s Objections

The brief submitted by objector Van Enterprises, Inc. ("Van Enterprises") argues that the settlement "lacks commonality, typicality, adequacy of representation and a predominance of

common issues." (Van Br. at 1-2.) [# 1428] Van Enterprises also argues that, "the [Settlement

Class] is so broad it includes transactions outside the subject matter jurisdiction of this Court."

(*Id.* at 1.)  However, Van Enterprises provides no cogent argument or legal basis to support these

assertions, and fails to cite controlling precedent that adequately supports its allegations that the

settlement fails to meet the requirements set forth in FED. R. CIV. P. 23.  The Court finds the

objector's general arguments with regard to subject matter jurisdiction, commonality, typicality,

adequacy of representation and predominance to be without merit, and notes that these arguments

were addressed and rebutted by this Court under the similar circumstances presented by the

Gallagher Settlement. *See In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL

2589950, at *24-27 (D.N.J. Aug. 31, 2007).  Further, above, the Court adequately addressed the

requirements of class certification as established by New Jersey District, Third Circuit, and

Supreme Court precedent.  Van Enterprises has presented no facts, argument, or law that

undermines this Court's conclusion that certification of the proposed class is appropriate in this

matter.

**III.    CONCLUSION**

        Because the named Plaintiffs have satisfied all of the requirements under Fed. R. Civ. P.

23(a) and the requirements of Fed. R. Civ. P. 23(b)(3), this Court certifies the proposed class for

purposes of this settlement, and approves the Settlement Agreement ratified by the parties on

June 19, 2008.  (Settlement Agreement) [# 1403]  For the reasons noted above, the parties'

present motions [# 1462, 1464] will be granted in all respects.

Dated: February 17, 2009

                                            /s/ Garrett E. Brown, Jr.
                                            GARRETT E. BROWN, JR., U.S.D.J.

27