RECEIVED

FEB 17 2009

AT 8:30_____M
WILLIAM T. WALSH
CLERK

<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  | : |  |
|---|---|---|
|  | : | MDL Docket No. 1663 |
| **IN RE INSURANCE BROKERAGE** | : |  |
| **ANTITRUST LITIGATION** | : | Civ. No. 04-5184 (GEB) |
|  | : |  |
|  | : |  |
| **This Document Relates To:** | : |  |
|  | : | **MEMORANDUM OPINION** |
| **ALL ACTIONS** | : |  |
|  | : |  |

<u>**BROWN, Chief District Judge**</u>

This matter comes before the Court upon the motion of Plaintiff Class Co-Lead Counsel ("Class Counsel") and State Court Class Counsel ("State Class Counsel") for attorneys' fees, reimbursement of expenses, and incentive award payments in connection with the Settlement Agreement [# 1403] negotiated with the Marsh Defendants [# 1463, 1467].[1] The Marsh Defendants do not oppose the sums requested by Class Counsel, and only Settlement Class Member Connie Pentz Realty Company has filed a general objection [# 1462, 1451]. The Court has considered the parties' written submissions and the oral arguments made during the fairness hearing held on December 15, 2008. For the reasons that follow, the Court will grant the requested attorneys' fees, reimbursement of expenses, and incentive award payments.

**1.      BACKGROUND**

This multidistrict litigation involves numerous class actions filed in August 2004 against

---

[1] Unless otherwise noted, the capitalized terms have the meaning assigned to them in the parties' Settlement Agreement [#1403].

various insurance brokers and insurers, including the Marsh Defendants. (Pls.' Br. at 3.) [# 1464]
The class actions allege violations of federal and state antitrust laws, the Racketeer Influences and
Corrupt Organizations Act ("RICO"), the Employee Retirement Income Security Act ("ERISA") and
various state statutes and common law. (*Id.*) In 2005, the class actions were consolidated by the
Judicial Panel on Multidistrict Litigation into MDL 1663, *In Re Insurance Brokerage Antitrust
Litigation,* and transferred to the District of New Jersey for coordinated pre-trial proceedings. In
March 2007, MDL 1663 was reassigned to this Court [# 1040].

By orders entered on May 25, 2005 and July 17, 2006, the law firms of Miller Faucher and
Cafferty LLP (now Cafferty Faucher LLP), and Whatley Drake & Kallas, LLC, respectively, were
appointed Co-Lead Counsel for Plaintiffs. The aforementioned orders provide that Co-Lead Counsel
shall, among other things, conduct settlement negotiations on behalf of Plaintiffs in this Action and
enter into binding agreements with respect to settlement. (Order, May 25, 2005; Order, July 17,
2006). Pursuant to the Court's orders, Class Counsel successfully negotiated settlements with two
groups of defendants in MDL 1663 prior to reaching the Settlement Agreement with the Marsh
Defendants. *See In re Ins. Brokerage Antitrust Litig.,* MDL No. 1663, 2007 WL 542227 (D.N.J.
Feb. 16, 2007) (hereinafter the "Zurich Settlement") [#1004]; *In re Ins. Brokerage Antitrust Litig.,*
MDL No. 1663, 2007 WL 2589950 (D.N.J. Aug. 31, 2007) (hereinafter the "Gallagher Settlement")
[#1300]. Following both the Zurich and Gallagher Settlements, Class Counsel petitioned this Court
for attorneys' fees, expenses, and incentive awards. The Court found each request reasonable, and
a total of $38,835,000 in attorneys' fees, expenses, and incentive awards have been granted to Class

2

Counsel in connection with the Zurich and Gallagher Settlements.[2]

