UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ) | MDL No. 1663 |
| ) | |
| IN RE INSURANCE BROKERAGE ) | Civil No. 04-5184 (GEB) |
| ANTITRUST LITIGATION. ) | |
| ) | Hon. Garrett E. Brown, Jr. |
| APPLIES TO ALL ACTIONS. ) | |
| ) | |

## STIPULATION OF SETTLEMENT

**WHEREAS,** the undersigned defendant groups (the **"Settling Defendants"**) are named as defendants in the above-captioned putative class action lawsuit (the **"Lawsuit"**), in which plaintiffs, in both their individual capacities and in their capacities as representatives of the class alleged therein (the **"Plaintiffs"**), have alleged claims for purported violations of the Sherman Act, the Racketeer Influenced and Corrupt Organizations Act (**"RICO"**), and various state statutes and state common law; and

**WHEREAS,** Plaintiffs and the Settling Defendants are hereinafter referred to collectively in this Stipulation of Settlement (the **"Settlement Agreement"**) as the **"Parties"**; and

**WHEREAS,** the May 25, 2005 Order (Docket No. 118) entered in the Lawsuit by the United States District Court for the District of New Jersey (the **"Court"**) appointed the law firms of Milberg Weiss Bershad & Schulman LLP and Miller Faucher and Cafferty LLP, the latter of which is now known as Cafferty Faucher LLP (**"Cafferty Faucher"**), as co-lead counsel for Plaintiffs; and

**WHEREAS,** the Court's July 17, 2006 Order (Docket No. 635) entered in the Lawsuit substituted the law firm of Whatley, Drake & Kallas, LLC (**"Whatley Drake"**) as co-lead counsel for the law firm of Milberg Weiss Bershad & Schulman LLP, thereby making Cafferty Faucher and Whatley Drake the co-lead counsel for Plaintiffs (**"Co-Lead Counsel"**); and

**WHEREAS,** over the course of the more than six years during which the Lawsuit has been pending, Plaintiffs have filed multiple sets of pleadings, including their May 22, 2007 Second Consolidated Amended Commercial Class Action Complaint (the **"Complaint"**), and the Settling Defendants have filed multiple motions to dismiss those pleadings; and

**WHEREAS,** the Settling Defendants and the other defendants named in the Lawsuit (the **"Other Defendants"**) produced in the aggregate more than 60 million pages of documents in response to Plaintiffs' document requests, provided responses to Plaintiffs' interrogatories and data requests, and provided witnesses for more than 200 depositions in the Lawsuit; and

**WHEREAS,** the Settling Defendants have expressly opposed the certification of any proposed litigation class of plaintiffs in the Lawsuit and have reserved all of their objections to certification of any such litigation class in the Lawsuit; and

**WHEREAS,** the Court issued five separate decisions in connection with the Settling Defendants' motions to dismiss Plaintiffs' pleadings, including decisions dated August 31, 2007 (Docket Nos. 1298 & 1299) and September 28, 2007 (Docket Nos. 1315 & 1316),

- 2 -

respectively, which jointly dismissed with prejudice Plaintiffs' claims against the Settling

Defendants and the Other Defendants (the **"2007 Dismissal"**); and

WHEREAS, on August 16, 2010, the United States Court of Appeals for the

Third Circuit issued an Opinion in Plaintiffs' appeal of the 2007 Dismissal, which (a) affirmed

the dismissal with prejudice of Plaintiffs' Sherman Act and RICO claims relating to an alleged

global conspiracy and all alleged broker-centered conspiracies, except for a portion of the alleged

Marsh-centered conspiracy pertaining to excess casualty insurance; (b) affirmed the dismissal

with prejudice of all Sherman Act and RICO claims alleged against the CNA, Crum & Forster

and Hartford defendant groups; and (c) remanded the remaining claims (the **"Remanded**

**Claims"**) to the Court to determine the sufficiency of the Remanded Claims under, among other

pleading standards, Fed. R. Civ. P. 9(b);  and

WHEREAS, on October 1, 2010, the Settling Defendants and the Other

Defendants filed with the Court various motions to dismiss the Remanded Claims  (the **"2010**

**Motions"**); and

WHEREAS, the 2010 Motions were fully briefed in November 2010; and

WHEREAS, the May 25, 2005 Order entered in the Lawsuit (as confirmed in the

July 17, 2006 Order entered therein) provides that Co-Lead Counsel shall, among other things,

conduct settlement negotiations on behalf of Plaintiffs and enter into binding settlement

agreements, as expressly authorized; and

WHEREAS, commencing in the fall of 2010, Plaintiffs, the Settling Defendants and the Other Defendants engaged in a settlement mediation process in accordance with the suggestion of the Court (the **"Mediation"**); and

WHEREAS, during the Mediation, which was conducted under the auspices of former federal Judge Layn Phillips at various times during the period from October 2010 through mid-March 2011, the Parties engaged in vigorous arm's-length settlement negotiations; and

WHEREAS, on March 18, 2011, Co-Lead Counsel entered into a Memorandum of Settlement Understanding with all of the Settling Defendants, other than the AXIS and Fireman's Fund defendants, that set forth the principal terms pursuant to which Plaintiffs and those Settling Defendants would settle the Lawsuit (the **"M.O.U."**); and

WHEREAS, by April 2011, Plaintiffs had also reached respective agreements in principle with AXIS and Fireman's Fund to settle the Lawsuit; and

WHEREAS, since Plaintiffs' execution of the M.O.U. and entry into the respective settlement agreements in principle with AXIS and Fireman's Fund, the Parties have conducted additional arm's-length settlement negotiations with respect to the contents of this Settlement Agreement; and

WHEREAS, the Settling Defendants expressly deny any and all wrongdoing in connection with the facts and claims that have or could have been alleged against them in the Lawsuit, as well as in connection with all facts and claims relating in any way thereto; and

WHEREAS, the Parties desire to settle the Lawsuit because the terms set forth herein will, among other things, put an end to the substantial time, expense, uncertainty and other burdens associated with continued litigation of the Lawsuit and confer substantial benefits upon both the proposed Settlement Class (as defined in Paragraph 1, below) and the Settling Defendants; and

WHEREAS, the insurer defendant groups that are or were named in the Lawsuit include ACE, AIG, American Re/Munich, AXIS, Chubb, CNA, Crum & Forster, Fireman's Fund, The Hartford, Liberty Mutual, Travelers, XL and Zurich (collectively, the **"Insurer Defendants"**); and

WHEREAS, the broker defendant groups that are or were named in the Lawsuit include Aon, Gallagher, HRH, Marsh, Wells Fargo/Acordia and Willis (collectively, the **"Broker Defendants"**),

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,** by and among the Parties, by and through their duly-authorized counsel set forth below, that, in consideration of the mutual covenants contained herein and other good and valuable consideration, the adequacy of which is hereby acknowledged, the Lawsuit, all of the claims asserted or which could have been asserted therein, and all matters relating thereto are settled and compromised as to the Settling Defendants and their respective parents, subsidiaries and affiliates, as well as all directors, officers, employees, attorneys and agents of each of the foregoing, pursuant to the terms set forth below and in the exhibits annexed hereto (the **"Settlement"**), subject to final Court approval of said Settlement:

- 5 -

1.      **The Settlement Class**.   The proposed settlement class shall consist of all persons and entities that, during the period from January 1, 1998 through December 31, 2004, inclusive, purchased commercial insurance policies from any of the Insurer Defendants through any of the Broker Defendants, or from another insurer after soliciting insurance policy quotes or indications from any of the Insurer Defendants through any of the Broker Defendants , except to the extent that a Broker Defendant was acting as a Managing General Agent or Managing General Underwriter for an Insurer Defendant or through a captive program (the **"Settlement Class"**).  Members of the Settlement Class are referred to hereinafter as the **"Settlement Class Members."**

2.      **Preliminary Approval Order**.   Within seven (7) days following the date on which this Settlement Agreement is fully executed, Co-Lead Counsel shall submit this Settlement Agreement to the Court and apply for an Order, in substantially the form annexed hereto as **Exhibit 1**, preliminarily approving the Settlement (the **"Preliminary Approval Order"**).

