# Robbins Geller Rudman & Dowd LLP

| Atlanta | Melville | San Diego |
| Boca Raton | New York | San Francisco |
| Chicago | Philadelphia | Washington, DC |

Carmen A. Medici
cmedici@rgrdlaw.com

April 26, 2013

<u>VIA ECF</u>

The Honorable Magistrate Judge Joseph A. Dickson
United States District Court
   for the District of New Jersey
Martin Luther King, Jr. Building
   & U.S. Courthouse
50 Walnut Street, Room MLK 2D
Newark, NJ 07101

    Re:    *Lincoln Adventures, LLC v. Those Certain Underwriters at Lloyd's London*,
        No. 2:08-cv-00235-CCC-JAD (Tag-Along in MDL No. 1663)

Dear Judge Dickson:

    This joint submission sets forth the respective positions of Plaintiffs in *Lincoln Adventures, LLC v. Those Certain Underwriters at Lloyd's, London*, and Defendants Syndicates 33, 102, 382, 435, 510, 570, 609, 623, 727, 958, 1003, 1084, 1096, 1183, 1245, 1886, 2001, 2003, 2020, 2488, 2623, 2791, and 2987 (the "Defendants") with respect to Plaintiffs' motion to compel further response to Plaintiffs' discovery requests.

## I.    Plaintiffs' Position

### A.    Introduction

    Defendants refuse to provide core discovery to Plaintiffs and force them to again seek the intervention of the Court for the production of basic discovery materials. *See* Dkt. No. 2201 (ordering Defendants to respond to discovery on a class-wide rather than individual basis). Though Defendants have been on notice for many months of Plaintiffs' discovery requests and the scope of the well-pleaded allegations contained in the Complaint,[1] Defendants refuse to produce obviously relevant documents and data and have hidden-through careful and misleading language and partial productions-the fact that they were not producing this information. Only now have Plaintiffs discovered after

_____

[1]    Revised First Amended Class Action Complaint ("Complaint"), Dkt. No. 2312.

655 West Broadway    Suite 1900    San Diego, CA 92101    Tel 619 231 1058    Fax 619 231 7423    www.rgrdlaw.com

Robbins Geller
Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 2

reviewing Defendants' productions that what they thought was being produced by Defendants, was in fact not.

At its simplest, this case is about the Defendants agreeing amongst themselves to pay kickbacks – undisclosed to U.S. insurance purchasers – to brokers in exchange for guaranteed streams of lucrative business. As the Complaint details, these payments have a variety of names and forms, but the important feature they all share is that they are not in exchange for real services of value and are paid in addition to standard brokerage or commissions. Throughout the case, Plaintiffs have consistently defined these agreements as "contingent commission agreements" or "compensation agreements," including among them "coverholder agreements," "binding authorities," and lineslips which provide for the payment of commissions contingent on certain volume or profit goals. These are all terms that have been understood and used throughout the litigation by all the parties.

Unfortunately now, Defendants have finally revealed to Plaintiffs in the meet and confer process about the missing documents and data that they unilaterally chose not to produce – documents and data concerning certain types of agreements that are clearly alleged in the Complaint and within the scope of Plaintiffs' discovery requests and the definitions contained therein. Defendants justify their self-serving strategy by arguing that Defendants interpret these agreements as falling outside of Plaintiffs' case. As a result, Defendants have produced patently incomplete discovery responses. Plaintiffs' definition of the types of agreements at issue in this case is straightforward and clearly set forth in the Complaint. Defendants' willful and disingenuous redefinition of these terms is simply a last-ditch effort to prevent Plaintiffs from proving their case by not producing the fundamental discovery needed to establish their claims.

Plaintiffs' motion should be granted for three separate and independent reasons. *First*, the documents and data that Defendants seek to shield from discovery is plainly relevant and has been at issue in both the original and amended complaints, multiple discovery requests, deposition questioning, and the subject of multiple meet and confers. Defendants' refusal to provide this information violates Black letter law regarding the permissible scope of discovery. *Second*, Defendants have relied on the agreements being a part of the case in making arguments in their submissions to the Court, including in their motion to dismiss and its prior unsuccessful opposition to Plaintiffs' discovery motions. Defendants should not be permitted to use the purported lack of evidence as a result of their refusal to produce relevant documents as both a sword against Plaintiffs' claims and a shield to prevent Plaintiffs from establishing liability. *Third*, Defendants have already provided to Plaintiffs some, but not all, of this information. Defendants' self-selected partial production of these materials is an admission of the relevance of these documents and constitutes a waiver of objection to their production.

Through this letter submission, Plaintiffs respectfully ask the Court to order Defendants to provide the discovery that they should have provided in the first place. To effectuate their reasonable

835849_1

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 3

request, Plaintiffs respectfully ask the Court enter the Proposed Order (attached as Exhibit 1), which orders Defendants to meet and confer with Plaintiffs concerning search terms to run across the electronic and hard copy files for appropriate custodians to obtain the relevant documents and not exclude documents in their relevance review because of an artificially narrow definition of "contingent commissions." Plaintiffs also request that documents and data be produced reflecting contingent commission payments made pursuant to these agreements.

In large part due to Defendants' improper conduct in hiding relevant documents and data, Plaintiffs plan to request an extension of deadlines in the case in a separate submission to be filed in advance of the May 8, 2013 Status Conference.

**B.    Background**

On April 19, 2013, during a meet and confer with the counsel for 17 of the Defendants, Plaintiffs learned, for the first time, that Defendants had not provided information regarding certain types of agreements at the core of the Complaint.

In advance of the parties' meet and confer, Plaintiffs' experts reviewed the data Defendants produced. Based on that review, Plaintiffs suspected that not all data reflecting all payments made pursuant to contingent commission agreements were produced by Defendants. To this end, Plaintiffs requested that Defendants confirm that the data produced contained all information regarding contingent commission payments made (including those made pursuant to lineslips and binding authority agreements). During the meet and confer process, Defendants said that information relating to most contingent commissions were not relevant to Plaintiffs' claims and that they did not consider any "on slip" payments to be at issue in the case. They further explained that they **only** considered traditional MSAs and PSAs[2] with contingent commission clauses as the type of agreements at issue in the case.

Accordingly, Defendants admit that they have not produced all data or documents relating to agreements where payments were made pursuant to contingent commission agreements as defined in the Complaint. In particular, Defendants have not produced: (1) all lineslips and relevant documents and data concerning the lineslips, including documents and data relating to the bidding, negotiation and payments made pursuant to these agreements (as well as other documents and data otherwise responsive to Plaintiffs' discovery requests relating to lineslips); (2) all binding authority or coverholder agreements and relevant documents and data concerning these agreements, including documents and data relating to the bidding, negotiation and payments made pursuant to these agreements (as well as

---

[2]    Market Service Agreements and Placement Service Agreements, respectively.

## Robbins Geller
## Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 4

other documents and data otherwise responsive to Plaintiffs' discovery requests relating to binding authority or coverholder agreements); and (3) all agreements which contain a profit- or volume-based commission separate and in addition to standard brokerage or commissions, or agreements which contain a non-standard brokerage between multiple Syndicates (for example, a "profit commission"), including documents and data relating to the bidding, negotiation and payments made pursuant to these agreements. Defendants' withholding of these materials is improper and should be compelled by this Court to be produced by a date certain.

**C.      Argument**

Under Federal Rule of Civil Procedure 26(b), a court may compel discovery of any matter relevant to a party's claims, defenses, or the subject matter involved in the action, provided that the court finds good cause. Fed. R. Civ. P. 26(b). In determining good cause, this District interprets Rule 26(b) liberally as "creating a broad vista for discovery 'to encompass any matter that bears on or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Tele-Radio Sys., Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

**1.      Contingent Commission Agreements Are Plainly Fundamental to Plaintiffs' Claims**

First, a quick review of the Complaint shows that Plaintiffs challenge the anti-competitive and conspiratorial practices that cropped up amongst the Syndicates around the payment of contingent commissions by the Syndicates. The contingent commission documents and data at issue are not simply relevant in that they reasonably could lead to other matters that could bear on any issue in the case. Indeed, Plaintiffs allege that these documents will directly help to establish the anti-competitive and conspiratorial conduct alleged in the Complaint.

Further, in the Complaint, Plaintiffs define the "contingent commission" agreements that are relevant to the Complaint, as any type of brokerage that ***does*** "provide for the payment of contingent commissions," including:

Placement Service Agreements ("PSAs"), Marketing Service Agreements ("MSAs"), Carrier Service Agreements ("CSAs"), Preferred Market Agreements ("PMAs"), Insurer Services Brokerage Agreements ("ISBAs"), Portfolio Service Agreements, Market Service Lineslip Agreements, Contingent Income Agreements, Binding Authority Statements, Overrider Agreements, Overriders, Compensation for Services Agreements, Service Fee Agreements, Supplemental Compensation Agreements, Additional Revenue

# Robbins Geller
## Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 5

> Payments, Additional Remuneration Payments, Enhanced Remuneration Agreements, Compensation for Services to Underwriters, Lineslip Agreements, Market Service Lineslip Agreements, Facilitation Agreements or Lineslips . . . .

Complaint, ¶10. The Contingent commissions agreements or payments made pursuant to these "Compensation Agreements" that contain contingent commission clauses are further defined throughout the Complaint, including binding authority and lineslip agreements. *See id.*, ¶¶138-139 (detailing an example of a binding authority agreement and explaining why it is anticompetitive). Notably, every one of Plaintiffs' claims stand, thereby undercutting Defendants' ill-founded argument that some claims are not subject to discovery.

Further, the Complaint painstakingly describes how the binding authority agreements, coverholder agreements, lineslip agreements and other agreements with contingent commission clauses (which Defendants now contest the relevancy of) are at the heart of Plaintiffs' claims.[3] Put simply, Defendants cannot credibly argue that these agreements are not relevant.

Plaintiffs clearly include allegations concerning binding authorities and coverholder agreements in their Complaint, and the parties have put forward various arguments about these agreements in the motion to dismiss submissions. *See* Complaint, ¶70; Memorandum of Law in Support of Defendants' Motion to Dismiss Complaint dated December 4, 2012 ("Defs. Mem.") at 22-23; Dkt. No. 2158 at 15 (Defendants' Position in Plaintiffs' Motion to Compel). Defendants argue that these agreements are agency agreements, and thus there cannot be a contingent commission payment that occurs between a broker and a Syndicate. This is wrong for two reasons. First, coverholders frequently use brokers to sell their risks to U.S. insureds, thus, the agreement puts the Syndicate in privity with brokers. Second, despite the agency agreement, coverholders ***act*** as the broker as far as the U.S. insured is concerned, and do not disclose their relationships to the insured. For this reason, Plaintiffs and other entities such as the European Commission have found these types of agreements to create conflicts of interest for broker intermediaries.

Additionally, Defendants argue that binding authorities and coverholder agreements do not contain contingent commission clauses, arguing that "profit commissions" are not contingent commissions, despite being contingent on certain levels of profit. Leaving aside the fact that this is an

---

[3] Additionally, in Plaintiffs' September 2012 motion to compel discovery because of Defendants' improper objections, Plaintiffs argued that "[t]he existence of a coverholder agreement does not negate allegations that a contingent commission was paid by a Syndicate." Dkt. No. 2158 at 8. The idea that these agreements are central to the case is certainly not a new one. Footnote 19 proves that Defendants understood Plaintiffs' claims to include these agreements as early as 2007.

