FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                              :
                              :
IN RE INSURANCE BROKERAGE     :     **MDL No. 1663**
**ANTITRUST LITIGATION**      :
                              :     **Civil Action No. 04-5184 (CCC)**
**APPLIES TO ALL ACTIONS.**   :     **OPINION**
_____:

**CECCHI**, **District Judge.**

This matter comes before the Court upon Plaintiffs' Motion for Final Approval of the proposed Settlement Agreement[1] and Class Counsel's Motion for attorney fees, reimbursement of expenses, and service award payments to the named Plaintiffs. The Court conducted a Fairness Hearing on July 17, 2013. Now, having considered the arguments by all parties to this matter, the Court sets forth its findings below.[2]

## I.    BACKGROUND

This matter involves several class actions filed against a multitude of insurers and insurance brokers alleging industry-wide conspiracies, in violation of federal antitrust laws, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and state statutory and common law. Plaintiffs are purchasers of insurance, and defendants are insurers (the "Insurer Defendants") and insurance brokers (the "Broker Defendants"). In 2005, Plaintiffs' actions were consolidated by the Judicial Panel on Multidistrict Litigation into MDL 1663, In re Insurance

---

[1] The Settling Defendants are listed in Exhibit A hereto.
[2] The Court considers any new arguments not presented by the parties in their papers or at the Fairness Hearing to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

Brokerage Antitrust Litigation, and transferred to the District of New Jersey for coordinated pretrial proceedings. Upon transfer, the actions were severed into two consolidated dockets – the first pertaining to claims regarding property and casualty insurance (the "Commercial Case"), and the second pertaining to claims regarding employee benefits insurance (the "Employee Benefits Case"). See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 309 (3d Cir. 2010). Pursuant to the Court's Orders, the law firms of Miller Faucher and Cafferty LLP (now Cafferty Clobes Meriwether & Sprengel LLP) and Whatley, Drake & Kallas, LLC (now Whatley Kallas, LLC) were appointed Class Counsel for Plaintiffs.

It is evident that this complex matter has a lengthy procedural history. It has been presided over by three district judges, the subject of several motions to dismiss, and taken on appeal to the Third Circuit. Although the parties are familiar with the history of the case, given that such history bears on the instant motion, a discussion of the proceedings is warranted.

After transfer to this District, Plaintiffs filed a separate consolidated amended complaint in each of the Commercial and Employee Benefits Cases. Shortly thereafter, Judge Hochberg – the district judge then presiding over this matter - granted motions to dismiss Plaintiffs' federal antitrust and RICO claims without prejudice in both cases pursuant to Federal Rule of Civil Procedure 12(b)(6). In re Ins. Brokerage Antitrust Litig., MDL No. 1663, 2006 WL 2850607 (D.N.J. Oct. 6, 2006). In August 2005, Plaintiffs filed a First Consolidated Amended Commercial Class Action Complaint. On November 29, 2005, Defendants filed various motions to dismiss. In lieu of filing an amended pleading, the Court allowed Plaintiffs to file in each case a supplemental statement of particularity and an Amended RICO Case Statement, amplifying Plaintiffs' allegations regarding the alleged antitrust and RICO claims.

Plaintiffs filed the required pleadings, adding a Council of Insurance Agents & Brokers-

based ("CIAB") RICO claim, and defendants once again moved to dismiss. On April 5, 2007, then Chief Judge Garrett E. Brown, Jr. granted defendants' dismissal motions, but allowed Plaintiffs the opportunity to re-plead their antitrust and RICO claims. See In re Ins. Brokerage Antitrust Litig., MDL No. 1663, 2007 WL 1062980 (D. N.J. Apr. 5, 2007) and In re Ins. Brokerage Antitrust Litig., MDL No. 1663, 2007 WL 1100449 (D. N.J. Apr. 5, 2007).

In response, Plaintiffs filed a Second Consolidated Amended Class Action Complaint ("Second Amended Complaint") in each of the Commercial and Employee Benefits cases, along with a Revised Statement of Particularity and a Third Amended RICO Case Statement augmenting the Second Amended Complaints' allegations. For a third time, defendants moved to dismiss under Rule 12(b)(6) and Judge Brown again dismissed Plaintiffs' federal antitrust and RICO claims, this time with prejudice. In re Ins. Brokerage Antitrust Litig., 2007 WL 2533989 (D.N.J. Aug. 31, 2007). Judge Brown also declined to exercise supplemental jurisdiction over Plaintiffs' state law claims. (Id.)

Plaintiffs timely appealed to the Third Circuit. On appeal, the Third Circuit vacated the dismissal of Plaintiffs' federal antitrust and RICO claims relating to the alleged Marsh-Brokered Excess Casualty Insurance conspiracy. In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 383 (3d Cir. 2010).[3] The Third Circuit affirmed the dismissals in all other respects and remanded the remaining claims to this Court.

Following remand of this action by the Third Circuit, the parties actively litigated this matter. In June 2011, the action was transferred from the Hon. Garrett E. Brown, Jr., U.S.D.J. to

---

[3] The Third Circuit also vacated: (1) Judge Brown's decision not to exercise supplemental jurisdiction over Plaintiffs' state law claims; and (2) the dismissal of Plaintiffs' RICO claim based on an alleged CIAB enterprise with respect to the broker defendants. In re Ins. Brokerage Antitrust Litig., 618 F.3d 300 at 383. Plaintiffs dismissed their CIAB enterprise claim with the remaining broker defendant, Wells Fargo, on May 29, 2013, pursuant to Federal Rule of Civil Procedure 41(a)(2). (Docket Entry No. 2528).

the Undersigned.  Shortly thereafter, this Court approved a settlement with multiple defendants.

Plaintiffs and the remaining defendants resumed litigation and concluded discovery in October 2012.   Commencing in the fall of 2012, the parties engaged in a settlement mediation process, under the auspices of former federal Judge Layn Phillips, and submitted to the Court a Settlement Agreement for preliminary approval in March 2013.   This is the fifth Settlement Agreement submitted for approval in this action.   The Court previously approved four related settlements, in an aggregate amount exceeding $259,800.00, with the Zurich, Gallagher, and Marsh Defendants (the "Zurich Settlement," "Marsh Settlement" and "Gallagher Settlement," respectively), as well as additional defendants including AIG, Hartford, Fireman's Fund and Travelers (the "Global Settlement").   In re Ins. Brokerage Antitrust Litig, 579 F.3d 241 (3d Cir. 2009); In re Ins. Brokerage Antitrust Litig., 282 F.R.D. 92 (D.N.J. 2012).   The approvals of the Zurich and Gallagher Settlements were affirmed by the Third Circuit.   In re Ins. Brokerage Antitrust Litig, 579 F.3d 241.   The appeals of the Marsh Settlement and the Global Settlement were dismissed by the Third Circuit pursuant to the agreement of the parties.   (Joint Decl. of Edith M. Kallas and Bryan L. Clobes, Docket Entry No. 2490 (hereinafter "Kallas and Clobes Decl.") ¶ 2; Docket Entry Nos. 1652 & 2111).   This Settlement will resolve the original MDL class action in its entirety.

On April 9, 2013, this Court entered an Order preliminarily approving the proposed settlement and preliminarily certifying a class for settlement purposes (the "Preliminary Approval Order").   Thereafter, Class Counsel filed an application for an award of attorney fees and reimbursement of litigation expenses.   Class Counsel also applied for service awards for each named Plaintiff.

On June 21, 2013, Plaintiffs filed a Motion for Final Approval of the Proposed

Settlement. In response thereto, the Court has received no objections to the Settlement and only two requests for exclusion.[4]

This Court held a Fairness Hearing on July 17, 2013. Having considered the arguments and submissions regarding the preliminarily-approved Settlement Agreement, and having conducted the Fairness Hearing as required by Fed. R. Civ. P. 23(e)(2), the Court grants Plaintiffs' Motion for Final Approval of the Settlement Agreement, certifies the Settlement Class for purposes of settlement only, and approves the requested attorney fee award, service awards, and reimbursement of litigation expenses.

