ROBBINS GELLER RUDMAN
  & DOWD LLP
JOHN J. STOIA, JR.
RACHEL L. JENSEN
THOMAS R. MERRICK
CARMEN A. MEDICI
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re INSURANCE BROKERAGE ANTITRUST LITIGATION | ) ) ) ) |
| This Document Relates To: | ) ) ) |
| *Lincoln Adventures, LLC, et al. v. Those Certain Underwriters at Lloyd's London Members of Syndicates, et al.,* No. 2:08-cv-00235-CCC-JAD | ) ) ) ) ) ) |

Master Docket No. 04-5184(CCC)

PLAINTIFFS' REPLY
MEMORANDUM IN SUPPORT OF
MOTION FOR LEAVE TO AMEND

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..........................................................................1

II.   DEFENDANTS MISCHARACTERIZE THE ALLEGATIONS...................3

    A.    The RAC Alleged a Lloyd's Enterprise and Conspiracy.....................3

    B.    The Anticompetitive Nature of the Subscription Model at
        Lloyd's Was Pleaded in the RAC .....................................................4

    C.    Details about the Role of Lloyd's Corp. and FPD Were Learned
        in Discovery This Year ...................................................................5

    D.    Discovery Has Provided the Details of the LMA's Role.....................5

III.  DEFENDANTS DO NOT CARRY THEIR BURDEN OF
     SHOWING *UNDUE* PREJUDICE .................................................6

    A.    Defendants' Suggestion the SAC Presents an "Entirely New"
        Theory Contradicts Their Prior Representations...................................7

    B.    Any Delay Is Speculative and Not Unduly Prejudicial........................9

    C.    The Addition of New Class Representatives and Defendants
        Does Not Constitute Undue Prejudice ................................................13

IV.   DEFENDANTS DO NOT CARRY THEIR BURDEN TO SHOW
     THE AMENDMENT WOULD BE FUTILE.................................................14

    A.    Plaintiffs' Sherman Act Claims Are Not Futile ..................................14

        1.    The SAC Adequately Alleges *Per Se* Violations .....................14

        2.    The SAC Alleges Violations under the Rule of Reason...........18

    B.    Plaintiffs' Sherman Act Claims Are Not Time-Barred........................20

    C.    Plaintiffs' Claims Are Properly Asserted in This Forum.....................22

        1.    The FTAIA Cannot Shield Defendants from Liability.............22

**Page**

2.    Comity Does Not Require Dismissal........................................22

3.    Defendants Have Not Met Their Heavy Burden of
      Showing *Forum Non Conveniens* ("*FNC*") Warrants
      Dismissal ....................................................................................23

902272_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. Lloyd's of London*,
   94 F.3d 923 (4th Cir. 1996) ................................................................23

*Am. Home Assur. Co. v. Ins. Corp. of Ireland, Ltd.*,
   603 F. Supp. 636 (S.D.N.Y. 1984) ....................................................25

*Am. Needle, Inc. v. NFL*,
   560 U.S. 183 (2010).......................................................................1, 15

*Arizona v. Maricopa County Med. Soc'y*,
   457 U.S. 332 (1982).............................................................................17

*Berger v. Edgewater Steel Co.*,
   911 F.2d 911 (3d Cir. 1990) ..........................................................6, 11

*Bodner v. Banque Paribas*,
   114 F. Supp. 2d 117 (E.D.N.Y. 2000) ...............................................24

*Bravaman v. Bassett Furn. Indus., Inc.*,
   64 F.R.D. 7 (E.D. Pa. 1974)...............................................................13

*Brown Shoe Co. v. U.S.*,
   370 U.S. 294 (1962).............................................................................20

*Burke v. Quartey*,
   969 F. Supp. 921 (D.N.J. 1997) .........................................................24

*Capital Currency Exch. v. Nat'l Westminster Bank PLC*,
   155 F.3d 603 (2d Cir. 1998) ...............................................................24

*Carl Schroeter GmbH v. Crawford & Co.*,
   No. 09-946, 2009 U.S. Dist. LEXIS 43488
   (E.D. Pa. May 19, 2009) .....................................................................25

*Cavlam Bus. Ltd. v. Certain Underwriters at Lloyd's, London*,
   No. 08-cv-2225, 2009 U.S. Dist. LEXIS 20824
   (S.D.N.Y. Mar. 16, 2009) ...................................................................25

**Page**

*Cont'l Airlines, Inc. v. United Air Lines, Inc.*,
    120 F. Supp. 2d 556 (E.D. Va. 2000) ................................................18

*Cooper v. Ficarra*,
    No. 96-7520, 1997 U.S. Dist. LEXIS 14217
    (E.D. Pa. Sept. 12, 1997) ................................................13

*Cruz v. City of Camden*,
    898 F. Supp. 1100 (D.N.J. 1995) ................................................21

*Cureton v. NCAA*,
    252 F.3d 267 (3d Cir. 2001) ................................................6, 11

*Deakyne v. Comm'rs of Lewes*,
    416 F.2d 290 (3d Cir. 1969) ................................................9

*Dole v. Arco Chem. Co.*,
    921 F.2d 484 (3d Cir. 1990) ................................................2

*Donachy v. Intrawest U.S. Holdings, Inc.*,
    No. 10-4038, 2011 U.S. Dist. LEXIS 79567
    (D.N.J. July 21, 2011) ................................................23

*Dunbar v. Google, Inc.*,
    No. 5:12-cv-003305-LHK, 2012 U.S. Dist. LEXIS 177058
    (N.D. Cal. Dec. 12, 2012) ................................................11

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
    623 F.3d 147 (3d Cir. 2010) ................................................25

*Foman v. Davis*,
    371 U.S. 178 (1962) ................................................3

*Ford Motor Co. v. Edgewood Props., Inc.*,
    No. 06-1278, 2011 U.S. Dist. LEXIS 45368
    (D.N.J. Apr. 27, 2011) ................................................11

**Page**

*Glover v. FDIC*,
    698 F.3d 139 (3d Cir. 2012) ................................................................22

*Hanover Shoe v. United Mach. Corp.*,
    392 U.S. 481 (1968)...............................................................20, 21

*Harrison Bev. Co. v. Dribeck Imps., Inc.*,
    133 F.R.D. 463 (D.N.J. 1990)...........................................................14

*Hartford Fire Ins. Co. v. Cal.*,
    509 U.S. 764 (1993)...............................................................22, 25

*In re Bristol-Myers Squibb Sec. Litig.*,
    228 F.R.D. 221 (D.N.J. 2005)...........................................................10, 11

*In re Buspirone Patent & Antitrust Litig.*,
    185 F. Supp. 2d 365 (S.D.N.Y. 2002) ................................................21

*In re Cardizem CD Antitrust Litig.*,
    332 F.3d 896 (6th Cir. 2003) ............................................................17

*In re Currency Conversion Fee Antitrust Litig.*,
    MDL No. 1409, 2005 U.S. Dist. LEXIS 31251
    (S.D.N.Y. Dec. 7, 2005) ...................................................................13

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010) .......................................................16, 23