In a separate memorandum opinion, this Court approved the Settlement Agreement between the Settlement Class and the Marsh Defendants. Pursuant to the Settlement Agreement, the Marsh Defendants have deposited a Settlement Fund of $69,025,769.42 in an interest bearing account. (Settlement Agreement at 18; Pls.' Mot. Br. at 6.) [# 1403, 1464] $62 million of the total Settlement Fund, plus any accrued interest, less certain administrative expenses, will be distributed to the Settlement Class Members. (Pls.' Mot. Br. at 6.) [# 1464] The $7 million differential shall be utilized by the Marsh Defendants to settle non-Class Member "tag-along" actions. Additionally, up to $5 million of the total Settlement Fund will be available for the Marsh Defendants to settle the claims of "State Officials representing insurance policy holders who are potential Settlement Class Members." (*Id.*)

In addition to the approximately $69 million Settlement Fund, the parties' counsel have agreed to an award of attorneys' fees, expenses and incentives. The Courts's approval of Class and State Class Counsel's fee and expense agreements is the subject of the motion *sub-judice* [# 1463,

---

[2] The total $38,835,000 in attorneys' fees, expenses, and incentive awards granted to Class Counsel in connection with the Zurich and Gallagher Settlements breaks down as follows:

(1) <u>Zurich Settlement</u>

| | |
|---|---|
| Attorneys' Fees: | $25,843,000 |
| Expenses: | $ 3,957,000 |
| Incentives: | $    150,000 |
| Total: | $29,950,000 |

(2) <u>Gallagher Settlement</u>

| | |
|---|---|
| Attorneys' Fees: | $ 6,221,480 |
| Expenses: | $ 2,413,520 |
| Incentives: | $    250,000 |
| Total: | $ 8,885,000 |

(Pls.' Fee Br. at 3.) [# 1463]. (GEB Mem. Op. 2/16/07) [#1184]; (GEB Mem. Op. 10/5/07) [#1320]

1467]. The Marsh Defendants have agreed to pay, and therefore do not oppose, the following fee

request of Class Counsel [# 1467]. Class Counsel request a total fee award of $14,500,000. (Pls.'

Fee Br. at 1) [# 1463]  This amount will be paid directly by the Marsh Defendants in addition to the

approximately $69 million Settlement Fund approved by this Court. (*Id.*) Class Counsel assert that

the $14,500,000 fee request is comprised of the following three components: (1) $1,999,196 for

reimbursement of reasonable litigation expenses; (2) $320,000 for payment of incentive awards to

32 Named-Plaintiffs; and (3) $12,180,804 for attorneys' fees reasonably incurred in the prosecution

of this litigation. (*Id.* at 3.)  Class Counsel submit that the requested fees are reasonable because:

> Class Counsel expended nearly 420,000 hours litigating the Action against twenty-five groups of the largest insurers and brokers in the United States, with a total lodestar in excess of $158 million and expenses in excess of $8.3 million. The hours were spent by approximately 50 law firms which utilized the skills and services of over 600 attorneys and paralegals, and provided the highest quality professional services.

(*Id.* at 2.)  To further buttress their fee request and illustrate the magnitude of this litigation, Class

Counsel also note that: (1) "this action includes over 1,400 Docket Entries in the Commercial case

(Civ. No. 04-5184) and almost 800 entries in the Employee Benefit case (Civ. No. 05-1079)"; (2)

to date, discovery in this action entailed the production of over 60 million pages of documents and

almost 200 depositions; and (3) this action has required complex motion and appellate practice. (*Id.*

at 2, fn 4.)  In sum, Class Counsel state that, "[t]his massive effort was and continues to be absolutely

necessary in order to prosecute this action." (*Id.* at 2.)

     Similarly, State Class Counsel also seek an award of attorneys' fees and reimbursement of

expenses. As with Class Counsel's request, the Marsh Defendants have agreed to pay, and therefore

do not oppose, State Class Counsel's requested fees.   (St. Pls.' Br. at 7.) [# 1467]  State Class