3.      **The Settlement Fund**.   No later than fifteen (15) days after the date on which the Court enters the Preliminary Approval Order, the Settling Defendants shall make a settlement payment in the aggregate amount of $41,000,000 (the **"Settlement Fund"**).  The obligation of each of the Settling Defendants to fund the payment described in this Paragraph 3 is expressly limited to its respective individual share that has been agreed to among said defendants.

4.     **The Settlement Escrow Account**.   The Settlement Fund payments

described in Paragraph 3, above, shall be deposited by the Settling Defendants into an interest-

bearing escrow account (the **"Settlement Escrow Account"**) that is to be established and

administered pursuant to an escrow agreement in the form annexed hereto as **Exhibit 2** (the

**"Escrow Agreement"**).   The Escrow Agent shall invest the Settlement Fund exclusively in

instruments backed by the full faith and credit of the United States Government or fully insured

by the United States Government or an agency thereof, including a U.S. Treasury Money Market

Fund or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the

guaranteed FDIC limit. The Escrow Agent shall reinvest the proceeds of these instruments as

they mature in similar instruments at their then-current market rates. Defendants shall not bear

any responsibility for or liability related to the investment of the Settlement Fund by the Escrow

Agent

5.     **Administrative Expenses**.

(a)     Pursuant to the Preliminary Approval Order, Co-Lead Counsel and the

Settling Defendants shall jointly agree to the retention of an administrator to assist in the

implementation of the Settlement (the **"Claims Administrator"**).

(b)     All Court-approved expenses associated with the implementation and

administration of the Settlement by the Claims Administrator (the **"Administrative Expenses"**)

shall be paid solely from the Settlement Escrow Account.   The Administrative Expenses

include, but are not limited to, all expenses incurred by or on behalf of the Claims Administrator

in connection with the printing, mailing and/or publishing of the proposed postcard notices

annexed hereto as **Exhibits 3 and 4** (the **"Postcard Notices"**) the proposed comprehensive

notice annexed hereto as **Exhibit 5** (the **"Detailed Notice"**) and the proposed publication notice

- 7 -

annexed hereto as **Exhibit 6** (the **"Publication Notice"**); the establishment, staffing and maintenance of a toll-free telephone number and a website in connection with the Settlement; the determination of the amount to be allocated pursuant to the terms of this Settlement Agreement to each of the Settlement Class Members; and the distribution of said amounts to the Settlement Class Members.  The Administrative Expenses shall not include any amounts attributable to the Attorneys' Fees & Expenses Award defined and discussed in Paragraph 6, below.

  6.  **Attorneys' Fees & Expenses Award**.

   (a)  Co-Lead Counsel and all other counsel for plaintiffs listed in the Complaint (collectively, **"Class Counsel"**) may apply to the Court for an award of attorneys' fees and reimbursement of litigation expenses (the **"Attorneys' Fees & Expenses Award"**) within fifteen (15) days from the date of entry of the Preliminary Approval Order.  The Settling Defendants have agreed that they will not object to Class Counsel's application for the Attorneys' Fees & Expenses Award.

   (b)  The Attorneys' Fees & Expenses Award shall be paid in its entirety from the Settlement Escrow Account and is payable within fifteen (15) days of the entry of the Court's Order awarding Attorneys' Fees & Expenses to Class Counsel.

   (c)  The Attorneys' Fees & Expenses Award made by the Court shall constitute the sole aggregate compensation for all Class Counsel with respect to the Settlement and all claims against the Settling Defendants.

   (d)  If this Settlement Agreement is properly and timely terminated in accordance with the terms hereof after the Attorneys' Fees & Expenses Award has been paid

- 8 -

from the Settlement Escrow Account, then Co-Lead Counsel shall, within fifteen (15) days

following such termination, return to the Settlement Escrow Account the Attorneys' Fees &

Expenses Award with simple interest thereon calculated based upon the one-year United States

LIBOR rate, as published in *The Wall Street Journal* on the first day of each month (the

**"Interest"**).  The Interest shall be calculated from the date on which the Attorneys' Fees &

Expenses Award was paid to Class Counsel from the Settlement Escrow Account through the

date on which the Attorneys' Fees & Expenses Award is returned to the Settlement Escrow

Account.

   (e)  If, after payment of the Attorneys' Fees & Expenses Award to Class

Counsel, said Attorneys' Fees & Expenses Award is reduced by the Court or any appellate court,

Co-Lead Counsel shall, within fifteen (15) days, return to the Settlement Escrow Account the

amount by which the Attorneys' Fees & Expenses Award has been reduced (the **"Surplus

Award"**), with Interest to be calculated from the date on which the Attorneys' Fees & Expenses

Award was paid to Class Counsel from the Settlement Escrow Account through the date on

which the Surplus Award is returned to the Settlement Escrow Account.

   (f)  Class Counsel and their respective partners, members and/or shareholders

agree and acknowledge expressly their obligations to return to the Settlement Escrow Account

the Attorneys' Fees & Expenses Award or the Surplus Award in accordance with this Paragraph

6.  Class Counsel and their respective partners, members and/or shareholders further agree and

acknowledge expressly that the Court may, upon application of any one or more of the Settling

Defendants, on notice to Co-Lead Counsel, summarily issue Orders against Class Counsel or any

of them if they should fail timely to repay to the Settlement Escrow Account any amounts pursuant to this Paragraph 6.

(g)    No Releasee (as defined in Paragraph 15, below) shall be liable or obligated to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of, any person or entity (including, without limitation, Plaintiffs and Class Counsel), directly or indirectly, in connection with the Lawsuit or this Settlement Agreement, except as expressly provided for herein.

(h)    In addition to the Attorneys' Fees & Expense Award, Class Counsel intend to apply to the Court for monetary awards to be paid to the named plaintiffs in the Lawsuit (the "Named Plaintiffs") for the time and effort expended and the expenses incurred by the Named Plaintiffs on behalf of the Settlement Class (the "Named Plaintiffs' Service Awards").  The Named Plaintiffs' Service Awards shall be paid solely from the Settlement Escrow Account. Class Counsel intend to seek, and the Settling Defendants agree not to oppose, a Service Award of five-thousand dollars ($5,000.00) for each of the Named Plaintiffs.

7.    **Tax Liabilities and Expenses**.

(a)    All tax liabilities and expenses, if any, arising in connection with the Settlement Fund and the Settlement Escrow Account shall be paid solely from the Settlement Escrow Account.

(b)    No opinion, advice or warranty concerning the tax consequences to Settlement Class Members relating to this Settlement Agreement and/or the Settlement is being given or will be given by respective counsel for the Settling Defendants and/or Class Counsel.

- 10 -

The Detailed Notice shall direct members of the Settlement Class to consult their own respective tax advisors regarding the tax-reporting and tax-payment obligations, if any, created by this Settlement Agreement and/or the Settlement.  All said tax-reporting and tax-payment obligations are the sole responsibility of each of the Settlement Class Members.