Robbins Geller
Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 6

issue for summary judgment, not a discovery dispute, the argument itself demonstrates that Defendants acknowledge that details regarding the agreements themselves and the documents and data about those agreements, are at issue in this case.[4]

But, even assuming *arguendo* that Defendants' contentions are correct, which they are not, and the contingent commission agreements at issue cannot form the basis for relief, that still does not prove that they are unlikely to lead to admissible evidence. The Complaint alleges that these agreements are evidence of the "rim" – that is, the horizontal agreements – thus, these agreements constitute evidence that directly supports Plaintiffs' antitrust claims. *See, e.g.*, Complaint, ¶137. Tellingly, Defendants again acknowledge their relevance by arguing in their motion to dismiss (which has yet to be submitted to the Court), that these documents do not provide a basis on which relief can be granted. Defs. Mem. at 26 ("Binding authority agreements are, on their face, agreements among insurers, but contrary to Plaintiffs' suggestion, that fact alone does not render them 'horizontal agreements' in violation of antitrust law."); *see infra*, §I.C.2.

In short, not only are Defendants clearly on notice that any agreements (and related documents) that have contingent commission clauses are relevant to the claims in the Complaint, but they admit through their conduct that this information is at issue, is relevant, and is thus readily discoverable.

## 2.      Defendants Rely on the Relevance of the Disputed Discovery in Briefing

Defendants know that the various types of contingent commission agreements are relevant to Plaintiffs' claims, not only because the Complaint is replete with allegations about these types of contingent commission agreements, but also because they have used the existence of these agreements against Plaintiffs.

In their motion to dismiss, Defendants admit that they understand Plaintiffs' claims to be challenging the exact type of agreements of which Plaintiffs seek discovery. There are many examples in Defendants' motion to dismiss which demonstrate that Defendants understand Plaintiffs' claims to include binding authority agreements to be not only relevant to Plaintiffs' case, but key to certain elements of their claims. A few examples include the following:

---

[4]      Notably, Defendants do not contend that lineslips did ***not*** contain contingent commission clauses. Lineslip agreements are thus clearly relevant. Syndicates 570 and 609, 2001, 2488, and 2791, represented by four separate law firms, concede that lineslips are within the proper scope of discovery. Only the Syndicates represented by Ropes & Gray, Syndicates 33, 102, 382, 435, 510, 623, 727, 958, 1003, 1084, 1096, 1183, 1245, 1886, 2003, 2020, 2623 and 2987 argue that lineslips are not even relevant.

Robbins Geller
Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 7

- Defendants argue that coverholder agreements only demonstrate "an **opportunity** to conspire" (*see* Defs. Mem.at 3) (emphasis in original);

- Defendants argue: "Plaintiffs also rely on…the delegation in some instances of underwriting authority to a third party in so-called 'coverholder' agreements" (*see id.*);

- Defendants state: "Plaintiffs also point to binding authority agreements to allege the Syndicates 'join together' to enter into multilateral contingent commission agreements,"(*See id.* at 8) (citations to Complaint omitted);

- Section of Defs. Mem. entitled "Binding Authority Agreements" (*see id.*, §I.1.b. at 22-25);

- Defendants note that Plaintiffs "attempt[] to classify 'binding authority agreements' as illegal" (*see id.* at 22); and

- Defendants contend "Plaintiffs also attempt to misconstrue a portion of the coverholder's compensation known as a 'Profit Commission' to be the equivalent of a contingent commission." (*See id.* at 24).

Additionally, in their prior (and notably unsuccessful) motion to limit the scope of discovery in this case before Judge Shwartz, Defendants argued that, because binding authority agreements contained a different type of contingent commission, Plaintiffs lacked standing. *See* Dkt. No. 2158 at 15 ("In a binding authority agreement, by contrast, a group of Lloyd's syndicates enters into an agreement with a coverholder. In that agreement, which may be arranged by a specialized broker in the Lloyd's market, the syndicates authorize the coverholder to bind risks under certain conditions.").

Defendants cannot now, after having repeatedly recognized the centrality of coverholder and binding authority agreements in this case, seriously contend that they are not relevant to Plaintiffs' claims and thus not subject to discovery.[5]

---

[5]     *See Bd. of Trs. v. Tyco Int'l, Ltd.*, 253 F.R.D 521, 522 (C.D.Cal. 2008) (motion to compel the production of settlement agreements granted where party previously relied upon and cited the past agreements to support its claims in litigation); *In re Fedex Ground Package Sys., Inc., Employment Practices Litig.*, No. 3:05-MD-527, MDL-1700, 2009 WL 4730574, at*2-*3 (N.D. Ind. Dec. 4, 2009) (granting plaintiffs' motion to compel where defendants previously relied in litigation on similar documents for other purposes).

835849_1

## Robbins Geller
## Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 8

### 3.    Defendants Admit the Documents Are Relevant

In addition to admitting the relevance of the discovery by repeatedly referring to it in their briefing, Defendants have already produced dozens of these documents,[6] thereby waiving any relevance objection they may have once had.[7]  By producing many of the agreements, Defendants admit that the documents are relevant, and cannot now credibly contend that the documents were inadvertently produced, especially considering they made no efforts to argue against the relevance of the documents until several months after their production.

### 4.    Defendants' Arguments Miss the Point

For the most part, Defendants rehash old arguments made in their motion to dismiss or they make arguments they neglected to make in their motion.  Of course, a motion regarding relevance of discovery is the wrong place for making arguments about the sufficiency of a Complaint to state claims on which relief can be granted.  Indeed, the similarity of Defendants' motion to dismiss and this motion lends credence to the relevance of the claims in the Complaint.

Likewise, any claim by Defendants that Plaintiffs should have raised these issues earlier even if it were possible or true, which it is not, is of no moment as Plaintiffs are raising this dispute before the discovery dispute deadline.  Regardless, this dispute being raised now is entirely of Defendants' own doing.  Leaving aside that this issue arose only after Plaintiffs' experts manipulated and reviewed the varied data productions (equivalent of 5 million pages of documents, according to Defendants' brief), during a meet and confer on October 12, 2012, Defendants represented to Plaintiffs that they were not withholding production of any documents on any scope grounds.  This, combined with Defendants' partial production, led Plaintiffs to reasonably and understandably believe that these types of documents were searched for and produced.  Defendants' arguments that Plaintiffs were on notice of these scope objections (which were never raised outside of carefully-worded objections until last week) are belied by their conduct.[8]

---

[6]    *See* Exhibit 2 (list of some of the binding authority agreements already produced).

[7]    *See United States. v. Jackson*, 155 F.R.D. 664, 666 (D. Kan. 1994) ("The defendants represented in their brief that the prosecution provided these documents to them on April 18, 1994.  Having already produced all or most of these documents, the prosecution has waived its objection [to the materiality of impeachment evidence]. The court orders full disclosure of the third group of documents.").

[8]    *See Howard v. Sweetheart Cup. Co.*, No. 00 C 648, 2001 U.S. Dist. LEXIS 8682,  at*6-*8 (N.D. Ill. June 27, 2001) (Court found that defendant could not pick and choose the documents they thought were relevant by giving cleverly-worded responses to a request.  "If an attorney wants to withhold documents requested under the discovery rules, he must do so in a

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 9

### D.      Conclusion

The fact that Defendants dislike Plaintiffs' challenge to their practice of paying contingent commissions through various forms of agreements in this case – a practice which has been investigated in the United States and abroad and has resulted in over a billion dollars in criminal and civil settlements – does not provide them a basis to refuse to give Plaintiffs discovery to which they are entitled in this nationwide class action.[9]   For this reason, Plaintiffs respectfully request the Court enter the Proposed Order attached as Exhibit 1.

## II.      Defendants' Position

Calling them "Contingent Commission Agreements," Plaintiffs seek two types of agreements — lineslips and binding authority agreements — that have nothing to do with their theory of the case. Because Plaintiffs utterly fail to explain how these agreements are relevant to their theory— but instead obliquely reference their deficient complaint — the Syndicates should not be required to engage in a second round of extremely costly, pre-motion to dismiss discovery.[10]

*Lincoln Adventures* is a putative class action and a tag-along case pending in this multi-district litigation.  The defendants in this action consist of 23 syndicates of Underwriters at Lloyd's (the "Syndicates").  The two named plaintiffs purport to assert claims on behalf of a putative class consisting of all U.S. insureds that purchased insurance in the Lloyd's marketplace at any point in the past fifteen years.  The theory of Plaintiffs' case is that insurance brokers conspired with the Syndicates, and the Syndicates conspired with one another, so that the brokers would direct to certain insurers business that the brokers were to place on behalf of their policyholder clients.  In exchange for delivering this business, Plaintiffs allege that the brokers were paid what they refer to generically as

---

straightforward and forthright manner, not by artful phrasing that obscures more than it discloses."  Moreover, the court found that where documents are among the core issues in the case, counsel had no proper basis to withhold any of the documents.).

[9]       *See Sunterra Corp. v. Perini Bldg. Co.*, No. 2:04-cv-00784-MCE-EFB, 2009 U.S. Dist. LEXIS 13914, at *24-*25 (E.D. Cal. Feb. 23, 2009) (granting motion to compel and holding that "narrow interpretation" of a term at issue would not be imposed and finding "the relevance of such discovery is governed by Rule 26, not [the party's] proposed limitations").

[10]      All of the Lloyd's Syndicate defendants in *Lincoln Adventures* join this submission and oppose Plaintiffs' request. Plaintiffs erroneously suggest that the dispute is limited to a subset of the Syndicate defendants.  To the contrary, all of the Syndicates reject Plaintiffs' overly broad definition of what is relevant or discoverable in this action.  Syndicates 570, 609, 2001, 2488, and 2791 also reject Plaintiffs' characterization of their position; they have never acceded to Plaintiffs' definition of a "contingent commission" agreement, which would compel them to produce all binding authority agreements and lineslips.

# Robbins Geller
## Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 10

"contingent commissions." *See* Am. Compl. (Dkt. 2312) at ¶¶ 9-13, 115, 128-33. Identical allegations in the original commercial class action in this MDL were dismissed because the alleged conduct was legitimate business activity. That dismissal was affirmed by the Third Circuit in 2010. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010). Upon receiving the necessary leave from the Court, the Syndicates moved to dismiss Plaintiffs' complaint in December 2012. Plaintiffs did not serve their opposition to this motion until March 2013, and the return date for the motion to dismiss is May 6, 2013.

The present dispute concerns Plaintiffs' attempts to expand the scope of discovery well beyond the theory on which they base their antitrust and RICO claims or anything relevant to the claims or defenses in this action. Plaintiffs allege that, through contingent commission agreements, "the Lloyd's Broker promised to steer certain volumes of business or entire classes of business [to the Syndicates] in exchange for a kicker." *See* Am. Compl. ¶ 13. In the London insurance market in which the Syndicates do business, certain of the Syndicates entered into agreements with brokers, most often applicable to a specific line of business (*e.g.*, property or marine insurance), pursuant to which the broker provided specified services in exchange for compensation, which typically was based on volume of premium. These agreements were known by different names, most commonly placement services agreements and market services agreements (collectively referred to herein as "PSA/MSA Agreements"). Plaintiffs equate the PSA/MSA Agreements to contingent commission agreements entered into by U.S. insurers that were the subject of investigations by the New York Attorney General and that were the basis for the original commercial class action in this MDL.

Plaintiffs are seeking broad class-wide discovery regarding what they refer to as Contingent Commissions Agreements, which they defined to include not only the PSA/MSA Agreements but also two other types of agreements commonly used in the London insurance market — binding authorities and lineslips — that do not implicate the broker compensation practices around which Plaintiffs attempt to construct their claims.[11] Plaintiffs' attempt to obtain discovery regarding these agreements is the subject of the present discovery dispute. As outlined in detail below, Plaintiffs are attempting to impose a significant and unreasonable discovery burden on the Syndicates for documents that are in no way relevant to Plaintiffs' claim that the Syndicates paid brokers to direct or allocate business to them. Because their request would require the extensive review and production of binding authorities and lineslips (and innumerable related documents) that are not relevant, the Syndicates consistently and repeatedly objected to such requests. Only now, shortly before the close of fact discovery, have Plaintiffs challenged these objections.