## II.    TERMS OF SETTLEMENT

The Settlement Class consists of "all persons and entities that, during the period from January 1, 1998 through December 31, 2004, inclusive, purchased excess casualty or commercial umbrella insurance policies in any layer of coverage from any insurance company affiliated with any Excess Casualty Insurer Defendant Group through Marsh & McLennan Companies, Inc., or any subsidiaries or affiliates thereof." (Settlement Agreement at 6-7.)

The Settling Defendants deposited a settlement payment totaling $10.5 million (the "Settlement Fund") into an interest-bearing escrow account (the "Settlement Escrow Account") that is being administered pursuant to an escrow agreement. (Pls.' Mot. Br. at 6.) The costs of implementing and administering the Settlement Agreement have been paid from the Settlement Escrow Account. (Id. at 6-7.)

According to the Settlement Agreement's Plan of Allocation (Settlement Agreement, Ex. 7), all Settlement Class members shall be allocated a portion of the Net Settlement Fund. Two of

---

[4] One objection to the request for attorney fees and expenses was filed on behalf of the J. Corman Family Limited Partnership #5. The objection raises no issues regarding the Settlement, but merely addresses Class Counsel's fees and expenses. Accordingly, the objection shall be discussed in connection with the Court's analysis of that request.

the three Settling Defendants, ACE and Chubb, previously entered into settlement agreements with regulatory authorities (the "Regulatory Settlements") for related conduct. Pursuant to the Regulatory Settlements, ACE and Chubb made payments to and received releases from several Settlement Class members. Thus, the Settlement Class members are divided into two groups: those that previously settled in the Regulatory Settlements (the "Regulatory Settlement Class Members") and those that did not (the "Non-Regulatory Settlement Class Members").

Pursuant to the Plan of Allocation, Payments will be made, pro rata, based on the premiums the Settlement Class members paid for their excess casualty insurance policies. The Non-Regulatory Settlement Class members will be allocated 75% of the Net Settlement Fund and will receive a larger pro rata share of their premium payment than the Regulatory Settlement Class Members will receive. The Regulatory Settlement Class Members will be allocated 25% of the Net Settlement Fund and will receive a smaller pro rata share of their premium payment. In addition, as a matter of administrative efficiency, all Settlement Class members will receive a minimum payment of at least $10, and the payments to Settlement Class members that would otherwise receive less than $10 on a straight pro rata basis will be increased to $10.

Class Counsel filed an application for an award of attorney fees in the amount of $3.465 million, which is approximately 33% of the Settlement Fund, and for reimbursement of litigation expenses in the amount of $1,023,188.76. Class Counsel also applied for service awards of $1,000 for each named Plaintiff. (Settlement Agreement at 11-12). Plaintiffs seek to have the attorney fees, litigation expenses, and service awards paid solely from the Settlement Escrow Account. (Pl. Mot. Br. at 7).

## III.  NOTICE

The names and addresses of the Settlement Class members were obtained through: (1) the

existing records of Class Counsel and the claims administrator; and (2) a reasonable search by the Settling Defendants of their records relating to excess casualty or commercial umbrella insurance policies placed through Marsh from January 1, 1998 through December 31, 2004, inclusive.  (Settlement Agreement at 17.)

Notice of the Settlement was disseminated to the Settlement Class as follows: (1) a "Postcard Notice" was mailed to the Settlement Class members (Id., Ex. 4); (2) a "Detailed Notice" (Id., Exhibit 5) was posted on the website www.insurancebrokeragesettlement2013.com and Class Counsel's firm websites; and (3) a "Publication Notice" (Id., Ex. 6) was published two times in all editions of *The New York Times*, *The Wall Street Journal*, *USA Today*, and *Business Insurance*, and in one issue of *RM Magazine*.  (Decl. of Daniel Coggeshall ¶¶ 2-15).  All notices were mailed by May 9, 2013.  (Pl. Mot. Br. at 9.)

The Notices explained that any Settlement Class members desiring to be excluded from or object to the Settlement Agreement should file their requests for exclusion or objections no later than June 28, 2013.    No objections to the Settlement Agreement have been lodged, only one objection to the fee request was filed, and only two requests for exclusion have been received.  (Coggeshall Decl. ¶¶ 16-17; Pls. Reply Br. 2).  According to Plaintiffs, one such request for exclusion was filed on behalf of an entity who does not appear to be a member of the Settlement Class.  (Supplemental Declaration of Daniel Coggeshall ¶ 3.)

## IV.    FINAL APPROVAL

Under Federal Rule of Civil Procedure 23(e), approval of a class settlement is warranted only if the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(4).  Acting as a fiduciary responsible for protecting the rights of absent class members, the Court is required to "independently and objectively analyze the evidence and circumstances before it in order to

determine whether the settlement is in the best interest of those whose claims will be extinguished." In re Cendant Corp. Litig., 264 F.3d 201, 231 (3d Cir. 2001) (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995)). This determination rests within the sound discretion of the Court. Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975). In Girsh, the Third Circuit identified nine factors to be utilized in the approval determination. Girsh, 521 F.2d at 157. These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. Id.

Additionally, a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors. In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004). Finally, settlement of litigation is especially favored by courts in the class action setting. "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." In re General Motors, 55 F.3d 768, 784 (3d Cir. 1995); In re Warfarin Sodium Antitrust Litig., 391 F.3d at 535 (explaining that there is an "overriding public interest in settling class action litigation, and it should therefore be encouraged").

Turning to each of the Girsh factors, the Court finds as follows:

## A.  Complexity, Expense and Likely Duration of the Litigation

The first factor, the complexity, expense and likely duration of the litigation, is considered to evaluate "the probable costs, in both time and money, of continued litigation." Cendant, 264 F.3d at 233 (quoting In re General Motors, 55 F.3d at 812). An antitrust action is a complex action to prosecute. In re Linerboard Antitrust Litig., MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 at *34 (E.D. Pa. June 2, 2004).

This litigation involves federal and state antitrust claims, as well as alleged RICO and common law violations, by numerous brokerage and insurance companies. Over the course of this nine year litigation, Class Counsel have reviewed over sixty million pages of documents and taken over 300 depositions. (Pls.' Mot. Br. at 4-5). Since the case was remanded by the Third Circuit, Class Counsel took 30 additional depositions and expended significant effort reviewing new documentary evidence, including the review of trial, deposition and internal investigation transcripts, as well as nearly 10 million newly-produced documents. (Id. at 5). Class Counsel also engaged in extensive discovery-related motion practice before the magistrate judge in this case. (Id.) Further, as stated above, settlements have already been achieved and approved with the Zurich, Marsh and Gallagher Defendants. See In re Ins. Brokerage Antitrust Litig., 579 F.3d 241 (3d Cir. 2009). A Global Settlement was likewise approved in 2011. See In re Ins. Brokerage Antitrust Litig., 282 F.R.D. 92.

By reaching a favorable Settlement with the remaining Defendants prior to the trial, Class Counsel have avoided significant expense and delay, and have also provided an immediate benefit to the Settlement Class. A trial on the merits would entail considerable expense and would not necessarily end the litigation. As explained by the Court in the prior three settlements, "[t]o proceed with litigation of this matter would undoubtedly become a costly and lengthy process for all parties." In re Ins. Brokerage Antitrust Litig., 282 F.R.D. at 103, 2009 WL

411877, at *4; 2007 WL 2589950, at *4; and 2007 WL 542227, at *4; <u>see also</u> <u>Hall v. AT&T</u> <u>Mobility</u>, No. 07-5325, 2010 WL 4053547, at *7 (D. N.J. Oct. 13, 2010) ("Importantly, of course, settlement also provides the Class with immediate, definite relief.").