*In re K-Dur Antitrust Litig.*,
    338 F. Supp. 2d 517 (D.N.J. 2004)..................................................21

*In re Mortgage Lenders Network, USA, Inc.*,
    395 B.R. 871 (D. Del. 2008)..............................................................11

*Lexington Ins. Co. v. Forrest*,
    263 F. Supp. 2d 986 (E.D. Pa. 2003)................................................22

*Long v. Wilson*,
    393 F.3d 390 (3d Cir. 2004) .............................................................11

**Page**

*Lundy v. Adamar of N.J.*,
   34 F.3d 1173 (3d Cir. 1994) ...............................................................6

*Magla Prods., LLC v. Chambers*,
   No. 06-0115 (PGS), 2006 U.S. Dist. LEXIS 71246
   (D.N.J. Sept. 29, 2006) ...................................................................24

*Meijer, Inc. v. 3M*,
   No. 04-5871, 2005 U.S. Dist. LEXIS 13995
   (E.D. Pa. July 13, 2005)..................................................................21

*Minn-Chem, Inc. v. Agrium, Inc.*,
   683 F.3d 845 (7th Cir. 2012) ...........................................................22

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents*,
   468 U.S. 85 (1984) (Defs' Br. ) .......................................................17

*NHL Players' Ass'n v. Plymouth Whalers Hockey Club*,
   325 F.3d 712 (6th Cir. 2003) (Defs' Br. )........................................17

*Nike, Inc. v. E. Ports Custom Brokers, Inc.*,
   No. 11-cv-04390 (CCC)(JAD), 2013 U.S. Dist. LEXIS 113957
   (D.N.J. Aug. 13, 2013)..............................................................*passim*

*Pa. Dental Ass'n v. Med. Serv. Ass'n*,
   815 F.2d 270 (3d Cir. 1987) ...........................................................21

*Princeton Football Partners LLC v. Football Ass'n of Ireland*,
   No. 11-cv-5227, 2012 U.S. Dist. LEXIS 101681
   (D.N.J. July 23, 2012).....................................................................24

*Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004) .............................................................9

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992) .........................................................23

902272_1

**Page**

*Roby v. Corp. of Lloyd's,*
  996 F.2d 1353 (2d Cir. 1993) ............................................................24

*Rowe v. E.I. du Pont de Nemours & Co.,*
  No. 06-1810, 2010 U.S. Dist. LEXIS 16185
  (D.N.J. Feb. 24, 2010) ...................................................................6

*Schaghticoke Tribe of Indians v. Kent School Corp.,*
  423 F. Supp. 780 (D. Conn. 1976)....................................................12

*Sudduth v. Occidental Peruana, Inc.,*
  70 F. Supp. 2d 691 (E.D. Tex. 1999)...............................................23

*Todd v. Exxon Corp.,*
  275 F.3d 191 (2d Cir. 2001) .............................................18, 19, 20

*Toys "R" Us, Inc. v. FTC,*
  221 F.3d 934 (7th Cir. 2000) ..........................................................16

*Travelers Indem. Co. v. Losco Group, Inc.,*
  150 F. Supp. 2d 556 (S.D.N.Y. 2001) ............................................7

*Trueposition, Inc. v. LM Ericsson Tel. Co.,*
  No. 11-4574, 2012 U.S. Dist. LEXIS 29294
  (E.D. Pa. Mar. 6, 2012).................................................................25

*U.S. v. Andreas,*
  216 F.3d 645 (7th Cir. 2000) ..........................................................14

*U.S. v. Apple Inc.,*
  Nos. 12 Civ. 2826 (DLC), 12 Civ. 3394 (DLC),
  2013 U.S. Dist. LEXIS 96424 (S.D.N.Y. July 10, 2013)................16

*U.S. v. Brown Univ.,*
  5 F.3d 658 (3d Cir. 1993) ...............................................................19

*U.S. v. Topco Assocs., Inc.,*
  405 U.S. 596 (1972)........................................................................15

902272_1

**Page**

*Van Buskirk v. Carey Canadian Mines, Ltd.*,
   760 F.2d 481 (3d Cir. 1985) ............................................................20

*Verhein v. South Bend Lathe, Inc.*,
   598 F.2d 1061 (7th Cir. 1979) .........................................................11

*Wolfson v. Lewis*,
   168 F.R.D. 530 (E.D. Pa. 1996)....................................................2, 14

*Zimmerman v. Schaeffer*,
   654 F. Supp. 2d 226 (M.D. Pa. 2009)................................................8

## STATUTES, RULES AND REGULATIONS

12 Phillip Areeda and Herbert Hovenkamp,
   Antitrust Law: An Analysis of Antitrust Principles and Their Application,
   (3d ed. 2007)
      ¶501 at 109 ..............................................................................19
      ¶2033b at 229 ..........................................................................15

15 U.S.C.
   §1.............................................................................................15

Federal Rules of Civil Procedure
   Rule 15 .......................................................................................2
   Rule 15(c)...................................................................................21
   Rule 30(b)(6)...............................................................................12

Manual for Complex Litigation (4th)
   §21.26.......................................................................................13

RICO .....................................................................................2, 4, 14

## I.     INTRODUCTION

Defendants'[1] principal objection to the proposed SAC[2] is that the claims are, purportedly, "entirely new."  *See* Defs' Br. at 1.  Defendants complain that the SAC targets Lloyd's Corporation ("Lloyd's Corp.") in its oversight role in the Lloyd's market and "the basic manner in which insurance has been sold at Lloyd's for hundreds of years."[3]  *Id.*  However, even before this case was permitted to proceed to discovery last year, Defendants complained Plaintiffs were attacking the way business gets done in the Lloyd's market, particularly the role of Lloyd's Corp. and the subscription model.  *See* Dkt. No. 2503 (Defs' Reply MTD) at 10 ("Plaintiffs contend that the Lloyd's Corporation 'plays a very active role in supporting the Syndicates' and the LMA is a 'vehicle through which Defendants can collude.'  Plaintiffs also

---

[1]   All capitalized and abbreviated terms have the same meaning as in Plaintiffs' Memorandum in Support of Motion for Leave to Amend ("Pls' Br."), filed November 4, 2013.  Defendants' Opposition, filed December 6, 2013, is called "Defs' Br."

[2]   On November 4, 2013, Plaintiffs submitted the SAC under temporary seal. Pursuant to the Confidentiality Order, the temporary seal expired "twenty-one [21] days after filing" as Defendants did not stand on any of their prior confidentiality designations.  Dkt. No. 216, ¶7.  Plaintiffs confirmed with Defendants that they did not object to the public filing of the SAC; thus, the SAC is filed, unsealed, as Exhibit 1 to the Declaration of Rachel L. Jensen in Support of this Reply ("Jensen Decl.").

[3]   Though for another day, the defense "this is how we have always done it" will not save Defendants.  *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 184 (2010) ("[A] history of concerted activity does not immunize conduct from §1 scrutiny.  'Absence of actual competition may simply be a manifestation of the anticompetitive agreement itself.'").

point to the subscription nature of Lloyd's as a 'structural conspiracy.'").[4]  As this confirms, the claims in the SAC are hardly "new."  Indeed, the RAC and SAC both assert *per se* violations of the Sherman Act based on Defendants' horizontal agreements to allocate insurance business among competing Syndicates and minimize competition.  Similarly, the RAC asserted Lloyd's Corp. was an "enterprise" for the RICO claims.  The SAC refines those claims based upon discovery this past year.