Counsel request a total fee award of $4,500,000. (*Id.* at 1.) This amount will be paid directly by the Marsh Defendants in addition to the approximately $69 million Settlement Fund approved by this Court. (*Id.* at 1.) State Class Counsel assert that the $4,500,000 fee request is comprised of the following two components: (1) $22,190.03 for reimbursement of reasonable litigation expenses; (2) $4,477,809.97 for attorneys' fees reasonably incurred in the prosecution of this litigation. (Stone Decl. at ¶ 17.) [# 1466] In support of this fee and expense request, State Class Counsel posit that they "undertook this matter on a wholly contingent basis and obtained and reviewed close to 15 million pages of documents that were produced by the Marsh Defendants." (St. Pls.' Br. at 2-3.) [# 1467] State Class Counsel assert that they expended 4,355.75 hour litigating this matter, and that those hours were spent:

> (i) researching and investigating Plaintiffs' claims; (ii) briefing and researching issues related to the Marsh Defendants' motions to dismiss the complaint in the State Court Class Action; (iii) conducting pre-filing and on-going factual investigations; (iv) reviewing and analyzing close to 15 million pages of documents produced by the Marsh Defendants that were relevant to the claims made in the federal and State Court Class Action; (v) drafting a comprehensive 64-page amended complaint; (vi) negotiating the Settlement; (vii) drafting the Settlement Agreement and all related documents; and (viii) drafting the Notice and related documents to be distributed to class members.

(Stone Decl. at ¶ 30.) [#1466] In sum, State Class Counsel argue their fee and expense petition should be approved because they "played a significant role in obtaining this Settlement due in large measure to their extensive knowledge of the relevant practices gained from successfully litigating a similar nationwide action . . . ." (St. Pls.' Br. at 3-4.) [# 1467]

As noted, the Marsh Defendants have agreed not to oppose the foregoing fee requests. In fact, of the 218,216 Settlement Class Members who were mailed "notice packets" prior to this Court's approval of the Settlement Agreement, only Settlement Class Member Connie Pentz Realty

Company ("Pentz") filed a general objection to the attorneys' fees, expense reimbursement, and incentive awards requested by Class and State Class Counsel.   (Pentz Objection at 7.) [# 1451] In a written submission to the Court, Pentz argues that the attorneys' fees claimed by various Counsel are at the "very outer limit of the 'range' of percentage fees permitted" by the United States Court of Appeals for the Third Circuit.  (*Id.* at 7.)  Further, Counsel for Pentz appeared at the December 15, 2008 fairness hearing and essentially lodged the same objection.  Having reviewed the parties' submissions, the Court concludes that Pentz's objection is without merit.   The sums requested by Class and State Class Counsel are reasonable, and will be approved.

## II.    DISCUSSION

### A.    Standard for Judicial Approval of Fees

Class and State Class Counsel seek approval of their respective applications for attorneys' fees, expenses, and incentive awards in the aggregate sum of $19,000,000, which represents 23% of the combination of the $62,000,000 Class Settlement and the $19,000,000 fee agreement that the Marsh Defendants must pay separately.  The awarding of fees is within the discretion of the court, so long as the court employs the proper legal standards, follows the proper procedures, and makes findings of facts that are not clearly erroneous. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001).

District courts are given deference in determining whether a request for attorneys' fees should be granted.  Notwithstanding this deferential standard, a district court is required to clearly articulate the reasons which support its conclusion. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005).  The Third Circuit identified several factors that a district court should consider.  These factors include:

6

> (1) the size of the fund created and the number of persons benefitted;
> (2) the presence or absence of substantial objections by members of
> the class to the settlement terms and/or fees requested by counsel; (3)
> the skill and efficiency of the attorneys involved; (4) the complexity
> and duration of the litigation; (5) the risk of nonpayment; (6) the
> amount of time devoted to the case by plaintiff's counsel; and (7) the
> awards in similar cases.

*Rite Aid*, 396 F.3d at 301 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir.

2000)). The district court need not apply these fee award factors in a formulaic way. Certain factors

may be afforded more weight than others. *Rite Aid*, 396 F.3d at 301. The Third Circuit emphasized

in *Rite Aid*, however, that the district court must engage in a robust assessment of these factors. *Rite*

*Aid*, 396 F.3d at 302; *see also Gunter*, 223 F.3d at 196 (vacating district court's ruling because the

fee-award issue was resolved in a "cursory and conclusory" fashion).