8.      **Settlement Payment Distributions**.

(a)      The funds in the Settlement Escrow Account shall not be distributed except in accordance with this Settlement Agreement or by Order of the Court.  The balance (including any Interest earned thereon) remaining in the Settlement Escrow Account after the payments, if any, described in Paragraphs 5, 6 and 7, above (the **"Net Settlement Fund"**), shall be allocated (i) to make payments to persons and entities that, during the period from January 1, 1998 through December 31, 2004, inclusive, purchased excess casualty insurance policies from the AIG, AXIS, Fireman's Fund, Liberty Mutual, Travelers and/or XL insurers, or any subsidiaries or affiliates of the foregoing entities, through Marsh & McLennan Companies, Inc. or any subsidiaries or affiliates thereof (the **"Excess Casualty Claimants"**), and (ii) to fund a cy pres award for the entire Settlement Class (the **"Cy Pres Award"**), as determined by Co-Lead Counsel pursuant to the proposed plan of allocation annexed hereto as **Exhibit 7**, as may be modified by the Court (the **"Plan of Allocation"**).  The portion of the Net Settlement Fund that Plaintiffs determine to allocate to the Cy Pres Award shall, subject to Court approval, be paid to one or more charitable or educational organizations to be agreed upon by the Parties.

(b)      No person or entity shall have any claim against Plaintiffs, Class Counsel, the Settling Defendants, respective counsel for the Settling Defendants, the Claims Administrator, the escrow agent to be appointed pursuant to the Escrow Agreement (the

- 11 -

**"Escrow Agent"**), any of the Releasees defined in Paragraph 15, below, or any agent of any of the foregoing with respect to or arising out of any distribution or lack thereof made under the Plan of Allocation, this Settlement Agreement or any Order of the Court.

(c)   None of the Releasees defined in Paragraph 15, below, and/or their respective counsel, including, but not limited to respective counsel for the Settling Defendants, shall have any role in, responsibility for or liability with respect to the Plan of Allocation; the form, substance, method or manner of allocation, administration or distribution pursuant thereto; and/or any tax liability that any of the Settlement Class Members may incur as a result of this Settlement Agreement or as a result of any action taken pursuant to this Settlement Agreement.

(d)   The Settling Defendants will cooperate with Co-Lead Counsel as required to ensure that Co-Lead Counsel has the reasonably accessible information necessary to prepare and implement the Plan of Allocation.

(e)   Unless otherwise ordered by the Court, Settlement Class Members shall look solely to the Net Settlement Fund in connection with the Settlement.  Except as expressly provided by this Settlement Agreement, under no circumstances shall any of the Parties or any of the Releasees defined in Paragraph 15, below, be responsible for the payment of any fees, costs, expenses or other funds associated with or arising out of the Settlement.  Except as expressly provided by this Settlement Agreement, the Plan of Allocation or Order of the Court, none of the Settlement Class Members shall have any interest whatsoever in the Settlement Fund, the Settlement Escrow Account or the Net Settlement Fund.

(f)     If there is a balance remaining in the Net Settlement Fund six (6) months following the date of the final distribution therefrom in accordance with the Settlement (whether by reason of tax refunds, uncashed checks or otherwise), such balance shall be reallocated if practicable, and at the sole discretion of Co-Lead Counsel (and at no expense to any Settling Defendant), to the Settlement Class Members in an equitable and economic manner (the **"Supplemental Allocation"**).  Subject to Court approval, any remaining balance after such Supplemental Allocation has been made (or any remaining balance in the event a Supplemental Allocation is not practicable) shall be paid to one or more charitable or educational organizations to be agreed upon by the Parties, but in no event shall any such monies revert to the Settling Defendants or to Class Counsel.

(g)     Plaintiffs shall seek the Court's approval of the Plan of Allocation, and the Settling Defendants shall not object to such approval.

(h)     All initial determinations as to the extent to which each of the Settlement Class Members will participate in the distribution of the Net Settlement Fund in accordance with the Plan of Allocation shall be made by Co-Lead Counsel, their designees or agents, the Claims Administrator, or such other persons or entities as Co-Lead Counsel may, in their sole discretion, deem necessary or advisable to assist them in the administration of this Settlement Agreement. The administration of the monies in the Settlement Fund, the Settlement Escrow Account and the Net Settlement Fund, and decisions with respect to all disputed questions of law and fact relating to distributions therefrom, shall remain under the exclusive and continuing jurisdiction of the Court.

9.       **Accounts Deemed a Qualified Settlement Fund**.

(a)      All necessary steps shall be taken to enable the Settlement Escrow

Account and the Net Settlement Fund to be deemed a qualified settlement fund within the

meaning of Treasury Regulation § 1.468B-1 (the **"Qualified Settlement Fund"**), including the

timely filing by Co-Lead Counsel and/or their agent of all elections and statements required

pursuant to Treas. Reg. §§ 1.468B-0 through 1.468B-5, or any other relevant statutes, regulations

or published rulings now or hereafter enacted or promulgated, for all taxable years in which the

Settlement Escrow Account and the Net Settlement Fund are in existence, beginning with the

date of their establishment.  Co-Lead Counsel shall be the administrator of the Qualified

Settlement Fund for purposes of the taxation of the Settlement Escrow Account and the Net

Settlement Fund under Treas. Reg. §§ 1468B-0 through 1.468B-5.  Co-Lead Counsel and/or their

agent, on behalf of the Settlement Escrow Account and the Net Settlement Fund, shall file or

cause to be filed on a timely basis all required federal, state and local tax returns and shall pay

taxes in a manner consistent with treatment of the Settlement Escrow Account and the Net

Settlement Fund as a Qualified Settlement Fund, as provided in Treas. Reg. §§ 1.468B-0 through

1.468B-5. The Parties agree that the Settlement Escrow Account and the Net Settlement Fund

shall be treated as a Qualified Settlement Fund from the earliest date possible, and they agree and

elect to treat the Settlement Escrow Account and the Net Settlement Fund as a Qualified

Settlement Fund from the earliest date possible.  The Settling Defendants agree to provide the

statement described in Treas. Reg. § 1.468B-3(e).  Except as provided in this Settlement

Agreement, in no event shall the Settling Defendants have any responsibility whatsoever for

filing any other required statements or tax returns, or for paying any taxes due or the expenses

incurred in administering the Settlement Fund, the Settlement Escrow Account or the Net Settlement Fund.

(b)     Upon the request of respective counsel for the Settling Defendants, Co-Lead Counsel shall promptly provide to the Settling Defendants all information in connection with any tax returns that any of the Releasees defined in Paragraph 15, below, must file or in connection with any other report or filing that any such Releasees must make with respect to the Settlement Escrow Account or the Net Settlement Fund.

**10.     Notice to Members of the Settlement Class**.

(a)     The Parties agree that the following procedures for preparing, mailing and/or publishing the Postcard Notices, the Detailed Notice and the Publication Notice are designed to provide notice to the Settlement Class Members that is reasonably calculated under all of the circumstances to apprise them of the pendency of the Lawsuit, the Settlement Agreement, the Settlement and their opportunity to be heard in connection therewith:

(i)     The names and addresses of the Settlement Class Members shall be obtained through a reasonable search by the AIG, AXIS, CNA, Crum & Forster, Fireman's Fund, Hartford, Liberty Mutual, Travelers and XL insurer defendant groups (collectively, the **"Settling Insurers"**) of their reasonably accessible respective records relating to commercial insurance placed, during the period from January 1, 1998 through December 31, 2004, inclusive, through the Broker Defendants.