---

[11]    The terms "binding authority agreement" and "coverholder agreement" are synonymous, and Plaintiffs have used them interchangeably. For clarity and consistency, the Syndicates' submission will refer only to the former term.

835849_1

ROBBINS GELLER
Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 11

### A.    Plaintiffs' Requests Bear No Relevance To This Case

The documents Plaintiffs seek are not relevant to any claims or defenses in the action and their
production would impose an unreasonable and undue burden on the Syndicates that would serve only to
further extend this long-running MDL.  The lineslips and binding authority agreements at issue here are
fundamentally different from the PSA/MSA Agreements:  lineslips are addressed to the efficient
underwriting of smaller risks and binding authority agreements have nothing whatsoever to do with the
brokering of insurance policies.  Plaintiffs' requests seek thousands of agreements entered into by the
Syndicates across an eleven-year discovery period, but offer no explanation as to how these agreements
advance any cognizable theory of liability in this case.  Instead, Plaintiffs offer the tautology that,
because they have mentioned binding authorities and lineslips in their Amended Complaint, all such
agreements spanning the entire putative class period are relevant.  They further assert, without support,
that the Syndicates have conceded relevance by attacking those same allegations mentioning these
agreements in their motion to dismiss, which sets forth why the Amended Complaint does not state a
claim for relief.[12]  These arguments do not address the threshold question that Plaintiffs must answer,
which is why the documents are relevant to their claims.

The expansive and costly discovery Plaintiffs seek is not warranted at any stage of the litigation,
let alone where the Court has not yet determined that Plaintiffs' complaint states a claim and there is a
dispositive ruling from the Third Circuit rejecting essentially identical claims previously asserted in this
very same MDL.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007) (recognizing that, given
the expense inherent to antitrust discovery, the Court must "insist upon some specificity in pleading
before allowing a potentially massive factual controversy to proceed") (internal quotation marks and
citations omitted).

### 1.    Binding Authority Agreements Have Nothing To Do With The Brokering of Insurance Policies

Plaintiffs' substantive claims are premised on the contention that Marsh, Aon and Willis
received improper compensation in connection with insurance policies for which they acted as a broker
for the insured or policyholder.  Binding authority agreements, however, relate to the underwriting, not

---

[12]    The Syndicates' motion to dismiss was served on December 4, 2012, and it will be filed, together with Plaintiffs'
opposition and a reply brief, on April 30, 2013.  In addition to the substantive problems with Plaintiffs' assertions, their
selective quotations from the motion do not reflect its content.  Indeed, the motion explicitly addresses and rejects the claim
that the sought-after agreements are relevant. *See, e.g.*, Memorandum of Law in Support of Defendants Syndicates Motion
to Dismiss the Revised First Amended Class Action Complaint at 23 ("The very documents on which Plaintiffs' allegations
are based show that binding authorities *are not* contingent commission agreements among the Syndicates") (emphasis
added).

Robbins Geller
Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 12

brokering, of insurance policies and do not involve any party acting on behalf of a policyholder. Pursuant to these binding authorities, Lloyd's syndicates delegate to an agent — known as a coverholder — the authority to underwrite or bind certain types of risks on their behalf, with each syndicate agreeing to accept a certain percentage of any risk underwritten by the coverholder. The coverholder's authority levels typically are limited and thus suited to smaller risks that otherwise could not be underwritten cost-efficiently in the London insurance market.

Discovery into binding authorities is plainly irrelevant because coverholders and insurance brokers perform two distinct functions. Significantly, coverholders do not provide brokerage services, rather they provide underwriting services. In short, coverholders are agents for the syndicates. They are "authorized by Lloyd's syndicates to enter into contracts of insurance and/or issue insurance documentation on their behalf."[13] These agreements are common within Lloyd's, as evidenced by the directory listing thousands of coverholders on the Lloyd's website.[14] In contrast to coverholders, brokers are the policyholders' agents and shop for and recommend insurance contracts to their policyholder clients.

In response, Plaintiffs argue that coverholders supposedly "use" brokers to sell their risks to U.S. insureds and coverholders purportedly "act as the broker" so far as U.S. insureds are concerned. Leaving aside the inconsistency between the two arguments, as to the first point, coverholders, like any other insurance provider, may deal with brokers seeking insurance coverage for their clients. This fact does not give rise to an agency or contractual relationship between the coverholder (acting as the syndicates' agent) and the broker (acting as the insured's agent). Moreover, the documents Plaintiffs now seek will not provide any information regarding any such coverholder/broker interaction. As to the second point, Plaintiffs provide no basis for the claim that coverholders act as brokers. Any insured wanting to purchase a policy through a coverholder typically does so through its own broker. *See* Lloyd's.com, http://www.lloyds.com/Lloyds/Offices/Americas/US-homepage/Placing-Risk/How-to-access-Lloyds (last visited April 26, 2013).

The binding authorities provide for payment by syndicates to the coverholders for the services the coverholders perform in underwriting risks and in issuing related documentation. For present purposes, the important difference between PSA/MSA Agreements and binding authority agreements is that the coverholders under the binding authorities are agents of the insurers and typically are required

---

[13] *See* http://www.lloyds.com/Lloyds/Offices/Americas/US-homepage/Placing-Risk/How-to-access-Lloyds (last visited Apr. 26, 2013).

[14] *See* http://www.lloyds.com/Lloyds/Offices/Americas/US-homepage/Placing-Risk/How-to-access-Lloyds (last visited Apr. 26, 2013).

Robbins Geller
Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 13

to exercise underwriting discretion. Plaintiffs' allegations exclusively relate to payments to brokers. None of them relate to payments to underwriting agents. Ignoring this critical distinction, Plaintiffs suggest, in conclusory fashion, that binding authorities supposedly involve "contingent commissions."

Certain binding authorities contain compensation provisions whereby the coverholders share a portion of the profits from the accounts they underwrite. These compensation provisions, sometimes referred to as profit commissions, bear no resemblance to the volume-based broker contingent commission agreements that are the focus of this action. Simply put, they are not compensation paid to broker, an agent of an insured, but instead are payments to coverholders who act as the *agents of the syndicates*. Moreover, this compensation is not as a reward for supposedly driving volumes of business, but for exercising their underwriting discretion well. Indeed, binding authorities differ from the "open market" placements in the London insurance market where the insured's retail broker (*e.g.,* Marsh, Aon, or Willis) solicits quotes directly from the syndicates and often can influence which syndicates are selected to underwrite a risk. For placements under a binding authority, the insured and its retail broker do not interact with any Lloyd's syndicate directly, but rather communicate with the coverholder, which is acting on behalf of the syndicates. Such arrangements simply do not present any potential for "steering" that Plaintiffs allege in their complaint. Accordingly, binding authorities cannot, and do not, represent a horizontal agreement among syndicates purportedly evidencing the alleged conspiracy here — what Plaintiffs refer to as a "rim" — because they do not involve any payment of any incentive to a broker that could possibly encourage any "steering" of their clients.

Plaintiffs' sweeping demand for all binding authority agreements seeks production of voluminous documents irrelevant to their claims. Particularly given the burdensome and irrelevant nature of the request and the belated objection raised by Plaintiffs, the application for this discovery should be denied.

## 2. Lineslips Are Nothing More Than A Mechanism For The Efficient Placement of Certain Types of Insurance

The second category of documents sought by Plaintiffs is all lineslip agreements entered into by the Syndicates during the discovery period, an expansive request covering the period from 1997 to 2007. In the London insurance market, a slip is the document by which one or more syndicates agree to terms set forth in an abbreviated fashion under which a single risk will be insured. As a general matter, lineslips are a facility for underwriting not a single risk but a large number of similar (typically smaller) risks on specifically defined terms. Lineslips do not apply to an entire line of business, but rather allow syndicates and a broker to agree that, for a specified type of risk, the broker need only approach certain underwriters on the lineslip, who may accept risk on behalf of the other underwriters who have signed on to the lineslip. *See* C. Bennett, *Dictionary of Insurance* (Pitman 1997). This structure is "prompted by administrative convenience." *Id.* Lineslips allow for the underwriting of smaller risks that otherwise

835849_1

Robbins Geller
Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 14

might not be worth the expense of soliciting quotes separately from a variety of syndicates.  They also allow insurers to spread risks, which makes it possible to insure a large number of risks that a single insurer could not underwrite in their entirety.

As an initial matter, the absence of any relevance of lineslips to this action is evidenced by Plaintiffs' own complaint:

- Plaintiffs' complaint uses the term lineslip only in *one* paragraph, *see* Am. Compl. ¶ 10, and Plaintiffs offer no further specific description of how lineslips relate to their allegations.

- None of the purportedly representative plaintiffs obtained insurance off of a lineslip or, for that matter, had policies that were the subject of contingent commission payments (however that term is defined).  The policies for the two named plaintiffs, Lincoln Adventures, LLC and Michigan Multi-King, Inc., were placed through variations of binding authority agreements on which no broker contingent commissions were paid.

- None of the regulatory investigations on which Plaintiffs rely so heavily in their complaint involved lineslips.  *See* Am. Compl. ¶¶ 18, 236-40.  Indeed, contrary to Plaintiffs' suggestion in their submission, which, like their complaint, relies on U.S. regulatory investigations, there have been no regulatory settlements or criminal indictments implicating the London market.

- Lineslips do not contain confidentiality provisions, a feature of purported contingent commission agreements that is essential to Plaintiffs' claims and thus is featured significantly in the complaint.  *See, e.g.,* Am. Compl. ¶¶ 183-99.

In their submission as provided to the Syndicates, Plaintiffs offer no further explanation of the purported relevance of lineslip agreements, other than an unexplained suggestion that lineslips represent a "horizontal agreement" among syndicates.  The suggestion is flawed in two respects.  First, lineslips represent multiple agreements between the broker and *individual* syndicates to underwrite a certain percentage of a defined type of risk on specified terms; the broker presents the proposed facility to each prospective syndicate, which either accepts or declines to participate on those terms and conditions based on its own business judgment.

Second, the vast majority of lineslips involve a flat commission to the broker, and do not base broker commission percentages on the volume of premium underwritten.  This compensation of the broker consists of a non-contingent commission calculated as a flat percentage of the premium underwritten for all risks under the lineslip.  This commission is no different from the commission paid pursuant to a slip for the placement of an individual risk.  Plaintiffs expressly exclude such commissions from their discovery requests, *see* Plaintiffs' First Request for Production of Documents, Definition No. 3, and even state above that contingent commissions are payments made in addition to

Robbins Geller
Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 15

"standard" brokerage payments.  These lineslips thus are not even responsive to Plaintiffs' document requests, much less relevant to the claims at issue in this action.

In certain limited instances, lineslips also included an additional compensation provision under which the broker received additional revenue based on the volume of premium written under the lineslip.[15]  Such volume-based compensation provisions are not new or unique to Lloyd's, or the insurance industry generally, contrary to Plaintiffs' suggestion they were the product of some conspiracy among the Syndicates named as defendants here.  Setting aside whether they are within the scope of discovery, dozens of this type of lineslip have been produced as responsive to a number of Plaintiffs' requests.  *See, e.g.*, Plaintiffs' First Request for Production of Documents, Request No. 3 (seeking documents reviewed as part of any internal investigation).  Plaintiffs already have many of these lineslips – a fact that only highlights their failure to offer any coherent explanation of their relevance.[16]  Requiring any further production of these documents is cumulative and should not be required, *see* Fed. R. Civ. P. 26(b)(2)(C)(i); *In re Merck & Co., Inc. Secs., Derivative & ERISA Litig.*, No. 05-02367, 2012 WL 4764589, *9–10 (D.N.J. Oct. 5, 2012), especially in light of the lack of relevance described above and the burden of such additional production described below.