As a result, this factor weighs strongly in favor of approval of the Settlement.  <u>See</u> <u>In re</u> <u>Warfarin Sodium Antitrust Litig.</u>, 391 F.3d at 535-36 (finding that the first <u>Girsh</u> factor weighed in favor of settlement because "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial").

**B.  Reaction of the Class to the Settlement**

In determining the reaction of the class to the settlement, this second factor "attempts to gauge whether members of the class support the settlement."  <u>In re Lucent Techs, Inc., Sec.</u> <u>Litig.</u>, 307 F. Supp. 2d 633, 643 (D.N.J. 2004) (internal quotation omitted).  Out of the approximately 20,000 entities that comprise the settlement class, not one has filed an objection to the Settlement.  As the Third Circuit articulated in <u>In re Rite Aid Corp. Sec. Litig.</u>, 396 F.3d 294, 305 (3d Cir. 2005), "such a low level of objection is a 'rare phenomenon.'"  Consequently, the Court concludes that dearth of objections by Class Members to the Settlement weighs in favor of approval.  <u>In re Ins. Brokerage Antitrust Litig.</u>, 2007 WL 2589950, at *5 (approving the Gallagher settlement where only two class members filed objections and noting that such a small number of objections strongly weighs in favor of approval).

**C.  The Stage of the Proceedings and the Amount of Discovery Completed**

The Court should consider the stage of the proceedings and the amount of discovery completed in order to evaluate the degree of case development that Class Counsel have accomplished prior to settlement.  Through this lens, courts can determine whether Class

Counsel had an "adequate appreciation of the merits of the case before negotiating." Cendant, 264 F.3d at 235 (quoting In re General Motors, 55 F.3d at 813). The Court notes that this action has been vigorously litigated for over nine years. During that period, a considerable amount of time, money and effort has been expended by all parties. Indeed, as stated above, the parties deposed nearly 300 persons, and produced over sixty million pages of documents. (Pls.' Mot. Br. at 4-5). There has been substantial discovery and motion practice. Based upon the amount of time Class Counsel expended in the discovery process, in responding to motions to dismiss, and in negotiations, the Court concludes that Class Counsel had a thorough appreciation of the merits of the case prior to settlement. Accordingly, the Court determines that this factor weighs strongly in favor of settlement. See In re Ins. Brokerage Antitrust Litig., 2009 WL 411877, at *5; 2007 WL 2589950, at *5; and 2007 WL 542227, at *6.

### D. Risks of Establishing Liability

This risks of establishing liability should be considered to "examine what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." Cendant, 264 F.3d at 237 (quoting In re General Motors, 55 F.3d at 814). "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" In re Safety Components, Inc. Sec. Litig., 166 F. Supp. 2d 72, 89 (D. N.J. 2001) (quoting In re Prudential Ins. Co. America Sales Practice Litig. Agent Action, 148 F.3d 283, 319 (3d Cir. 1998)).

To succeed at trial, Plaintiffs must prove the elements of their various claims, which include federal antitrust, RICO and state law claims. Summary judgment motions, trial and potential appeals still remain to be completed. As explained in connection with approval of the Marsh, Gallagher, Zurich and Global Settlements, "this case involves difficult factual and legal

issues which would have translated into protracted litigation and accumulating expenses, in both time and money." In re Ins. Brokerage Antitrust Litig., 282 F.R.D. at 104, 2009 WL 411877, at *6; 2007 WL 2589950, at *6; 2007 WL 542227, at *6. Accordingly, the Court concludes that this factor weighs in favor of approval.

### E. Risks of Establishing Damages

This factor, which measures the risks of establishing damages, also "attempts to measure the expected value of litigating the action rather than settling it at the current time." Cendant, 264 F.3d at 239 (quoting In re General Motors, 55 F.3d at 816). Plaintiffs' allegations of damages would require a complicated analysis involving sophisticated expert opinions. Defendants would likely counter with their own experts and a "battle of the experts" would ensue. See In re Ins. Brokerage Antitrust Litig., 282 F.R.D. at 104, 2009 WL 411877, at *6; 2007 WL 2589950, at *6; and 2007 WL 542227, at *7. Plaintiffs acknowledge the inherent risks this situation presents. (Pls.' Mot. Br. at 18-19). Thus, significant risks exist in establishing both liability and damages and this factor weighs strongly in favor of approval.

### F. Risks of Maintaining Class Action Status through Trial

The Court also finds that the sixth factor, the risk of maintaining class action status through trial, weighs in favor of approval of the Settlement. "Because the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537. The Settlement Class has been preliminarily certified for settlement purposes only (Preliminary Approval Order at 7-9), and if this case were to proceed to trial, Plaintiffs acknowledge that Defendants will "undoubtedly" contest class certification on various grounds.

(Pls.' Mot. Br. at 19.)  Thus, Plaintiffs concede that "the eventual outcome of litigating class certification remains uncertain."  (Id.)

### G.  The Settling Defendants' Ability to Withstand a Greater Judgment

In Cendant, the Third Circuit interpreted this factor as concerning "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." 264 F.3d at 240.  While Plaintiffs might concede that Defendants could withstand a larger judgment, they do submit that many settlements are approved even where a settling party has the ability to pay a greater amount.  (Pls.' Mot. Br. at 21.)  See, e.g., In re Warfarin Sodium Antitrust Litig., 391 F.3d at 538; Yong Soon Oh v. AT&T Corp., 225 F.R.D. 142, 150-51 (D. N.J. 2004). In light of this consideration, the Court concludes that this factor weighs in favor of approval.

### H.  The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The eighth and ninth factors, the range of reasonableness of the Settlement Fund in light of the best possible recovery and the attendant risks of litigation, also weigh in favor of settlement.  "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.  The percentage recovery, rather must represent a material percentage recovery to plaintiff in light of all the risks considered under Girsh."  In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235, 263 (D.N.J. 2000) (emphasis added) (citations omitted) (internal quotations marks omitted).  Plaintiffs argue that the significant and immediate monetary and non-monetary benefits that will accrue to Settlement Class members outweigh the risks and uncertainties that Plaintiffs will face at trial.  (Pls.' Mot. Br. at 21-22.)  Plaintiffs also submit that Class Counsel engaged economic experts to evaluate the possible range of damages and that $10.5 million represents a material percentage considering the significant risks if litigation

13

proceeds. (Id.) Therefore, the Court finds that these factors favor settlement.

### I. Summary of <u>Girsh</u> Factors

In conclusion, the Court holds that the nine <u>Girsh</u> factors weigh in favor of approval. The Settlement Agreement was reached after arm's-length negotiations between experienced counsel after completion of a significant amount of discovery and motion practice. Therefore, the Court concludes that the settlement of $10.5 million represents a reasonable and adequate result for the Settlement Class considering the substantial risks Plaintiffs face and the immediate benefits provided by the Settlement.

### J. Plan of Allocation

The Court must determine whether the Plan of Allocation contemplated in the Settlement Agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As noted above, the Settlement Agreement creates a Settlement Fund of $10.5 million. (Settlement Agreement, Ex. 7.) (Id.) This Court concludes that the Plan satisfies the standard set forth in Rule 23(e).

## V. CLASS CERTIFICATION

On April 9, 2013, the Court preliminarily approved the proposed Settlement Agreement and preliminarily certified the Settlement Class. Rule 23 of the Federal Rules of Civil Procedure requires the Court to engage in a two-step analysis to determine whether to certify a class action for settlement purposes. First, the Court must determine if Plaintiffs have satisfied the prerequisites for maintaining a class action as set forth in Rule 23(a). If Plaintiffs can satisfy these prerequisites, the Court must then determine whether the alternative requirements of Rule 23(b) are met. <u>See</u> Fed. R. Civ. P. 23(a) advisory committee's note. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the

proposal is that there be no trial." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997).