Critically, Defendants overlook this Circuit's "liberal approach to the amendment of pleadings under Rule 15 to ensure that 'a particular claim will be decided on the merits rather than on technicalities.'"  *Nike, Inc. v. E. Ports Custom Brokers, Inc.*, No. 11-cv-04390 (CCC)(JAD), 2013 U.S. Dist. LEXIS 113957, at *6-*7 (D.N.J. Aug. 13, 2013) (quoting *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990)).  Motions to amend serve many purposes, including:  "to cure a defective pleading, to correct insufficiently stated claims, to amplify a previously alleged claim, to change the nature or theory of the case, to state additional claims, to increase the amount of damages sought, to elect different remedies, or to add, substitute or drop parties to the action."  *Wolfson v. Lewis*, 168 F.R.D. 530, 533 (E.D. Pa. 1996).

And though it is Defendants' burden to "demonstrate why the amendment should not be permitted," they neither acknowledge their burden nor carry it.  *Nike*,

---

[4]   Here, and throughout, emphasis is added, internal quotation marks and citations omitted, unless otherwise noted.

2013 U.S. Dist. LEXIS 113957, at *7 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Defendants do not argue bad faith and do not demonstrate Plaintiffs unduly delayed in bringing this motion.  And, they do not carry their burden to show any prejudice would be undue or amendment futile.  This Court should grant the motion.

## II.    DEFENDANTS MISCHARACTERIZE THE ALLEGATIONS[5]

### A.    The RAC Alleged a Lloyd's Enterprise and Conspiracy

Allegations about Lloyd's Corp. are not new.  The RAC alleged both broker misconduct and a Lloyd's Enterprise comprised of Lloyd's Corp.  RAC, ¶¶280-91.  It alleged Lloyd's Corp. and its Syndicate executives controlled the Lloyd's market and facilitated payments and contingent commissions.  *Id.*, ¶¶281-86.  And it alleged Defendants used the LMA in the scheme (*id.*, ¶221), and they entered into horizontal agreements. *Id.*, ¶¶106-07, 131, 139.  Defendants' knowledge of these issues is shown by complaints of allegations about Lloyd's Corp., the LMA, the subscription model, and lineslips and binding authorities.  Dkt. No. 2500-1 (Defs' MTD) at 10-12, 18-20, 22-25, 43-45; Dkt. No. 2503 (Defs' Reply MTD) at 4-10, 16, 23-24.  For example:

- "Plaintiffs point to organizational features of Lloyd's that allow for ***communication*** among the Syndicates, such as the subscription participation of multiple Syndicates in a policy or program and the role of the [LMA], as evidence of conspiracy."  Dkt. No. 2500-1 at 18-19; *see also id.* at 19.

---

[5]   Contrary to Defendants' suggestion, there was little to no relevant discovery for ***this case*** in the MDL 1663 depository prior to the Court's order opening discovery in Spring 2012.   *See* Jensen Decl., Ex. 2 (5/18/2012 email confirming there were no documents in depository from 18 Defendants).

- "Plaintiffs allege that the Lloyd's Corporation is a legal entity constituting a RICO enterprise . . . ."  Dkt. No. 2500-1 at 37.

- "Plaintiffs suggest that the very structure of Lloyd's – including the use of the Lloyd's Building as a place for underwriters and brokers to meet, the role of the Lloyd's Corporation in the market, and the presence of a trade association – differentiates their complaint."  Dkt. No. 2503 at 4.

- "Plaintiffs contend that the Lloyd's Corporation 'plays a very active role in supporting the Syndicates' and the LMA is a 'vehicle through which Defendants can collude.'  Plaintiffs also point to the subscription nature of Lloyd's as a 'structural conspiracy.'"  Dkt. No. 2503 at 10; *id.* at 10-11 nn.5-6.

Defendants cannot credibly claim the SAC is a completely "new case."  Instead, the SAC expands on the RAC by providing details about the: (i) role of Lloyd's Corp. (SAC, ¶¶3-9, 107-54); (ii) manner in which Defendants exchange sensitive business information (*id.*, ¶¶4-8, 135-43, 150-53); (iii) role of the LMA (*id.*, ¶¶10, 154, 179-94, 315-16); and (iv) use of subscription model, lineslips, and binding authorities to reduce competition (*id.*, ¶¶11-16, 98-01, 104-05, 155-68).

## B.   The Anticompetitive Nature of the Subscription Model at Lloyd's Was Pleaded in the RAC

Defendants have acknowledged the subscription model as practiced at Lloyd's has always been part of the claims.  Dkt. No. 2503 at 10.  Discovery has provided the ***details*** of its operation, allowing Plaintiffs to plead for the first time the anticompetitive operation and effect of the subscription practice.[6]  SAC, ¶¶12-15, 101-

---

[6]   Tellingly, most details alleged in the SAC are based on deposition testimony or documents designated as "Confidential" or "Confidential – Attorneys' Eyes Only," by the Defendants.  SAC, ¶¶15-16, 97-01, 157, 161-64, 167-68, 170, 173-74, 176.

- 4 -

06, 105-64; Jensen Decl., Ex. 3, Burkinshaw 7/9/2013 Tr. at 249:18-250:16.

### C. Details about the Role of Lloyd's Corp. and FPD Were Learned in Discovery This Year

As Defendants have admitted, the RAC contained numerous allegations about the role of Lloyd's Corp. in the operation of the Lloyd's market. *See, e.g.*, Dkt. No. 2503 at 10. And though certain high-level facts about the Lloyd's Corp. and the existence of the FPD are publicly-accessible, the ***details*** of misconduct are not. Plaintiffs learned through discovery this year about the FPD's control over the Syndicates' capacity, such as the coordination of output to achieve optimum profitability;[7] the comingling of Council members and Syndicate executives; and the use, purpose and contents of various data reports (*e.g.*, SBFs, QMRs). SAC, ¶¶3-9, 109-10, 114, 130, 133, 135-36, 144, 147, 152; *id.*, ¶¶123-24 (Lloyd's involvement in policy payment processing); *id.*, ¶138 (FPD's meeting agendas).

### D. Discovery Has Provided the Details of the LMA's Role

Again, though the RAC contained allegations about the LMA, the SAC bolsters those allegations with newly-developed evidence. For example, while the LMA's model contract wording and/or generalized loss data may have been in the public domain previously, key allegations are not, including the: (1) collaboration between

---

[7] *See, e.g.*, SAC, ¶¶7-9, 121-22, 125, 130; *compare* SAC, ¶115 (alleging the Council is responsible for setting each Syndicates' annual subscriptions), *with* Defs' Br. at 15 n.10 (failing to demonstrate information is publicly available).

the FPD and Syndicates through the LMA, including non-compliance with U.S.

antitrust law;[8] (2) LMA's role in coordinating broker compensation and market-wide

underwriting practices;[9] and (3) use and content of loss-ratio triangulation, premium

settlement reports and performance reports.[10]   These ***detailed, non-public*** facts

succinctly describe how Defendants' anti-competitive agreements worked and

demonstrate how Defendants hid their unlawful conduct from Plaintiffs and the Class.