　　Although the Settlement Agreement is not strictly a common fund, Class and State Class

Counsel contend that where defendants have agreed to pay an amount certain for fees and costs in

addition to the amount designated to go to the class members directly, the analysis is analogous to

that performed to the common fund doctrine. *See Varacallo v. Massachusetts Mutual Life Ins. Co.*,

226 F.R.D. 207, 249 (D.N.J. 2005). "Relevant law evidences two basic methods for evaluating the

reasonableness of a particular attorneys' fee request -- the lodestar approach and the

percentage-of-recovery approach. Each has distinct attributes suiting it to particular types of cases."

*Id.* (citing *In re Prudential Ins. Co. of America Sales Practices Litig. (Prudential I)*, 962 F. Supp.

450, 478 (D.N.J. 1997). The percentage-of-recovery method is used in common fund cases as courts

have determined that "class members would be unjustly enriched if they did not adequately

compensate counsel responsible for generating the fund." *Varacallo*, 226 F.R.D. at 249 (quoting *In*

*re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 128 (D.N.J. 2002)). "While either the lodestar or

percentage-of-recovery method should ordinarily serve as the primary basis for determining the fee, the Third Circuit has instructed that it is sensible to use the alternative method to double check the reasonableness of the fee." *Varacallo*, 226 F.R.D. at 249 (*Prudential I*, 962 F. Supp. at 478).

### B.   The Marsh Defendants' Agreement to Pay Attorneys' Fees, Expenses and Incentive Awards

At the outset, Class and State Class Counsel note that the Marsh Defendants have agreed to pay the requested attorneys' fees, expenses and incentive awards in addition to the Settlement Fund. (Pls.' Mot. Br. at 6; St. Pls.' Br. at 7.) [# 1464, 1467] Class and State Class Counsel submit that the various Plaintiffs had claims against the Marsh Defendants for statutory attorneys' fees and costs under the antitrust laws (15 U.S.C. § 15)[3] and RICO. Class Counsel claims that this means without the Settlement Agreement, if they were successful on the merits, they would have had a significant claim to attorneys' fees against the Marsh Defendants. Class and State Class Counsel contend that they commenced negotiations with the Marsh Defendants for payment of attorneys fees after the consideration to the Settlement Class was agreed upon.

### C.   Relevant Factors

The Court finds that the totality of the *Gunter* factors weighs strongly in favor of approval of the fee award for the same reasons provided in this Court's previous analysis of the *Girsch* factors.[4] Given the similarity and overlap of the *Girsch* factors with the factors the Court must

---

[3] "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore . . . shall recover threefold the damages by him sustained, and the cost of suit, including reasonable attorney's fee."

[4] *See* This Court's Memorandum Opinion approving the instant Settlement, filed February 17, 2009, at pages 7-14. In *Girsh*, the Third Circuit identified nine factors that a district court should consider when determining whether a proposed class action settlement warrants approval. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). These factors include: (1) "the complexity, expense

consider here, the Court incorporates by reference the reasons given for approval of the Settlement

Agreement with the Marsh Defendants.  (GEB Mem. Op. 2/17/09 at 7-14.)  The Court will now

discuss additional reasons that support approval of attorneys' fees in this matter.

      1.      **Size of the Fund Created and Number of Persons Benefitted**

With regard to the size and nature of the Settlement Fund and the number of persons

benefitted by the Settlement Agreement, Class and State Class Counsel were able to obtain the

significant result of $62,000,000 for of the Class, despite the substantial risks of establishing

liability.  Further, a significant number of people are expected to benefit from this award considering

that notice of the Settlement Agreement was widely published and mailed to hundreds of thousands

of Settlement Class Members.  This award will also not be reduced by attorneys' fees and expenses.

As such, this factor weighs in favor of approval.