(ii)     Notice of the Settlement shall be provided to the Settlement Class Members via: (1) the mailing to the Excess Casualty Claimants of a Postcard Notice, in the form annexed hereto as **Exhibit 3** (the "**Long Form Postcard**"); (2) the mailing to Settlement Class members who are not Excess Casualty Claimants of a Postcard Notice, in the form annexed hereto as **Exhibit 4** (the "**Short Form Postcard**"); (3) the posting on a website dedicated to this Settlement of a Detailed Notice, substantially in the form annexed hereto as **Exhibit 5** and (4) the reasonable publication in selected media of the Publication Notice in substantially the form annexed hereto as **Exhibit 6**.

- 15 -

(iii)  The notice procedures agreed to by the Parties in this Paragraph 10 constitute a material term of the Settlement.

(b)     Within 30 days of the Preliminary Approval Order, and no later than forty-five (45) days before the hearing at which (or after) the Court makes its final decision pursuant to Fed. R. Civ. P. 23 as to whether the Settlement should be approved (the **"Fairness Hearing"**), Co-Lead Counsel shall cause a copy of the Postcard Notices to be mailed, by first-class mail, postage prepaid, to the Settlement Class Members that can be identified in accordance with the procedure outlined in Paragraph 10(a)(i), above.  In cases of known pending litigation against any of the Settling Defendants involving the subject matter of the Release defined in Paragraph 15, below, a copy of the Postcard Notice shall also be mailed to legal counsel known to represent any of the Settlement Class Members in such litigation.

(c)  If the Postcard Notice is returned to the Claims Administrator with an updated address, the Postcard Notice shall be re-mailed to the addressee as soon as practicable following the receipt of the updated address.  However, if such an updated address is received by the Claims Administrator after, or fewer than five (5) days before, the date of the Fairness Hearing, no re-mailing of the Postcard Notice shall be required.

(d)     No later than seven (7) days following the mailing of the Postcard Notices referenced above at Paragraph 10 (a)(ii): (i) Co-Lead Counsel shall cause the Claims Administrator to publish on the website www.insurancebrokeragesettlement.com the Detailed Notice (Exhibit 5) and (ii) Co-Lead Counsel shall cause the Detailed Notice to be published on their respective firm websites.

- 16 -

(e)      No later than thirty-five (35) days before the Fairness Hearing, Co-Lead Counsel shall cause the Publication Notice to be published two (2) times in all editions of *The New York Times*, *The Wall Street Journal*, *USA Today*, and *Business Insurance*.  Co-Lead counsel shall also cause the Publication Notice to be published once in  *RM Magazine*.

(f)      The Parties reasonably believe that the notice procedures described in this Paragraph 10 satisfy all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause thereof), the Rules of the Court and any other applicable law.  Upon the Court's approval, such notice procedures shall be implemented.

11.      **Settling Defendants' Communications With Settlement Class**.   Co-Lead Counsel acknowledge and agree that the Settling Defendants have the right to communicate orally and/or in writing with Settlement Class Members, *provided* that, if any of the Settlement Class Members raises a question about the terms of this Settlement Agreement, the Settling Defendants shall refer such Member(s) to the toll-free number or website established by the Claims Administrator.

12.      **Public Announcements Concerning the Settlement**.   Plaintiffs shall make no public announcement concerning the Settlement without the prior agreement of the Settling Defendants.

13.      **Requests For Exclusion From the Settlement Class**.

(a)      Any of the Settlement Class Members desiring to be excluded from the Settlement Class must deliver by hand or send by first-class mail a written request for exclusion

- 17 -

(to the attention of the Clerk of the Court, Co-Lead Counsel and respective counsel for the Settling Defendants at the respective addresses provided in the Detailed Notice), delivered or postmarked no later than fifteen (15) days before the Fairness Hearing, or as the Court may otherwise direct.  At or before the Fairness Hearing, Co-Lead Counsel shall provide the Court with a list of the persons and entities who have properly requested exclusion from the Settlement Class (the **"Opt-Outs"**).

(b)     Requests to be excluded from the Settlement Class shall include the following information: (i) the Opt-Outs' respective names, addresses and telephone numbers and (ii) information respecting the Opt-Outs' respective purchases of insurance that qualify them as Settlement Class Members (including the identity of the insurer that issued each such insurance policy; the policy number of each such policy; the premium charged for each such policy; and the effective date and expiration date of each such policy).

(c)     Each of the Settlement Class Members that does not file a timely written request for exclusion as provided in this Paragraph 13 shall be bound by all of the terms of this Settlement Agreement, including the Release defined in Paragraph 15, below, and by all proceedings, Orders and Judgments in this Lawsuit, even if any of the Settlement Class Members has pending, or subsequently initiates, litigation, arbitration or any other Lawsuit against any or all of the Settling Defendants or the Releasees defined in Paragraph 15, below, relating to the claims and matters released pursuant to this Settlement Agreement.

14.     <u>Objections to the Settlement</u>.

(a)     Any of the Settlement Class Members that wishes to object to the fairness, reasonableness or adequacy of the Settlement, the Plan of Allocation, any term(s) of this

- 18 -

Settlement Agreement or to the proposed Attorneys' Fees & Expenses Award (the **"Objector"**) must serve on Co-Lead Counsel and respective counsel for the Settling Defendants (as identified in the Postcard Notice, the Detailed Notice or the Publication Notice) and file with the Court a statement of its objection; *provided* that the Objector's statement of objection must be received by Co-Lead Counsel, respective counsel for the Settling Defendants and the Court no later than fifteen (15) days before the Fairness Hearing or as the Court may otherwise direct.

(b)     The Objector's statement of objection shall provide evidence of the Objector's membership in the Settlement Class and shall state the specific reason(s), if any, for each such objection, including any legal support the Objector wishes to bring to the Court's attention and any evidence that the Objector wishes to introduce in support of such objection.

(c)     Any Objector may file an objection on its own or through an attorney hired at its own expense.  If an Objector hires an attorney to represent it in connection with filing an objection to the Settlement, the attorney must serve on Co-Lead Counsel and respective counsel for the Settling Defendants and file with the Court a notice of appearance; *provided* that any such notice of appearance must be received by Co-Lead Counsel, respective counsel for the Settling Defendants and the Court no later than fifteen (15) days before the Fairness Hearing, or as the Court may otherwise direct.

(d)     Only an Objector that files and serves written objections pursuant to this Paragraph 14 may appear at the Fairness Hearing, either in person or through an attorney hired at the Objector's own expense, to object to the fairness, reasonableness or adequacy of (i) the Settlement, (ii) the Plan of Allocation, or (iii) any term of this Settlement Agreement.  If an Objector and/or its attorney intends to appear at the Fairness Hearing, the Objector must serve on Co-Lead Counsel and respective counsel for the Settling Defendants and file with the Court a

- 19 -

notice of intention to appear; *provided* that any such notice of intention to appear must be received by Co-Lead Counsel, respective counsel for the Settling Defendants and the Court no later than fifteen (15) days before the Fairness Hearing, or as the Court may otherwise direct.

      (e)      Any Objector that fails to comply with any of the provisions of this Paragraph 14 shall waive and forfeit any and all rights that it may otherwise have to appear separately at the Fairness Hearing and/or to object to the Settlement, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, Orders and Judgments in this Lawsuit.