**B.      The Record of Discovery to Date Refutes Plaintiffs' Claim of Surprise**

For at least the last nine months, Plaintiffs have known that the Syndicates object to, and have not produced documents pursuant to, the expansive, overbroad definition of "Contingent Commission Agreements" set forth in Plaintiffs' pleadings and discovery requests.  In July 2012, the Syndicates responded to Plaintiffs' wide-ranging document requests.  Among other objections, the Syndicates took the position that class-wide discovery was premature and inappropriate.  The Syndicates also objected to Plaintiffs' expansive definition of Contingent Commission Agreements as overly broad, vague, and ambiguous.  In addition to these broad objections, many Syndicates specifically objected to Plaintiffs'

---

[15]      In other instances, lineslips include a compensation provision in which the broker receives additional compensation based on the *profitability* of the risks underwritten on the lineslip.  This type of lineslip creates an incentive for a broker to carefully select the risks he offers the insurers on the line for underwriting.  This type of commission has a totally different economic rationale and effect than Plaintiffs allege, and it has not been the subject of any regulatory investigation or even Plaintiffs' complaint.

[16]      Plaintiffs suggest that the production of certain lineslips is an implicit concession that all lineslips are relevant.  The Syndicates' discovery responses directly refute this assertion.  *See, e.g.,* Certain Syndicates' Responses and Objections to Plaintiffs' First Request for Production of Documents, Objections 12 and 21 (objecting to the demand for "lineslips" as "overbroad and not reasonably calculated to lead to the discovery of admissible evidence," and expressly stating that if "any document falling within such an objection is produced by the Responding Syndicates, the production is inadvertent and does not constitute a waiver of the objection").

835849_1

Robbins Geller
Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 16

attempt to seek discovery of all lineslips as overbroad and not reasonably calculated to lead to the discovery of admissible evidence and opposed the production of binding authority agreements and other agreements to which brokers were not parties.[17]

The Syndicates reiterated their position in their opposition to Plaintiffs' briefing in support of class-wide discovery, and Plaintiffs did not challenge it. *See* Dkt. 2158 at 10, n.16. Moreover, in seeking to compel the Syndicates to provide class-wide discovery, Plaintiffs failed to raise any issue with the Court regarding the Syndicates' objections to the scope of what Plaintiffs considered contingent commission agreements. In September 2012, before the Syndicates had an opportunity to test the adequacy of Plaintiffs' allegations through a motion to dismiss, then-Magistrate Judge Shwartz ordered that the Syndicates provide class-wide discovery for the period from 1997 through 2007. Plaintiffs suggest that during meet and confer discussions following Magistrate Judge Shwartz's order, Defendants represented that they were not withholding production of any documents on "scope" grounds. This suggestion is flatly incorrect. Instead, the Syndicates clearly explained that, although they were working to comply with the Court's order compelling class-wide discovery, they were not withdrawing any of the objections that the Court had not addressed.

By December 2012, the Syndicates had completed the bulk of their production, which in total includes nearly 2 million pages of documents, hundreds of thousands of lines of policy-level data for U.S. insureds for the eleven-year discovery period in response to Plaintiffs' data requests, and responses to extensive interrogatories served by Plaintiffs. As part of this production, the Syndicates have produced all PSA/MSA Agreements that potentially pertained to risks placed by U.S. insureds.

Notwithstanding these Syndicates' clear, repeated and longstanding objections to Plaintiffs' overly broad definition of Contingent Commission Agreement, Plaintiffs did nothing to pursue this issue for months and raised it for the first time in letters that were sent to counsel for the Syndicates beginning on April 17, 2013, mere days before the discovery dispute deadline. Fact discovery closes on July 26, 2013.[18]

---

[17]    The Syndicates have not attached all of these discovery responses to this submission, but will provide any or all of them if the Court wishes to review them.

[18]    Indeed, in October 2007 after the filing of this action, 18 of the Syndicate defendants directed a letter to Plaintiffs pursuant to Fed. R. Civ. P. 11. That Rule 11 letter demanded dismissal of the complaint because the insurance policies associated with the named plaintiffs did not involve "contingent commissions," but rather were issued under forms of binding authority agreements that, as discussed below, did not involve any broker contingent commissions. *See* Exhibit 3 hereto.

835849_1

Robbins Geller
Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 17

**C.      Granting The Discovery Sought By Plaintiffs Places An Unreasonable
and Undue Burden on the Syndicates**

Discovery to date has been hugely burdensome for the Syndicates.  For example, in addition to
the extensive document and data production described above, the Syndicates collected and reviewed the
equivalent of over 5 million pages of electronic data from hundreds of custodians in response to
Plaintiffs' broad document requests.  Plaintiffs now seek to require the Syndicates to revisit their
document productions.  Based on the lack of relevance of these requests as documented above,
Plaintiffs' only purpose in pursuing this discovery can be an effort to increase the cost of litigation.  The
Court should not permit this.  *See Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996) (an
"important aspect of" the "district courts' power to control multidistrict litigation" is to "prevent
predatory discovery . . . [by] ensuring that litigants use discovery properly as an evidence-gathering
tool, and not as a weapon"); *see also Twombly*, 550 U.S. at 546 (absent specific, plausible factual
allegations, the federal rules serve the "practical purpose of preventing a plaintiff with a 'largely
groundless claim'" from demanding discovery "representing an *in terrorem* increment of the settlement
value").

Plaintiffs seek discovery for all U.S. policyholders over an 11-year period.  Any production of
binding authorities or lineslips for this class of policyholders over this length of time would be hugely
burdensome.  By way of example only:

- For many of the Syndicates, some or all of the agreements are maintained only in paper form,
  are not searchable in any way, and/or are stored off site given that the relevant period extends
  back more than 15 years.  In some cases, the binding authority agreements and lineslips are not
  segregated from other types of agreements.

- Further, even where the agreements are available electronically, the systems used by certain
  Syndicates do not provide the ability to perform keyword searches of the text of those
  agreements.

- Absent a hand review of each binding authority or lineslip, the Syndicates cannot determine the
  content of the agreement, including but not limited to the presence or absence of any provision
  providing for any volume-based compensation.

The significant time and expense of identifying, collecting, reviewing and producing any further
and cumulative discovery on these issues far outweighs any possible relevance that the documents
Plaintiffs now seek may provide.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii); *Eisai Inc. v. Sanofi-Aventis U.S.,
LLC*, No. 08-4168, 2012 WL 1299379 (D.N.J. Apr. 16, 2012) (denying further discovery as unduly
burdensome and expensive where extensive discovery had already been permitted and plaintiffs could

835849_1

Robbins Geller
Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 18

not articulate a "particularized" benefit from or need for further discovery); *Bowers v. Nat'l Collegiate Athletic Ass'n*, No. 97-2600, 2008 WL 1757929, *3–*6 (D.N.J. Feb. 27, 2008);  (denying discovery of, at best, "marginally relevant" documents, where burden and expense of production outweighed any likely benefit); *see also* Fed. R. Civ. P. 26 Advisory Committee Note (2000) ("emphasiz[ing] the need for active judicial use of subdivision (b)(2) to control excessive discovery").[19]

Finally, in the parties' exchanges about this dispute, Plaintiffs have alluded to their intention to insist that the Syndicates expand their email searches to additional custodians and additional search terms.  As set forth, there is no basis for an expansion of the discovery the Syndicates already have provided at great effort and expense, but at a minimum such issues are not ripe for consideration at present.

D.     **Conclusion**

For the reasons outlined above, the Syndicates respectfully request that the Court deny Plaintiffs' request for additional discovery.

Respectfully submitted,

/s/ Carmen A. Medici
ROBBINS GELLER RUDMAN
   & DOWD LLP
JOHN J. STOIA, JR.
RACHEL L. JENSEN
THOMAS R. MERRICK
CARMEN A. MEDICI
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

---

[19]     To the extent required, the Syndicates stand ready to provide declarations to establish the significant burdens presented by the discovery sought by Plaintiffs as outlined in this submission.

Robbins Geller
Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 19

ZWERLING, SCHACHTER
   & ZWERLING, LLP
ROBERT S. SCHACHTER
ANA M. CABASSA
41 Madison Avenue
New York, NY  10010
Telephone:  212/223-3900
212/371-5969 (fax)

COHN LIFLAND PEARLMAN
   HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
ANDREW S. FRIEDMAN
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602/274-1199 (fax)

WHATLEY KALLAS, LLC
JOE R. WHATLEY, JR.
EDITH M. KALLAS
380 Madison Avenue, 23rd Floor
New York, NY  10017
Telephone:  212/447-7060
800/922-4851 (fax)

835849_1

Robbins Geller
Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 20

FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
ROBERT M. FOOTE
KATHLEEN C. CHAVEZ
ALEX DRAVILLAS
10 West State Street, Suite 200,
Geneva, IL 60134
Telephone:  630/232-7450
630/232-7452 (fax)

DAVID M. FOSTER, P.C.
DAVID M. FOSTER
30833 North Western Hwy., Suite 209
Farmington Hills, MI 48334
Telephone:  248/855-0940
248/855-0987 (fax)

Attorneys for Plaintiffs

*Certain Underwriters at Lloyd's, London
Organized as Syndicates 33, 102, 382, 435, 510,
623, 727, 958, 1003, 1084, 1096, 1183, 1245,
1886, 2003, 2010, 2020, 2623 and 2987*

By their attorneys,

/s/ Anne Johnson Palmer
Robert A. Skinner
Matthew Burke
Anne Johnson Palmer
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone:  (617) 951-7000
Fax:  (617) 951-7050

*Certain Underwriters at Lloyd's, London
Organized as Syndicate 2791 MAP*

By its attorneys,

835849_1

# Robbins Geller
## Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 21

/s/ Thomas F. Bush
Thomas F. Bush
Patrick Frye
Edwards Wildman Palmer LLP
225 West Wacker Drive, Suite 3000
Chicago, IL 60606-1229
Telephone:  (312) 201-2000
Fax:  (312) 201-2555

*Certain Underwriters at Lloyd's, London
Organized as Syndicate 2001 (AML)*

By its attorneys,

/s/ John M. Toriello
John M. Toriello
Robert J. Burns
Michelle T. Hess
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York  10019
Telephone:  (212) 513-3200
Facsimile:  (212) 385-9010

*Certain Underwriters at Lloyd's,
London  Organized as Syndicates 570 and 609*

By their attorneys,

/s/ Jean-Claude Mazzola
Jean-Claude Mazzola
Abigail Nitka
WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER LLP
150 East 42nd Street
New York, New York 10017
Tel:  (212) 490-3000
Fax:  (212) 490-3038

Robbins Geller
Rudman & Dowd LLP

The Honorable Magistrate Judge Joseph A. Dickson
April 26, 2013
Page 22

Certain Underwriters at Lloyd's,
London  Organized as Syndicates 2488

By its attorneys,

/s/ Genevieve Vose
Jeremy J. Brandon
Genevieve Vose
SUSMAN GODFREY L.L.P.
1000 Louisiana St., Ste. 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Fax:  (713) 654-6666

ECF CERTIFICATION

        The filing attorney attests that he has obtained concurrence regarding the filing of this document
from the signatories to this document.