Rule 23(a) provides that class members may maintain a class action as representatives of a class

if they show that: (1) the class is so numerous that joinder of all members is impracticable; (2)

there are questions of law or fact common to the class; (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class; and (4) the representative

parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### A. Rule 23(a) Factors

### 1. Numerosity

Courts will ordinarily discharge the prerequisite of numerosity if "the class is so

numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); see also

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiffs "need not precisely

enumerate the potential size of the proposed class, nor [are] plaintiff[s] required to demonstrate

that joinder would be impossible." Cannon v. Cherry Hill Toyota, Inc., 184 F.R.D. 540, 543

(D.N.J. 1999) (citation omitted). "[G]enerally if the named plaintiff demonstrates that the

potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v.

Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001) (citation omitted).

Here, Settlement Class members number more than 20,000. (Pls.' Mot. Br. at 24.) The

Claims Administrator retained by Class Counsel mailed 22,457 Postcard Notices to potential

Class Members. (Coggeshall Decl. ¶ 11). "There can be no serious question that joinder of all

these parties, geographically dispersed throughout the United States, would be impracticable."

In re Corrugated Container Antitrust Litig., 80 F.R.D. 244, 247 (S.D. Tex. 1978). The

Settlement Class thus easily satisfies the numerosity requirement, as "numbers in excess of forty,

particularly those exceeding one hundred or one thousand have sustained the [numerosity]

requirement." Weiss v. York Hosp., 745 F.2d 786, 808 n.35 (3d Cir. 1984); see also In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 342 (3d Cir. 2010) (affirming the district court's certification of the settlement class where the class included "thousands of consumers").

## 2. Commonality

Plaintiffs must demonstrate that there are questions of fact or law common to the class to satisfy the commonality requirement. Fed. R. Civ. P. 23(a)(2). The Supreme Court recently clarified the standard, emphasizing that a plaintiff must show that class members "have suffered the same injury," not merely a violation of the same law. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (quoting Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). Furthermore, the Court held that "commonality is satisfied where common questions generate common *answers* 'apt to drive the resolution of the litigation.'" Wal-Mart, 131 S. Ct. at 2551 (emphasis added). "Their claims must depend upon a common contention[,] . . . [which] must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 131 S. Ct. at 2551. Still, "commonality does not require an identity of claims or facts among class members[;]" rather, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183 (3d Cir. 2001) (citation omitted).

Due to the conspiratorial nature of allegations in antitrust and RICO actions, such cases often present common questions of law and fact and are frequently certified as class actions. See, e.g., In re Flat Glass Antitrust Litig., 191 F.R.D. 472, 478 (W.D. Pa. 1999) (noting that

"allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement") (citation omitted); Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207, 231-32 (D. N.J. 2005) (noting that "even a few common issues can satisfy this requirement where their resolution will significantly advance the litigation" and finding commonality satisfied in a RICO class action) (citation omitted); Hoffman Elec., Inc. v. Emerson Elec. Co., 754 F. Supp. 1070 (W.D. Pa. 1991) (finding commonality where both named plaintiffs and class members sought to bring RICO and breach of fiduciary claims).

In this case, there are many common questions of law and fact. These include, inter alia: (a) whether the Settling Defendants engaged in a contract, combination or conspiracy to allocate the market for the sale of insurance; (b) whether the Settling Defendants' contract, combination or conspiracy reduced and unreasonably restrained competition in the sale of insurance; (c) whether the Settling Defendants participated in a pattern of racketeering activity; and (d) whether the Settling Defendants violated RICO. (Pls.' Mot. Br. at 25.) The commonality requirement is therefore clearly satisfied. See In re Pet Food Prods. Liab. Litig., 629 F.3d at 342-43 (affirming the district court's certification of the settlement class where the commonality prong was satisfied based on the district court's finding that several questions of law and fact were common to the class).

### 3. Typicality

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical of the claims . . . of the class." "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." Barnes v. Am. Tobacco Co., 161 F.3d 127, 141 (3d Cir. 1998)(citation

omitted), <u>cert denied</u>, 526 U.S. 1114 (1999).  As with numerosity, the Third Circuit has "set a low threshold" for satisfying typicality, holding that "[i]f the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established..." <u>Newton</u>, 259 F.3d at 183-84; <u>see also</u> <u>Baby Neal</u>, 43 F.3d at 58.  The typicality requirement "does not mandate that all putative class members share identical claims."  <u>Newton</u>, 259 F.3d at 184; <u>see also</u> <u>Hassine v. Jeffes</u>, 846 F.2d 169, 176-77 (3d Cir. 1988).

Here, the named Plaintiffs' claims are typical of those brought by the Settlement Class members at large.  <u>See, e.g.</u>, <u>In re Pet Food Prods. Liab. Litig.</u>, 629 F.3d at 342 (affirming the district court's certification of the settlement class where "the claims of the class representatives [were] aligned with those of the class members since the claims of the representatives ar[ose] out of the same conduct and core facts"); <u>Grasty v. Amalgamated Clothing and Textile Workers Union</u>, 828 F.2d 123, 130 (3d Cir. 1987), <u>cert. denied</u>, 484 U.S. 1042 (Jan. 25, 1988) (finding the typicality requirement met because the claims brought by the named plaintiffs and those brought on behalf of the class "stem from a single course of conduct").  The claims at issue arise from the same course of conduct by the Settling Defendants.  <u>See</u> <u>In re Ins. Brokerage Antitrust Litig.</u>, 282 F.R.D. at 107, 2009 WL 411877, at *11; 2007 WL 2589950, at *11; and 2007 WL 542227, at *14 (stating that "the claims made by named Plaintiffs and those made on behalf of Settlement Class members are indistinguishable, encompassing identical allegations" that the Settling Defendants violated federal and state antitrust laws, RICO and common law fiduciary duty); <u>see also</u> <u>In re Ins. Brokerage Antitrust Litig.</u>, 579 F.3d at 265.

### 4.  Adequacy of Representation

Finally, the Court must consider adequacy of representation both as to the named Plaintiffs and their Class Counsel under Rules 23(a) and (g).  The class representatives should

"fairly and adequately protect the interests of the class." <u>Georgine v. Amchem Products, Inc.</u>, 83

F.3d 610, 630 (3d Cir. 1996). Such class representatives must not have interests antagonistic to

those of the class. <u>Id.</u> In order to find an "antagonism between [named] plaintiffs' objectives

and the objectives of the [class]," there would need to be a "legally cognizable conflict of

interest" between the two groups. <u>Jordan v. Commonwealth Fin. Sys., Inc.</u>, 237 F.R.D. 132, 139

(E.D. Pa. 2006). In fact, courts have found that a conflict will not be sufficient to defeat a class

action "unless [that] conflict is apparent, imminent, and on an issue at the very heart of the suit."

<u>In re Flat Glass Antitrust Litig.</u>, 191 F.R.D. at 482 (citing <u>In re NASDAQ Market-Makers</u>

<u>Antitrust Litig.</u>, 169 F.R.D. 493, 513 (S.D.N.Y. 1996)).

Here, there is no indication that the named Plaintiffs' interests are antagonistic to those of

the absent class members. "The central questions in this case . . . animate[] in an identical

fashion the claims of both groups. In addressing these common questions, the named Plaintiffs

have advocated as vigorously for the absent class members as they have for themselves." <u>In re</u>

<u>Ins. Brokerage Antitrust Litig.</u>, 282 F.R.D. at 107-108, 2009 WL 411877, at *11; 2007 WL

2589950, at *11; and 2007 WL 542227, at *15.