## III.   DEFENDANTS DO NOT CARRY THEIR BURDEN OF SHOWING *UNDUE* PREJUDICE

Defendants incorrectly suggest that a showing of any prejudice is sufficient to

deny leave to amend.[11]   Defs' Br. at 17.   But, the Third Circuit requires ***undue*** or

***substantial*** prejudice.   *See Lundy v. Adamar of N.J.*, 34 F.3d 1173 (3d Cir. 1994);

*Rowe v. E.I. du Pont de Nemours & Co.*, No. 06-1810 (RMB/AMD), 2010 U.S. Dist.

LEXIS 16185, at *33-*34 (D.N.J. Feb. 24, 2010) ("Incidental prejudice is not a

---

[8]   *See, e.g.*, SAC, ¶¶154, 168, 180, 189-90, 192, 194.

[9]   *Id.*, ¶¶184, 190.

[10]   *Id.*, ¶¶187-88.

[11]   *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001), and *Berger v. Edgewater Steel Co.*, 911 F.2d 911 (3d Cir. 1990), are distinguishable.   *Cureton* involved a ***post-judgment*** motion, in contrast to this motion brought at the pleading stage.   252 F.3d at 274.   The finality of proceedings would have been compromised there and plaintiffs had no excuse for delay, whereas Plaintiffs here seek to amend the complaint for the first time since receiving discovery this past year.   *See id.*   In *Berger*, plaintiffs sought to add a completely new and largely unrelated claim with limited utility at the summary judgment stage and after close of discovery.   911 F.2d at 924.

- 6 -

sufficient basis for the denial of a proposed amendment. Prejudice becomes undue when a party shows that it would be 'unfairly prejudiced' or deprived of the opportunity to present facts or evidence which it would have offered.").

### A.   Defendants' Suggestion the SAC Presents an "Entirely New" Theory Contradicts Their Prior Representations

The SAC does not plead entirely new claims. *See* §II.B. The RAC's allegations foreshadowed the SAC, though the latter expanded upon it, which is par for the course after discovery. *See Travelers Indem. Co. v. Losco Group, Inc.*, 150 F. Supp. 2d 556, 560 (S.D.N.Y. 2001) ("The federal courts consistently grant motions to amend where it appears that new facts and allegations were developed during discovery, are closely related to the original claim, and are foreshadowed in earlier pleadings."). Many of the core elements of the RAC still exist and were augmented in the SAC. And, the SAC actually reduces the total number of claims.[12]

Further, via depositions this year, Plaintiffs learned Lloyd's Corp., through the FPD, directed the allocation of risk among Syndicates; controlled output in the Lloyd's market; and facilitated the exchange of sensitive information that restricted competition.[13] Parties may amend their pleadings to conform to discovery.

---

[12]   Contrary to the Defendants' suggestion, Plaintiffs previously sought injunctive relief as part of their Sherman Act claims. RAC, Prayer for Relief, ¶G.

[13]   Jensen Decl., Exs. 4-10 (Prifti 1/24/2013 Tr. at 148:2-149:12; Lee 5/1/2013 Tr. at 158:6-159:12; Shipley 7/22/2013 Tr. at 99:5-115:4; Warrior 9/5/2013 Tr. at 128:19-

*Zimmerman v. Schaeffer*, 654 F. Supp. 2d 226, 246 (M.D. Pa. 2009). This is particularly applicable here, as Plaintiffs did not have discovery for the RAC.

Defendants knew discovery implicated Lloyd's as the key enforcer of the market allocation agreements. As early as November 14, 2012, Defendants admitted Plaintiffs were focusing discovery on Lloyd's: "Instead, in an obvious effort to evade the limits of the Third Circuit opinion, [Plaintiffs] expanded their theories to accuse the London market itself of being an antitrust violation due to its very structure, regardless of any contingent commission agreements or bid-rigging." Dkt. No. 2310 at 7. Defendants cannot square assertions that the claims are "new" when they were on notice of the allegations (and previously complained about them):

- "While many of the underlying allegations are similar to those in the main class case, those allegations involve conduct by different defendants in a different market (the Lloyd's London market) that operates differently. Plaintiffs in *Lincoln Adventures* will have to conduct different discovery on their own to amend their complaint, much less to create the kind of extensive factual record that the Third Circuit had before it in the main class case." Dkt. No. 2235 at 3.

- "[T]he Lloyd's Market . . . is far more vulnerable to collusion. The Lloyd's Market is organized as a consortium of competitors. Importantly, syndicates, brokers and their agents are afforded unlimited ability to communicate and share information with each other. . . . It is routine in the London market for multiple syndicates to jointly agree to insure a particular risk or types of risks. Even physically, the London market is a structural conspiracy; each Syndicate has a desk where its insurance business is done in the Lloyd's building at One Lime Street in London." Dkt. No. 2273 at 5-6.

---

131:2; Maidement 9/3/2013 Tr. at 31:18-33:5; Laing 9/16/2013 Tr. at 135:10-138:20; Dandridge 9/27/2013 Tr. at 107:10-112:9).

Additionally, as discussed above, Defendants' dismissal briefs complained that Plaintiffs were wrongfully focusing on Lloyd's Corp. *See supra*, §II.A.

Thus, Defendants' vague assertion that the amendment would require them to start anew with discovery and investigation is disingenuous. They knew from the outset the misconduct related to Lloyd's market practices. As Defendants admit,[14] Plaintiffs have asked about the role of Lloyd's Corp., FPD, Xchanging, and how the market functions. To argue this is a new theory is belied by Defendants' own words.

### B.    Any Delay Is Speculative and Not Unduly Prejudicial

Delay is simply one factor in the undue prejudice calculation, but delay alone is insufficient to deny a motion to amend. *See Deakyne v. Comm'rs of Lewes*, 416 F.2d 290, 300 n.19 (3d Cir. 1969). Thus, "in the absence of substantial prejudice, denial instead must be based on 'truly undue or unexplained delay.'" *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp*., 394 F.3d 126, 171 (3d Cir. 2004). The delay must cause defendants "difficulty in prosecuting the lawsuit as a result of change of tactics or theories on the part of the other party." *Deakyne*, 416 F.2d at 300.