      2.      **Presence or Absence of Substantial Objections by Members of the Class to Settlement Terms and/or Fees Requested by Counsel**

The absence of substantial objections by Class Members to the fees requested by Class and

State Class Counsel strongly supports approval.  As previously noted, only Pentz filed a general

objection to the fees sought by Class and State Class Counsel.  As such, this factor weighs in favor

of approving the fee application.

      3.      **Skill and Efficiency of Attorneys**

---

and likely duration of the litigation"; (2) "the reaction of the class to the settlement"; (3) "the
stage of the proceedings and the amount of discovery completed"; (4) "the risks of establishing
liability"; (5) "the risks of establishing damages"; (6) "the risks of maintaining the class action
through the trial"; (7) "the ability of the defendants to withstand a greater judgment"; (8) "the
range of reasonableness of the settlement fund in light of the best possible recovery"; (9) "the
range of reasonableness of the settlement fund to a possible recovery in light of all the attendant
risks of litigation." *Id.* at 157.

The factor concerning the skill and efficiency of the attorneys prosecuting the action also favors approval of the fee award. Class and State Class Counsel are highly skilled attorneys with experience in antitrust, class actions and RICO litigation. The substantial Settlement amount negotiated by Class and State Class Counsel further evidences their competence. *In re Warfarin Sodium Antitrust Litig,* 212 F.R.D. 231, 261 (D.Del. 2002)(class counsel "showed their effectiveness . . . through the favorable cash settlement they were able to obtain"). Moreover, the Marsh Defendants were represented by highly skilled attorneys from a prominent firm with experience in these matters. *In re Warner Communications Sec. Litig.,* 618 F.Supp. 735, 749 (S.D.N.Y. 1985)("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsel's work.").

### 4.    The Complexity and Duration of the Litigation

As noted in the Court's memorandum opinion that approved the Settlement Agreement with the Marsh Defendants, this factor weighs strongly in favor of approval. This action involved federal and state antitrust laws, RICO and common law. An antitrust action is clearly a complex action to prosecute. *In re Linerboard Litig.,* MDL 1261, 2004 U.S. Dist. LEXIS 10532, *34 (E.D. Pa. June 2, 2004). The claims involved alleged conspiracy violations by dozens of large brokerage and insurance companies with highly complex legal and factual issues. Class Counsel engaged in extensive discovery and motion practice, and the litigation of this matter was a costly and lengthy process for all parties. *See In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 535-36 (3d Cir. 2004).

### 5.    The Risk of Non-Payment

Class and State Class Counsel submit that they undertook this action on a contingent fee

basis, assuming a substantial risk that they might not be compensated for their efforts. Class and State Class Counsel contend that courts recognize the risk of non-payment as a major factor in considering an award of attorneys' fees. *See In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 U.S. Dist. LEXIS 6621, *16 (E.D. La. May 18, 1994) (stating that "[c]ounsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable."). Class and State Class Counsel each invested substantial amounts of effort and resources to reach this point and obtain the favorable Settlement Agreement. Class and State Class Counsel accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award. Accordingly, this factor weighs in favor of approval.

### 6.    The Amount of Time Devoted to the Litigation

Class and State Class Counsel each claim that they have devoted a tremendous amount of time to this litigation. Specifically, Class Counsel submits that through June 19, 2008, the date the Settlement Agreement was reached with the Marsh Defendants, Class Counsel had spent 419,000 hours in prosecuting this case on behalf of the Settlement Class for an aggregate lodestar of approximately $158,329,072. Additionally, Class Counsel assert that they have incurred approximately $8,369,716 litigation expenses to date. State Class Counsel claims that as of June 19, 2008, they spent a total of 4,355.75 hours and have incurred approximately $22,190.03 in expenses litigating this matter. Throughout this action, over fifty law firms were involved on behalf of Plaintiffs, with the work allocated to specific firms to avoid duplication and to deal with specific areas of the litigation. Class and State Class Counsel maintain that this Settlement Agreement is with one of many Defendant groups in this action, and litigation continues against the Non-Settling

11

Defendant groups. Based on the amount of time expended on this matter and the number of attorneys involved in the negotiation and ongoing litigation, this factor weighs in favor of approval.