      **15.**      **Release and Waiver**.

      (a)      Upon entry by the Court of its final Order approving the Settlement (the **"Final Approval Order"**), a proposed form of which is annexed hereto as **Exhibit 8**, and the accompanying Judgment Regarding Settlement (the **"Judgment"**), a proposed form of which is annexed hereto as **Exhibit 9**, and subject to Paragraph 19, below, all Settlement Class Members, on behalf of themselves, their respective past, present, direct and indirect parents, subsidiaries, affiliates and the respective directors, officers, principals, employees, agents, attorneys, executors, administrators, beneficiaries, predecessors, successors, heirs and assigns of each of the foregoing (collectively, the **"Releasors"**), for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law, the Final Approval Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged against the Settling Defendants, their respective past, present, direct and indirect parents, subsidiaries, affiliates and the respective directors, officers, principals, employees, agents, attorneys, executors, administrators, beneficiaries, predecessors, successors, heirs and assigns of each of the foregoing (collectively, the **"Releasees"**), all known

- 20 -

or unknown claims, actions, causes of action, lawsuits, proceedings, adjustments, executions,

offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, bonds,

bills, specialties, variances, covenants, damages, demands (whether written or oral), agreements,

promises, liabilities, controversies, costs, expenses, attorneys' fees and losses, whether in law,

admiralty or equity, and whether arising under or based upon any federal statute or federal

common law, any state statute or state common law, any foreign statute or foreign common law,

any rule, regulation or otherwise, foreseen or unforeseen, matured or not matured, accrued or not

accrued, existing in the past, existing presently or arising in the future (the **"Claims"**) arising out

of, based upon or relating in any way to the subject matters alleged in the Complaint, which have

or could have been asserted in the Lawsuit or in any other forum by any of the Settlement Class

Members against any one or more of Releasees, including, but not limited to, Claims relating to

broker compensation, commissions, contingent commissions, alleged overrides, alleged steering

and alleged bid-rigging arising from or related to the purchase or renewal of any insurance policy

issued by any insurer, including insurers not named as defendants in the Complaint (the

**"Released Claims"**).  The Final Approval Order and the Judgment shall bar and enjoin all

Releasors from prosecuting or continuing to prosecute any and all Released Claims.

      (b)    The Released Claims shall not include Claims, if any, asserted by any of

the Settlement Class Members to enforce the terms of coverage contained in any insurance

policy issued by a Settling Insurer.

      (c)    Upon entry by the Court of the Final Approval Order, each of the

Releasors shall have and be deemed to have expressly waived and relinquished, to the fullest

extent permitted by law, any and all provisions, rights and benefits conferred by Section 1542 of

- 21 -

the California Civil Code or any federal, state, or foreign law, rule, regulation or common law

doctrine that is similar, comparable, equivalent, or identical to, or which has the effect of,

Section 1542 of the California Civil Code, which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR."

(d)     Nothing in the Final Approval Order shall bar any Claim by the Parties to

enforce the terms of this Settlement Agreement or the Final Approval Order.

(e)     The releases and waivers contained in this Paragraph 15 were separately

bargained for and are material terms of this Settlement Agreement.

(f)     All Releasees who are not Parties to this Settlement Agreement are

intended third-party beneficiaries that are entitled to enforce the terms of the Release set forth in

this Paragraph 15.

**16.     Dismissal With Prejudice of Lawsuit**.   Within five (5) days of the Final

Approval Order becoming final (i.e., the time for appeal has expired with no appeal being taken

or, if an appeal has been taken, the appeal has been resolved with no reversal or material

variation of the Final Approval Order), Plaintiffs shall dismiss the Lawsuit with prejudice in its

entirety against each of the Settling Defendants and the Judgment dismissing the Lawsuit with

prejudice against each of the Settling Defendants shall be entered by the Court.

**17.     Monetary Floor For Prospective Settlements**.   Plaintiffs may not settle

with any one or more of the insurer defendants ACE, Chubb and/or American Re/Munich  prior

to July 18, 2011, unless that insurer defendant agrees to make a settlement payment of not less than six-million and seven-hundred and fifty thousand dollars ($6,750,000).  The provisions of Paragraph 17 become null and void and are of no further effect as to insurer defendants ACE, Chubb and/or American Re/Munich respectively, if the Court grants the motion to dismiss as to said defendant.

**18.**      **Complete Settlement Agreement; Modification Thereof.**

(a)      This Settlement Agreement (including all exhibits annexed hereto) embodies the full and complete understanding of the Parties concerning the matters raised herein and, upon execution, supersedes and renders null and void any and all prior understandings and agreements (written or oral) among or between them concerning said matters (including the M.O.U. and all prior drafts of this Settlement Agreement), except as to the individual shares to be paid by the respective Settling Defendants pursuant to Paragraph 3, above.  Subject to Paragraph 19(d), below, any modification or amendment of this Settlement Agreement shall be deemed null and void unless made in a single writing signed by an authorized representative of each of the Parties.

(b)      In entering into this Settlement Agreement, none of the Parties has relied upon any representation or warranty not set forth expressly herein.

(c)      Each provision of this Settlement Agreement (and each of the exhibits annexed hereto) has been drafted collectively by the Parties.

19.    **Termination of This Settlement Agreement**.

(a)    If purchasers representing **[REDACTED]** percent (**[REDACTED]**%) of the total aggregate excess casualty premium written by the AIG, AXIS, Fireman's Fund, Liberty Mutual, Travelers and XL defendants through the Marsh defendants named in the Lawsuit (and any of the Marsh defendants' subsidiaries and affiliates) during the period from January 1, 1998 through December 31, 2004, inclusive, opt out of the Settlement, each of the AIG, AXIS, Fireman's Fund, Liberty Mutual, Travelers and XL defendants shall have the option to terminate this Settlement Agreement as to itself and withdraw from the Settlement. If **[REDACTED]** percent (**[REDACTED]**%) of the entire Settlement Class opts out of the Settlement, each of the Settling Defendants shall have the option to terminate this Settlement Agreement as to itself and withdraw from the Settlement. In either event, the Settling Defendants shall be entitled to the immediate return of all amounts paid by them pursuant to Paragraph 3, above, less any payments made from the Settlement Escrow Account to cover Administrative Expenses. Any Settling Defendant that seeks to invoke the provisions of this Paragraph 19(a) must advise the other Settling Defendants and Plaintiffs of its decision to terminate this Settlement Agreement and withdraw from the Settlement no later than five (5) days prior to the Fairness Hearing. The right of the Settling Defendants to terminate this Settlement Agreement and withdraw from the Settlement pursuant to this Paragraph 19(a) is a material term of this Settlement Agreement. The Parties agree to keep confidential the percentages set forth in this Paragraph 19(a) and to exclude said percentages from any documents filed with the Court, unless filed under seal.

(b)    Each Party shall have the right, in its sole discretion, to terminate this Settlement Agreement and withdraw from the Settlement as to that Party if the Court or any appellate court rejects, modifies or denies approval of any portion of the Settlement that any of

- 24 -

the Parties reasonably and in good faith determines is material.  The option to terminate this Settlement Agreement and withdraw from the Settlement pursuant to this Paragraph 19(b) must be exercised no later than five (5) days after any of the Parties desiring to do so receives notice of said ruling by the Court or appellate court.

(c)      If this Settlement Agreement is terminated pursuant to this Paragraph 19, (i) the Settlement Agreement shall be null and void and shall have no force or effect, and no Party shall be bound by any of its terms, except for the terms of this Paragraph 19 and the terms of Paragraphs 12, 21, 24 and 25,  (ii) each Party expressly reserves all defenses, arguments and motions as to all Claims that have been or might later be asserted in the Lawsuit, including, but not limited to, all arguments that a plaintiff class may not be properly certified in the Lawsuit, and (iii) the Settling Defendants shall be entitled to the immediate return of all amounts paid by them pursuant to Paragraph 3, above, less any payments made from the Settlement Escrow Account to cover Administrative Expenses.