Dated: April 26, 2013             By:  _s/Carmen A. Medici_____
                                       CARMEN A. MEDICI

835849_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 26, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be e-mailed the foregoing document or paper via the email distribution service list to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 26, 2013.

s/ Carmen A. Medici
CARMEN A. MEDICI

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:        cmedici@rgrdlaw.com

## Mailing Information for a Case 2:04-cv-05184-CCC-JAD

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **DOUGLAS A. ABRAHAMS**
  dabrahams@kohnswift.com,joanb@kohnswift.com

- **DANIEL B. ALLANOFF**
  dallanoff@mcgslaw.com

- **ROBIN L. ALPERSTEIN**
  robin.alperstein@wilmerhale.com

- **REBECCA R. ANZIDEI**
  ranzidei@steinmitchell.com

- **MITCHELL JAY AUSLANDER**
  mauslander@willkie.com,mao@willkie.com,twhitehouse@willkie.com,kmonin@willkie.com,afitzpatrick@willkie.com,ebower@willkie.com,wrooney@willkie.com,ph

- **HARVEY JOEL BARNETT**
  hbarnett@sperling-law.com,bturcsany@sperling-law.com

- **NATALIE FINKELMAN BENNETT**
  nfinkelman@sfmslaw.com,pleadings@sfmslaw.com,smoss@sfmslaw.com,pmauger@sfmslaw.com

- **PHILIP J. BEZANSON**
  phillip.bezanson@bracewellgiuliani.com

- **PETER RICHARD BISIO**
  peter.bisio@hoganlovells.com,daniel.metroka@hoganlovells.com,bonnie.carpenter@hoganlovells.com,david.foster@hoganlovells.com,Michelle.Kisloff@hoganlovells.

- **MICHAEL R. BLANKSHAIN**
  blankshain@wildmanharrold.com,radziwon@wildmanharrold.com

- **SONYA RAE BRAUNSCHWEIG**
  sonya.braunschweig@dlapiper.com

- **ROBERT J. BRENER**
  Robert.Brener@leclairryan.com,Patricia.Gaglioti@leclairryan.com

- **MARK ANTHONY BULGARELLI**
  mbulgarelli@foote-meyers.com,cspring@foote-meyers.com

- **ANDREW O. BUNN**
  andrew.bunn@dlapiper.com,DocketingNewYork@dlapiper.com

- **MATTHEW M. BURKE**
  matthew.burke@ropesgray.com

- **ROBERT J. BURNS**
  robert.burns@hklaw.com

- **THOMAS F. BUSH**
  tbush@edwardswildman.com,dtaylor@edwardswildman.com,pfrye@edwardswildman.com,ecffilings@edwardswildman.com

- **JOHN C. CABANISS**
  john@cabanisslaw.com,nina@cabanisslaw.com

- **ANNA MARIE CABASSA-TORRES**
  acabassa@zsz.com

- **MATTHEW JOSEPH CACCAMO**
  caccamo@wildmanharrold.com

- **JOHNNY W. CARTER**
  jcarter@susmangodfrey.com

- **JOANNE M. CICALA**
  jcicala@kmllp.com,lmorris@kmllp.com

- **JAMES B. CLARK , III**
  james.clark@usdoj.gov

- **WILLIAM F. CLARKE , JR**
  william.clarke@beazley.com

- **JOANNA J. CLINE**
  clinej@pepperlaw.com

- **BRYAN L. CLOBES**
  bclobes@caffertyclobes.com,ktucker@caffertyclobes.com

- **LOUIS G. CORSI**
  lcorsi@lcbf.com

- **TRAVIS SCOTT CRABTREE**
  tcrabtree@lrmlaw.com,jreed@lrmlaw.com

- **PAUL C. CURNIN**
  pcurnin@stblaw.com

- **STEVEN P. DEL MAURO**
  sdelmauro@mdmc-law.com,bkliesh@mdmc-law.com

- **G. RICHARD DODGE , JR**
  grdodge@mayerbrown.com

- **THOMAS P. DOVE**
  tdove@furth.com

- **LARRY D. DRURY**
  ldrurylaw@aol.com

- **BRYAN S. DUMESNIL**
  bryan.dumesnil@bgllp.com,cindy.rodriguez@bgllp.com,elisabeth.taylor@bgllp.com,beth.elliott@bgllp.com,maria.kimbrough@bgllp.com,heath.novosad@bgllp.com

- **LEO L. ESSES**
  lesses@ctswlaw.com

- **BETH L. FANCSALI**
  bfancsali@edwardswildman.com,jwiltscheck@edwardswildman.com

- **STACEY SEXTON FARRELL**
  sfarrell@fieldshowell.com

- **KEVIN JOSEPH FEE**
  kfee@kvwmail.com,eslavina@kvwmail.com

- **CAROLYN H. FEENEY**
  carolyn.feeney@dechert.com

- **DAVID U. FIERST**
  dfierst@steinmitchell.com

- **IAN HOWARD FISHER**
  fisher@sw.com,central@sw.com,swcourts@yahoo.com

- **MARTIN FLUMENBAUM**
  mflumenbaum@paulweiss.com

- **ROBERT M. FOOTE**
  rmf@foote-meyers.com

- **GEORGE BENNET FORBES**
  gforbes@georgeforbeslaw.com,georgef@spevacklegalteam.com

- **CHARLENE P. FORD**
  cford@whatleydrake.com,ecf@whatleydrake.com

- **BRYCE L. FRIEDMAN**
  bfriedman@stblaw.com

- **JOHN B.M. FROHLING**
  jcfrohling@aol.com

- **FREDERICK P. FURTH**
  fpfurth@furth.com

- **KENNETH A. GALLO**
  kgallo@paulweiss.com

- **MICHAEL J. GARVEY**
  mgarvey@stblaw.com

- **RACHEL L. GERSTEIN**
  rgerstein@akingump.com,nymco@akingump.com

- **NEIL KEITH GILMAN**
  ngilman@hunton.com

- **KELLY M. GLYNN**
  glynn@sw.com,connor@sw.com

- **JAYNE ARNOLD GOLDSTEIN**
  jagoldstein@pomlaw.com

- **ROBERT GERARD GOODMAN**
  rgg@palmisanogoodman.com,amk@palmisanogoodman.com

- **DAVID GRAIS**
  dgrais@graisellsworth.com

- **STEVEN J. GREENFOGEL**
  sgreenfogel@litedepalma.com,alee@litedepalma.com

- **MARC D. HAEFNER**
  mhaefner@connellfoley.com

- **JAMES HALLOWELL**
  jhallowell@gibsondunn.com,aarias@gibsondunn.com

- **DAVID HUGHES HARRIS**
  dhhesq@gmail.com

- **BARRY HASSELL**
  bhassell@cctb.com

- **PATRICK J. HENEGHAN**
  heneghan@sw.com,hadley@sw.com,central@sw.com,miner@sw.com,swcourts@yahoo.com

- **JOHN HERFORT**
  jherfort@gibsondunn.com,aarias@gibsondunn.com

- **MICHELLE T. HESS**
  michelle.hess@hklaw.com

- **KATHRYN P. HOEK**
  khoek@susmangodfrey.com

- **CHRISTOPHER R. HUNT**
  christopher.hunt@myfloridalegal.com

- **FRED TAYLOR ISQUITH**
  isquith@whafh.com

- **STEPHEN JACOBS**
  sjacobs@lcbf.com

- **RACHEL LYNN JENSEN**
  rachelj@rgrdlaw.com,cmedici@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **KAREN LOUISE JONES**
  kjones@furth.com,gmgray@furth.com

- **EDITH M. KALLAS**
  ekallas@whatleykallas.com,ecf@whatleykallas.com

- **ROBERTA A. KAPLAN**
  rkaplan@paulweiss.com

- **JON STEPHEN KENNEDY**
  skennedy@bakerdonelson.com

- **ALAN L. KILDOW**
  alan.kildow@dlapiper.com

- **JON T. KING**
  jking@hausfeldllp.com

- **RANDI F. KNEPPER**
  rknepper@mdmc-law.com,cmcgough@mdmc-law.com

- **KYMBERLY KOCHIS**
  kkochis@nldhlaw.com

- **WILLIAM J. KOLASKY**
  william.kolasky@wilmerhale.com

- **WERNER R. KRANENBURG**
  Werner@kranenburgesq.com

- **KENNETH EMANUEL KRAUS**
  kraus@sw.com

- **DEVON MCKECHAN LARGIO**
  devon.largio@kirkland.com

- **DANIEL EDWARD LAYTIN**
  dlaytin@kirkland.com

- **DANIEL J. LEFFELL**
  dleffell@paulweiss.com

- **MICHAEL P. LEHMANN**
  mlehmann@hausfeldllp.com,clebsock@hausfeldllp.com

- **ADAM J LEVITT**
  alevitt@gelaw.com,skim@gelaw.com,jtangren@gelaw.com,earonowitz@gelaw.com,ajlevitt@yahoo.com

- **ROY H. LIDDELL**
  royliddell@wellsmar.com,jwilson@wellsmar.com

- **WENDY JEANNE LINDSTROM**
  wendy.lindstrom@wilsonelser.com

- **ALLYN ZISSEL LITE**
  alite@litedepalma.com,epalomino@litedepalma.com

- **KEVIN C. LOGUE**
  kevinlogue@paulhastings.com

- **THOMAS M. LOUIS**
  tlouis@wellsmar.com,spuckett@wellsmar.com

- **JEFFREY J. LOWE**
  jeff@jefflowepc.com

- **STEPHEN V. MASTERSON**
  smasterson@glaserweil.com,aramos@glaserweil.com

- **MARY MCCANN**
  MMccann@cahill.com

- **JAMES G. MCCARNEY**
  NY-Docketing@sheppardmullin.com

- **MICHAEL LEE MCCLUGGAGE**
  mccluggage@wildmanharrold.com,radziwon@wildmanharrold.com

- **MICHAEL GLENN MCLELLAN**
  mmclellan@finkelsteinthompson.com

- **CARMEN A. MEDICI**
  cmedici@rgrdlaw.com

- **CARMEN A. MEDICI**
  cmedici@rgrdlaw.com

- **WILLIAM F. MEGNA**
  wmegna@mmmlaw.com,kshaw@mmmlaw.com

- **ELLEN MERIWETHER**
  emeriwether@caffertyclobes.com

- **THOMAS R. MERRICK**
  tmerrick@rgrdlaw.com

- **SCOTT L. METZGER**
  metzger@dsmwlaw.com

- **JOHN R. MIDDLETON**
  JMiddleton@lawnj.com,JRMIDDLETONJR@GMAIL.COM,edahl@lawnj.com

- **KEITH J. MILLER**
  kmiller@rwmlegal.com

- **DENIS C. MITCHELL**
  dmitchell@steinmitchell.com

- **ROBERT F. MUSE**
  rmuse@steinmitchell.com

- **W. TIMOTHY NEEDHAM**
  tneedham@janssenlaw.com

- **DAVID MARC NIEPORENT**
  dnieporent@samuelandstein.com,davidnieporent@gmail.com

- **ABIGAIL NITKA**
  abigail.nitka@wilsonelser.com

- **EAMON O'KELLY**
  okelly.eamon@arentfox.com

CM/ECF LIVE - U.S. District Court for the District of New Jersey-    Page 5 of 16

Case 2:04-cv-05184-CCC-JAD    Document 2495    Filed 04/26/13    Page 28 of 39 PageID: 56346

- **CASEY THOMAS O'NEILL**
  casey.oneill@shearman.com,brian.calandra@shearman.com

- **MARIO ANTHONY PACELLA**
  mpacella@stromlaw.com,dblount@stromlaw.com

- **ANNE JOHNSON PALMER**
  anne.johnsonpalmer@ropesgray.com,courtalert@ropesgray.com