As to Class Counsel's adequacy, the Court has already found that the two firms serving

as Plaintiffs' Class Counsel have "successfully prosecuted numerous antitrust actions," and that

the individual attorneys representing these firms, Edith Kallas and Bryan Clobes, are "clearly

well qualified and experienced class action attorneys who have been involved in similar . . .

litigation around the country." <u>In re Ins. Brokerage Antitrust Litig.</u>, 282 F.R.D. 92, 108 (D.N.J.

2012), 2009 WL 411877, at *11; 2007 WL 2589950, at *11; and 2007 WL 542227, at *14

(citations omitted); <u>see</u> <u>also</u> <u>In re Pet Food Prods.</u>, 629 F.3d at 343, fn.15; <u>In re Ins. Brokerage</u>

<u>Antitrust Litig.</u>, 579 F.3d 241, 257 (3d Cir. 2009).

With this last requirement satisfied, it is clear that the Settlement Class in this case has demonstrated compliance with the elements of Rules 23(a) and (g).

## B. Rule 23(b)(3) Factors

The Court must next address the question of whether the class action also comports with the requirements of Rule 23(b). Under 23(b)(3), the Court must find both that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); (Pls.' Mot. Br. at 29.) As explained below, the class action in this case readily meets these requirements of predominance and superiority.

### 1. Questions of Law and Fact Common to the Class Predominate

To satisfy the predominance requirement, parties must do more than merely demonstrate a "common interest in a fair compromise;" instead, they must provide evidence that the proposed class is "sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). However, the "presence of individual questions . . . does not mean that the common questions of law and fact do not predominate." Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985) (finding that, in the context of a securities class action, even the presence of individual questions as to the reliance of each individual class member did not negate the predominance of the class' common claims). Given that antitrust class action suits are particularly likely to contain common questions of fact and law, it is not surprising that these types of class actions are also generally found to meet the predominance requirement. In Amchem, the Supreme Court noted that "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust

laws." 521 U.S. at 625. The Third Circuit has also indicated that because the clear focus of an antitrust class action is on the allegedly deceptive conduct of the defendant, and not on the conduct of individual class members, common issues necessarily predominate. In re Warfarin Sodium Antitrust Litig., 391 F.3d at 528-29; accord In re Linerboard Antitrust Litig., 305 F.3d 145, 162 (3d Cir. 2002), cert. denied, 538 U.S. 977 (2003).

Here, as discussed in the sections on commonality and typicality, the claims of both the named Plaintiffs and the absent class members arise from the same set of facts regarding the alleged collusive and anti-competitive behavior of the Settling Defendants. In affirming the prior settlements, the Third Circuit found that common issues predominated. See In re Ins. Brokerage Antitrust Litig., 579 F.3d at 269 (explaining that "whether the named plaintiffs and absent class members were proximately injured by the conduct of the Zurich Defendants is a question that is capable of proof on a class-wide basis"). Consequently, the predominance requirement is satisfied.

## 2. A Class Action is Superior to Other Available Methods

To demonstrate that a class action is "superior to other available methods" for bringing suit in a given case, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." Georgine, 83 F.3d at 632 (citing Katz v. Carte Blanche Corp., 496 F.2d 747, 757 (3d Cir. 1974) (en banc), cert. denied, 419 U.S. 885 (1974)). One consideration is the economic burden class members would bear in bringing suits on a case-by-case basis. Class actions have been held to be especially appropriate where "it would be economically infeasible for [individual class members] to proceed individually." Stephenson v. Bell Atl. Corp., 177 F.R.D. 279, 289 (D.N.J. 1997). Another consideration is judicial economy. In a situation where individual cases would each

"require[] weeks or months" to litigate, would result in "needless duplication of effort" by all parties and the Court, and would raise the very real "possibility of conflicting outcomes," the balance may weigh "heavily in favor of the class action." In re Corrugated Container Antitrust Litig., 80 F.R.D. 244, 252-53 (S.D. Tex. 1978); See also Klay v. Humana, Inc., 382 F.3d 1241, 1270 (11th Cir. 2004) (finding a class action to be the superior method because it would be costly and inefficient to "forc[e] individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts"); Sollenbarger v. Mountain States Tel. & Tel. Co., 121 F.R.D. 417, 436 (D.N.M. 1988) (finding that, in contrast to the multiple lawsuits that members of a class would have to file individually, the "efficacy of resolving all [of] plaintiffs' claims in a single proceeding is beyond discussion").

To litigate the individual claims of the potential class members would place a heavy burden on the judicial system and require unnecessary duplication of effort by all parties. It would not be economically feasible for the Settlement Class members to seek individual redress. The litigation of all claims in one action is far more desirable than numerous, separate actions and therefore the superiority requirement is met.

## VI.    NOTICE

"In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 306 (3d Cir. 1998) (citation omitted). Under Federal Rule of Civil Procedure 23(c), notice must be disseminated by "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.

23(c)(2)(B); See also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 175-76, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (finding that Rule 23 (c) includes an "unambiguous requirement" that "individual notice must be provided to those class members who are identifiable through reasonable effort").

Additionally, in this case, where a settlement class has been provisionally certified and a proposed settlement preliminarily approved, proper notice must meet the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e). Larson v. Sprint Nextel Corp., No. 07-5325, 2009 U.S. Dist. LEXIS 39298, 2009 WL 1228443, at *2 (D.N.J. April 29, 2009). Rule 23(c)(2)(B)-compliant notice must inform class members of: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the class member's right to retain an attorney; (5) the class member's right to exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). Id. at *7; Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii). Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, 177 F.R.D. at 231.

The Court finds that the parties complied with the requirements set forth by Rules 23(c)(2)(B) and 23(e). The notice plan was thorough and included all of the essential elements necessary to properly apprise absent Settlement Class members of their rights. The Postcard Notices included: (1) the nature of the action and the class claims; (2) a description of the class; (3) a description of the Settlement and the benefits provided to class members; (5) the deadline to object to the Settlement or request exclusion from the class; (6) the consequences of requesting exclusion or not doing so; (7) how to get more information about the Settlement; (8) the date of

the Fairness Hearing; (9) and other information regarding the Fairness Hearing. (Coggeshall Decl., Ex. A.) The Postcard Notice was supplemented by a Detailed Notice that was mailed to those Settlement Class members that requested it, and was published on a website dedicated to this Settlement, as well as on the websites of Class Counsel. (<u>Id.</u> ¶¶ 11, 14). The Publication Notice also contained all of the information detailed in the Postcard Notice. Settlement Class members were also directed to the Settlement website and phone number for more details regarding the Settlement, Plan of Allocation, procedures for exclusion or objection, and the documents relating to the Settlement. (<u>Id.</u>, Ex. B). Further, the Postcard Notices, Detailed Notice and Publication Notice were written simply and plainly. The notice methodology was reasonable, and adequate and sufficient notice was given to all persons entitled to be provided with notice. The Court has received no objections to the notice plan, which was consistent with those of numerous other class actions. <u>See, e.g.</u>, <u>In re Linerboard Antitrust Litig.</u>, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004); <u>In re Toys 'R' Us Antitrust Litig.</u>, 191 F.R.D. 347, 350-51 (E.D.N.Y. 2000).

## VII.   ATTORNEY FEES

As stated above, Class Counsel filed an application for an award of attorney fees in the amount of $3.465 million, which is 33% of the Settlement Fund, and for reimbursement of litigation expenses in the amount of $1,023,188.76. Class Counsel also applied for service awards of $1,000 for each of the remaining named Plaintiffs.

The Court previously approved attorney fees, expenses, and incentive awards in connection with the Zurich, Gallagher, Marsh and Global Settlements. The Court found each request reasonable, and granted a total of $54,495,284 in attorney fees and $8,763,908 in

expenses, and $805,000 in incentive awards in connection with the previous settlements.[5]  As stated above, the approvals of the Zurich and Gallagher Settlements were affirmed by the Third Circuit.  In re Ins. Brokerage Antitrust Litig., 579 F.3d 241 (3d Cir. 2009).