Here, Defendants misrepresent that Plaintiffs had six years to prosecute their claims, when a stay prevented them from doing so until this Court ordered discovery on April 30, 2012, and it was not until last fall that Defendants were ordered to

---

[14]   Defendants note that questions about Lloyd's were asked in several depositions. *See* Defs' Br. at 26-27; Palmer Decl., Exs. 19-22.

provide class discovery. Even since then, Defendants have delayed and stymied Plaintiffs' efforts at every turn. Pls' Br. at 5-10. And, as soon as the Court-ordered mediation failed, Plaintiffs promptly moved for leave to amend.[15] Because these facts do not show delay that would render any prejudice undue, Defendants make up the facts, including: (1) but for this motion, the case is almost over (even though it is at the pleading stage, most discovery was tabled pending court rulings, and Plaintiffs have never amended their complaint with the benefit of discovery); and (2) Plaintiffs are waging "a discovery war of attrition," which is frivolous. Defendants' suggestion that the Court will have more work to do if it grants this motion is untrue. Granting this motion will reduce the total number of claims, moot Defendants' outstanding motion to dismiss, likely moot one or more discovery motions, and avoid burdening the Court with deciding a motion to dismiss that does not conform to the evidence.

But, it is Defendants' case selection on undue delay that speaks the loudest about the weakness of their argument, as each supports Plaintiffs' position. Defendants cite *In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. 221 (D.N.J. 2005), but neglect to mention that, there, the final pretrial conference had begun, discovery

---

[15]   Notably, Defendants do not argue they will be caused prejudice as to their claims or defenses. Defendants do not claim prejudice as to their ability to make arguments at the appropriate time (*i.e.*, they can still gather and present evidence on substantive motions at trial). Unlike the cases Defendants cite, however, this case is in an early procedural posture, and does not present the situation where an amendment is sought post-judgment, or in another situation where Defendants would be prevented from fully presenting their defense.

902272_1

spanned 4.5 years and was closed for nearly a year, 26 expert reports were filed and summary judgment fully-briefed pending a decision. *Id.* at 223. Here, by contrast, the case is at the pleading stage and no expert reports or summary judgment motions has been filed. *Berger* and *Cureton* fare no better. *See supra* n.11. In *Long v. Wilson*, 393 F.3d 390 (3d Cir. 2004), defendants moved to amend their answer after asserting a new defense that could have been raised 14 months earlier. *Id.* at 399. Yet, the court allowed it, finding the delay was not unduly prejudicial. *Ford Motor Co. v. Edgewood Props., Inc.*, No. 06-1278, 2011 U.S. Dist. LEXIS 45368 (D.N.J. Apr. 27, 2011), provides a stark contrast to Plaintiffs' request here, as there, the plaintiff knew it could have brought the case against the new party four years earlier. *Id.* at *12. Here, Plaintiffs learned about the nature and extent of Lloyd's Corp.'s involvement in the misconduct through discovery this year and promptly sought to add it.[16] *See* §II.C.

Defendants' complaint about a year of protracted litigation (Defs' Br. at 17), fails to mention that the disputes, and the delay, were caused by their denying Plaintiffs access to core discovery. Pls' Br. at 5-10. Defendants ignore that, even if

---

[16]   What seems clear is cases far more advanced than this are routinely allowed to amend. *See, e.g.*, *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir. 1979) ("A party is free to move for leave to amend, even after a motion for summary judgment has been made by the opposing party."); *In re Mortgage Lenders Network, USA, Inc.*, 395 B.R. 871, 877-78 (D. Del. 2008) (granting leave to amend four months before trial); *Dunbar v. Google, Inc.*, No. 5:12-cv-003305-LHK, 2012 U.S. Dist. LEXIS 177058, at *44-*53 (N.D. Cal. Dec. 12, 2012) (granting motion for leave to file third amended complaint after completion of class certification discovery deadline).

- 11 -

leave is denied, they will still be required to produce: (1) discovery subject to motions to compel; (2) witnesses for depositions that were put off pending rulings on those motions;[17] and (3) discovery about Lloyd's which is pending the resolution of confidentiality concerns. Providing discovery that would occur under the RAC and speculation about possible future discovery does not show undue prejudice.[18]

Defendants' argument that "Plaintiffs' discovery complaints have no bearing on the motion" (Defs' Br. at 25-27), misses the mark. The discovery subject to the motions to compel would still be relevant to the SAC. For instance, the documents improperly withheld as privileged relating to Lloyd's and the LMA are still relevant, as is the data from Xchanging. Only one discovery motion would be mooted (*i.e.*, the scope of "contingent commissions"), is because the SAC makes crystal clear that Plaintiffs' claims include binding authorities and lineslips.

Even modest additional discovery is no reason to deny the motion. *See Schaghticoke Tribe of Indians v. Kent School Corp.*, 423 F. Supp. 780, 783-84 (D.

---

[17]   Of the more than 100 depositions noticed (an average of only a few for the many Defendants), only 40 have been taken, with 15 as Rule 30(b)(6) depositions. The outstanding depositions were tabled as Plaintiffs did not want to cause unnecessary expense, pending resolution of the discovery motions and this motion.

[18]   Defendants' suggestion that Plaintiffs served 33 deposition notices "in an attempt to find support for new allegations" is pure speculation, especially considering the parties agreed to table any discovery including these depositions until either one or more of the discovery disputes or this motion was resolved. Similarly, Defendants' claim that Plaintiffs will "likely" seek to re-depose witnesses is baseless.

Conn. 1976) (being "forced to respond to additional defenses and undertake supplemental discovery" not prejudicial); *Cooper v. Ficarra*, No. 96-7520, 1997 U.S. Dist. LEXIS 14217, at \*5-\*6 (E.D. Pa. Sept. 12, 1997) (addition of legal remedies with additional discovery not prejudicial). Defendants have not met their burden.

### C. The Addition of New Class Representatives and Defendants Does Not Constitute Undue Prejudice

Courts routinely allow the addition of class representatives, especially before a class is certified. *See In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2005 U.S. Dist. LEXIS 31251, at \*19 (S.D.N.Y. Dec. 7, 2005); Manual for Complex Litigation (4th) §21.26. Despite this, Defendants argue that they will be prejudiced by taking depositions of three new Plaintiffs. But three depositions are hardly prejudicial in light of the scope of this case and the discovery taken to date.

Further, the addition of new defendants is guided by the same lenient standard as a motion for leave to amend. Defendants fail to articulate how having additional co-defendants is unduly prejudicial. *See Bravaman v. Bassett Furn. Indus., Inc.*, 64 F.R.D. 7 (E.D. Pa. 1974) (allowing plaintiff to add defendant, notwithstanding contention that statute of limitations barred most allegations against proposed defendant). *Nike* is instructive. There, as here, plaintiffs sought to add defendants based on new evidence. In granting leave, the Court noted the current defendant "has been a party to the litigation for several years" and "it would not be required to expend significant additional resources to conduct discovery and prepare for trial" because of

- 13 -

the additional parties.  *Nike*, 2013 U.S. Dist. LEXIS 113957, at *13-*14.  Indeed, courts permit leave to amend to add new defendants at much more advanced stages of litigation than here.  *See, e.g.*, *Wolfson*, 168 F.R.D. at 532 (adding five defendants, five claims, and additional factual information less than three months before trial).

## IV.   DEFENDANTS DO NOT CARRY THEIR BURDEN TO SHOW THE AMENDMENT WOULD BE FUTILE

Defendants do not show the proposed amendment is futile.[19]  An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face."  *Harrison Bev. Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).