### 7.     Awards in Similar Cases

The Court must also take into consideration amounts awarded in similar actions when approving attorneys' fees. Specifically, the Court must: (1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market. *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085, 2005 U.S. Dist. LEXIS 27013, *42-46 (D.N.J. Nov. 9, 2005). "Courts within the Third Circuit often award fees of 25% to 33 1/3% of the recovery." *Id.* at 44 (citing *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) (approving 30% fee of a $202 million settlement in an antitrust class action); *Rite Aid*, 396 F.3d at 306-307 (review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71% with a median value that "turns out to be one-third"); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (in common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) ("the award of one-third of the fund for attorneys' fees is consistent with fee awards in a number of recent decisions within this district"); *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532, *43 (citing with approval "a recent Federal Judicial Center study that found that in federal class actions generally median attorney fee awards were in the range of 27 to 30 percent.").

According to Class Counsel, the requested award in this matter is 15.9-18.9% (after deducting expenses and awards to named Plaintiffs). (Pls.' Fee Br. at 21.) [# 1463] This percentage

is within or below the range found acceptable in this District. Significantly, Class Counsel also notes that this Court approved the award of 19.9% for fees following the Zurich settlement, and 16.8% for fees following the Gallagher Settlement. (*Id.*) State Class Counsel's requested fee award in this matter is 6.8%. Thus, even when Class Counsel and State Class Counsel's fee requests are aggregated, the maximum award is 25.7% - a figure within the range of acceptability established by relevant precedent. (St. Pls.' Br. at 28.) [# 1467]

The second part of this analysis addresses whether the requested fee is consistent with a privately negotiated contingent fee in the marketplace. The percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee which would be negotiated if the lawyer were offering the services in the private marketplace. *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27013, * 46. "The object . . . is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible." *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992); *In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("When deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."). To determine the market price for an attorney's services, the Court should look to evidence of negotiated fee arrangements in comparable litigation. *Continental Illinois Sec. Litig.*, 962 F.2d at 573 (stating that the judge must try to simulate the market "by obtaining evidence about the terms of retention in similar suits, which differ only because, as they are not class actions, the market fixes the terms"). "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation." *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist.

13

LEXIS 27013, * 46. *See, e.g. In re Ikon Office Solutions, Inc.* 194 F.R.D. 166, 194 (E.D. Pa. 2000);

*In re Orthopedic Bone Screws Products Liability Litig.*, No. 97-381, 2000 U.S. Dist. LEXIS 15980,

*7 (E.D. Pa. Oct. 23, 2000); *Durant v. Traditional Invest., Ltd.*, No. 88-9048, 1992 U.S. Dist. LEXIS

12273, *4 n. 7 (S.D.N.Y. Aug. 12, 1992). Accordingly, Class and State Class Counsel's requested

fee amount is within the range of privately negotiated contingent fees.

### 8.    Conclusion

In sum, for all the reasons stated above, the Court concludes that the requested fee by Class

Counsel is fair and reasonable according to the *Gunter* factors.

### D.    <u>Lodestar Cross-Check</u>

The Third Circuit has articulated that when an award is based on percentage of recovery, it

is sensible to confirm the reasonableness of the award using the lodestar method. *Rite Aid*, 396 F.3d

at 305-06. The lodestar analysis is performed by "multiplying the number of hours reasonably

worked on a client's case by a reasonable hourly billing rate for such services based on the given

geographical area, the nature of the services provided, and the experience of the attorneys." *Id.* at

305. When performing this analysis, the court "should apply blended billing rates that approximate

the fee structure of all the attorneys who worked on the matter." *Id.* at 306. Thus, the lodestar

multiplier is equal to the proposed fee award divided by the product of the total hours and the

blended billing rate. If the lodestar multiplier is large, the award calculated under the percentage-of-

recovery method may be deemed unreasonable, and a trial judge may consider reducing the award

appropriately. *Id.* at 306.