(d)      If fewer than all of the Settling Defendants terminate this Settlement Agreement and withdraw from the Settlement in accordance with Paragraphs 19(a) or 19(b), above, Co-Lead Counsel may elect, at their discretion, to seek Court approval of a modified Settlement, which shall be reflected in a modified Settlement Agreement to be executed by Co-Lead Counsel and each of the Settling Defendants that has not exercised the right to terminate this Settlement Agreement and withdraw from the Settlement.

**20.**     **Governing Law, Agreed Forum & Continuing Jurisdiction.**

(a)     This Settlement Agreement (and each of the exhibits annexed hereto) shall be construed in accordance with the laws of the State of New Jersey without regard to any applicable conflict-of-laws rules or principles.

(b)     The Court retains continuing and exclusive jurisdiction over this Settlement Agreement, the Settlement, the Parties, all Settlement Class Members and all Opt-Outs for the purpose of adjudicating all issues relating to this Settlement Agreement.

(c)     The Parties agree that any lawsuit by any of them to enforce the terms of this Agreement shall be brought only in the Court.

(d)     Nothing in this Settlement Agreement shall constitute a basis, in whole or in part, for the Court's exercise of personal jurisdiction over (i) any of the Settling Defendants (including their respective past, present, direct and indirect parents, subsidiaries and affiliates) whose corporate headquarters, place of incorporation/organization or principal place of business is located outside the United States or (ii) any of the Settling Defendants over which the Court does not otherwise have personal jurisdiction.

**21.**     **No Admission of Wrongdoing.**   Nothing in this Settlement Agreement and/or the exhibits annexed hereto is intended to be or shall be construed to be an admission by any of the Settling Defendants of any wrongdoing or liability whatsoever.

**22.**     **Notice to the Parties.**   Whenever this Settlement Agreement requires or contemplates that one or more of the Parties shall or may give notice to one or more of the other Parties, notice shall be provided by electronic mail, followed by overnight delivery service

- 26 -

(excluding Saturdays and Sundays), using the appropriate contact information set forth on the signature pages below.  Notice shall be deemed effective upon its receipt via said overnight delivery.

**23.   <u>Authorized Signatories</u>.**

(a)   Co-Lead Counsel represent and warrant that, consistent with the Court's May 25, 2005 and July 17, 2006 Orders, they are expressly authorized to enter into this Settlement Agreement on behalf of Plaintiffs, other Class Counsel and any other attorneys who have represented or who now represent Plaintiffs in the Lawsuit and/or with respect to the Released Claims.

(b)   Plaintiffs represent and warrant that (i) they have agreed to serve as representatives of the Settlement Class; (ii) they are willing, able and ready to perform all of the duties and obligations as representatives of the Settlement Class; (iii) they have read the pleadings in this Lawsuit, including the Complaint, or have had the contents of such pleadings described to them; (iv) they have been kept apprised of the progress of the Lawsuit and the settlement negotiations among the Parties, and have either read this Settlement Agreement, including the exhibits annexed hereto, or have received a description of it from Co-Lead Counsel, and they have agreed to its terms; (v) they have consulted with Class Counsel about the Lawsuit and this Settlement Agreement; (vi) they have authorized Co-Lead Counsel to execute this Settlement Agreement on their behalf; and (vii) they will remain and serve as representatives of the Settlement Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that said Plaintiffs cannot represent the Settlement Class.

- 27 -

(c)      Respective counsel for the Settling Defendants listed below represent and warrant that they are authorized to enter into this Settlement Agreement on behalf of their respective clients.

**24.      Inadmissibility of the Settlement Agreement.**   This Settlement Agreement shall not be admissible in any judicial, regulatory, administrative, or other proceeding or cause of action whatsoever for any purpose other than to seek approval of the Settlement or to enforce the terms hereof.  Neither the act of entering into or carrying out this Settlement Agreement nor any statements, documents, negotiations or proceedings related thereto shall be used, offered or received into evidence in any action or proceeding in any court, administrative agency or other tribunal for any purpose whatsoever other than to seek approval of the Settlement or to enforce the terms hereof.  All communications (whether oral written) between and/or among the Parties, their counsel and/or their respective representatives relating to, concerning or in connection with this Settlement Agreement or the matters covered hereby shall be governed and protected in accordance with Federal Rule of Evidence 408 and/or similar state evidentiary rules and common law, to the fullest extent permitted by law.

**25.      The M.O.U. Is Rendered Null and Void.**   Upon execution by all of the Parties, this Settlement Agreement shall supersede the M.O.U. and render the M.O.U. null and void in its entirety.

**26.      Signature in Counterparts & Electronically.**   This Settlement Agreement may be signed in counterparts, each of which shall constitute an original.  The Parties' signatures on this Settlement Agreement in electronically-transmitted form shall fully bind the Parties to the terms of this Settlement Agreement.

- 28 -

27.    **Calculation of Time Periods**.   All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.   In computing any period of time prescribed or allowed by this Settlement Agreement or by Order of the Court, the day of the act or event from which the designated period of time begins to run shall not be included.   The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period shall run until the end of the next day that is not one of the aforementioned days.   As used herein, legal holidays are those identified in Fed. R. Civ. P. 6(a)(6).   The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extension of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

28.    **Singular and Plural Forms of Defined Terms**.   Each defined term herein shall include both its singular form and its plural form.

29.    **Implementation of This Settlement Agreement**.   The Parties undertake to implement the terms of this Settlement Agreement in good faith and to act in good faith in resolving any disputes that may arise in connection with its implementation.

**Dated this 20th day of May, 2011.**

CAFFERTY FAUCHER LLP

Bryan L. Clobes (BClobes@caffertyfaucher.com)
Ellen Meriwether (EMeriwether@caffertyfaucher.com)
1717 Arch Street, Ste. 3610
Philadelphia, PA 19103
(215) 864-2800

- 29 -

– and –

WHATLEY, DRAKE & KALLAS, LLC

*Edith M. Kallas*

Edith M. Kallas (ekallas@wdklaw.com)
Joe R. Whatley, Jr. (jwhatley@wdklaw.com)
1540 Broadway, 37th Floor
New York, NY 10036
(212) 447-7070

Co-Lead Counsel for Plaintiffs

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Daniel J. Leffell (dleffell@paulweiss.com)
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
-and-

Kenneth A. Gallo (kgallo@paulweiss.com)
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Attorneys for American International Group, Inc.,
Chartis Specialty Insurance Company f/k/a American
International Specialty Lines Insurance Company,
Lexington Insurance Company, Chartis Property
Casualty Company f/k/a Birmingham Fire Insurance
Company of Pennsylvania, American Home Assurance
Company, National Union Fire Insurance Company of
Pittsburgh, Pa., National Union Fire Insurance
Company of Louisiana, 21st Century North America
Insurance Company f/k/a American International
Insurance Company, The Insurance Company of the
State of Pennsylvania, AIU Insurance Company,
Commerce and Industry Insurance Company, New
Hampshire Insurance Company, The Hartford Steam

- 30 -

- and –

WHATLEY, DRAKE & KALLAS,L LC

_____
Edith M. Kallas (ekallas@wdklaw.com)
Joe R. Whatley, Jr. (jwhatley@wdklaw.com)
1540 Broadway, 37th Floor
New York, NY 10036
(212) 447-7070