- **PETER S. PEARLMAN**
  PSP@njlawfirm.com

- **NYRAN ROSE PEARSON**
  nrasche@caffertyclobes.com,snyland@caffertyclobes.com

- **MOLLY LEHR PEASE**
  mpease@graisellsworth.com

- **ROBERT HARDY PEES**
  rpees@akingump.com,nymco@akingump.com,abarnes@akingump.com

- **JOHN J. PENTZ**
  clasaxn@earthlink.net

- **RICHARD C. PEPPERMAN , II**
  peppermanr@sullcrom.com,breaud@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **RUSSELL PICCOLI**
  carol.thorne@mwmf.com

- **Donald R. Pierson**
  fsturkish@aol.com

- **JULIO J. RAMOS**
  jramos@furth.com

- **R. DOUGLAS REES**
  drees@jenner.com

- **SHAWN PATRICK REGAN**
  sregan@hunton.com

- **GREGORY M. REISER**
  gregory.reiser@wilmerhale.com

- **MARK C. RIFKIN**
  rifkin@whafh.com

- **ANDREA ROBINSON**
  andrea.robinson@wilmerhale.com,stacy.frazier@wilmerhale.com

- **DONALD A. ROBINSON**
  drobinson@rwmlegal.com,graffield@rwmlegal.com

- **BRIAN E. ROBISON**
  BRobison@gibsondunn.com,CFitzgerald@gibsondunn.com

- **TAMMY L. ROY**
  troy@cahill.com

- **ROBERT S. SCHACHTER**
  rschachter@zsz.com,wgonzalez@zsz.com

- **JOSEPH J. SCHIAVONE**
  jschiavone@budd-larner.com

- **WILLIAM G. SCHOPF**
  schopf@sw.com,miner@sw.com,swcourts@yahoo.com

- **JEFFREY T. SCOTT**
  scottj@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **HOWARD J. SEDRAN**
  hsedran@lfsblaw.com

- **PATRICK SHEA**
  patrickshea@paulhastings.com

- **BARRY G. SHER**
  barrysher@paulhastings.com

- **PATRICK T. SHILLING**
  pshilling@stblaw.com,swilson@stblaw.com

https://ecf.njd.uscourts.gov/cgi-bin/MailList.pl?858672895025577-L_1_0-1          4/26/2013

- **BARBARA T. SICALIDES**
  sicalidesb@pepperlaw.com,bassmanb@pepperlaw.com

- **ROBERT A. SKINNER**
  robert.skinner@ropesgray.com,courtalert@ropesgray.com

- **LESLIE M. SMITH**
  lsmith@kirkland.com,nshea@kirkland.com

- **JENNIFER W. SPRENGEL**
  jsprengel@caffertyclobes.com

- **CHRISTOPHER J. ST. JEANOS**
  cstjeanos@willkie.com,mao@willkie.com

- **MAE AMELIA STILES**
  stiles.mae@arentfox.com

- **JOHN J. STOIA**
  johns@rgrdlaw.com,e_file_sd@rgrdlaw.com,tmerrick@rgrdlaw.com

- **JOSEPH PRESTON STROM**
  petestrom@stromlaw.com,dblount@stromlaw.com

- **BONNY ELAINE SWEENEY**
  bonnys@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **MICHAEL STEVEN TARRINGER**
  mtarringer@caffertyfaucher.com

- **JUSTIN MICHAEL TARSHIS**
  jtarshis@zsz.com,ssalvetti@zsz.com,ddrachler@zsz.com

- **JOHN M. TORIELLO**
  john.toriello@hklaw.com,glenn.huzinec@hklaw.com,elvin.ramos@hklaw.com

- **ROBERT W. TRENCHARD**
  robert.trenchard@wilmerhale.com

- **GENEVIEVE VOSE**
  gvose@susmangodfrey.com

- **LIZA M. WALSH**
  lwalsh@connellfoley.com,jbrandon@susmangodfrey.com,tvanek@SusmanGodfrey.com,btroyan@connellfoley.com

- **JENNIFER A. WATERS**
  waters@sw.com,connor@sw.com

- **HENRY WEISBURG**
  hweisburg@shearman.com

- **LEDA DUNN WETTRE**
  lwettre@rwmlegal.com

- **JOE R. WHATLEY**
  jwhatley@whatleykallas.com,ecf@whatleykallas.com

- **ALEXANDER W. WOOD**
  alexanderwood@paulhastings.com

- **MARGARET O'ROURKE WOOD**
  mwood@wolffsamson.com

- **FREDERICK BARTLETT WULFF , SR**
  bart.wulff@koningrubarts.com

- **KATHRYN K. WYCOFF**
  kathryn.wycoff@lovells.com

- **RICHARD F. YARBOROUGH**
  ryarborough@bakerdonelson.com,jcraft@bakerdonelson.com

- **nefmednwk**
  njdnefmed@njd.uscourts.gov

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
GREGG              ABBOTT
COUNSEL NOT ADMITTED TO USDC-NJ BAR
OFFICE OF THE TEXAS ATTORNEY GENERAL
300 W. 15TH STREET
```

```
9TH FLOOR
AUSTIN, TX 78701
```

**ROBERT        G. ABRAMS**
HOWREY LLP
1299 PENNSYLVANIA AVE NW
WASHINGTON, DC 20004-2402

**FRANCIS        A. ANANIA**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
ANANIA, BANDKLAYDER, BLACKWELL & BAUMGARTEN
NATIONSBANK TOWER
100 SE 2ND STREET
SUITE 4300
MIAMI, FL 33131-2144

**JILL        CHRISTINE ANDERSON**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
FREEBORN & PETERS
311 SOUTH WACKER DRIVE
SUITE 3000
CHICAGO, IL 60606

**ANASTASIA        ANGELOVA**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
SULLIVAN & CROMWELL, LLP
125 BROAD STREET
NEW YORK, NY 10004

**MARK        A. ARONCHICK**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
HANGLEY ARONCHICK SEGAL & PUDLIN
ONE LOGAN SQUARE
27TH FLOOR
PHILADELPHIA, PA 19103

**ANDREW        D. ARONS**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
CHILDRESS, DUFFY & GOLDBLATT, LTD.
515 N. STATE STREET
SUITE 2200
CHICAGO, IL 60610

**VICTORIA        ASHWORTH**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
PAUL, HASTINGS, JANOFSKY & WALKER, LLP
75 EAST 55TH STREET
NEW YORK, NY 10022

**AVERY DENNISON CORPORATION**
,

**Aberfeldy Properties Inc.**
,

**GUY        BURDETTE BAILEY**                    , JR
COUNSEL NOT ADMITTED TO USDC-NJ BAR
BAILEY & DAWES, LC
CONTINENTAL PLAZA
3250 MARY STREET
SUITE 100
COCONUT GROVE, FL 33133-2623

**AMY        E. BARABAS**
CAHILL, GORDON & REINDELL, LLP
80 PINE STREET
NEW YORK, NY 10005-1702

**MARVIN        E. BARKIN**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS,
101 E KENNEDY BOULEVARD
SUITE 2700
PO BOX 1102
TAMPA, FL 33601-1102

**MICHAEL        W. BAXTER**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
COPELAND, COOK, TAYLOR & BUSH
PO BOX 6020
RIDGELAND, MS 39158-6020

**P.        RYAN BECKETT**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
PO BOX 22567
JACKSON, MS 39225-2567

**OWEI        BELLEH**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
BAILEY & DAWES, LC
CONTINENTAL PLAZA
3250 MARY STREET
SUITE 100
COCONUT GROVE, FL 33133-2623

**ANDREW        T. BERRY**
MCCARTER & ENGLISH, LLP
FOUR GATEWAY CENTER
100 MULBERRY STREET

```
PO BOX 652
NEWARK, NJ 07101-0652
```

**VINEET            BHATIA**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
SUSMAN GODFREY LLP
1000 LOUISIANA STREET
SUITE 5100
HOUSTON, TX 77002
```

**DONALD            ARTHUR BLACKWELL**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
ANANIA, BANDKLAYDER, BLACKWELL & BAUMGARTEN
NATIONSBANK TOWER
100 SE 2ND STREET
SUITE 4300
MIAMI, FL 33131-2144
```

**JOHN            ARMANDO BOUDET**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
GREENBERG TRAURIG, PA
PO BOX 4923
ORLANDO, FL 32802-4923
```

**JEREMY            J BRANDON**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
SUSMAN GODFREY, LLP
901 MAIN STREET
SUITE 4100
DALLAS, TX 77202-3775
```

**ROBIN            BREWER**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
BONSIGNORE & BREWER
23 FOREST STREET
MEDFORD, MA 02155
```

**STEVEN            J BRODIE**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
CARLTON FIELDS, PA
4000 BANK OF AMERICA TOWER
100 SE 2ND STREET
PO BOX 19101
MIAMI, FL 33131-9101
```

**RUSSELL            THOMAS BURKE**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
NEXSEN PRUET JACOBS & POLLARD
PO DRAWER 2426
COLUMBIA, SC 29202
```

**KATHLEEN            CURRIE CHAVEZ**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
CHAVEZ LAW FIRM
 416 SOUTH SECOND STREET
GENEVA, IL 60134
```

**AUSTIN            B COHEN**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
```

**JEFFREY            MICHAEL COHEN**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
CARLTON FIELDS
100 SE 2ND STREET
SUITE 4000
PO BOX 019101
MIAMI, FL 33131-9101
```

**GREGORY            K. CONWAY**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
WILLKIE, FARR & GALLAGHER, LLP
1875 K STREET NW
WASHINGTON, DC 20006-1238
```

**CHARLES            GREG COPELAND**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
COPELAND, COOK, TAYLOR & BUSH
PO BOX 6020
RIDGELAND, MS 39158-6020
```

**C.            LARRY CORBO**                                      **, III**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
JACKSON WALKER LLP
1401 MCKINNEY
SUITE 1900
HOUSTON, TX 77010
```

**CHRIS            S. COUTROULIS**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
CARLTON FIELDS, PA
4221 WEST BOY SCOUT BOULEVARD
SUITE 1000
TAMPA, FL 33607
```

**PATRICIA            C. CROWLEY**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
```

PAUL WEISS RIFKIND WHARTON & GARRISON LLP
1615 L STREET NW
SUITE 1300
WASHINGTON, DC 20036-5694

**SHAFFIN**          **ABDUL DATOO**
THOMPSON WIGDOR & GILLY LLP
85 FIFTH AVENUE
NEW YORK, NY 10003

**DUSTIN**          **E DEESE**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
TRENAM, KEMKER, SCHRARF, BARKIN, FRYE, O'NEILL & MULLIS
101 E KENNEDY BOULEVARD
SUITE 2700
PO BOX 1102
TAMPA, FL 33601-1102

**MIRIAM**          **THERESA DOWD**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
BINGHAM MCCUTCHEN, LLP
399 PARK AVENUE
NEW YORK, NY 10022

**ELTON**          **F DUNCAN**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
DUNCAN, COURINGTON & RYDBERG
400 POYDRAS STREET
SUITE 1200
NEW ORLEANS, LA 70130

**DENIS**          **L. DURKIN**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
BAKER & HOSTETLER, LLP
200 S ORANGE AVENUE
SUITE 2300
PO BOX 112
ORLANDO, FL 32801

**MARCI**          **A EISENSTEIN**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
SCHIFF HARDIN, LLP
223 SOUTH WACKER DRIVE
660 SEARS TOWER
CHICAGO, IL 60606

**DAVID**          **T. EMANUELSON**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
HOWREY, LLP
321 N. CLARK STREET
SUITE 3400
CHICAGO, IL 60610