Plaintiffs request that the attorney fees, litigation expenses, and service awards be paid solely from the Settlement Fund.  (Pls.' Mot. Br. 7.)  The Settling Defendants do not oppose the sums requested by Class Counsel, and only the J. Corman Family Limited Partnership # 5 (the "Corman Partnership") has filed a general objection to the requested fees.  For the reasons that follow, the Court will grant the requested attorney fees, reimbursement of expenses and incentive award payments.

Class Counsel submit that they have "expended tremendous effort and resources prosecuting the claims, including conducting extensive factual investigation and legal research, drafting and amending pleadings, and working on hard fought and complex discovery and motion practice involving over 100 defendants and numerous third parties, coordinating with scores of individual, tag-along plaintiffs, and successfully prosecuting appeals after dismissal of the action."  (Pls.' Fee Br. 2.)  Further, Class Counsel advise that they "expended approximately 444,110 hours litigating the Action against twenty-five groups of the largest insurers and brokers

---

[5] The attorney fees and expenses granted to Class Counsel in connection with the Zurich, Gallagher, Marsh and Global Settlements breaks down as follows:
(1) Zurich Settlement: Attorney Fees: $25,843,000, Expenses: $3,957,000, Incentives: $150,000, Total: $29,950,000 ("Zurich Fee Opinion").  In re Ins. Brokerage Antitrust Litig., 2007 WL 1652303, at *2, *11 (D.N.J. June 5, 2007).
(2) Gallagher Settlement: Attorney Fees: $6,221,480, Expenses: $2,413,520, Incentives: $250,000, Total: $8,885,000 ("Gallagher Fee Opinion").  In re Ins. Brokerage Antitrust Litig., 2007 WL 2916472, at *2, *9 (D.N.J. Oct. 5, 2007).
(3) Marsh Settlement: Attorney Fees: $12,180,804, Expenses: $1,999,196, Incentives: $320,000, Total: $14,500,000 ("Marsh Fee Opinion").  In re Ins. Brokerage Antitrust Litig., 2009 WL 411856, at *2, *10 (D.N.J. Feb. 17, 2009).
(4) Global Settlement: Attorney Fees: $10,250,000, Expenses: $394,192, Incentives: 85,000 Total: 10,729,192 ("Global Fee Opinion").  In re Ins. Brokerage Antitrust Litig., 282 F.R.D. 92, 125 (D.N.J. 2012).

in the United States, accumulating a total lodestar in excess of $182 million and total expenses in excess of $9.75 million."  (Id. 2-3.)  To further buttress their fee request and illustrate the magnitude of this litigation, Class Counsel also note that the case includes over 2,450 Docket Entries, and has involved hundreds of depositions and meet and confers, the production and review of millions of documents, complex dispositive and class certification motion practice, and briefing and arguing numerous discovery motions and appeals.  (Id.)

In a written submission to the Court, the only objector as to fees, the Corman Partnership, argues that the Court should limit the fees and expenses to 25% of the settlement.  (Corman Objection 1.)  Writing on behalf of the Corman Partnership, Jack Corman argues that "[his] experience in settlements of the nature of this cause is at most an attorneys fees [sic] of 25% of the net amount of the settlement after reasonable expenses"  and indicates his personal belief that the requested fees and expenses in this case are too high.  (Id.)  Corman further states that the Notice does not suggest the net amount that a particular Settlement Class member may receive after the payment of fees and expenses.  (Id.)  Having reviewed the parties' submissions, the Court concludes, as discussed below, that the Corman Partnership's objection is without merit. The sums requested by Class Counsel are reasonable and will be approved.

### A.  Standard for Judicial Approval of Fees

The awarding of fees is within the discretion of the court, so long as the court employs the proper legal standards, follows the proper procedures, and makes findings of facts that are not clearly erroneous.  In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 727 (3d Cir. 2001). District courts are given deference in determining whether a request for attorney fees should be granted.

Notwithstanding this deferential standard, a district court is required by Gunter v.

Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000) and its progeny to clearly articulate the reasons that support its conclusion. The Third Circuit has identified several factors that a district court should consider, including: "(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases." In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 301 (3d Cir. 2005) (citing Gunter, 223 F.3d 190, 195 n.1 (3d Cir. 2000)) (the "Gunter factors"). The district court need not apply these fee award factors in a formulaic way, as certain factors may be afforded more weight than others. In re Rite Aid, 396 F.3d at 301. The district court should engage in a robust assessment of these factors. In re Rite Aid, 396 F.3d at 302; see also Gunter, 223 F.3d at 196 (vacating district court's ruling because the fee-award issue was resolved in a "cursory and conclusory" fashion).

This Court will review the fee application under a percentage of recovery analysis with a lodestar cross-check. "Relevant law evidences two basic methods for evaluating the reasonableness of a particular attorney fee request – the lodestar approach and the percentage-of-recovery approach. Each has distinct attributes suiting it to particular types of cases." Varacallo v. Massachusetts Mut. Life Ins. Co., 226 F.R.D. 207, 248 (D.N.J. 2005) (citing In re Prudential Ins. Co. of Am. Sales Practices Litig. (Prudential I), 962 F. Supp. 450, 478 (D.N.J. 1997)). The percentage-of-recovery method is used in common fund cases, as courts have determined that "class members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund." Varacallo, 226 F.R.D. at 249 (quoting In re AremisSoft Corp. Sec. Litig., 210 F.R.D. 109, 128 (D.N.J. 2002)). "While either the lodestar or percentage-

of-recovery method should ordinarily serve as the primary basis for determining the fee, the Third Circuit has instructed that it is sensible to use the alternative method to double check the reasonableness of the fee." Varacallo, 226 F.R.D. at 249 (Prudential I, 962 F. Supp. at 478).

## B.  Relevant Factors

The Court finds that the totality of the Gunter factors weighs strongly in favor of approval of the fee award for the same reasons provided in this Court's analysis of the Girsh factors.  Given the similarity and overlap of the Gunter and Girsh factors, the Court incorporates by reference the reasons cited above under the Girsh test for approval of the Settlement Agreement.  The Court will now discuss additional reasons that support approval of attorney fees in this matter.

### 1.  Size of the Fund Created and Number of Persons Benefitted

With regard to the size and nature of the Settlement Fund and the number of persons benefitted by the Settlement Agreement, Class Counsel were able to obtain a significant settlement of $10.5 million for the Settlement Class, despite the substantial risks of establishing liability.  Further, each of the approximately 20,000 insurance purchasers who are members of the Settlement Class will receive payment from the Settlement Fund.  (Pls.' Fee Br. 11.)  As Class Counsel notes, such payment augments monies the Settlement Class members have previously received in connection with earlier settlements in this case, as well as settlements by state regulatory authorities with the defendants.  (Id.)  As such, this factor weighs in favor of approval.

### 2.  Presence or Absence of Substantial Objections by Members of the Class to Settlement Terms and/or Fees Requested by Counsel

The absence of substantial objections by Settlement Class members to the fees requested

by Class Counsel strongly supports approval. As previously noted, only the Corman Partnership filed a general objection to the fees sought by Class Counsel. Plaintiffs have provided information that demonstrates a negative multiplier on Class Counsel's lodestar fees of .32. (Pls.' Fee Br. 19.) Moreover, as discussed more fully below, the fees requested by Class Counsel fall within the range of amounts awarded in similar actions when approving attorney fees. As such, the Court overrules the Corman Partnership's objection to the requested fees.