### A.   Plaintiffs' Sherman Act Claims Are Not Futile

#### 1.   The SAC Adequately Alleges *Per Se* Violations

Defendants are incorrect that the SAC does not allege a horizontal agreement. It contains many allegations about horizontal agreements among Syndicates to allocate premium volume, control capacity in the Lloyd's market, and exchange sensitive information with the purpose and effect of raising prices and profits.  SAC, ¶¶3-9, 125-49.  These are all subject to *per se* condemnation.  *See, e.g.*, *U.S. v. Andreas*, 216 F.3d 645, 667 (7th Cir. 2000) (lysine producers' agreement to allocate sales volume was *per se* violation as output limitation).  The fact that Lloyd's Corp. facilitated the conspiracy does not alter the horizontal nature of the agreements.

Where, as here, anticompetitive agreements are made and enforced through a

---

[19]   Defendants do not challenge the legal sufficiency of the RICO claims.

membership association controlled by competitor-members, the agreements are deemed horizontal. *See, e.g.*, *U.S. v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972) (though agreement between a "licensor" and a "licensee" is "vertical" in form, it is deemed horizontal if licensor is controlled by a group of competing licensees); *see also Am. Needle, Inc.*, 560 U.S. at 184 ("members of a legally single entity [may] violate[] §1 when the entity was controlled by a group of competitors and served, in essence, as a vehicle for ongoing concerted activity"); 12 Phillip Areeda and Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application, ¶2033b at 229 (3d ed. 2007) ("when the upstream party is nothing more than an association made up of the downstream parties themselves," the market-division arrangements are deemed horizontal rather than vertical).

Here, the SAC alleges that Lloyd's Corp. was created and is controlled by its member Syndicates – competitors at the same level of distribution.  For example:

- Lloyd's Corp. is an organization authorized by its members (the Syndicates) to operate the Lloyd's insurance market.  SAC, ¶2.

- Lloyd's Corp. is managed by the Council, a majority of which are executives of the member-Syndicates.  SAC, ¶¶113-15.

- The Council and its Committees, including the FPD, operate all the business of the Lloyd's Corp.  SAC, ¶¶116-17.

Moreover, the SAC alleges that the premium allocation, supply restriction, and the anticompetitive information sharing are implemented by Lloyd's through the FPD:

Lloyds Corporation, through the FPD, directs the allocation of risk

- 15 -

> among the Syndicates, controls the total capacity in the Lloyd's market
> and facilitates the collection and exchange of detailed financial
> information that enables the Syndicates to monitor their market share,
> premium and financial performance against reputable competitors.

SAC, ¶122.  It is through Lloyd's Corp. that the Syndicates carry out the agreements restricting competition among them.  These are quintessentially horizontal.

Even if Lloyd's Corp. was completely independent of the Syndicates, the SAC describes horizontal agreements – facilitated by a vertical actor – subject to *per se* condemnation.  As *U.S. v. Apple Inc.*, Nos. 12 Civ. 2826 (DLC), 12 Civ. 3394 (DLC), 2013 U.S. Dist. LEXIS 96424 (S.D.N.Y. July 10, 2013) held:  "Per se price-fixing agreements may also include those where a vertical player participates in and facilitates a horizontal conspiracy."  *Id.* at *130-*31 (citing *Toys "R" Us, Inc. v. FTC*, 221 F.3d 934, 936 (7th Cir. 2000)).  There, Apple, an entity vertically oriented to the publishers, facilitated a horizontal conspiracy to eliminate retail price competition and raise the price of e-books that was a *per se* violation.  *Id.* at *140; *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 337 (3d Cir. 2010) ("The fact that Marsh, an entity vertically oriented to the insurers, appears to be a *sine qua non* of the alleged horizontal agreement is not necessarily an obstacle to plaintiffs' claim.").

Here, as detailed above, the SAC alleges that Lloyd's Corp. facilitated a scheme by which available capacity was allocated among competing Syndicates, market-wide capacity was restricted, and sensitive pricing information was exchanged.  The SAC alleges that the purpose and effect of the scheme was to quell competition among

- 16 -

competing Syndicates, insuring them supra-competitive profits. That Lloyd's Corp. is neither an insurer nor a competitor does not alter the scheme's horizontal nature.

Defendants' argument that *per se* condemnation is inappropriate for "practices that allow a product to be offered and/or promote market efficiency" similarly fails. *See* Defs' Br. at 30. First, as the Supreme Court said in *Arizona v. Maricopa County Med. Soc'y*, 457 U.S. 332 (1982), "[o]nce experience with a particular kind of restraint enables the Court to predict with confidence that the rule of reason will condemn it, it has applied a conclusive presumption that the restraint is unreasonable." *Id.* at 344. Where, as here, the SAC alleges naked market allocation and supply restriction agreements, Defendants' so-called efficiency justifications are irrelevant. *See In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 908-09 (6th Cir. 2003) ("the defendants' claims that the Agreement lacked anticompetitive effects and had procompetitive benefits are simply irrelevant . . . the virtue/vice of the *per se* rule is that it allows courts to presume that certain behaviors as a class are anticompetitive").

Second, the SAC does not allege Defendants' agreements "create efficiencies" or "allow a product to be offered." This case is not about horizontal agreements necessary to create products, such as professional or college sports leagues. *See, e.g.*, *NHL Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 719 (6th Cir. 2003) (practices by professional sports leagues not subject to *per se* rule) (Defs' Br. at 30); *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents*, 468 U.S. 85, 101 (1984)

- 17 -

(NCAA members' cooperation necessary to make product available) (Defs' Br. at 30).

In any event, Defendants' unsupported "efficiency" justifications are not a basis for finding the rule of reason applies.[20]  *See, e.g.*, *Cont'l Airlines, Inc. v. United Air Lines, Inc.*, 120 F. Supp. 2d 556, 565 (E.D. Va. 2000) ("[I]t is sufficient that plaintiffs have alleged a restraint on trade in the form of a horizontal agreement among competitors not to compete . . . that is arguably analogous to horizontal agreements that have been held to be *per se* illegal.").  The SAC alleges *per se* violations.

### 2.    The SAC Alleges Violations under the Rule of Reason

Defendants argue the SAC does not "allege market power in a well-defined relevant market."  Defs' Br. at 31-34.  But the SAC does allege facts establishing Defendants' market power in the Lloyd's market, under both the traditional and direct evidence approach of proving market power.  *See Todd v. Exxon Corp.*, 275 F.3d 191, 199-200, 206-07 (2d Cir. 2001).  In any event, relevant market and market power are highly fact-intensive issues, inappropriate for a motion to dismiss.  *Id.* at 199-200.

---

[20]  Even if Defendants could establish that collective underwriting is efficiency-enhancing, that would not explain the price-leadership phenomenon challenged in the SAC.  *See, e.g.*, SAC, ¶¶162-63, 277.  Defendants claim that Plaintiffs allege the "'Lloyds market' is superior to alternatives."  Def's Br. at 31 (citing SAC, ¶287).  What the SAC actually says is: "Because Lloyd's is a 'specialty market,' insureds who must turn to the Lloyd's market to meet their insurance needs have limited alternative choices.  From the prospective of the insured, other insurance markets are not easily interchangeable with Lloyd's to meet their insurance needs."  SAC, ¶287.  Plaintiffs do not concede that the Lloyd's market is "superior" or, more importantly, that the challenged practices at issue are necessary to the efficient operation of that market.