The multiplier, however, "need not fall within any pre-defined range, provided that the

[d]istrict [c]ourt's analysis justifies the award." *Id.* at 307. Further, the court is not required to

engage in this analysis with mathematical precision or "bean-counting." *Id.* at 306.  Instead, the court may rely on summaries submitted by the attorneys, and is not required to scrutinize every billing record. *Id.* at 306-07.

In the present case, the proposed fee award presented by Class and State Class Counsel is approximately 23% of the settlement in combination with the requested fees and expenses of $19,000,000.  Class Counsel submit that the total number of hours expended by the attorneys and paraprofessionals in this case to June 19, 2008 is 419,000 hours.  (Pls.' Mot. Br. at 19.) [#1463]  The Court further notes that this lodestar value is based on the blended billing rates of all attorneys and paraprofessionals who were involved with this case.  Accordingly, the Court accepts these calculations as the basis for performing the lodestar cross-check.  Class Counsel claim that its lodestar to June 19, 2008 was $158,329,072.[5]  Class Counsel submit that this results in a multiplier of .12.  (Pls.' Mot. Br. at 23.) [#1463]  This multiplier is within an accepted range and as Class Counsel points out, is less than was found to be acceptable by this Court in the Zurich Settlement.

State Class Counsel claim a lodestar of $2,161,575 and total hours of 4,355.75, which results in a multiplier of 2.07.  (St. Pls.' Br. at 32.) [# 1467]  While State Class Counsel's multiplier is higher than that of Class Counsel, it is well within the range of reasonableness identified in similar cases.  (*See, e.g. In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 734, 742 (approving a suggested

---

[5] The Court will rely upon the June 19, 2008 settlement date in performing the lodestar cross-check.  *See Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 252 (D.N.J. 2005) (fee award will be sole compensation for counsel "despite the continuing responsibilities [counsel] will have in responding to Class Member inquiries, assisting the Claim Evaluator, consulting on individual cases, and any post-judgment proceedings and appeals."); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27013 (D.N.J. 2005) ("Class Counsel will likely incur hundreds of additional hours in connection with administering the settlement, without prospect for further fees.").

multiplier of 3 and stating that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"); *Nichols*, 2005 U.S. Dist. LEXIS 7061 (approving a multiplier of 3.15); *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532 (approving a 2.66 multiplier).

The reasonable attorney rate is determined by reference to the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) ("we have consistently looked to the marketplace as our guide to what is 'reasonable'"). The Third Circuit, as well as other courts, have held that an attorney's customary billing rate is the proper starting point for calculating fees. *Cunningham v. City of McKeesport*, 753 F.2d 262, 268 (3d Cir. 1985). However, the Third Circuit has determined that once a party meets its prima facie burden of establishing the "community market rate," and the opposing party does not produce contradictory evidence, the trial court does not have discretion to adjust the requested rate downward. *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996).

To establish a market rate, the prevailing party must offer evidence that the attorney's usual rate is in line with the market rate in the community. *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). This evidence takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate, *Glover v. Johnson*, 934 F.2d 703, 716 (6th Cir. 1991), and a court may not vary the rates competently set forth in uncontested affidavits. *Black Grievance Comm. v. Philadelphia Elec. Co.*, 802 F.2d 648, 657 (3d Cir. 1986) (*vacated on other grounds*, 483 U.S. 1015 (1987). The market rate to be used is the current prevailing market rate at the time the request for fees is made. *Lanni v. New Jersey*, 259 F.3d 146, 149-50 (3d Cir. 2001).

In their submissions, Class Counsel summarized the hours, costs, and their lodestar through

16

June 19, 2008, but did not provide declarations in support of any particular hourly rate.  It appears that the hourly rate being used by Class Counsel is approximately $378.[6]   State Class Counsel submitted the Declaration of Richard L. Stone, in which the hours and hourly rates of the individual professionals involved in this litigation were summarized.  (Stone Decl. Ex. 3.) [#1466]  It appears that the "blended" hourly rate being used by State Class Counsel is approximately $496.[7]  The Court notes that this blended rate is elevated because Rick Stone spent 1,221 hours on this matter at the hourly rate of $750.  (*Id.*)  Based on the lack of objections to these rates and the experience of Class and State Class Counsel, this Court will consider the approximate hourly rates noted reasonable.