Co-Lead Counsel for Plaintiffs

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

_____
Daniel J. Leffell (dlefell@paulweiss.com)
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
-and-

Kenneth A. Gallo (kgallo@paulweiss.com)
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Attorneys for American International Group,I nc.,
Chartis Specialty Insurance Company f/k/a American
International Specialty Lines Insurance Company,
Lexington Insurance Company, Chartis Property
Casualty Company f/k/a Birmingham Fire Insurance
Company of Pennsylvania, American Home Assurance
Company, National Union Fire Insurance Company of
Pittsburgh, Pa., National Union Fire Insurance
Company of Louisiana, 21st Century North America
Insurance Company f/k/a American International
Insurance Company, The Insurance Company of the
State of Pennsylvania, AIU Insurance Company,
Commerce and Industry Insurance Company, New
Hampshire Insurance Company, The Hartford Steam

- 30 -

Boiler Inspection and Insurance Company, Illinois
National Insurance Co., Chartis Excess Limited f/k/a
Starr Excess Liability Insurance Company, Ltd., and
AIG Life Holdings (US), Inc. f/k/a American General
Corporation

KIRKLAND & ELLIS LLP

Daniel E. Laytin (dlaytin@kirkland.com)
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000

Attorneys for Defendants Aon Corporation;
Aon Broker Services, Inc., Aon Risk Services
Companies, Inc., Aon Risk Services Inc. U.S.,
Aon Risk Services, Inc. of Maryland, Aon Risk
Services, Inc. of Louisiana, Aon Risk Services
of Texas, Inc., Aon Risk Services, Inc. of
Michigan, Aon Group, Inc., Aon Services
Group, Inc., and Affinity Insurance Services, Inc.


DECHERT LLP


Michael L. Weiner (michael.weiner@dechert.com)
1095 Avenue of the Americas
New York, New York 10036-6797
(212) 698-3500

Attorneys for Defendants AXIS Capital Holdings Limited,
AXIS Reinsurance Company, AXIS Specialty Insurance Co.
and AXIS Surplus Insurance Co.


WILDMAN, HARROLD, ALLEN & DIXON LLP


Michael L. McCluggage (McCluggage@wildman.com)
Beth L. Fancsali (Fancsali@wildman.com)
225 West Wacker Drive, Suite 2800
Chicago, Illinois 60606
(312) 201-2000

Boiler Inspection and Insurance Company, Illinois
National Insurance Co., Chartis Excess Limited f/k/a
Starr Excess Liability Insurance Company, Ltd., and
AIG Life Holdings (US), Inc. f/k/a American General
Corporation


KIRKLAND & ELLIS LLP


Daniel E. Laytin (dlaytin@kirkland.com)
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000

Attorneys for Defendants Aon Corporation;
Aon Broker Services, Inc., Aon Risk Services
Companies, Inc., Aon Risk Services Inc. U.S.,
Aon Risk Services, Inc. of Maryland,A on Risk
Services, Inc. of Louisiana, Aon Risk Services
of Texas,I nc., Aon Risk Services, Inc. of
Michigan, Aon Group, Inc., Aon Services
Group, Inc., and Affinity Insurance Services, Inc.


DECHERT LLP

Michael L. Weiner (michael.weiner@dechert.com)
1095 Avenue of the Americas
New York, New York 10036-6797
(212) 698-3500

Attorneys for Defendants AXIS Capital Holdings Limited,
AXIS Reinsurance Company, AXIS Specialty Insurance Co.
and AXIS Surplus Insurance Co.


WILDMAN, HARROLD, ALLEN & DIXON LLP


Michael L. McCluggage (McCluggage@wildman.com)
Beth L. Fancsali (Fancsali@wildman.com)
225 West Wacker Drive, Suite 2800
Chicago, Illinois 60606
(312) 201-2000

- 31 -

Boiler Inspection and Insurance Company, Illinois
National Insurance Co., Chartis Excess Limited f/k/a
Starr Excess Liability Insurance Company, Ltd., and
AIG Life Holdings (US), Inc. f/k/a American General
Corporation


KIRKLAND & ELLIS LLP


Daniel E. Laytin (dlaytin@kirkland.com)
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000


Attorneys for Defendants Aon Corporation;
Aon Broker Services, Inc., Aon Risk Services
Companies, Inc., Aon Risk Services Inc. U.S.,
Aon Risk Services, Inc. of Maryland, Aon Risk
Services, Inc. of Louisiana, Aon Risk Services
of Texas, Inc., Aon Risk Services, Inc. of
Michigan, Aon Group, Inc., Aon Services
Group, Inc., and Affinity Insurance Services, Inc.


DECHERT LLP


Michael L. Weiner (michael.weiner@dechert.com)
1095 Avenue of the Americas
New York, New York 10036-6797
(212) 698-3500


Attorneys for Defendants AXIS Capital Holdings Limited,
AXIS Reinsurance Company, AXIS Specialty Insurance Co.
and AXIS Surplus Insurance Co.


WILDMAN, HARROLD, ALLEN & DIXON LLP


Michael L. McCluggage (McCluggage@wildman.com)
Beth L. Fancsali (Fancsali@wildman.com)
225 West Wacker Drive, Suite 2800
Chicago, Illinois 60606
(312) 201-2000

- 31 -

Attorneys for Defendants CNA Financial Corp., The
Continental Insurance Co., Continental Casualty Co.,
and American Casualty Co. of Reading, PA


LANDMAN CORSI BALLAINE & FORD P.C.

_____

Louis G. Corsi (lcorsi@lcbf.com)
Stephen Jacobs (sjacobs@lcbf.com)
120 Broadway - 27th Floor
New York, New York 10271
(212) 238-4800

Attorneys for Defendants Crum & Forster Holdings
Corp., United States Fire Insurance Company,
The North River Insurance Company, Crum and
Forster Insurance Company, Crum & Forster
Indemnity Company, and Crum & Forster Specialty
Insurance Company



MCDERMOTT WILL & EMERY LLP


_____

Lazar P. Raynal (lraynal@mwe.com)
Amy G. Doehring (adoehring@mwe.com)
227 West Monroe Street
Chicago, Illinois 60606-5086
(312) 372-2000

Attorneys for Fireman's Fund Insurance Company,
Chicago Insurance Co. and National Surety Corp.

- 32 -

Attorneys for Defendants CNA Financial Corp., The
Continental Insurance Co., Continental Casualty Co.,
and American Casualty Co. of Reading, PA

LANDMAN CORSI BALLAINE & FORD P.C.

_____

Louis G. Corsi (lcorsi@lcbf.com)
Stephen Jacobs (sjacobs@lcbf.com)
120 Broadway - 27th Floor
New York, New York 10271
(212) 238-4800

Attorneys for Defendants Crum & Forster Holdings
Corp., United States Fire Insurance Company,
The North River Insurance Company, Crum and
Forster Insurance Company, Crum & Forster
Indemnity Company, and Crum & Forster Specialty
Insurance Company

MCDERMOTT WILL & EMERY LLP

_____

Lazar P. Raynal (lraynal@mwe.com)
Amy G. Doehring (adoehring@mwe.com)
227 West Monroe Street
Chicago, Illinois 60606-5086
(312) 372-2000

Attorneys for Fireman's Fund Insurance Company,
Chicago Insurance Co. and National Surety Corp.