**MARY JANE**          **EDELSTEIN FAIT**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
WOLF HALDENSTEIN ADLER FREEMAN & HERTZ LLP
656 WEST RANDOLPH STREET
SUITE 500W
CHICAGO, IL 60661

**PAUL**          **L. FIELDS**                                        **, JR**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
191 PEACHTREE STREET NE
SUITE 4600
ATLANTA, GA 30309

**MELODY**          **FORRESTER**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
MILLER, FAUCHER & CAFFERTY, LLP
ONE LOGAN SQUARE
18TH & CHERRY STREETS
SUITE 1700
PHILADELPHIA, PA 19103

**JAMES**          **E. FOSTER**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
AKERMAN SENTERFITT
255 S. ORANGE AVENUE
PO BOX 231
ORLANDO, FL 32802-0231

**THOMAS**          **A. FRENCH**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
DUNCAN, COURINGTON & RYDBERG
400 POYDRAS STREET
SUITE 1200
NEW ORLEANS, LA 70130

**CHRISTOPHER**          **G. FRETEL**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
LANDMAN, CORSI, BALLAINE & FORD
120 BROADWAY
NEW YORK, NY 10271

**MICHAEL**          **P. GEISER**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
SUSMAN GODFREY LLP
1000 LOUISIANA STREET
SUITE 5100
HOUSTON, TX 77002

```
NED                GELHAAR
COUNSEL NOT ADMITTED TO USDC-NJ BAR
HANCOCK, ROTHERT & BUNSHOFT, LLP
515 SOUTH FIRUEROA STREET
17TH FLOOR
LOS ANGELES, CA 90071

CHRISTOPHER        C. GILBERT
COUNSEL NOT ADMITTED TO USDC-NJ BAR
UNGER LAW GROUP, PL
PO BOX 4909
ORLANDO, FL 32802-4909

JUSTIN             M. GIOVANNELLI
COUNSEL NOT ADMITTED TO USDC-NJ BAR
CAHILL, GORDON & REINDEL, LLP
80 PINE STREET
NEW YORK, NY 10005

H.                 LEE GODFREY
COUNSEL NOT ADMITTED TO USDC-NJ BAR
SUSMAN GODFREY, LLP
1000 LOUISIANA STREET
SUITE 5100
HOUSTON, TX 77002-5096

RICHARD            C GODFREY
COUNSEL NOT ADMITTED TO USDC-NJ BAR
KIRKLAND & ELLIS LLP
200 E. RANDOLPH DRIVE
CHICAGO, IL 60601

WILLIAM            F. GRACE
COUNSEL NOT ADMITTED TO USDC-NJ BAR
CHAFFE MCCALL
1100 POYDRAS STREET
SUITE 2300
NEW ORLEANS, LA 70163-2300

M.                 DUNCAN GRANT
COUNSEL NOT ADMITTED TO USDC-NJ BAR
PEPPER HAMILTON LLP
3000 TWO LOGAN SQUARE
18TH & ARCH STREETS
PHILADELPHIA, PA 19103-2799

DAVID              C GUSTMAN
COUNSEL NOT ADMITTED TO USDC-NJ BAR
FREEBORN & PETERS
311 SOUTH WACKER DRIVE
SUITE 3000
CHICAGO, IL 60606

RYAN               A. HAAS
COUNSEL NOT ADMITTED TO USDC-NJ BAR
CHILDRESS, DUFFY & GOLDBLATT, LTD.
515 N. STATE STREET
SUITE 2200
CHICAGO, IL 70610-8190

SARAH              EMILY HAGANS
COUNSEL NOT ADMITTED TO USDC-NJ BAR
PAUL, HASTINGS, JANOFSKY & WALKER, LLP
75 EAST 55TH STREET
NEW YORK, NY 10022

WILLIAM            M HANNAY
COUNSEL NOT ADMITTED TO USDC-NJ BAR
SCHIFF HARDIN LLP
223 SOUTH WACKER DRIVE
6600 SEARS TOWER
CHICAGO, IL 60606

AMY                D HARMON
COUNSEL NOT ADMITTED TO USDC-NJ BAR
NEXSEN, PRUET, JACOBS & POLLARD
PO DRAWER 2426
COLUMBIA, SC 29202

MICHAEL            S HILICKI
COUNSEL NOT ADMITTED TO USDC-NJ BAR
BEELER, SCHAD & DIAMOND, PC
332 S. MICHIGAN AVENUE
SUITE 1000
CHICAGO, IL 60604

KEVIN              F HORMUTH
COUNSEL NOT ADMITTED TO USDC-NJ BAR
GREENSFELDER & HEMKER
EQUITABLE BUILDING
10 SOUTH BROADWAY
SUITE 2000
ST LOUIS, MO 63102

JEFFREY            D. HORST
COUNSEL NOT ADMITTED TO USDC-NJ BAR
KREVOLIN & HORST
1175 PEACHTREE STREET, NE
100 COLONY SQUARE
```

SUITE 2150
ATLANTA, GA 30361

**DEBORAH        E HYRB**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
PAUL HASTINGS, JANOFSKY & WALKER, LLP
1055 WASHINGTON BOULEVARD
9TH FLOOR
STAMFORD, CT 06901

**SAMUEL          BAYARD ISAACSON**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
DLA PUPER RUDICK GRAY CARY US LLP
203 N. LASALLE STREET
SUITE #1900
CHICAGO, IL 60603

**DANIEL          L. JOHNS**
WESTERVELT JOHNSON NICOLL & KELLER
FIRST FINANCIAL PLAZA
14TH FLOOR
411 HAMILTON BLDV
PEORIA, IL 61602-1114

**DANIEL          P. JORDAN**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
PO BOX 22567
JACKSON, MS 39225-2567

**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**
CLERK OF THE PANEL
ONE COLUMBUS CIRCLE, NE
THURGOOD MARSHALL FEDERAL JUDICIARY BUIDLING
ROOM G-255 - NORTH LOBBY
WASHINGTON, DC 20002-8004

**STEVEN          A. KANNER**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
MUCH, SHELIST, FREED, DENENBERG, AMENT & RUBENSTEIN, PC
191 N. WACKER DRIVE
SUITE 1800
CHICAGO, IL 60606

**TONY            KIM**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
BEELER, SCHAD & DIAMOND, PC
332 S. MICHIGAN AVENUE
SUITE 1000
CHICAGO, IL 60604

**KMART CORPORATION**
,

**RACHEL          ROSS KRAUSE**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
OGDEN & SULLIVAN, PA
113 S ARMEIA AVENUE
TAMPA, FL 33609

**ROBERT          J KRISS**
COUNEL NOT ADMITTED TO USDC-NJ BAR
MAYER, BROWN, ROWE & MAW LLP
190 S. LASALLE STREET
CHICAGO, IL 60603

**LANDS' END INC.**
,

**EDWIN           MICHAEL LARKIN**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
VENABLE LLP
1270 AVENUE OF THE AMERICAS, 25TH FL
NEW YORK, NY 10020

**THOMAS          LARKIN**
1 SHELDRAKE LANE
PALM BEACH GARDENS, FL 33418

**ELIZABETH       A. LARSEN**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
KIRKPATRICK & LOCKHART, NICHOLSON, GRAHAM, LLP
200 E. RANDOLPH DRIVE
CHICAGO, IL 60601