### 3. Skill and Efficiency of Attorneys

Class Counsel include notably skilled attorneys with experience in antitrust, class actions and RICO litigation. (Pls.' Fee Br. 11.) The substantial settlement sum negotiated by Class Counsel, not only in this Settlement, but also in the Zurich, Gallagher, Marsh and Global Settlements, further evidences their competence. In re Warfarin Sodium Antitrust Litig, 212 F.R.D. 231, 261 (D. Del. 2002) (class counsel "showed their effectiveness . . . through the favorable cash settlement they were able to obtain"). Moreover, the Settling Defendants were represented by highly experienced attorneys from prominent firms with a broad background in these matters. In re Warner Commc'n Sec. Litig., 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."). This factor also strongly favors approval of the fee award.

### 4. The Complexity and Duration of the Litigation

This action involves federal and state antitrust laws, RICO and common law. An antitrust action is clearly a complex action to prosecute. In re Linerboard Antitrust Litig., MDL 1261, 2004 U.S. Dist. LEXIS 10532 at *34 (E.D. Pa. June 2, 2004). The claims include alleged conspiracy violations by dozens of large brokerage and insurance companies. Class Counsel engaged in extensive discovery and motion practice, and the litigation of this matter has been a

costly and lengthy process for all parties.  See In re Warfarin Sodium Antitrust Litig., 391F.3d

516, 535-36 (3d Cir. 2004).  In particular, Class Counsel have reviewed millions of documents,

taken hundreds of depositions, participated in dozens of meetings with defense counsel, briefed

several motions, prosecuted appeals, and finally, participated in complex multi-party mediation

proceedings.  (Pls.' Fee Br. 13.)  Thus, this factor weighs heavily in favor of approval of the fee

request.

### 5.  The Risk of Non-Payment

Class Counsel submit that they undertook this action on a contingent fee basis, assuming

a substantial risk that they might not be compensated for their efforts.  (Pls.' Fee Br. 13-14.)

Courts recognize the risk of non-payment as a major factor in considering an award of attorney

fees.  See In re Prudential-Bache Energy Income P'ships Sec. Litig., No. 888, 1994 U.S. Dist.

LEXIS 6621 at *16 (E.D. La. May 18, 1994) (stating that "[c]ounsel's contingent fee risk is an

important factor in determining the fee award.  Success is never guaranteed and counsel faced

serious risks since both trial and judicial review are unpredictable.").  Class Counsel invested

substantial effort and resources to reach this point and obtain this favorable Settlement

Agreement.  Accordingly, this factor weighs in favor of approval.

### 6.  The Amount of Time Devoted to the Litigation

Class Counsel argue that they have devoted a tremendous amount of time to this

litigation.  Specifically, through February 28, 2013, Class Counsel indicate that they have spent

over 444,110 hours in prosecuting this case on behalf of the Settlement Class for an aggregate

lodestar of approximately $182,601,243.  (Pls.' Fee Br. 15.)  Additionally, Class Counsel assert

that they have incurred approximately $9.75 million in litigation expenses to date.  (Id.)

Throughout this action, over fifty law firms were involved on behalf of Plaintiffs and specific

work was allocated to different firms to avoid duplication. (Id.) Based on the amount of time expended on this matter and the number of attorneys involved in the negotiation and ongoing litigation, this factor weighs strongly in favor of approval.

### 7. Awards in Similar Cases

The Court must also take into consideration amounts awarded in similar actions when approving attorney fees. Specifically, the Court must: (1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market. In re Remeron Direct Purchaser Antitrust Litig., No. 03-0085, 2005 U.S. Dist. LEXIS 27013, *42-46 (D.N.J. Nov. 9, 2005). "Courts within the Third Circuit often award fees of 25% to 33% of the recovery." Id. at *42 (citing In re Linerboard Antitrust Litig., No. 1261, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) (approving 30% fee of a $202 million settlement in an antitrust class action)); In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 822 (3d Cir. 1995) (explaining that in common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"); Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 150 (E.D. Pa. 2000) (explaining that "the award of one-third of the fund for attorneys' fees is consistent with fee awards in a number of recent decisions within this district"); In re Linerboard Antitrust Litig., No. 1261, 2004 U.S. Dist. LEXIS 10532 at *43 (citing with approval a recent Federal Judicial Center study that found that "in federal class actions generally median attorney fee awards were in the range of 27 to 30 percent"). The requested award in this matter is 33%. (Pls.' Fee Br. 1.) This percentage has regularly been found acceptable in common fund settlements in this District. See e.g., In re Merck & Co., Inc., Vytorin ERISA Litig., No. 08-285, 2010 WL 547613, at *13-14 (D.N.J. Feb. 9, 2013) (awarding attorney fee of

33%, plus expenses, from the common fund); <u>Milliron v. T-Mobile USA, Inc.</u>, No. 08-4149, 2009 WL 3345762, at *14 (D.N.J. Sept. 10, 2009) (approving attorney fee of 33 1/3%, plus expenses, on common fund amount of $13.5 million).

The second part of this analysis addresses whether the requested fee is consistent with a privately negotiated contingent fee in the marketplace. The percentage-of-the-fund method of awarding attorney fees in class actions should approximate the fee that would be negotiated if the lawyer were offering the services in the private marketplace. <u>In re Remeron Direct Purchaser Antitrust Litig.</u>, 2005 U.S. Dist. LEXIS 27013 at *46-7. "The object . . . is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." <u>In re Continental Illinois Sec. Litig.</u>, 962 F.2d 566, 572 (7th Cir. 1992); <u>In re Synthroid Marktg. Litig.</u>, 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.").

To determine the market price for an attorney's services, the Court should look to evidence of negotiated fee arrangements in comparable litigation. <u>Continental Illinois Sec. Litig.</u>, 962 F.2d at 573 (stating that the judge must try to simulate the market "by obtaining evidence about the terms of retention in similar suits, suits that differ only because, since they are not class actions, the market fixes the terms"). "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation." <u>In re Remeron Direct Purchaser Antitrust Litig.</u>, 2005 U.S. Dist. LEXIS 27013 at *46. <u>See, e.g.</u>, <u>In re Ikon Office Solutions, Inc.</u>, 194 F.R.D. 166, 194 (E.D. Pa. 2000); <u>In re Orthopedic Bone Screws Prods. Liab. Litig.</u>, No. 97-381, 2000 U.S. Dist. LEXIS 15980 at *7 (E.D. Pa. Oct. 23, 2000); <u>Durant v.</u>

Traditional Invest., Ltd., No. 88-9048, 1992 U.S. Dist. LEXIS 12273 at *7 n.7 (S.D.N.Y. Aug. 12, 1992). Accordingly, Class Counsel's requested 33% fee amount is within the range of privately negotiated contingent fees.

### 8. Conclusion

In sum, for all the reasons stated above, the Court concludes that the requested fee by Class Counsel is fair and reasonable according to the Gunter factors.

### C. Lodestar Cross-Check

The Third Circuit has stated that when an award is based on a percentage of recovery, it is sensible to confirm the reasonableness of the award using the lodestar method. In re Rite Aid, 396 F.3d at 305-06. The lodestar analysis is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." Id. at 305. When performing this analysis, the court "should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." Id. at 306. Thus, the lodestar multiplier is equal to the proposed fee award divided by the product of the total hours and the blended billing rate. If the lodestar multiplier is large, the award calculated under the percentage of recovery method may be deemed unreasonable, and a trial judge may consider reducing the award appropriately. Id. at 306. The multiplier, however, "need not fall within any pre-defined range, provided that the [d]istrict [c]ourt's analysis justifies the award." Id. at 307. Further, the Court is not required to engage in this analysis with mathematical precision or "bean-counting." Id. at 306. Instead, the Court may rely on summaries submitted by the attorneys and is not required to scrutinize every billing record. Id. at 306-07.