"Market power is the ability to raise price profitably by restricting output." Areeda and Hovenkamp, ¶501 at 109. The SAC alleges Defendants did just that – restricted insurance capacity/supply both on the Syndicate level and market-wide to increase profits and enjoy excessive rates of return. SAC, ¶¶125-30, 144-48. These allegations are sufficient. *See Todd*, 275 F.3d at 206-07; *U.S. v. Brown Univ.*, 5 F.3d 658, 668 (3d Cir. 1993) (rule satisfied by proving by anticompetitive effects with direct evidence, such as reduction of output or increase in price).

The SAC also defines the relevant market using the "traditional approach," *i.e.*, with reference to the "methodology that courts prescribe to define a market for antitrust purposes – analysis of the interchangeability of use or the cross elasticity of demand." *Todd*, 275 F.3d at 201. The SAC alleges the Lloyd's market is a "specialist insurance market" insuring "new, unusual or complex risks." SAC, ¶¶284-85. As the self-described "first insurers of last resort," the Lloyd's market provides insurance to policyholders that cannot access insurance in the mainstream market due to the complexity or novelty of their risks. *Id.*, ¶¶283-86. Thus, "insureds who must turn to the Lloyd's market to meet their insurance needs have limited alternative choices. From the prospective of the insured, other insurance markets are not easily interchangeable with Lloyd's to meet their insurance needs."[21] *Id.*, ¶287. These facts

---

[21] Defendants argue Plaintiffs' relevant market definition is inappropriate as they have not alleged different insurance products in the Lloyd's market are substitutable for one another. The issue however, is not whether a terrorism policy is an adequate

sufficiently allege that the Lloyd's market is a plausible relevant market.  The SAC alleges other facts showing the Lloyd's market is a distinct relevant market, such as industry recognition (SAC, ¶284), unique products and distinct pricing (*id.*, ¶288) and barriers to entry (*id.*, ¶¶289-90).  *See Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325 (1962).  The SAC alleges the excessively high costs of broker intermediation, further demonstrating that Lloyd's is a distinct relevant market.  SAC, ¶291.

### B.   Plaintiffs' Sherman Act Claims Are Not Time-Barred

As an initial matter, "[s]ince the applicability of the statute of limitations usually involves questions of fact for the jury, defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred."  *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir. 1985).  Here, Defendants do not meet that burden.  In arguing that the claims are time-barred, Defendants assume the conduct giving rise to Plaintiffs' claims was comprised of discrete acts perpetrated before 2009 (on the flawed premise that the claims are only now being brought in 2013 rather than 2007 when this case was filed), rather than the ongoing behavior giving rise to liability depicted by the Plaintiffs.

But, the Supreme Court held in *Hanover Shoe v. United Mach. Corp.*, 392 U.S.

---

substitute for an aviation policy.  The issue is to what extent other insurance marketplaces would be viewed by Lloyd's insureds as reasonable substitutes for the Lloyd's market.  *See Todd*, 275 F.3d at 202-03 (the issue is not whether oil industry jobs are interchangeable with one another, but whether an oil industry employee views a job opportunity outside the industry as a substitute for a job within the industry).

481 (1968), that a continuing violation of the Sherman Act, which inflicts an ongoing

harm, entitles plaintiffs to sue outside the four-year period.  *Id.* at 502 n.15.  Thus,

contrary to Defendants' assertion that a challenge to recurring events fails to bring long-

running conspiracies within the Sherman Act, that is precisely the mechanism through

which Plaintiffs may seek redress.  *See Pa. Dental Ass'n v. Med. Serv. Ass'n*, 815 F.2d

270, 278 (3d Cir. 1987) ("[E]ach time a plaintiff is injured by a continuing conspiracy

to violate the antitrust laws a new cause of action for damages accrues."); *Meijer, Inc. v.

3M*, No. 04-5871, 2005 U.S. Dist. LEXIS 13995, at *8-*9 (E.D. Pa. July 13, 2005)

("[E]ven if the overt act which demonstrates the antitrust violation occurs outside the

statute of limitations period, an injurious act within the limitations period may serve as

the basis for a timely antitrust suit.").  As Plaintiffs bought and overpaid for insurance

within the limitations period, their claims are timely.  *See In re K-Dur Antitrust Litig.*,

338 F. Supp. 2d 517, 551 (D.N.J. 2004); *see also In re Buspirone Patent & Antitrust

Litig.*, 185 F. Supp. 2d 365, 378 (S.D.N.Y. 2002) (same).

Additionally, though Defendants' continuing violations render relation back

unnecessary, the SAC satisfies Rule 15(c).  The SAC does not allege "new and

unanticipated claims."  *See* §§II.A., II.B.  While Defendants feign shock at the SAC's

clarity about the internal mechanisms by which they accomplished the scheme, this is

not the standard.  The issue is "whether the original pleading gave the opposing party

fair notice of the general fact situation involved in the amended pleading."  *Cruz v. City*

*of Camden*, 898 F. Supp. 1100, 1117 (D.N.J. 1995) ("The fact that a particular allegation was not mentioned in the original pleading has been held to be unimportant where the original pleading gave the opposing party notice" of the claim.).   As Defendants' own authorities recognized:   "In *Bensel*, we approved relation back of amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct."   *Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012).  As in *Glover*, Plaintiffs have simply lent clarity to the scheme.

### C.   Plaintiffs' Claims Are Properly Asserted in This Forum

#### 1.   The FTAIA Cannot Shield Defendants from Liability

Defendants argue the FTAIA bars the Sherman Act claims (Defs' Br. at 34-35), but it does not apply to "import trade or commerce," such as the Lloyd's policies imported for U.S. consumers.  *See, e.g.*, *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 855 (7th Cir. 2012); *Hartford Fire Ins. Co. v. Cal.*, 509 U.S. 764, 796 (1993) (finding Lloyd's insurers were properly sued in the U.S.: "[I]t is well established by now that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States.").

#### 2.   Comity Does Not Require Dismissal

Though courts have discretion to dismiss a case in deference to the laws and interests of another nation, they cannot "extend judicial deference to those cases whose dismissal would be contrary to domestic public policy."  *Lexington Ins. Co. v. Forrest*, 263 F. Supp. 2d 986, 1002 (E.D. Pa. 2003).  Public policy considerations

- 22 -

mandate that, "[b]efore exercising any discretion to deny access to a citizen to the courts of this country, this Court must receive positive evidence of unusually extreme circumstances and should be thoroughly convinced that material injustice is manifest." *Sudduth v. Occidental Peruana, Inc.*, 70 F. Supp. 2d 691, 697 (E.D. Tex. 1999); *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1477 (9th Cir. 1992) (U.S.' interest in vindicating U.S. plaintiffs' rights and enforcing judgments is "vital"). Defendants failed to proffer any such "unusually extreme circumstances."[22]

### 3. Defendants Have Not Met Their Heavy Burden of Showing *Forum Non Conveniens* ("*FNC*") Warrants Dismissal

Defendants' *FNC* argument contradicts their past position. In tagging the case to MDL 1663, Defendants said: "New Jersey remains the most convenient location for all the parties and their counsel to litigate this contingent commission case," and "is an accessible metropolitan location that is geographically convenient for the litigants and counsel." *In re Ins. Brokerage Antitrust Litig.*, JPML Dkt. No. 224 at 17-18. Defendants should not be permitted to seek this forum only to abandon it later.