### E.    Reimbursement of Expenditures

Class and State Class Counsel also request reimbursement for expenses incurred during this litigation.  Class Counsel seek reimbursement for $1,999,196 in litigation expenses.[8]   State Class Counsel seek reimbursement for $22,190.03 in litigation expenses.  (St. Pls.' Br. at 26.) [# 1467]

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir.1995)).  Class and State Class Counsel contend that

---

[6]  The Court arrived at this rate by dividing the total lodestar amounts by the total hours worked. Through June 19, 2008, the total hours worked were 419,000 and the lodestar provided was $158,329,072.  The result is a rate of $378 per hour.

[7] The Court arrived at this rate by dividing the total lodestar amounts by the total hours worked. Through June 19, 2008, the total hours worked were 4,355.75 and the lodestar provided was $2,161,575.  The result is a rate of $496 per hour.  (Stone Decl. Ex. 3.) [#1466]

[8]  This amount represents the total expenses incurred by Class Counsel through June 19, 2008 ($8,369,716), less the total expense reimbursements awarded following the Zurich and Gallagher Settlements ($6,370,520). (Pls.' Mot. Br. at 25.) [#1463]

these expenses reflect costs expended for the purposes of litigating this action, including fees for experts, costs associated with creating and maintaining electronic document databases, travel and lodging expenses, copying, mail, telephone and the costs of deposition transcripts. (Pls.' Mot. Br. at 25; Stone Decl. Ex. 1.) [#1463, 1466]  The Court concludes that while Class and State Class Counsel did not submit documentation that details the exact expenditures, based on the summaries provided, these expenses were reasonably and appropriately incurred during the prosecution of this case. Consequently, the Court approves Class and State Class Counsel's request for reimbursement.

**F.**     **Incentive Awards for Named Plaintiffs**

Class Counsel also request that the Court approve the payment of incentive awards to each named Plaintiffs in the amount of $10,000.  The total incentive awards requested for all 32 named Plaintiffs is therefore $320,000.   Class Counsel note that the Court approved similar awards following both the Zurich and Gallagher Settlements.   Class Counsel contends that the named Plaintiffs spent a significant amount of their own time and expense litigating these cases for the benefit of the absent members of the Settlement Class, and should be compensated for their efforts. *See, e.g. In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002) ("Incentive awards are 'not uncommon in class action litigation and particularly where . . . a common fund has been created for the benefit of the entire class.'").  Class Counsel claim that the amount requested for each class representative is identical to the amounts awarded named Plaintiffs in both the Zurich and Gallagher Settlements.  Additionally, Class Counsel argue that the amount requested is similar to awards grated by other courts in similar cases. *See, e.g. Nichols*, 2005 U.S. Dist. LEXIS 7061 (approving $5,000 to each third-party payor named plaintiff, $2,500 to each consumer named plaintiff); *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532, *58 (approving $25,000

18

to each representative of the classes).

No objections were made to the requested amount, and as such, this Court will approve the $10,000 payment of incentive awards for each named Plaintiff, totaling $320,000.

### G.    Settlement Class Member Pentz's Objection

As previously noted, only Pentz objected the aforementioned fee and expense awards agreed to by the parties. (Pentz Objection at 7.) [# 1451]  Pentz lodged generalized objections regarding the reasonableness of the fee calculations and percentages.  Above, the Court detailed the reasonableness of the fee and expense awards sought by Class and State Class Counsel.  As such, the Court finds that Pentz's objection lacks merit, and requires no further discussion.  To the extent Pentz has requested attorneys' fees, that request is denied.

## III.    CONCLUSION

For the foregoing reasons, the Court grants the applications of Class and State Class Counsel for an award of attorneys' fees, reimbursement of expenses and incentive award payments [# 1463, 1467].

Dated: February 17, 2009

/s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.