- 32 -

CAHILL GORDON & REINDEL LLP

Robert A. Alessi (ralessi@cahill.com)
Amy D. Lamberti (alamberti@cahill.com)
Eighty Pine Street
New York, New York 10005-1702
(212) 701-3000

Attorneys for Defendants Greenwich
Insurance Company, Indian Harbor
Insurance Company and XL Capital Ltd


WILMER CUTLER PICKERING HALE AND
    DORR LLP


Paul A. Engelmayer (Paul.Engelmayer@wilmerhale.com)
399 Park Avenue
New York, NY 10022
(212) 230-8800
                        -and-

William J. Kolasky (William.Kolasky@wilmerhale.com)
1875 Pennsylvania Ave., NW
Washington, DC 20006
Tel: (202) 663-6000

Attorneys for Defendants Hartford Financial
Services Group, Inc., Hartford Fire Insurance Co.,
Twin City Fire Insurance Co., Pacific Insurance Co.,
Ltd., Nutmeg Insurance Co., The Hartford Fidelity &
Bonding Co.


KORNSTEIN VEISZ WEXLER & POLLARD, LLP


Kevin J. Fee (kfee@kvwmail.com)
757 Third Avenue, 18th Floor
New York, New York 10017
(212) 418-8600
                        -and-

- 33 -

CAHILL GORDON & REINDEL LLP

_____

Robert A. Alessi (ralessi@cahill.com)
Amy D. Lamberti (alamberti@cahill.com)
Eighty Pine Street
New York, New York 10005-1702
(212) 701-3000

Attorneys for Defendants Greenwich
Insurance Company, Indian Harbor
Insurance Company and XL Capital Ltd


WILMER CUTLER PICKERING HALE AND
    DORR LLP
_____

Paul A. Engelmayer (Paul.Engelmayer@wilmerhale.com)
399 Park Avenue
New York, NY 10022
(212) 230-8800

                    -and-

William J. Kolasky (William.Kolasky@wilmerhale.com)
1875 Pennsylvania Ave., NW
Washington, DC 20006
Tel: (202) 663-6000

Attorneys for Defendants Hartford Financial
Services Group, Inc., Hartford Fire Insurance Co.,
Twin City Fire Insurance Co., Pacific Insurance Co.,
Ltd., Nutmeg Insurance Co., The Hartford Fidelity &
Bonding Co.


KORNSTEIN VEISZ WEXLER & POLLARD, LLP

_____

Kevin J. Fee (kfee@kvwmail.com)
757 Third Avenue, 18th Floor
New York, New York 10017
(212) 418-8600
                    -and-

CAHILL GORDON & REINDEL LLP

Robert A. Alessi (ralessi@cahill.com)
Amy D. Lamberti (alamberti@cahill.com)
Eighty Pine Street
New York, New York 10005-1702
(212) 701-3000

Attorneys for Defendants Greenwich
Insurance Company, Indian Harbor
Insurance Company and XL Capital Ltd

WILMER CUTLER PICKERING HALE AND
  DORR LLP

Paul A. Engelmayer (Paul.Engelmayer@wilmerhale.com)
399 Park Avenue
New York, NY 10022
(212) 230-8800

                              -and-

William J. Kolasky (William.Kolasky@wilmerhale.com)
1875 Pennsylvania Ave., NW
Washington, DC 20006
Tel: (202) 663-6000

Attorneys for Defendants Hartford Financial
Services Group, Inc., Hartford Fire Insurance Co.,
Twin City Fire Insurance Co., Pacific Insurance Co.,
Ltd., Nutmeg Insurance Co., The Hartford Fidelity &
Bonding Co.

KORNSTEIN VEISZ WEXLER & POLLARD, LLP

Kevin J. Fee (kfee@kvwmail.com)
757 Third Avenue, 18th Floor
New York, New York 10017
(212) 418-8600

                              -and-

- 33 -

GIBSON DUNN & CRUTCHER LLP

*Brian Robison*

Brian E. Robison (brobison@gibsondunn.com)
2100 McKinney Avenue, Suite 1100
Dallas, Texas 74201-6912
(214) 698-3100


Attorneys for Defendants Liberty Mutual Holding
Company Inc., Liberty Mutual Insurance Co.,
Liberty Mutual Fire Insurance Co., Employers
Insurance Company of Wausau, Wausau Underwriters
Insurance Company, Wausau General Insurance
Company, Wausau Insurance Companies, Employers
Insurance of Wausau, and Wausau Business Insurance
Company


SIMPSON THACHER & BARTLETT LLP


Michael J. Garvey (mgarvey@stblaw.com)
Patrick Shilling (pshilling@stblaw.com)
425 Lexington Avenue
New York, New York 10017-3954
(212) 455-2000


Attorneys for Defendants The Travelers Companies,
Inc., St. Paul Fire and Marine Insurance Company,
Travelers Property Casualty Corp., Gulf Insurance
Company, St. Paul Mercury Insurance Company,
Travelers Casualty and Surety Company of America,
The Travelers Indemnity Company, and Athena
Assurance Company

- 34 -

GIBSON DUNN & CRUTCHER LLP

---

Brian E. Robison (brobison@gibsondunn.com)
2100 McKinney Avenue, Suite 1100
Dallas, Texas 74201-6912
(214) 698-3100


Attorneys for Defendants Liberty Mutual Holding
Company Inc., Liberty Mutual Insurance Co.,
Liberty Mutual Fire Insurance Co., Employers
Insurance Company of Wausau, Wausau Underwriters
Insurance Company, Wausau General Insurance
Company, Wausau Insurance Companies, Employers
Insurance of Wausau, and Wausau Business Insurance
Company


SIMPSON THACHER & BARTLETT LLP

---

Michael J. Garvey (mgarvey@stblaw.com)
Patrick Shilling (pshilling@stblaw.com)
425 Lexington Avenue
New York, New York 10017-3954
(212) 455-2000


Attorneys for Defendants The Travelers Companies,
Inc., St. Paul Fire and Marine Insurance Company,
Travelers Property Casualty Corp., Gulf Insurance
Company, St. Paul Mercury Insurance Company,
Travelers Casualty and Surety Company of America,
The Travelers Indemnity Company, and Athena
Assurance Company

- 34 -

SULLIVAN & CROMWELL LLP

Richard C. Pepperman, II (peppermanr@sullcrom.com)
125 Broad Street
New York, New York 10004-2498
(212) 558-4000

Attorneys for Defendants Willis Group
Holdings Limited, Willis Group Limited,
Willis North America, Inc., Willis of New York,
Inc., Willis of Michigan, Inc., and Hilb, Rogal
& Hobbs

[EXHIBIT LIST & EXHIBITS FOLLOW]

- 35 -

## EXHIBITS TO SETTLEMENT AGREEMENT

| | | |
|---|---|---|
| Exhibit 1 | — | Proposed Order Preliminarily Approving Proposed Settlement and Preliminarily Certifying a Class For Settlement Purposes (the Preliminary Approval Order). |
| Exhibit 2 | — | Form of Escrow Agreement. |
| Exhibit 3 | — | Long Form Postcard Notice. |
| Exhibit 4 | — | Short Form Postcard Notice |
| Exhibit 5 | — | Notice of Proposed Class Action Settlement, Settlement Hearing and Right to Appear (the Detailed Notice). |
| Exhibit 6 | — | Court-Ordered Legal Notice (the Publication Notice). |
| Exhibit 7 | — | Form of Plan of Allocation. |
| Exhibit 8 | — | Proposed Final Order Approving Settlement (the Final Approval Order). |
| Exhibit 9 | — | Proposed Judgment Regarding Settlement. |