**ANDREA          J. LAWRENCE**
COHEN TAUBER SPIEVACK & WAGNER P.C.
420 LEXINGTON AVENUE
24TH FLOOR
NEW YORK, NY 10170

**CHRISTOPHER     L. LEBSOCK**
HAUSFELD LLP
44 MONTGOMERY STREET, SUITE 3400
SAN FRANCISCO, CA 94111

**PETER           S. LINDEN**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
KIRBY MCINERNEY LLP
825 THIRD AVENUE

```
                 16TH FLOOR
                 NEW YORK, NY 10022

WILLIAM          HENRY LONDON
                 COUNSEL NOT ADMITTED TO USDC-NJ BAR
                 MUCH, SHELIST, FREED, DENENBERG, AMENT & RUBENSTEIN, PC
                 191 N. WACKER DRIVE
                 SUITE 1800
                 CHICAGO, IL 60605-1615

ERIC             NEAL MACEY
                 COUNSEL NOT ADMITTED TO USDC-NJ BAR
                 NOVACK & MACEY, LLP
                 303 WEST MADISON STREET
                 SUITE 1500
                 CHICAGO, IL 60606

NEAL             S. MANNE
                 COUNSEL NOT ADMITTED TO USDC-NJ BAR
                 SUSMAN GODFREY, LLP
                 1000 LOUISIANA STREET
                 SUITE 5100
                 HOUSTON, TX 77002-5096

GREGORY          L. MAST
                 COUNSEL NOT ADMITTED TO USDC-NJ BAR
                 FIELDS, HOWELL, ATHANS & MCLAUGHLIN
                 ONE MIDTOWN PLAZA
                 SUITE 800
                 1360 PEACHTREE STREET
                 ATLANTA, GA 30309

H.               ALAN MCCALL
                 COUNSEL NOT ADMITTED TO USDC-NJ BAR
                 STOCKWELL SIEVERT
                 PO BOX 2900
                 LAKE CHARLES, LA 70601

FREDRICK         H. MCCLURE
                 COUNSEL NOT ADMITTED TO USDC-NJ BAR
                 PIP RUDNICK LLP
                 101 E. KENNEDY BOULEVARD
                 SUITE 2000
                 TAMPA, FL 33602-5148

DONNA            L. MCDEVITT
                 COUNSEL NOT ADMITTED TO USDC-NJ BAR
                 SKADDEN ARPS SLATE MEAGHER & FLOM LLP
                 333 WEST WACKER DRIVE
                 SUITE 2100
                 CHICAGO, IL 60606

JENNIFER         BATES MCINTYRE
                 COUNSEL NOT ADMITTED TO USDC-NJ BAR
                 PERKINS COIE LLC
                 131 SOUTH DEARBORN
                 SUITE 1700
                 CHICAGO, IL 60603-5559

DOUGLAS          A. MILLEN
                 COUNSEL NOT ADMITTED TO USDC-NJ BAR
                 MUCH, SHELIST, FREED, DENENBERG, AMENT & RUBENSTEIN, PC
                 191 N. WACKER DRIVE
                 SUITE 1800
                 CHICAGO, IL 60605-1615

MICHELE          A. MILLER
                 WESTERVELT JOHNSON NICOLL & KELLER
                 FIRST FINANCIAL PLAZA
                 14TH FLOOR
                 411 HAMILTON BLVD
                 PEORIA, IL 61602-1114

DONALD           JAMES MOONEY
                 ULMER & BERNE
                 NOT ADMITTED TO THE NJ BAR
                 600 VINE STREET
                 SUITE 2800
                 CINCINNATI, OH 45202-2409

TIMOTHY          ALAN NELSEN
                 COUNSEL NOT ADMITTED TO USDC-NJ BAR
                 SKADDEN ARPS SLATE MEAGHER & FLOM LLP
                 333 WEST WACKER DRIVE
                 SUITE 2100
                 CHICAGO, IL 60606

DARREN           K. NELSON
                 COUNSEL NOT ADMITTED TO USDC-NJ BAR
                 PARR, WADDOUPS, BROWN, GEE & LOVELESS
                 185 S STATE STREET
                 SUITE 1300
                 PO BOX 11019
                 SALT LAKE CITY, UT 84111

KEVIN            F. O'MALLEY
                 COUNSEL NOT ADMITTED TO USDC-NJ BAR
                 GREENSFELDER & HEMKER
                 EQUITABLE BUILDING
                 10 SOUTH BROADWAY
```

```
SUITE 2000,
ST LOUIS, MO 63102

ROSEANN          OLIVER
COUNSEL NOT ADMITTED TO USDC-NJ BAR
PERKINS COIE LLC
131 S. DEARBORN
SUITE 1700
CHICAGO, IL 60603-5559

JOHN             ROBERT OLLER
COUNSEL NOT ADMITTED TO USDC-NJ BAR
WILKIE, FARR & GALLAGHER, LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019-6099

DANIEL           A. OSBORN
BEATIE & OSBORN LLP
521 FIFTH AVENUE
34TH FLOOR
NEW YORK, NY 10175

BRIAN            J OSIAS
MCCARTER & ENGLISH, LLP
,

BENJAMIN         R. OSTAPUK
COUNSEL NOT ADMITTED TO USDC-NJ BAR
KIRKLAND & ELLIS LLP
555 CALIFORNIA STREET
SAN FRANCISCO, CA 94104

HOUSTON          S. PARK                              , III
COUNSEL NOT ADMITTED TO USDC-NJ BAR
STEPHENS, LYNN, KLEIN, LA CAVA, HOFFMAN
NORTHBRIDGE CENTER
515 N. FLAGLER DRIVE
SUITE 1600
WEST PALM BEACH, FL 33401-4390

ROBERT           M. PARKER
COUNSEL NOT ADMITTED TO USDC-NJ BAR
PARKER CLAYTON
100 E. FERGUSON
SUITE 1114
TYLER, TX 75702

RONALD           RICHARD PARRY
PARRY DEERING FUTSCHER & SPARKS PSC
NOT ADMITTED TO NEW JERSEY BAR
411 GARRARD STREET
P.O. BOX 2618
COVINGTON, KY 41012-2618

GREGORY          J. PHILLIPS
ULMER & BERNE LLP
NOT ADMITTED TO THE NJ BAR
1660 WEST 2ND STREET
SUITE 1100
CLEVELAND, OH 44113

LAYN             R. PHILLIPS
IRELL & MANELLA, LLP
840 NEWPORT CENTER DRIVE
SUITE 400
NEWPORT BEACH, CA 92660

CARL             H POCDTKE
COUNSEL NOT ADMITTED TO USDC-NJ BAR
DLA PIPER RUDNICK GARY CARY US LLP
203 N. LASALLE STREET
SUITE 1900
CHICAGO, IL 60601

ALAN             SETH RABINOWITZ
COUNSEL NOT ADMITTED TO USDC-NJ BAR
SHEARMAN & STERLING LLP
599 LEXINGTON AVENUE
NEW YORK, NY 10022

L.               JANE RAY
COUNSEL NOT ADMITTED TO USDC-NJ BAR
SUSMAN GODFREY, LLP
1000 LOUISIANA STREET
SUITE 5100
HOUSTON, TX 77002-5096

JAMES            L REED
COUNSEL NOT ADMITTED TO USDC-NJ BAR
LOOPER REED & MCGRAW
1300 POST OAK BOULEVARD
SUITE 2000
HOUSTON, TX 77056

ANDREW           M REIDY
HOWREY LLP
1299 PENNSYLVANIA AVE NW
WASHINGTON, DC 20004-2402

JONATHAN         E. RICHMAN
```

```
                COUNSEL NOT ADMITTED TO USDC-NJ BAR
                DEWEY & LEBOEUF LLP
                125 WEST 55TH
                NEW YORK, NY 10022

PAUL            JEFFREY RIEHLE
                COUNSEL NOT ADMITTED TO USDC-NJ BAR
                SEDGWICK DETERT MORAN & ARNOLD
                ONE EMBARCADERO CENTER
                 16TH FLOOR
                SAN FRANCISCO, CA 94111-3628

JESSICA         G ROUX
                COUNSEL NOT ADMITTED TO USDC-NJ BAR
                DUNCAN, COURINGTON & RYDBERG
                400 POYDRAS STREET
                SUITE 1200
                NEW ORLEANS, LA 70130

THOMAS          LOUIS RUFFNER
                COUNSEL NOT ADMITTED TO USDC-NJ BAR
                HOWREY LLP
                321 NORTH CLARK STREET
                SUITE 3400
                CHICAGO, IL 60610

GEOFFREY        C. RUSHING
                COUNSEL NOT ADMITTED TO USDC-NJ BAR
                SAVERI & SAVERI
                706 SANSOME STREET
                SAN FRANCISCO, CA 94111

ALAN            N. SALPETER
                COUNEL NOT ADMITTED TO USDC-NJ BAR
                190 SOUTH LASALLE STREET
                39TH FLOOR
                CHICAGO, IL 60603

ELIZABETH       BARRY SANDZA
                COUNSEL NOT ADMITTED TO USDC-NJ BAR
                LEBOEUF, LAMB, GREENE & MACRAE, LLP
                1101 NEW YORK AVE., NW
                SUITE 1100
                WASHINGTON, DC 20005-4213

GUIDO           SAVERI
                COUNSEL NOT ADMITTED TO USDC-NJ BAR
                SAVERI & SAVERI, INC.
                706 SANSOME STREET
                SAN FRANCISCO, CA 94111

RICHARD         ALEXANDER SAVERI
                COUNSEL NOT ADMITTED TO USDC-NJ BAR
                SAVERI & SAVERI, INC.
                706 SANSOME STREET
                SAN FRANCISCO, CA 94111

LAWRENCE        WILEY SCHAD
                COUNSEL NOT ADMITTED TO USDC-NJ BAR
                BEELER, SCHAD & DIAMOND, PC
                332 SOUTH MICHIGAN AVENUE
                SUITE 1000
                CHICAGO, IL 60604

KEVIN           R.J. SCHROTH
                Cole, Schotz, Meisel, Forman & Leonard
                900 Third Avenue
                16th Floor
                NEW YORK, NY 10022

STEPHEN         W SCHWAB
                COUNSEL NOT ADMITTED TO USDC-NJ BAR
                DLA PIPER RUDICK GRAY CARY US LLP
                203 NORTH LASALLE STREET
                SUITE #1900
                CHICAGO, IL 60601-1293

JEFFREY         R. SEELY
                COUNSEL NOT ADMITTED TO USDC-NJ BAR
                SUSMAN GODFREY, LLP
                1000 LOUISIANA STREET
                SUITE 5100
                HOUSTON, TX 77002

KELLEY          SEVIN
                COUNSEL NOT ADMITTED TO USDC-NJ BAR
                DUNCAN, COURINGTON & RYDBERG
                400 POYDRAS STREET
                SUITE 1200
                NEW ORLEANS, LA 70130

PAULA           G. SHAKELTON
                ULMER & BERNE LLP
                NOT ADMITTED TO THE NJ BAR
                1660 WEST 2ND STREET
                SUITE 1100
                CLEVELAND, OH 44113

JAMES           S. SHEDDEN
                COUNSEL NOT ADMITTED TO USDC-NJ BAR
```

```
BELLER, SCHAD & DIAMOND, PC
332 S. MICHIGAN AVENUE
SUITE 1000
CHICAGO, IL 60604
```

**PHILIP          RITCHEY SIMS**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
CHAFFE MCCALL
1100 POLYDRAW STREET
SUITE 2300
NEW ORLEANS, LA 70163-2300
```

**DAVID          ANTHONY SIRNA**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
KREVOLIN & HORST
1175 PEACHTREE STREET, NE
100 COLONY SQUARE
SUITE 2150
ATLANTA, GA 30361
```

**J. ANDREW          SJOBLOM**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
HOLME, ROBERTS & OWEN, LLP
299 SOUTH MAIN STREET
SUITE 1800
SALT LAKE CITY, UT 84111-2263
```

**ALAN          PATRICK SMITH**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
CAHILL, GORDON & REINDEL, LLP
80 PINE STREET
NEW YORK, NY 10005
```

**LAYALIZA          KLEIN SOLOVEICHIK**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019
```

**FREDERIC          STANLEY                    , JR**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
STANLEY, DEHLINGER & RASCHER
260 MAITLAND AVENUE
SUITE 1500
ALTAMONTE SPRINGS, FL 32701
```

**JILL          M. STEINBERG**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
FIRST TENNESSEE BANK BUILDING
165 MADISON AVENUE
SUITE 2000
MEMPHIS, TN 39103
```

**RICHARD          L. STONE**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
KIRBY MCINERNEY LLP
825 THIRD AVENUE
16TH FLOOR
NEW YORK, NY 10022
```

**LISA          COLLEEN SULLIVAN**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
HOWREY, SIMON, ARNOLD & WHITE, LLP
321 NORTH CLARK STREET
SUITE 3400
CHICAGO, IL 60610
```

**TIMON          V SULLIVAN**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
OGDEN & SULLIVAN, PA
113 S ARMENIA AVENUE
TAMPA, FL 33609-1006
```

**SUPREME AUTO TRANSPORT, LLC**
```
,
```

**GRETCHEN          S. SWEEN**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
SUSMAN GODFREY, LLP
901 MAIN STREET
SUITE 4100
DALLAS, TX 77202-3775
```

**VIRGINIA          B. TOWNES**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
AKERMAN SENTERFITT
255 S. ORANGE AVENUE
17TH FLOOR
PO BOX 231
ORLANDO, FL 32802-6610
```

**KENNETH          I. TRUJILLO**
```
COUNSEL NOT ADMITTED TO USDC-NJ BAR
1717 ARCH STREET
SUITE 3838
PHILADELPHIA, PA 19103
```

**STEPHEN          TSAI**
```
,
```

**Texas Independent Energy, LLP**
,

**MICHAEL         N. UNGAR**
ULMER & BERNE LLP
NOT ADMITTED TO THE NJ BAR
1660 WEST 2ND STREET
SUITE 1100
CLEVELAND, OH 44113-1448

**MARTIN         B. UNGER**
UNGER LAW GROUP, PL
PO BOX 4909
ORLANDO, FL 32802-4909

**JOHN         L. WARDEN**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
SULLIVAN & CROMWELL
125 BROAD STREET
NEW YORK, NY 10004

**JAMES         PAUL WEHNER                , JR**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
SQUIRE, SANDERS & DEMPSEY, LLP
1201 PENNSYLVANIA AVENUE NW
PO BOX 407
WASHINGTON, DC 20044-0407

**IRA         E. WEINER**
66 PARK STREET
MONTCLAIR, NJ 07042

**DOROTHY         L. WHITE-COLEMAN**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
WHITE, COLEMAN & ASOCIATES, LLC
ONE FINANCIAL PLAZA
500 WASHINGTON AVENUE
SUITE 1080
ST. LOUIS, MO 63101-1236

**CAROLINE         SPINDLER WHITTEMORE**
CAHILL, GORDON & REINDEL, LLP
80 PINE STREET
NEW YORK, NY 10005

**RENEE         WICKLUND**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
KIRKLAND & ELLIS, LLP
200 EAST RANDOLPH STREET
CHICAGO, IL 60601

**JONATHAN         MICHAEL WILAN**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
HUNTON & WILLIAMS LLP
1900 K STREET NW
WASHINGTON, DC 20006

**MARGUERITE         S. WILLIS**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
NEXSEN, PRUET, JACOBS & POLLARD
PO DRAWER 2426
COLUMBIA, SC 29202

**JACK         LOUIS WUERKER**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
SQUIRE, SANDERS & DEMPSEY, LLP
8000 TOWERS CRESCENT DRIVE
14TH FLOOR
VIENNA, VA 22182

**RICHARD         B. ZABEL**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
AKIN, GUMP, STRAUSS, HAVER & FELD, LLP
590 MADISON AVENUE
42ND FLOOR
NEW YORK, NY 10022

**CADIO         ZIRPOLI**
COUNSEL NOT ADMITTED TO USDC-NJ BAR
SAVERI & SAVERI
706 SANSOME STREET
SAN FRANCISCO, CA 94111