In the present case, the proposed fee award presented by Class Counsel is 33% of the Settlement Fund. Class Counsel submit that the total number of hours expended by the attorneys and paraprofessionals through February 28, 2013[6] is 444,110 hours. (Pls.' Fee Br. 19.) Class Counsel contend that their lodestar to February 28, 2013 was $182,601,243. (Id.) The Court further notes that this lodestar value is based on the blended billing rates of all attorneys and paraprofessionals who were involved with this case. Accordingly, the Court accepts these calculations as the basis for performing the lodestar cross-check. This results in a multiplier of .32. (Pls.' Fee Br. 19.) This negative multiplier is within the same range found to be acceptable by this Court in the Zurich Settlement. (Id.) See also In re Cendant Corp. PRIDES Litig., 243 F.3d at 734, 742 (approving a suggested multiplier of three and stating that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.").

The reasonable attorney rate is determined by reference to the marketplace. Missouri v. Jenkins, 491 U.S. 274, 285 (1989) (explaining that "we have consistently looked to the marketplace as our guide to what is 'reasonable'") (citation omitted). The Third Circuit, as well as other courts, has held that an attorney's customary billing rate is the proper starting point for calculating fees. Cunningham v. City of McKeesport, 753 F.2d 262, 268 (3d Cir. 1985). However, the Third Circuit has determined that once a party meets its prima facie burden of establishing the "community market rate," and the opposing party does not produce

_____

[6] The Court will rely upon the February 28, 2013 date in performing the lodestar cross-check. See Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207, 253 (D.N.J. 2005) (finding that the fee award will be the sole compensation for counsel "despite the continuing responsibilities [counsel] will have in responding to Class Member inquiries, assisting the Claim Evaluator, consulting on individual cases, and any post-judgment proceedings and appeals"); In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013 (D.N.J. 2005) ("Class Counsel will likely incur hundreds of additional hours in connection with administering the settlement, without prospect for further fees.").

contradictory evidence, the trial court does not have discretion to adjust the requested rate downward.  Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1036 (3d Cir. 1996).  The market rate to be used is the current prevailing market rate at the time the request for fees is made.  Lanni v. New Jersey, 259 F.3d 146, 149-50 (3d Cir. 2001).

In their submissions, Class Counsel summarized the hours, costs, and their lodestar through February 28, 2013.  It appears that the hourly rate being used by Class Counsel is approximately $411.16.[7]  Based on only one objection to the attorney fees request, the experience of Class Counsel and the comparable hourly rates in the Marsh, Gallagher, Zurich and Global Settlements, this Court will consider the approximate hourly rate as reasonable.

### D.  The Corman Partnership's Objection

As previously noted, the Corman Partnership filed a general objection to the aforementioned fee award.  The Corman Partnership proposes, without providing any support, that the fee award should be limited to 25%, rather than 33% of the settlement.   Above, the Court details the reasonableness of the fee award sought by Class Counsel and explains that the fee request is well within the range of fees deemed acceptable by courts when approving settlements in similar cases.  Thus, the Court finds that the Corman Partnership's objection lacks merit and requires no further discussion.

### E.  Expenses

Class Counsel also request reimbursement for expenses incurred during this litigation.  Although unreimbursed litigation expenses total $1,039,004.45, Class Counsel seek

---

[7] The Court arrived at this rate by dividing the total lodestar amounts by the total hours worked. Through February 28, 2013, the total hours worked was 444,110 and the lodestar provided was $182,601,243.  (Kallas and Clobes Decl., Ex. A.)  The result is a rate of $411.16 per hour.  The hourly rate used by Class Counsel in the Marsh Settlement was approximately $378.60.  The hourly rate used by Class Counsel in the Gallagher Settlement was approximately $363.76.  The hourly rate used by Class Counsel in the Zurich Settlement was approximately $365.90.  The hourly rate used by Class Counsel in the Global Settlement was approximately $380.58.

reimbursement for $1,023,188.76[8] of those expenses. (Pls.' Fee Br. 20; Pls.' Reply Br. 1.) "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." In re Safety Components Int'l, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing Abrams v. Lightolier, Inc., 50 F.3d 1204, 1225 (3d Cir.1995)). Class Counsel contend that these expenses reflect costs expended for the purposes of litigating this action, including fees for experts, costs associated with creating and maintaining electronic document databases, participating in mediation, travel and lodging expenses, and photocopying, mailing, telephone and deposition transcription costs. (Kallas and Clobes Decl. at ¶¶ 24-25). The Court concludes that these expenses were reasonably and appropriately incurred during the prosecution of this case based on the summaries provided. Consequently, the Court approves Class Counsel's request for reimbursement.

### F. Incentive Awards

Class Counsel also request that the Court approve the payment of incentive awards to each of the eight named Plaintiffs in the amount of $1,000. The total incentive awards requested for all eight named Plaintiffs is therefore $8,000. Class Counsel contend that the named Plaintiffs spent a significant amount of their own time and expense litigating these cases for the benefit of the absent members of the Settlement Class and should be compensated for their efforts. See, e.g., In re Lorazepam & Clorazepate Antitrust Litig., 205 F.R.D. 369, 400 (D.D.C. 2002) ("Incentive awards are 'not uncommon in class action litigation and particularly where . . . a common fund has been created for the benefit of the entire class.'"). Class Counsel also argue that the amount requested for each class representative is less than the amounts previously

---

[8] This amount represents the total expenses incurred by Class Counsel since the action was remanded to this Court by the Third Circuit. (Pls.' Fee Br. 20.) Class Counsel further reduced this request from the $1,035,000 originally requested in their Fee Brief after receiving invoice credits from their data hosting service provider. (Pls. Reply Br. 4).

awarded to the named Plaintiffs in the Zurich, Marsh, Gallagher and Global Settlements. (Kallas and Clobes Decl. ¶ 26). Finally, Class Counsel argue that the amount requested is similar to awards granted by other courts in similar cases. See, e.g., Nichols, 2005 U.S. Dist. LEXIS 7061 at *64 (approving $5,000 to each third-party payor named plaintiff and $2,500 to each consumer named plaintiff); In re Linerboard Antitrust Litig., 2004 U.S. Dist. LEXIS 10532 at *58 (approving $25,000 to each representative of the class). No objections were made to the requested amount, and as such, this Court will approve the incentive awards for each named Plaintiff, totaling $8,000.

### G. Conclusion

For the foregoing reasons, the Court approves Class Counsel's request for attorney fees, reimbursement of expenses and incentive award payments.

## VIII.  CONCLUSION

Because the named Plaintiffs have satisfied all of the requirements of Fed. R. Civ. P. 23, this Court certifies the proposed class for purposes of this Settlement and approves the Settlement Agreement. The Court also grants the applications of Class Counsel for attorney fees, reimbursement of expenses and incentive award payments. An appropriate Order and Judgment accompany this Opinion.


**Dated: August 1, 2013**                                   *s/Claire C. Cecchi*
                                                      **HON. CLAIRE C. CECCHI**
                                                      **United States District Judge**

**Attachment A – Settling Defendants**

- ACE Defendants: ACE Limited, ACE INA Holdings, Inc., ACE USA, Inc., ACE American Insurance Company, Westchester Surplus Lines Insurance Company, Illinois Union Insurance Company, Indemnity Insurance Company of North America, ACE Group Holdings, Inc., ACE US Holdings, Inc., Westchester Fire Insurance Company, INA Corporation, INA Financial Corporation, INA Holdings Corporation, ACE Property and Casualty Insurance Company, Pacific Employers Insurance Company

- Chubb Defendants: The Chubb Corporation, Federal Insurance Company, Executive Risk Indemnity Inc., Vigilant Insurance Company, Chubb & Son Inc.

- Munich Re Defendants: Munich Reinsurance Company, American Re Corporation, n/k/a Munich Re America Corporation, American Re-Insurance Company, n/k/a Munich Reinsurance America, Inc., American Alternative Insurance Corporation