Regardless, their argument fails. "[D]ismissal for [*FNC*] is the exception rather than the rule." *Donachy v. Intrawest U.S. Holdings, Inc.*, No. 10-4038, 2011 U.S. Dist. LEXIS 79567, at *14-*15 (D.N.J. July 21, 2011). The Court should not dismiss on

---

[22] In *Allen v. Lloyd's of London*, 94 F.3d 923, 930 (4th Cir. 1996), the court declined to exercise jurisdiction because of forum selection contract clauses that the parties had agreed to be bound by the laws and rules of the U.K., not at issue here.

*FNC* grounds unless: (1) an adequate alternative forum exists; and (2) the public and private interest factors weigh in favor of dismissal. *Burke v. Quartey*, 969 F. Supp. 921, 929 (D.N.J. 1997). "The defendant bears the burden of proving that these factors weigh heavily in favor of dismissal. *This is a heavy burden for the defendant to overcome* and unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Magla Prods., LLC v. Chambers*, No. 06-0115 (PGS), 2006 U.S. Dist. LEXIS 71246, at \*15-\*16 (D.N.J. Sept. 29, 2006).

An adequate alternative forum requires Defendants to be amendable to process there, and it "provides the plaintiff the opportunity for appropriate redress." *Burke*, 969 F. Supp. at 930. Defendants merely assert the U.K. courts provide an adequate forum for the claims, but this is hardly enough to meet their "heavy burden."[23] The lack of class actions in the U.K. would also deprive Plaintiffs of a forum to redress their claims. *See Bodner v. Banque Paribas*, 114 F. Supp. 2d 117, 132 (E.D.N.Y. 2000).

Finally, even if an adequate forum existed, private and public interests weigh against dismissal. Defendants argue the conduct, most witnesses, and proof are located there, and English courts can compel witness attendance and documents. This is

---

[23] Defendants' cases are unavailing. In *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1366 (2d Cir. 1993), the analysis centered on a forum selection contract clause, not the *FNC* analysis. And neither *Capital Currency Exch. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609-10 (2d Cir. 1998), nor *Princeton Football Partners LLC v. Football Ass'n of Ireland*, No. 11-cv-5227, 2012 U.S. Dist. LEXIS 101681 (D.N.J. July 23, 2012), speak to the issue of whether Defendants are amenable to process.

- 24 -

insufficient as Defendants do not claim it is oppressive to litigate here. *See Am. Home Assur. Co. v. Ins. Corp. of Ireland, Ltd.*, 603 F. Supp. 636, 641 (S.D.N.Y. 1984). Further, the U.S. has a strong interest in enforcing its antitrust laws. *Cf. Trueposition, Inc. v. LM Ericsson Tel. Co.*, No. 11-4574, 2012 U.S. Dist. LEXIS 29294, at *20 (E.D. Pa. Mar. 6, 2012). Though the U.K. may also have an interest in a controversy regarding its insurers,[24] it does "not outweigh the deference owed to Plaintiff's forum selection." *Carl Schroeter GmbH v. Crawford & Co.*, No. 09-946, 2009 U.S. Dist. LEXIS 43488, at *31, *33 (E.D. Pa. May 19, 2009).[25] Defendants' argument should be rejected. Plaintiffs respectfully submit that the Court should grant their motion.

DATED: December 20, 2013                    Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP


                                                 s/ Rachel L. Jensen
                                            RACHEL L. JENSEN

---

[24] The fact that Lloyd's Corp. can trace its origins to Parliament is of no matter. *Hartford Fire*, 509 U.S. at 798-99 (Defendants "assert that Parliament has established a comprehensive regulatory regime over the London reinsurance market and that the conduct alleged here was perfectly consistent with British law and policy. But this is not to state a conflict. 'The fact that conduct is lawful in the state in which it took place will not, of itself, bar application of the US antitrust laws,' even where the foreign state has a strong policy to permit or encourage such conduct.").

[25] *Cavlam Bus. Ltd. v. Certain Underwriters at Lloyd's, London*, No. 08-cv-2225, 2009 U.S. Dist. LEXIS 20824, at *26 (S.D.N.Y. Mar. 16, 2009), is inapposite as the plaintiffs were not American and their choice of forum was entitled little deference. Here, Plaintiffs seek to represent thousands of U.S. policyholders. In *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147 (3d Cir. 2010), the existence of a parallel action in France warranted less deference to plaintiff's choice of forum.

- 25 -

JOHN J. STOIA, JR.
RACHEL L. JENSEN
THOMAS R. MERRICK
CARMEN A. MEDICI
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
DAVID J. GEORGE
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ZWERLING, SCHACHTER
  & ZWERLING, LLP
ROBERT S. SCHACHTER
ANA M. CABASSA
41 Madison Avenue
New York, NY  10010
Telephone:  212/223-3900
212/371-5969 (fax)

ZWERLING, SCHACHTER
  & ZWERLING, LLP
DAN DRACHLER
1904 Third Avenue
Seattle, WA 98101-1170
Telephone: 206/223-2053
206/343-9636 (fax)

- 26 -

WHATLEY KALLAS, LLC
JOE R. WHATLEY, JR.
EDITH M. KALLAS
380 Madison Avenue, 23rd Floor
New York, NY  10017
Telephone:  212/447-7060
800/922-4851 (fax)

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
H. SULLIVAN BUNCH
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602/274-1199 (fax)

FOOTE, MIELKE, CHAVEZ
  & O'NEIL, LLC
ROBERT M. FOOTE
KATHLEEN C. CHAVEZ
ALEX J. DRAVILLAS
10 West State Street, Suite 200
Geneva, IL  60134
Telephone:  630/232-7450
630/232-7452 (fax)

- 27 -

CAFFERTY CLOBES MERIWETHER
   & SPRENGEL LLP
ELLEN MERIWETHER
1101 Market Street, Suite 2650
Philadelphia, PA  19107
Telephone:  (215) 864-2800
215/864-2810 (fax)

CAFFERTY CLOBES MERIWETHER
   & SPRENGEL LLP
NYRAN ROSE RASCHE
30 North LaSalle Street, Suite 3200
Chicago, IL  60602
Telephone:  312/782-4880
312/782-4485 (fax)

AULO I. GONANO, P.C.
AULO I. GONANO
1932 Ford Avenue
Wyandotte, MI  48192
Telephone:  734/285-3333

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I, Rachel L. Jensen, certify that on the 20th day of December, 2013, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, and served all counsel who consented to receive filings in the above litigation via electronic mail at service@gcg.mdl1663.com.

s/ Rachel L. Jensen<br>
RACHEL L. JENSEN